**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **MARIA ROJAS,** § | |
|     **Plaintiff,** § | |
| § | |
| **V.** § | |
| § | **No. 3:16-cv-02896-D** |
| **RENFRO INDUSTRIES, INC.,** § | |
| **DISPUTE SOLUTIONS, INC. AND** § | |
| **ESSENTIAL CORPORATE** § | |
| **SOLUTIONS, INC.** § | |
|     **Defendants.** § | |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND**

Clay Miller
State Bar No. 00791266
cmiller@millerweisbrod.com
Lawrence R. Lassiter
State Bar No. 11969850
llassiter@millerweisbrod.com
MILLER WEISBROD, LLP
11551 Forest Central Drive
Forest Central II, Suite 300
P. O. Box 821329 (75382)
Dallas, Texas 75231
(214) 987-0005
(214) 987-2545 (Facsimile)

Houston Smith
houstonsmith@aol.com
LAW OFFICES OF HOUSTON M. SMITH, P.C.
210 East Moore
Terrell, Texas 75160
(972) 524-1903
(972) 524-1992– FAX

ATTORNEYS FOR PLAINTIFF

## Table of Contents

Table of Contents ............................................................................................................. i

Table of Authorities ........................................................................................................ ii

Preliminary Statement .................................................................................................... 1

Factual Background ....................................................................................................... 1

Argument ........................................................................................................................ 4

    A.      To be Entitled to Remove This Case, Defendants Have the Burden of Demonstrating That Rojas' Claims are Completely Preempted by ERISA. ............. 4

    B.      There is no Complete Preemption Because Rojas is not Asserting Claims Based on the Terms of an ERISA Plan, and Her Claims are Also Based on Other Independent Legal Duties Under Texas Law. ................................................ 5

          1.      There is no Complete Preemption Because None of Rojas's Claims are Based on the Terms of an ERISA Plan. ............................................. 6

          2.      Rojas's Claims Against Renfro are Based on Legal Duties Under Texas Law Independent of Renfro Being an ERISA Fiduciary ................................. 8

          3.      Complete Preemption is not Established Simply by Referencing the Terms of an ERISA Plan. ............................................................................. 9

    C.      The Fifth Circuit has Held that Fraud and Fraudulent Inducement Claims Like Those Asserted by Rojas are not Completely Preempted. ...................................... 10

    D.      The Presence of an Arbitration Clause Does not Mean That Rojas's Claims are Completely Preempted. ................................................................................. 11

    E.      In the Alternative, the Court Should Grant Rojas Leave to File a Second Amended Complaint That Removes any Reference to or Reliance on ERISA and Remand the Case. ................................................................................. 13

Conclusion ................................................................................................................... 13

## Table of Authorities

**Cases**

*Aetna Health, Inc. v. Davila,*
  542 U.S. 200 (2004) .................................................................................... 4, 6, 8, 9, 10

*Arana v. Ochsner Health Plan,*
  338 F.3d 433 (5th Cir. 2003) ................................................................................. 4, 5

*Carnes v. Data Return, LLC,*
  2005 WL 265167 (N.D. Tex. 2005) ......................................................................... 4

*Danca v. Private Health Care Sys., Inc.,*
  185 F.3d 1 (1st Cir. 1999) ........................................................................................ 5

*Giles v. NYL Care Health Plans, Inc.,*
  172 F.3d 332 (5th Cir. 1999) .................................................................................... 5

*Guevara v. Lackner,*
  447 S.W.3d 566 (Tex. App. – Corpus Christi-Edinburg 2014, no pet.) .................... 8

*Hand v. Church and Dwight Co., Inc.,*
  962 F. Supp. 742 (D.S.C. 1997) .............................................................................. 11

*Hobson v. Robinson,*
  75 Fed. Appx. 949 (5th Cir. 2003) .......................................................................... 10

*Hook v. Morrison Milling Co.,*
  38 F.3d 776 (5th Cir. 1994) .................................................................................... 12

*Kirkindoll v. National Credit Union Admin. Bd.,*
  2014 WL 7178005 (N.D. Tex. 2014) ................................................................ 6, 7, 8

*Lone Star OB/GYN Associates v. Aetna Health, Inc.,*
  579 F.3d 525 (5th Cir. 2009) ........................................................................ 6, 9, 10

*McClelland v. Gronwaldt,*
  155 F.3d 507 (5th Cir. 1998) .................................................................................... 4

*Noyola v. Oasis Car Wash, Inc.,*
  220 F. Supp. 2d 638 (E.D. Tex. 2002) ............................................................. 11, 12

*Shaw v. Delta Air Lines, Inc.,*
  463 U.S. 85 (1983) .................................................................................................... 4

*Smith v. Texas Children's Hospital*,
  84 F.3d 152 (5th Cir. 1996) ................................................................................................ 10, 11

*Westfall v. Bevan*,
  2009 WL 111577 (N.D. Tex. 2009) ............................................................................. 4, 5, 9, 10

*Wilson v. International Bus. Machines Corp.*,
  2011 WL 1042282 (N.D. Tex. 2011) ........................................................................................ 4

**Statutes**

29 U.S.C. § 1132 ................................................................................................................... 5, 7

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND**

Maria Rojas, Plaintiff, submits this Brief in Support of her Motion to Remand, and would respectfully show the Court as follows:

**Preliminary Statement**

Defendants' only basis for removing this case is that Rojas' claims are purportedly completely preempted by ERISA. In reality, Rojas has not asserted any claims against any of the Defendants under ERISA. Contrary to Defendants' contention in their Notice of Removal, Rojas is not making any breach of fiduciary claim against Renfro. The only reference to ERISA in the live pleading is an allegation that Renfro, as administrator of an ERISA plan, is a fiduciary and therefore had a duty under Texas law to disclose information it concealed from her. Defendants have not and cannot establish that Rojas's claims are completely preempted because Rojas is not asserting any claims based on the terms of an ERISA plan, and her fraudulent inducement and fraud by nondisclosure claims are based on independent duties arising under Texas law, not ERISA. This Court's precedents, as well as Fifth Circuit cases, establish that claims for fraud and fraudulent inducement are not completely preempted under similar facts. Because none of Rojas's claims seek benefits under a plan or otherwise invoke ERISA as a basis for relief, the case should be remanded to state court.

**Factual Background**

As set forth in Plaintiff's First Amended Original Petition, on or about December 22, 2014, Rojas was an employee under the control and supervision of Renfro and acting in the course and scope of her employment for Renfro when she was injured while working inside Renfro's premises. Renfro was a nonsubscriber to the Texas Workers Compensation Act and did not provide workers' compensation insurance to its workers. Renfro did offer an "Employee Injury Benefit Plan" (the

"Renfro Plan") with Renfro as the plan administrator. As set forth in the Renfro Plan's Summary Plan Description, to participate in the Renfro Plan, a worker was required to make a written election to become a participant in the plan by executing and agreeing to the terms of an "Election and Arbitration Agreement," a form of which was attached to the Summary Plan Description. By signing the Election and Arbitration Agreement, a participant, *inter alia,* (1) agreed that any dispute between the participant and Renfro would be resolved by binding arbitration, (2) "a Participant waives, releases and gives up any rights that the Participant has to sue in court and to have a jury determine a dispute," and (3) all claims a participant or the participant's "spouse, minor children, heirs, parents and legal representatives" were "subject to binding arbitration under the terms of the Election and Arbitration Agreement." Rojas signed the Election and Arbitration Agreement (Spanish version) on August 6, 2012.

ECS is a human resources company that provides human resources and employee benefits to companies. DSI is a dispute-resolution service provider who provides services including drafting arbitration agreements, mediations, and dispute resolution services among other things with the same ownership as ECS. On the websites of both ECS and DSI they refer to having an "arbitration attorney" either on staff or retainer. This arbitration attorney has been identified by management personnel of both entities as the lawyer for the Renfro Industries Inc., Gary Sarles, who offices in Dallas County, Texas.

Upon information and belief, Renfro hired either ECS or DSI to provide it with an arbitration plan. At the time of the hiring, ECS and/or DSI had their corporate offices in Dallas County. DSI (or ECS) then hired Gary Sarles in Dallas County to draft up an arbitration plan. Gary Sarles in fact drafted an arbitration plan for Renfro in Dallas County, portions of which were incorporated into the Summary Plan Description and the Election and Arbitration Agreement. The documents drafted by

Gary Sarles in Dallas County specified DSI (the company that hired him or a company related to the company that hired him) to be the administrator of the arbitration process, provided that DSI would appoint the arbitrator, and provided that DSI's arbitration rules would govern any arbitration proceeding. When a claim is made against Renfro, Gary Sarles is named the defense lawyer for Renfro. As such, Gary Sarles, the person who is hired by the owners of DSI to draft an arbitration agreement in which he chose a company or related company who hired him as the arbitration administrator (with the power to select the arbitrator), is also now defending the case before an arbitrator chosen by a company with which he has a professional and/or financial relationship.

Rojas alleges that the relationship between ECS, DSI, Attorney Gary Sarles, and Renfro was not disclosed to Maria Rojas before she signed the Election and Arbitration Agreement and, upon information and belief, it is not disclosed to other workers before they are asked to enter into the Election and Arbitration Agreement. She also alleges, upon information and belief, that in past cases, no disclosure of any financial professional relationship between ECS, DSI and Mr. Sarles was disclosed.

In her First Amended Original Petition filed in state court, Rojas alleged (1) a negligence cause of action against Renfro, (2) a fraud by nondisclosure claim against Renfro, (3) a fraudulent inducement claim against Renfro, and (4) a civil conspiracy claim against Renfro, ECS, and DSI. In her fraud by nondisclosure and fraudulent inducement claims, Rojas alleged Renfro had a duty to disclose information it concealed because Renfro was the administrator of an ERISA plan, the information Renfro did disclose conveyed a false impression regarding the impartiality of DSI and any arbitrator it might select, and Renfro voluntarily disclosed information about the arbitration procedures that gave rise to a duty to disclose the whole truth about its relationship with DSI, ECS, and/or attorney Sarles. Rojas did not allege any claim under ERISA, including any claim for benefits

under an ERISA plan or any claim for breach of fiduciary duty.

## Argument

A.  **To be Entitled to Remove This Case, Defendants Have the Burden of Demonstrating That Rojas' Claims are Completely Preempted by ERISA.**

This case should be remanded unless Defendants can demonstrate that Rojas's claims arise under federal law. "Having removed the case, the defendants have the burden of overcoming an initial presumption against jurisdiction and establishing that removal is proper." *Westfall v. Bevan,* 2009 WL 111577 (N.D. Tex. 2009), *citing Carnes v. Data Return, LLC,* 2005 WL 265167, * 1 (N.D. Tex. 2005); *see also Wilson v. International Bus. Machines Corp.,* 2011 WL 1042282, *1 (N.D. Tex. 2011). Defendants' removal of this case from Texas state court was based on its contention that Rojas's claims against Renfro are completely preempted by ERISA. (ECF # 1 at 4-7.)

As this Court has recognized, "complete preemption is a jurisdictional doctrine that is an exception to the well-pleaded complaint rule." *Westfall,* 2009 WL 111577 at *3. When complete preemption exists, certain state-law claims are recharacterized as arising under federal law for purposes of federal question jurisdiction. *McClelland v. Gronwaldt,* 155 F.3d 507, 516 (5th Cir. 1998), *overruled in part on other grounds by Arana v. Ochsner Health Plan,* 338 F.3d 433, 440 (5th Cir. 2003) (en banc). Complete preemption does apply under ERISA section 502(a), ERISA's civil enforcement provision. *Westfall,* 2009 WL 111577 at *3, *citing Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90 (1983). Under this ERISA-based complete preemption, state-law claims that "duplicate, supplement, or supplant the remedies that [ERISA] § 502(a) provides are displaced. *Westfall,* 2009 WL 111577 at *3, *citing Aetna Health, Inc. v. Davila,* 542 U.S. 200, 209 (2004). Importantly, however, section 502(a) "does not purport to reach every question relating to plans governed by ERISA." *Westfall,* 2009 WL 111577 at *3, *quoting Danca v. Private Health Care Sys., Inc.,* 185

F.3d 1, 5 (1st Cir. 1999). ERISA section 514(a) also preempts state laws that "relate to" an employee benefit plan, but this "ordinary preemption" or "conflict preemption" "does not transmogrify a state law claim into a federal claim." *Westfall,* 2009 WL 111577 at *4, *citing Giles v. NYL Care Health Plans, Inc.,* 172 F.3d 332, 337 (5th Cir. 1999); *see also Arana v. Ochsner Health Plan,* 338 F.3d 433, 439 (5th Cir. 2003) (conflict preemption does not "transform a state law claim into a federal claim.")  Instead, it only provides an affirmative federal defense to a state-law claim and "does not provide a basis for removal to federal court." *Westfall,* 2009 WL 111577 at *4. Defendants were therefore only entitled to remove this case to federal court if Rojas' state-law claims are completely preempted. Because they are not, this Court should grant the motion and remand this case to Texas state court.

> **B.**     **There is no Complete Preemption Because Rojas is not Asserting Claims Based on the Terms of an ERISA Plan, and Her Claims are Also Based on Other Independent Legal Duties Under Texas Law.**

Defendants are wrong in claiming that Rojas has asserted a claim for breach of fiduciary duty under ERISA. [ECF # 1 at 6-7.] The First Amended Original Petition includes no such claim. Even if she could have asserted such a claim under ERISA, that, by itself, would be insufficient to establish complete preemption. The issue of complete preemption turns on whether a plaintiff's claim is, in substance, a claim under ERISA section 502, ERISA's civil enforcement provision. ERISA section 502(a)(1)(B) provides that a civil action may be brought "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).[1] This Court has held that "a cause of action falls within the scope of § 502(a)(1)(B), and is therefore completely

---

[1] Section 502(a)(1)(A), which involves a claim that a plan administrator refused to supply certain requested information, is not at issue in this case, *See* 29 U.S.C. § 1132(a)(1)(A).

preempted, if (1) the 'individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," *and* (2) "where there is no other independent legal duty that is implicated by a defendant's actions." *Kirkindoll v. National Credit Union Admin. Bd.,* 2014 WL 7178005, *4 (N.D. Tex. 2014), *quoting Aetna Health Inc. v. Davila,* 542 U.S. 200, 210 (2004) (emphasis original); *see also Lone Star OB/GYN Associates v. Aetna Health, Inc.,* 579 F.3d 525, 529-30 (5th Cir. 2009) (applying *Davila* test). In *Kirkindoll*, this Court made it clear that both prongs of the two-part test established in *Davila* must be satisfied for complete preemption to exist. Rojas's claims in this case do not satisfy either prong of the *Davila* test.

        1.    There is no Complete Preemption Because None of Rojas's Claims are Based on the Terms of an ERISA Plan.

Rojas's claims do not satisfy the first prong of the *Davila* test. This Court has explained that "to satisfy the first prong of *Davila,* a claim must assert rights to which the plaintiff is entitled '*only* because of the *terms of an ERISA-regulated employee benefit plan*." *Kirkindoll,* 2014 WL 7178005 at *4, *quoting Davila,* 542 U.S. at 210 (emphasis original). Rojas's claims against Renfro for fraud by nondisclosure and fraudulent inducement are not based on the terms of an ERISA plan. These claims are based on Rojas' contention that Renfro failed to disclose information to Rojas before she signed the Election and Arbitration Agreement. In the First Amended Original Petition, Rojas alleges:

- "that when she agreed to waive her right to seek redress in court and submit any disputes with Renfro to arbitration presided over by an arbitrator selected by DSI that Renfro had hired DSI and/or ECS to prepare its arbitration documents, that that the arbitration documents had been prepared by an attorney with a professional relationship with DSI and/or

ECS, and Sarles, an attorney with a professional relationship with and interest in DSI and/or ECS also represented Renfro,"[2] and

- "that Renfro had hired DSI and/or ECS to prepare its arbitration documents, including the Election and Arbitration Agreement, that that the arbitration documents, including the Election and Arbitration Agreement, had been prepared by an attorney with a professional relationship with DSI and/or ECS, and that Sarles, an attorney with a professional relationship with and interest in DSI and/or ECS also represented Renfro."[3]

None of these failure-to-disclose allegations are based on the "terms of an ERISA-regulated employee benefit plan." *Kirkindoll,* 2014 WL 7178005 at *4. The claims for fraud by nondisclosure and fraudulent inducement do not seek to recover benefits under a plan, seek to enforce rights under a plan, or seek clarification of rights to future benefits, the types of claims that could have been brought under ERISA section 502(a)(1)(B). 29 U.S.C. § 1132(a)(1)(B).

Indeed, the only references to ERISA are found in the statement, repeated in paragraphs 6.07 and 7.07 of the First Amended Original Petition, that "Renfro had a duty to disclose the information, *inter alia,* because, as an administrator of a Plan it claimed was created under the federal Employee Retirement Income Security Act of 1974 ('ERISA'), Renfro was a fiduciary and therefore had a fiduciary relationship with Rojas, a beneficiary of the Plan."[4] Those allegations refer only to Renfro's status as a fiduciary.[5] Under Texas law, a party asserting fraud based on nondisclosure of

---

[2] ECF # 1-13 at ¶ 6.06.

[3] ECF # 1-13 at ¶ 7.06.

[4] ECF # 1-13 at ¶¶ 6.07, 7.07.

[5] *See also* ECF # 1-13 at ¶¶ 6.10, 7.10 ("Renfro was deliberately silent when it had a duty to speak in connection with the Election and Arbitration Agreement based on its fiduciary relationship with Rojas, the false impression conveyed by its statements, and its voluntary disclosure of information

information must establish that the defendant had "a duty to disclose" the information withheld. *Guevara v. Lackner,* 447 S.W.3d 566, 578 (Tex. App. – Corpus Christi-Edinburg 2014, no pet.). Such a duty to disclose may exist, *inter alia,* "when there is a confidential or fiduciary relationship …." *Id.* The allegation that Renfro was a fiduciary and therefore had a duty to disclose is not based on the terms of the plan but on Renfro's status as a fiduciary. It is therefore not an allegation that claims "rights to which the plaintiff is entitled '*only* because of the *terms of an ERISA-regulated employee benefit plan*'." *Kirkindoll,* 2014 WL 7178005 at *4, *quoting Davila,* 542 U.S. at 210 (emphasis original). Rojas's claims therefore do not satisfy the first prong of the *Davila* test.

    2.  Rojas's Claims Against Renfro are Based on Legal Duties Under Texas Law Independent of Renfro Being an ERISA Fiduciary.

  The claims also do not satisfy the second prong of the test because Rojas's claims are based on other independent legal duties implicated by Renfro's actions. *Kirkindoll,* 2014 WL 7178005 at *4. "Under this element [of *Davila*], a claim is completely preempted only when there is no other independent legal duty that is implicated by a defendant's actions." *Id.* at *5, *citing Davila,* 542 U.S. at 210. Independent of her allegations that Renfro had a duty to disclose based on its status as a fiduciary, Rojas also alleges in paragraphs 6.07 and 7.07 that under Texas law, Renfro otherwise had a duty to disclose the information. Texas law also recognizes the existence of a duty to disclose in other situations, including (1) when the defendant created a false impression by making a partial disclosure, and (2) when the defendant voluntarily disclosed some information and therefore had a duty to disclose the whole truth. *Guevara,* 3447 S.W.3d at 578. In paragraphs 6.07 and 7.07, Rojas makes those very allegations:

---

that gave rise to a duty to disclose the whole truth about its relationship with DSI, ECS, and/or Sarles.")

> "Renfro also had a duty to disclose this information because the information Renfro did disclose regarding the arbitration procedures conveyed a false impression regarding the impartiality of DSI and any arbitrator it might select. Renfro also had a duty to disclose these facts because it voluntarily disclosed information about the arbitration procedures which gave rise to a duty to disclose the whole truth about its relationship with DSI, ECS, and/or Sarles."[6]

In sum, Rojas's claims based on failure to disclose would be viable even if Renfro were not an ERISA fiduciary. These are precisely the sort of "independent legal dut[ies]" described in the second prong of the *Davila* test. As this Court recognized in *Westfall,* when a plaintiff's claims would exist anyway based on "independent statutory and common-law duties that proscribe misrepresentation in various forms," such claims are not completely preempted. *Westfall,* 2009 WL 111577 at *5.

This conclusion is supported by the proposed Second Amended Complaint Rojas has submitted along with her Motion for Leave to File Amended Complaint, which is being filed contemporaneously herewith. In that proposed complaint, Rojas asserts exactly the same causes of action she has asserted in the First Amended Original Petition without referencing ERISA or Renfro's status as an ERISA plan administrator/fiduciary. As is evident from the proposed complaint, Rojas's claims are based on independent common-law duties under Texas law that give rise to claims for fraud in the inducement and fraud by nondisclosure, regardless of whether there is a plan governed by ERISA and regardless of Renfro's status as an ERISA fiduciary.

       3.      Complete Preemption is not Established Simply by Referencing the Terms of an ERISA Plan.

It is also of no consequence that a court might need to refer to the terms of the plan documents when assessing what Renfro did and did not disclose. In *Lone Star OB/GYN Associates v. Aetna Health, Inc.,* 579 F.3d 525 (5th Cir. 2009), the court rejected the notion that referring to or consulting an ERISA plan as part of an adjudication automatically establishes complete preemption.

---

[6] ECF # 1-13 at ¶¶ 6.07, 7.07.

In *Lone Star,* the plaintiff filed suit in Texas court alleging that Aetna failed to pay the proper amount for services provided to patients it treated. Aetna removed the case to federal court, asserting complete preemption under ERISA. In recognizing that the claims were not preempted, even though the terms of the ERISA plan would have to be consulted in determining whether the rates of payment were or were not improper, the court concluded that "Davila does not support the proposition that mere reference to or consultation of an ERISA plan in order to determine a rate of pay is sufficient for preemption." *Lone Star,* 579 F.3d at 531. Similarly, references to what was disclosed in the documentation provided to Rojas do not establish that her claims are preempted. Instead, the elements of the *Davila* test must first be met, and Defendants have not done so here.

### C. The Fifth Circuit has Held that Fraud and Fraudulent Inducement Claims Like Those Asserted by Rojas are not Completely Preempted.

This result is also consistent with Fifth Circuit case law making it clear that claims for fraud and fraudulent inducement are not completely preempted by ERISA. In *Hobson v. Robinson,* 75 Fed. Appx. 949 (5th Cir. 2003), the Fifth Circuit confirmed "the law in this circuit that a state law claim for fraudulent inducement is not preempted by ERISA." *Hobson,* 75 Fed. Appx. at 956; *see also Westfall,* 2009 WL 111577 at *6. In *Hobson,* the plaintiffs brought state-law fraud and misrepresentation claims alleging that the defendant induced them to purchase a purported health plan that was actually a self-funded ERISA plan. The court rejected the contention that the claims were preempted because the defendant became an ERISA fiduciary when the plan was formed, holding instead that the legal duties applicable to the parties' relationship "derive[d] from state common-law claims, not the ERISA plan," and that adjudicating the fraud and misrepresentation claims did "not require either plan interpretation or administration," such that they would implicate areas of exclusive federal concern. *Id.* at 956. With respect to fraud claims, in *Smith v. Texas Children's Hospital*, 84 F.3d 152 (5th Cir. 1996), the Fifth Circuit also found the plaintiff's fraud

claim escaped preemption when it did not necessarily depend upon the scope of the plaintiff's rights under the defendant's plan. *Smith,* 84 F.3d at 155. The *Smith* court noted that the plaintiff was not suing for benefits owed her under the defendant's plan, but rather, she was suing for vested benefits that she had acquired, but then relinquished in reliance upon the defendant's alleged misrepresentations. *Id*. at 157; *see also Hand v. Church and Dwight Co., Inc.,* 962 F. Supp. 742, 746 (D.S.C. 1997) ("The central issue of [the plaintiff's fraud] claim, therefore, involves the representations of the defendants that were made in order to induce the plaintiff to forego legal rights that she could have exercised."). In concluding there was no complete preemption of the plaintiff's claims, the court recognized that if the defendant did not even have an ERISA plan, the plaintiff would still have had a claim against the defendant because the plaintiff's claim "ultimately" was not one for plan benefits. *Smith,* 84 F.3d at 155. Here, Rojas would also have claims for fraudulent inducement and fraud by nondisclosure independent of the existence of a plan governed by ERISA.

>    **D.     The Presence of an Arbitration Clause Does not Mean That Rojas's Claims are Completely Preempted.**

Defendants also cannot rely on the presence of an arbitration clause in the plan documents as a basis for asserting that Rojas's claims are completely preempted. In *Noyola v. Oasis Car Wash, Inc.,* 220 F. Supp. 2d 638 (E.D. Tex. 2002), the Eastern District of Texas granted a motion to remand in a case involving very similar issues, including state-law claims for fraud and negligence claims against a Texas employer that was a non-subscriber to workers compensation and required claims against it to be arbitrated. As in this case, the defendant in *Noyola* also established its own employee injury benefits plan under ERISA, which included an arbitration provision. When Mr. Noyola was injured on the job, he and his wife filed suit alleging negligence and fraud. The court first noted that the plaintiffs were neither seeking benefits under the plan nor claiming that the employer had improperly processed any claims, and the plaintiffs did not "rely on the existence of an

**Brief in Support of Plaintiff's Motion to Remand – Page 11**

ERISA-governed plan to argue that they are entitled to damages." *Noyola,* 220 F. Supp. 2d at 643. Instead, "to put it quite simply, the Noyolas' claims would exist even if Oasis did not have an ERISA-governed plan." *Id.* The plaintiffs' claims did not address any "area of exclusive federal concern, nor do the claims affect the relationship among traditional ERISA entities." *Id.* Relying on clear Fifth Circuit precedent, the court held that the plaintiffs' negligence claim, by itself, "is not preempted by ERISA because it affects only [Mr. Noyola's] employer/employee relationship with the company." *Noyola,* 220 F. Supp. 2d at 643, *quoting Hook v. Morrison Milling Co.,* 38 F.3d 776, 783 (5th Cir. 1994). The plaintiffs were seeking damages for personal injuries and loss of consortium, not benefits under the ERISA plan, and such claims are "not rooted in the existence of an ERISA-governed plan." *Noyola,* 220 F. Supp. 2d at 643-44.

With respect to the plaintiffs' fraud claims, the *Noyola* court also found that those claims were not preempted by ERISA. The plaintiffs alleged "that through fraud, deception and misrepresentation Oasis convinced [Mrs. Noyola] to sign on behalf of her husband Oasis's ERISA-governed insurance plan." *Noyola,* 220 F. Supp. 2d at 644. Far from being a claim relating to the plan, "Mrs. Noyola appears to claim that Oasis's alleged misrepresentations caused her to give up rights that she would otherwise have been able to exercise." *Id.* Among those rights was the right to seek redress in court instead of being forced to submit any claim to arbitration based on the arbitration provision included in the plan. *Id.* The court specifically rejected the idea that the arbitration provision in the plan established preemption: "Whatever affect the arbitration clause in Oasis's plan may have on the Noyolas' state-law claims is an issue best left to the discretion of a court of the state of Texas." *Id.* at 647. As in *Noyola,* Rojas's claims are not rooted in the existence of an ERISA plan, and the presence of an arbitration clause in the plan documents does not give rise to federal jurisdiction.

**Brief in Support of Plaintiff's Motion to Remand – Page 12**

### E. In the Alternative, the Court Should Grant Rojas Leave to File a Second Amended Complaint That Removes any Reference to or Reliance on ERISA and Remand the Case.

In her live pleading in state court, Rojas did not assert any claim under ERISA and never intended to do so. To clarify this, Rojas has contemporaneously filed a Motion for Leave to File Second Amended Complaint. In the proposed Second Amended Complaint, Rojas asserts the same causes of action she asserted in the First Amended Original Petition but has removed all references to Renfro being an ERISA-plan administrator. This proposed Second Amended Complaint makes it plain that none of Rojas's claims arise or implicate ERISA such that her claims are completely preempted.

## Conclusion

Based on the foregoing, Rojas asks the Court to grant her motion and remand this case to Texas court.

       Respectfully submitted,

       **MILLER WEISBROD, LLP**
       11551 Forest Central Drive
       Forest Central II, Suite 300
       P. O. Box 821329 (75382)
       Dallas, Texas 75231
       (214) 987-0005
       (214) 987-2545 (Facsimile)

By:   /s/ Lawrence R. Lassiter
       **CLAY MILLER**
       State Bar No. 00791266
       cmiller@millerweisbrod.com
       **LAWRENCE R. LASSITER**
       State Bar No. 11969850
       llassiter@millerweisbrod.com

       And

       **HOUSTON SMITH**
       houstonsmith@aol.com
       **LAW OFFICES OF HOUSTON M. SMITH, P.C.**
       210 East Moore
       Terrell, Texas 75160
       (972) 524-1903
       (972) 524-1992– FAX

       **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served through the Court's ECF system on this 3rd day of November, 2016 on the following counsel of record.

| | |
|---|---|
| Curtis L. Marsh, Esq. | Gary D. Sarles |
| curtis.marsh@airmail.net | gsarles@aarleslaw.aom |
| Law Firm of Curtis L. Marsh, PLLC | O. Paul Dunagan |
| 370 Founders Square | dunagan@sarleslaw.com |
| 900 Jackson Street | Sarles & Ouimet |
| Dallas, Texas 75202 | 370 Founders Square |
| | 900 Jackson Street |
| | Dallas, Texas 75202 |

           _/s/ Lawrence R. Lassiter_____
           Lawrence R. Lassiter