**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **MARIA ROJAS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **RENFRO INDUSTRIES, INC.,** | § | **CIVIL ACTION NO. 3:16-CV-02896-D** |
| **DISPUTE SOLUTIONS, INC. and** | § | |
| **ESSENTIAL CORPORATE** | § | |
| **SOLUTIONS, INC.,** | § | |
| **Defendants.** | § | |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
<u>RESPONSE TO PLAINTIFF'S MOTION TO REMAND</u>**

Gary D. Sarles
Texas Bar No. 17651100
Email: gsarles@sarleslaw.com
O. Paul Dunagan
Texas Bar No. 06202700
Email: dunagan@sarleslaw.com

**SARLES & OUIMET**
900 Jackson Street, Suite 370
Dallas, Texas  75202-4436
Telephone:  (214) 573-6300
Telecopier:  (214) 573-6306

**ATTORNEY FOR DEFENDANT
RENFRO INDUSTRIES, INC.**

Curtis L. Marsh
Texas Bar No. 13020050
Email: curtis.marsh@airmail.net

**THE LAW FIRM OF CURTIS MARSH,
PLLC**
900 Jackson Street, Suite 370
Dallas, Texas 75202
214.573.6310
214.752.1140 FAX

**ATTORNEY FOR DEFENDANTS
ESSENTIAL
CORPORATE SOLUTIONS, INC. and
DISPUTE SOLUTIONS, INC.**

## TABLE OF CONTENTS

TABLE OF CONTENTS....................................................................................................... i

TABLE OF AUTHORITIES..................................................................................................ii

RESPONSE TO PLAINTIFF'S PRELIMINARY STATEMENT.....................................1

CORRECTED FACTUAL BACKGROUND .......................................................................2

ARGUMENT AND AUTHORITIES ....................................................................................5

I.      The Plan Is an Employee Welfare Benefit Plan under ERISA...........................5

II.     Plaintiff's Nondisclosure, Fraudulent Inducement, Conspiracy and Injunction
        Claims Are Completely Preempted by ERISA §502(a)(2)-(3)..........................7

        A.  Plaintiff's Motion Asserts the Wrong Test for Complete Preemption Here ...............9

            1.  Plaintiff's Claims Are Within the Scope of Section 502(a)(2) ...........................10

            2.  Plaintiff's Injunction Claim Is Within the Scope of Section 502(a)(3) ..............12

        B.  Plaintiff's Claims "Relate To" the Renfro ERISA Plan and Its SPD .......................13

            1.  Plaintiff's Claims Address Areas of Exclusive Federal Concern:
                (1) the Accuracy of the SPD Provided to Plan Participants, and
                (2) the Plan Administrator's Fiduciary Obligations. ...........................................14

            2.  Plaintiff's Claims Directly Affect the Relationship Among the Traditional
                ERISA Entities. ........................................................................................................18

CONCLUSION.....................................................................................................................21

CERTIFICATE OF SERVICE.............................................................................................23

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 124 S. Ct. 2488,
159 L. Ed. 2d 312 (2004) ............................................................1, 7, 8, 9, 13, 14

*Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003)(en banc)...................................7, 12

*Arnold v. Bradley*, 2008 U.S. Dist. LEXIS 106696
(N.D. Tex. July 25, 2008)(Means, J.)..............................................................20

*Cardona v. Life Ins. Co. of N. Am.*, 2009 WL 3199217, 2009 U.S. Dist. LEXIS 93715
(N.D. Tex. Oct. 7, 2009)(Fitzwater, C.J.)..........................................................5, 6

*Christopher v. Mobil Oil Corp.*, 950 F.2d 1209 (5th Cir. 1992),
*cert. denied*, 506 U.S. 820 (1992) .....................................................................16

*Cotner v. Hartford Life & Annuity Ins. Co.*, 2008 WL 59174,
2008 U.S. Dist. LEXIS 591 (N.D. Tex. Jan. 4, 2008)(Fish, J.) .........................................20

*Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747 (D.C. Cir. 1990) .......................................17

*Guevara v. Lackner*, 447 S.W.3d 566 (Tex. App.—Corpus Christi 2014, no pet.).......................15

*Haynes v. Prudential Health Care*, 313 F.3d 330 (5th Cir. 2002)....................................8

*Hernandez v. Jobe Concrete Prods.*, 282 F.3d 360 (5th Cir. 2002)) ..............................5, 6

*Hobson v. Robinson*, 75 Fed. Appx. 949,
2003 U.S. App. LEXIS 19633 (5th Cir. Sept. 23, 2003) ............................................. 19-20

*Hook v. Morrison Milling Co.*, 38 F.3d 776 (5th Cir. 1994) .............................................13, 16, 20

*House v. Am. United Life Ins. Co.*, 499 F.3d 443 (5th Cir. 2007) ....................................5

*Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942 (5th Cir. 1995) ....................................19

*Kirkindoll v. Nat'l Credit Union Admin Bd.*, 2014 WL 7178005,
2014 U.S. Dist. LEXIS 174675  (N.D. Tex. Dec. 17, 2014)(Fitzwater, J.) ....................8, 9

*Kujanek v. Houston Poly Bag I, Ltd.*, 658 F.3d 483 (5th Cir. 2011) ........................................11, 17

*Lester v. Advanced Envtl. Recycling Techs., Inc.*, 248 Fed. Appx. 492,
2007 U.S. App. LEXIS 15972 (5th Cir. July 5, 2007)(per curiam)....................................6

*Lone Star OB/GYN Associates v. Aetna Health Inc.*, 579 F.3d 525 (5th Cir. 2009).......................1

*Magallon-Laffey v. Sun Life Assurance Co.*, 2001 WL 1082414,
    2001 U.S. Dist. LEXIS 13252 (N.D. Tex. Aug. 28, 2001)(Fitzwater, J.)............................6

*Massachusetts Mut. Life. Ins. Co. v. Russell*, 473 U.S. 134, 105 S. Ct. 3085,
    87 L. Ed. 2d 96 (1985)) ........................................................................................................8

*McAteer v. Silverleaf Resorts, Inc.*, 514 F.3d 411 (5th Cir. 2008),
    *cert. denied*, 553 U.S. 1080 (2008) .................................................................13, 14, 17, 20

*McClelland v. Gronwaldt*, 155 F.3d 507, 516 (5th Cir. 1998), *overruled in part*,
    *Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003)(en banc).............................7

*McNeil v. Time Ins. Co.*, 205 F.3d 179 (5th Cir. 2000) ...................................................................5

*Mertens v. Hewitt Assocs.*, 508 U.S. 248, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993)............12, 21

*Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S. Ct. 1542,
    95 L. Ed. 2d 55 (1987) .........................................................................................1, 7, 8, 12

*Meyers v. Tex. Health Res.*, 2009 U.S. Dist. LEXIS 104609
    (N.D. Tex. Nov. 9, 2009)(Fitzwater, C.J.)...........................................................................18

*Noyola v. Oasis Car Wash, Inc.*, 220 F. Supp. 2d 638 (E.D. Tex. 2002) ......................................16

*Pegram v. Herdrich*, 530 U.S. 211, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000) ...........................11

*Perkins v. Time Ins. Co.*, 898 F.2d 470 (5th Cir. 1990)...........................................................19, 20

*Pilot Point Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S. Ct. 1549, 95 L. Ed. 2d 39 (1987) .................8

*Roark v. Humana, Inc.*, 2001 WL 585874, 2001 U.S. Dist. LEXIS 7554
    (N.D. Tex. May 25, 2001)(Fitzwater, J.), *aff'd*, 307 F.3d 298 (5th Cir. 2002)..................18

*Roark v. Humana, Inc.*, 307 F.3d 298, 305 (5th Cir. 2002), *rev'd on other grounds sub nom.*
    *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004) .....7

*Roberts v. Reynolds & Reynolds Trucking, Inc.*, 2016 U.S. Dist. LEXIS 85731
    (N.D. Tex. July 1, 2016)(Boyle, J.) ......................................................................................5

*Singletary v. United Parcel Service, Inc.*, 828 F.3d 342 (5th Cir. 2016)...........................12, 17, 21

*Smith v. Texas Children's Hospital*, 84 F.3d 152 (5th Cir. 1996) ..................................................16

*Tex. Ctr. For Obesity Surgery, PLLC*, 2014 U.S. Dist. LEXIS 24996
    (N.D. Tex. Feb. 27, 2014)(Lynn, J.)............................................................................... 17-18

*Westfall v. Bevan*, 2009 WL 111577, 2009 U.S. Dist. LEXIS 4404
(N.D. Tex. Jan. 15, 2009)(Fitzwater, C.J.)  ) ...........................................................7, 8, 14

*Woods v. Texas Aggregates LLC*, 459 F.3d 600 (5th Cir. 2006) .......................................13, 17, 20

**<u>Statutes</u>**

29 U.S.C. §1002(1) ..............................................................................................................5, 18

29 U.S.C. §1002(5) ...................................................................................................................18

29 U.S.C. §1002(6) ...................................................................................................................18

29 U.S.C. §1002(7) ...................................................................................................................18

29 U.S.C. §1002(16) .................................................................................................................18

29 U.S.C. §1002(21)(A) ...........................................................................................................10

29 U.S.C. §1003(b) .....................................................................................................................6

29 U.S.C. §1021(a) ..............................................................................................................11, 17

29 U.S.C. §1022(a) ..............................................................................................11, 12, 16, 17, 21

29 U.S.C. §1102(a) ..........................................................................................................2, 10, 18

29 U.S.C. §1104(a) ...................................................................................................................11

29 U.S.C. §1109..........................................................................................................10, 12, 17, 21

29 U.S.C. §1132(a) .................................................................................................................8, 13

29 U.S.C. §1132(a)(1)(B) .........................................................................................................1, 9

29 U.S.C. §1132(a)(2)...............................................................................2, 9, 10, 12, 17, 20, 21, 22

29 U.S.C. §1132(a)(3)...........................................................................................2, 9, 12, 20, 21, 22

29 U.S.C. §1132(e) ........................................................................................................1, 21, 22

29 U.S.C. §1144(a) ...................................................................................................................14

**<u>Regulations</u>**

29 C.F.R. §2510.3-1(j) ...............................................................................................................6

## Rules

Rule 12 of the American Arbitration Association Employment Arbitration Rules
and Mediation Procedures....................................................................................................3

Rule 9 of the Dispute Solutions, Inc. Rules of Mediation and Arbitration.....................................3

## Secondary Sources

RESTATEMENT (THIRD) OF TRUSTS §78 (2007)............................................................................11

STEPHEN R. BRUCE, PENSION CLAIMS:  RIGHTS AND OBLIGATIONS 397-98 (2d ed. 1993) ...........12

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
RESPONSE TO PLAINTIFF'S MOTION TO REMAND**

Subject to and without waiving its rights to arbitration and to compel arbitration, Defendant Renfro Industries, Inc. ("**Renfro**"), joined by Defendants Dispute Solutions, Inc. ("**DSI**") and Essential Corporate Solutions, Inc. ("**ECS**"), submit the following Brief in Support of Their Response to Plaintiff's Motion To Remand ("**Plaintiff's Motion**") and would show:

## RESPONSE TO PLAINTIFF'S PRELIMINARY STATEMENT

Defendants' basis for removal is that one or more of Plaintiff's claims are completely preempted by the Employee Retirement Income Security Act of 1974 ("**ERISA**").  Whether Plaintiff's claims reference ERISA and whether Plaintiff "in reality" intends to assert claims under ERISA are both irrelevant. "[T]he touchstone of the federal district court's removal jurisdiction is not the 'obviousness' of the pre-emption defense but the intent of Congress." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987). "[A]ny state-law cause of action that duplicates, supplements, or supplants" ERISA's comprehensive civil enforcement scheme is completely preempted, creating federal question jurisdiction under 29 U.S.C. §1132(e).  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208-09, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004).  "[E]ven if the plaintiff did not plead a federal cause of action on the face of the complaint, the claim is necessarily federal in character if it implicates ERISA's civil enforcement scheme."  *Lone Star OB/GYN Associates v. Aetna Health Inc.*, 579 F.3d 525, 529 (5th Cir. 2009)(internal citations and quote marks omitted).

Plaintiff's Motion erroneously asserts that, because her claims for fraudulent inducement and fraud by nondisclosure against Renfro are not claims "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan" within 29 U.S.C. §1132(a)(1)(B), there is not ERISA

complete preemption and federal question jurisdiction.  As shown below, Plaintiff's Motion wholly ignores the fact that her claims fall within the scope of §1132(a)*(2)*, §*1109*, and §1132(a)*(3)*, and thus are completely preempted by ERISA.

## CORRECTED FACTUAL BACKGROUND

From the Brief in Support of Plaintiff's Motion to Remand *("**Plaintiff's Brief**")* (ECF Document 9), Plaintiff's First Amended Original Petition ("***FAOP***") (ECF Document 1-13), and the accompanying Appendix in Support of Defendants' Response to Plaintiff's Motion to Remand ("***Appendix***"), the following facts are undisputed, admitted or cannot be disputed:

1. On or about December 22, 2014, Plaintiff, an employee of Renfro, was injured in the course and scope of her employment with Renfro.  *Plaintiff's Brief at p.1.*

2. Renfro is a nonsubscriber to the optional Texas Workers' Compensation Act.  *Id.; Appendix at p.3.*

3. Renfro instead offers its employees benefits under the Renfro Industries, Inc. Employee Injury Benefit Plan (the "Plan").  *Plaintiff's Brief at pp.1-2; Appendix at pp.3-4.*

4. Renfro adopted the Plan on July 15, 2012.  *Appendix at pp.40, 50, 55 & 93.*

5. Renfro is the Plan Administrator of the Plan and is the Plan's "Named Fiduciary" under 29 U.S.C. §1102(a).  *Id. at 47; Plaintiff's Brief at p.2.*

6. As explained in Section II of the Plan's Summary Plan Description ("**SPD**"), a Renfro employee is given the option to elect to become a Participant in the Plan by executing and agreeing to the terms of an "Election And Arbitration Agreement" that is attached as Exhibit A to the SPD.  *See Plaintiff's Brief at p.2; Appendix at pp.55-56 & 94.*

7. As explained in Section II of the SPD, by agreeing to the terms of the Election And Arbitration Agreement, a Renfro employee becomes a Participant in the Plan and eligible for the Plan's benefits in the event of an on-the-job injury.  *Plaintiff's Brief at p.2; Appendix at pp.55-56 & 94.*

8. By agreeing to the terms of the Election And Arbitration Agreement, the Plan Participant, as explained in Section II of the SPD, (1) agrees that any dispute with Renfro will be resolved by binding arbitration, (2) "a Participant waives, releases and gives up any rights that the Participant has to sue in court and to have a jury determine a dispute," and (3) the Participants' family members and legal representatives claiming through the Participant are

also subject to binding arbitration under the terms of the Election And Arbitration Agreement." *Plaintiff's Brief at p.2*; *Appendix at pp.56 & 94.*

9. On August 6, 2012, Plaintiff signed and elected to accept the terms of the Spanish version of the Election And Arbitration Agreement ("Acuerdo de Elección y Arbitraje") and became a Participant in the Plan and eligible for its benefits. *Plaintiff's Brief at p.2*; *Appendix at p.140.*

10. Defendant ECS is a human resources company that provides human resources and employee benefits to companies. *Plaintiff's Brief at p.2.*

11. There is no evidence that Renfro is one of ECS's clients. *See Plaintiff's Brief at p.2 (allegation based only on "information and belief"); Appendix at p.4.*

12. Defendant DSI is a dispute-resolution service provider. *Plaintiff's Brief at p.2; Appendix at p.4.*

13. There is no evidence that Renfro ever hired DSI or ECS to do anything. *See id. (allegation based only on "information and belief"); Appendix at p.4.*

14. At Renfro's request, direction and expense, Renfro's counsel, Gary D. Sarles, drafted the Plan, English and Spanish SPDs and English and Spanish Election And Arbitration Agreements for Renfro in 2012. *Appendix at pp.3-4.*

15. Neither ECS nor DSI had any involvement whatsoever in Sarles' drafting of those documents for Renfro. *Id. at p.4.*

16. The Arbitration Procedures set forth in Section IX of the SPD are incorporated by reference into the Election And Arbitration Agreement. *Plaintiff's FAOP at ¶6.03; Appendix at pp.89, 133 & 138.*

17. The Arbitration Procedures provide for arbitration before arbitrators appointed by DSI or, if DSI is unable to appoint an arbitrator, by the American Arbitration Association ("**AAA**"). *Plaintiff's FAOP at ¶6.03; Appendix at pp. 73 & 114.*

18. Under Rule 9 of DSI's Rules of Mediation and Arbitration, when the parties have neither agreed on an arbitrator nor, as here, a method for appointment, the arbitrator is selected by DSI simultaneously providing each party an identical strike list of proposed arbitrators, permitting the parties to agree on one from the list, in the absence of agreement having the parties separately strike names objected to, number the remaining in order of preference, and return the list to DSI; from the submitted lists, DSI then orders the names of those not stricken by either side in order of ranked preference and invites that person to serve as the arbitrator. *Appendix at pp.142-143.*

19. DSI Rule 9 utilizes essentially the same arbitrator-selection method as the AAA does under Rule 12 of the AAA Employment Arbitration Rules and Mediation Procedures. *Compare Appendix at pp.142-143 with id. at p.169.*

20. Plaintiff's FAOP alleges that when Plaintiff was offered and signed the Spanish version of the Election And Arbitration Agreement on August 6, 2012 to become a Participant in the Plan and eligible for its benefits for occupational injuries, Renfro failed to disclose to her "that Renfro had hired DSI and/or ECS to prepare its arbitration documents," "that the arbitration documents had been prepared by an attorney with a professional relationship with DSI and/or ECS," and that "Sarles, an attorney with a professional relationship with and interest in DSI and/or ECS[,] also represented Renfro." *Plaintiff's FAOP at ¶6.06 & ¶7.06.*

21. Plaintiff's FAOP alleges that, on August 6, 2012, when Plaintiff elected to become a Participant in the Plan, "**Renfro had a duty to disclose the information,** *inter alia,* **because, as an administrator of a Plan it claimed was created under [ERISA], Renfro was a fiduciary and therefore had a fiduciary relationship with [Plaintiff], a beneficiary [sic] of the Plan.**" *Id. at ¶6.07 & ¶7.07 (emphasis added).*

22. On August 6, 2012, when Plaintiff became a Participant in the Plan by electing to accept the terms of the Spanish version of the Election And Arbitration Agreement on August 6, 2012, she acknowledged receipt of a copy of the Spanish version of the SPD. *Appendix at p.137; see id. at p.188.*

23. Plaintiff's FAOP alleges that, on August 6, 2012, when Plaintiff elected to become a Participant in the Plan, "Renfro also had a duty to disclose this information because **the information Renfro did disclose regarding the arbitration procedures** conveyed a false impression regarding the impartiality of DSI and any arbitrator it might select." *Plaintiff's FAOP at ¶6.07 & ¶7.07 (emphasis added).*

24. Plaintiff's FAOP alleges that, on August 6, 2012, when Plaintiff elected to become a Participant in the Plan, "Renfro also had a duty to disclose these facts because it voluntarily **disclosed information about the arbitration procedures** which gave rise to a duty to disclose the whole truth about its relationship with DSI, ECS, and/or Sarles." *Id. (emphasis added).*

25. Plaintiff's FAOP does ***not*** allege that any representative of Renfro had any ***oral*** or ***extra-SPD*** communications with Plaintiff, or made any representations to Plaintiff whatsoever outside the SPD. *See generally Plaintiff's FAOP at ¶¶6.02-6.13 & 7.02-7.13.*

26. As a result, the "information Renfro did disclose regarding the arbitration procedures," and the "voluntarily disclosed information about the arbitration procedures"—which, according to Paragraphs 6.07 and 7.07 of the FAOP, required Renfro to disclose additional information—was in fact disclosed **in the Plan's ERISA-required SPD** provided to Plaintiff on August 6, 2012. *See id. at ¶¶6.02 & 7.02 (complaining about the disclosure made in the second full paragraph of Section II of the SPD); Appendix at pp.56 & 94.*

27. Defendants do not contend that Plaintiff's claims fall within the scope of 29 U.S.C. §1132(a)(1)(B). *See Notice of Removal (ECF Document 1) at pp.6-7.*

## ARGUMENT AND AUTHORITIES

### I.     The Plan Is an Employee Welfare Benefit Plan under ERISA.

An "employee welfare benefit plan" under ERISA is "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants. . . , through the purchase of insurance or otherwise . . . medical, surgical, or hospital care or benefits . . . in the event of sickness, accident, disability [or] death."  29 U.S.C. §1002(1); *see Hernandez v. Jobe Concrete Prods.*, 282 F.3d 360, 362 (5th Cir. 2002).  "To qualify, a plan must (1) exist, (2) not fall within the safe harbor provisions established by the Department of Labor, and (3) satisfy the ERISA requirements of establishment and maintenance by an employer with intent to benefit employees."  *Cardona v. Life Ins. Co. of N. Am.*, 2009 WL 3199217, 2009 U.S. Dist. LEXIS 93715 at 18 (N.D. Tex. Oct. 7, 2009)(Fitzwater, C.J.)(citing *House v. Am. United Life Ins. Co.*, 499 F.3d 443, 448 (5th Cir. 2007)).

First, to determine whether an ERISA plan exists, courts in the Fifth Circuit determine whether "'a reasonable person could ascertain the intended benefits, beneficiaries, source of funding, and procedures for receiving benefits.'"  *Id.* (quoting *McNeil v. Time Ins. Co.*, 205 F.3d 179, 189 (5th Cir. 2000)); *Roberts v. Reynolds & Reynolds Trucking, Inc.*, 2016 U.S. Dist. LEXIS 85731 at 9 (N.D. Tex. July 1, 2016)(Boyle, J.)(following *Cardona*).  From Section II of the Plan document, a reasonable person can ascertain the intended benefits—medical, disability, death, burial and dismemberment benefits for occupational injuries at Renfro.  *Appendix at pp.12-14.*  Section I(A) of the Plan identifies the Plan's beneficiaries—Renfro's Texas "Employees" who opt to become Plan Participants by electing to agree to the terms of the Election And Arbitration Agreement, Exhibit A to the Plan document.  *Id. at pp.6-7, 40-41 & 51-54.*  Under Section IV(B), the Plan's benefits are funded out of Renfro's general assets.  *Id. at*

*p.19.*  Section III sets forth the procedures for Participants to obtain and continue receiving Plan benefits, *id. at pp.15-18*, and Section IV(C)-(F) sets forth the procedures for making claims, and appealing adverse benefit determinations on claims, for Plan benefits.  *Id. at pp.19-27*.  A reasonable person could ascertain that an employee welfare benefit plan exists.

Second, to be exempt under the DOL's safe harbor provisions and thus fall *outside* ERISA's coverage, a plan must meet **each** of four criteria:  "(1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to [an] insurer; and (4) the employer receives no profit from the plan."  *House*, 499 F.3d at 448-49 (quoting 29 C.F.R. §2510.3-1(j)).  Again, the Plan is funded out of Renfro's general assets, thus failing exemption requirement (1), and Renfro, as the Plan Administrator, administers all aspects of the Plan, failing exemption requirement (3).  *Appendix at pp.18-19.*  The Plan fails to be exempt from ERISA under the DOL's safe harbor provision.

Third, the Plan was established and maintained by Renfro with the intent to benefit Renfro's employees.  "'The key issue . . . [is] the existence of an employer-employee-plan relationship.'"  *Cardona*, 2009 U.S. Dist. LEXIS 93715 at 21 (quoting *Magallon-Laffey v. Sun Life Assurance Co.*, 2001 WL 1082414 at 3, 2001 U.S. Dist. LEXIS 13252 at 9 (N.D. Tex. Aug. 28, 2001)(Fitzwater, J.)).  Renfro Employees are eligible to become Plan Participants, and Participants are eligible for the Plan's benefits for on-the-job injuries.  *Appendix at 6-7 & 40-41.*

From the foregoing, it is clear that Renfro's Plan is governed by ERISA.  <u>See</u> *Appendix at 6.  <u>See</u> <u>also</u> Hernandez*, 282 F.3d at 364 (holding 29 U.S.C. §1003(b) exemption inapplicable and nonsubscriber's injury plan governed by ERISA); *Lester v. Advanced Envtl. Recycling Techs., Inc.*, 248 Fed. Appx. 492, 496, 2007 U.S. App. LEXIS 15972 at 11 (5th Cir. July 5, 2007)(per curiam)(same).

II.     **Plaintiff's Nondisclosure, Fraudulent Inducement, Conspiracy and Injunction Claims Are Completely Preempted by ERISA §502(a)(2)-(3).**

Complete preemption is an exception to the well-pleaded complaint rule. *Westfall v. Bevan*, 2009 WL 111577, 2009 U.S. Dist. LEXIS 4404 at 8 (N.D. Tex. Jan. 15, 2009) (Fitzwater, C.J.). It applies when Congress preempts an entire area, making "any civil complaint raising this select group of claims" "necessarily federal in character." *Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir. 2003)(en banc)(quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987)). The Fifth Circuit has explained that "complete preemption is a slight misnomer, for it does not involve traditional preemption analysis." *Roark v. Humana, Inc.*, 307 F.3d 298, 305 (5th Cir. 2002), *rev'd on other grounds sub nom. Aetna Health, Inc. v. Davila*, 542 U.S. 200, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004). "Complete preemption is less a principle of substantive preemption than it is a rule of federal jurisdiction." *McClelland v. Gronwaldt*, 155 F.3d 507, 516 (5th Cir. 1998), *overruled on other grounds, Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003)(en banc).

"When the federal statute completely pre-empts the state-law cause of action, a claim ***within the scope of that cause of action***, even if pleaded in terms of state law, is in reality based on federal law." *Davila*, 542 U.S. at 208 (emphasis added). "ERISA is one of these statutes." *Id.* Complete preemption under ERISA "recharacterizes" such state-law causes of action "as 'arising under' federal law for the purposes of determining federal question jurisdiction." *Westfall*, 2009 U.S. Dist. LEXIS 4404 at *9 (quoting *McClelland*, 155 F.3d at 516). Complete preemption under ERISA asks "whether the state law duplicates or '***falls within the scope of***'" an ERISA §502(a) remedy." *Roark*, 307 F.3d at 305 (quoting *Taylor*, 481 U.S. at 64)(emphasis added).

"As part of its comprehensive regulation of employee benefit plans, [ERISA] contains 'six carefully integrated civil enforcement provisions.'"  *Westfall*, 2009 U.S. Dist. LEXIS 4404 at *9 (quoting *Davila*, 542 U.S. at 209).  This "'interlocking, interrelated, and interdependent remedial scheme,'" *Davila*, 542 U.S. at 204 (quoting *Massachusetts Mut. Life. Ins. Co. v. Russell*, 473 U.S. 134, 146, 105 S. Ct. 3085, 87 L. Ed. 2d 96 (1985)), reflects Congress' deliberate policy choices that "would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.* at 208-09 (quoting *Pilot Point Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S. Ct. 1549, 95 L. Ed. 2d 39 (1987)).  Because of this clear Congressional intent to make ERISA's remedies exclusive, "any state-law cause of action that duplicates, supplements, or supplants" the remedies provided in  ERISA §502(a), 29 U.S.C. §1132(a), is completely preempted.  *Id. at 209.*

"The pre-emptive force of ERISA §502(a) is still stronger." *Id.*  "[T]he ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Taylor*, 481 U.S. at 65-66).  "Put simply, there is complete preemption jurisdiction over a claim that seeks relief 'within the scope of the civil enforcement provisions of §502(a),'" because "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of §502(a) removable to federal court." *Taylor*, 481 U.S. at 66.  Complete preemption "'exists when a remedy falls within the scope of or is in direct conflict with 29 U.S.C. §1132(a), and therefore is within the jurisdiction of federal court.'" *Kirkindoll v. Nat'l Credit Union Admin Bd.*, 2014 WL 7178005, 2014 U.S. Dist. LEXIS 174675 at 8 (N.D. Tex. Dec. 17, 2014)(Fitzwater, J.)(quoting *Haynes v. Prudential Health Care*, 313 F.3d 330, 333 (5th Cir. 2002)).

### A.       Plaintiff's Motion Asserts the Wrong Test for Complete Preemption Here.

"Section 502(a)(1)(B) preempts all suits involving ERISA-governed plans 'brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'"   *Kirkindoll*, 2014 U.S. Dist. LEXIS 174675 at *8-9 (quoting 29 U.S.C. §1132(a)(1)(B)).

Defendants, however, are ***not*** asserting that Plaintiff's nondisclosure, fraud, conspiracy and injunction claims in Plaintiff's FAOP are claims that "fall within the scope of §502(a)(1)(B). *See Notice of Removal (ECF Document 1) at ¶25.*   Defendants concede that Plaintiff's nondisclosure, fraud, conspiracy and injunction claims in Plaintiff's FAOP—all of which concern the information provided to Plaintiff in the SPD when she was deciding whether to elect to become a Plan Participant—do not "fall within the scope of" and could not have been brought under ERISA §502(a)(1)(B).   Plaintiff is not "an individual bring[ing] suit complaining of a denial of coverage for medical care, where [she] is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan."   *Davila*, 542 U.S. at 210. As a result, *Davila*'s specific test for §502(a)***(1)(B)*** complete preemption, involving claims to "recover benefits," "enforce" or "clarify" "rights" "under the terms of the plan," is inapplicable.   *See id.* at 221 ("We hold that respondents' causes of action, brought to remedy only the denial of benefits under ERISA-regulated plans, fall within the scope of, and are completely pre-empted by, ERISA §502(a)(1)(B).").

Instead, Defendants assert complete preemption of Plaintiffs' nondisclosure, fraudulent inducement, conspiracy and injunction claims by §502(a)(2) and §502(a)(3), because her claims fall within the scope of those separate ERISA enforcement provisions.

### 1.    Plaintiff's Claims Are Within the Scope of Section 502(a)(2)

ERISA §502(a)(2), 29 U.S.C. §1132(a)(2), permits a civil action to be brought by, *inter alia*, a plan participant "for appropriate relief under section 409," 29 U.S.C. §1109.   Section 409(a) provides in pertinent part that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be . . . subject to such other equitable or remedial relief as the court may deem appropriate . . . ."   29 U.S.C. §1109(a).   Section 409(b) contains a timing requirement for fiduciary liability, providing that "[n]o fiduciary shall be liable with respect to a breach of fiduciary duty under this title if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary."

Under 29 U.S.C. §1102(a), the written instrument establishing an ERISA plan must provide for at least one "named fiduciary."   Here, it is undisputed that Renfro became the Plan Administrator and the Plan's "Named Fiduciary" on July 15, 2012.   *Appendix at pp.47 & 40.*

Moreover, under 29 U.S.C. §1002(21)(A), "[a] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."   Section IV(A) of the Plan document grants the Plan Administrator, which acts through a Committee, the authority "to take such actions as may be necessary to carry out the provisions and purposes of the Plan and . . . to control and manage the operation and administration of the Plan."   *Appendix at pp.18-19.*   The Plan Administrator has "discretionary power and authority to construe and interpret the Plan and its terms, to supply any omissions therein, to reconcile and correct any errors or inconsistences, to make factual determinations, to decide any questions in the administration and application of the Plan . . . ."

*Id. at p.18.*  The Plan Administrator "is authorized to determine all questions with respect to the individual rights of all Participants under this Plan," and has "all powers necessary or appropriate to accomplish its duties under this Plan."  *Id. at p.19.*

As Plan Administrator and the Plan's "Named Fiduciary," Renfro owed Plaintiff fiduciary duties on August 6, 2012, when Plaintiff elected to become a Plan Participant by agreeing to the terms of the Plan's Election And Arbitration Agreement and its Arbitration Procedures incorporated from the Renfro Plan's SPD.  Section 404(a) of ERISA provides in pertinent part that

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants . . . and . . . for the exclusive purpose of . . . providing benefits to participants . . . and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . and . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

29 U.S.C. §1104(a).

Observing that ERISA borrows from the common law of trusts, the Fifth Circuit imposes on ERISA fiduciaries, *inter alia*, the duty to communicate to a plan participant "all material facts the [fiduciary] knows or should know in connection with the matter."  *Kujanek v. Houston Poly Bag I, Ltd.*, 658 F.3d 483, 487-88 (5th Cir. 2011)(citing RESTATEMENT (THIRD) OF TRUSTS §78 (2007), and *Pegram v. Herdrich*, 530 U.S. 211, 224, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000)).

Moreover, under 29 U.S.C. §1021(a), a plan administrator has a duty to furnish to a plan participant an SPD "described in section 102(a)(1)," 29 U.S.C. §1022(a).  Section 102(a) requires the SPD to "be written in a manner calculated to be understood by the average plan participant, ***and shall be sufficiently accurate and comprehensive to reasonably apprise such participants . . . of their rights*** . . . ."  29 U.S.C. §1022(a)(emphasis added).

Earlier this year the Fifth Circuit explained that an inaccurate or incomplete SPD's failure to disclose information required for an SPD under 29 U.S.C. §1022(a) could be the basis of a claim under 29 U.S.C. §1132(a)(2) for breach of fiduciary duty under 29 U.S.C. §1109(a) against a plan administrator.  *See Singletary v. United Parcel Service, Inc.*, 828 F.3d 342, 348 (5th Cir. 2016)(citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252-53, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993)).  Plaintiff's nondisclosure and fraudulent inducement claims against Renfro as the Plan Administrator "fall within the scope of" §1132(a)(2) and §1109(a).

**2.      Plaintiff's Injunction Claim Is Within the Scope of Section 502(a)(3)**

Section 502(a)(3), 29 U.S.C. §1132(a)(3), permits a civil action to be brought by, *inter alia*, a plan participant "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."  In *Singletary*, the Fifth Circuit explained that "[b]ringing a claim under [29 U.S.C. §1132(a)(3)] for an omission from an SPD seeks to 'estop application of the plan provision under a court's authority to provide "appropriate equitable relief,"' because "an incomplete SPD violates 'Section 102 of ERISA and [is] also a fiduciary violation.'"  *828 F.3d at 349* (quoting STEPHEN R. BRUCE, PENSION CLAIMS: RIGHTS AND OBLIGATIONS 397-98 (2d ed. 1993)).

Plaintiff's nondisclosure, fraudulent inducement and conspiracy claims "fall within the scope of" Section 502(a)(2), and Plaintiff's injunction claim "falls within the scope of" Section 502(a)(3).  As a result, those claims are completely preempted.  *See, e.g., Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003)(en banc)("Put simply, there is complete preemption jurisdiction over a claim that seeks relief "within the scope of the civil enforcement provisions of §502(a).'"")(quoting *Taylor*, 481 U.S. at 66).

B.     **Plaintiff's Claims "Relate To" the Renfro ERISA Plan and Its SPD.**

In determining whether federal question removal jurisdiction existed over civil actions by injured employees asserting negligence claims for common-law damages against their Texas nonsubscriber employers, the Fifth Circuit in *Hook v. Morrison Milling Co.*, 38 F.3d 776, 780-81 (5th Cir. 1994), *Woods v. Texas Aggregates LLC*, 459 F.3d 600, 602-04 (5th Cir. 2006), and *McAteer v. Silverleaf Resorts, Inc.*, 514 F.3d 411, 417 (5th Cir. 2008), *cert. denied*, 553 U.S. 1080 (2008), confirmed the applicability of the Fifth Circuit's two-pronged "relates to" preemption test to determine whether complete preemption jurisdiction exists, even after *Davila*:

> Under Fifth Circuit precedent, to determine whether a state law relates to a plan for purposes of ERISA preemption, the court asks "(1) whether the state law claims address areas of exclusive federal concern, **_such as_** the right to receive benefits under the terms of an ERISA plan; and (2) whether the claims directly affect the relationship among the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.

*McAteer*, 514 F.3d at 417 (quoting *Woods*, 459 F.3d at 602); *Hook*, 38 F.3d at 781)(emphasis added).

After *Davila*, the Fifth Circuit in *Woods*, relying on and confirming the continued validity of this two-pronged preemption analysis from its decision in *Hook*, concluded that Ms. Woods' Texas-law negligence claims against her nonsubscriber employer did "not 'relate to' Texas Aggregates' ERISA plan and were therefore not preempted by ERISA §514(a)." *459 F.3d at 603.* The Fifth Circuit then turned to review preemption under ERISA §502(a), citing *Davila* for the proposition that "[w]here a state law claim merely duplicates the remedies provided in §502(a), the state law claim is completely preempted and will be recharacterized as a federal claim under §502(a)." *Id.* The court explained that "[t]he set of claims described by §502(a) will rarely, if ever, differ from the set of claims that "relate to" an ERISA plan under §514(a)." *Id.*

*McAteer* rejected the argument that *Davila* changed the analysis for complete preemption. *514 F.3d at 418-19.*  The Fifth Circuit in *McAteer* also observed that *Davila* had noted that "ERISA need not strictly duplicate a state law cause of action in order for the state law to be preempted. *Id. at 418* (citing *Davila*, 542 U.S. 214-16).

As this Court has determined, the above-quoted two-pronged *Hook* "relates to" test continues to be used by the Fifth Circuit and district courts within it to determine whether removed fraudulent inducement claims are completely preempted.  *Westfall*, 2009 U.S. Dist. LEXIS 4404 at 14-21 & n.3 (discussing application of ERISA preemption tests in removed fraudulent inducement cases).

**1.**      **Plaintiff's Claims Address Areas of Exclusive Federal Concern: (1) the Accuracy of the SPD Provided to Plan Participants, and (2) the Plan Administrator's Fiduciary Obligations.**

Plaintiff's FAOP alleges that, on August 6, 2012, when Plaintiff elected to become a Participant in the Plan, "**Renfro had a duty to disclose the information***, inter alia,* **because, as an administrator of a Plan it claimed was created under [ERISA], Renfro was a fiduciary and therefore had a fiduciary relationship with [Plaintiff], a beneficiary [sic] of the Plan**." *Id. at ¶6.07 & ¶7.07 (emphasis added).*  On August 6, 2012, when Plaintiff became a Participant in the Plan by electing to accept the terms of the Spanish version of the Election And Arbitration Agreement on August 6, 2012, she acknowledged receipt of a copy of the Spanish version of the Renfro Plan's SPD.  *Appendix at p.137; see id. at p.88 (English version).*

Plaintiff's FAOP alleges that, on August 6, 2012, when Plaintiff elected to become a Participant in the Plan, "Renfro also had a duty to disclose this information because ***the information Renfro did disclose regarding the arbitration procedures*** conveyed a false impression regarding the impartiality of DSI and any arbitrator it might select." *Plaintiff's*

*FAOP at ¶6.07 & ¶7.07 (emphasis added).*   Plaintiff's FAOP alleges that, on August 6, 2012, when Plaintiff elected to become a Participant in the Plan, "Renfro also had a duty to disclose these facts because it ***voluntarily disclosed information about the arbitration procedures*** which gave rise to a duty to disclose the whole truth about its relationship with DSI, ECS, and/or Sarles."  *Id. (emphasis added).*

Plaintiff's FAOP does not allege that any representative of Renfro had any oral communications with Plaintiff, or made any oral representations to Plaintiff, about the terms of the Election And Arbitration Agreement or its Arbitration Procedures incorporated from the SPD.  <u>*See*</u> <u>*generally*</u> *Plaintiff's FAOP.*   As a result, the "information Renfro did disclose regarding the arbitration procedures," and the "voluntarily disclosed information about the arbitration procedures"—which allegedly required Renfro to disclose additional information— was necessarily disclosed in the Plan's SPD provided to Plaintiff on August 6, 2012 as required by ERISA.   In fact, in Paragraphs 6.02 and 7.02 of Plaintiff's FAOP, she quotes from and complains about the disclosure made in the second full paragraph of Section II of the SPD.  <u>*See*</u> *Appendix at p.56.*

Plaintiff's FAOP's nondisclosure, fraudulent inducement, conspiracy and injunction claims are thus not only complaining that Renfro, as Plan Administrator and a plan fiduciary, breached fiduciary duties owed to Plaintiff as a Plan Participant, but the FAOP also complains that Renfro had a duty to disclose, purportedly under Texas law, because Renfro allegedly (1) "created a false impression by making a partial disclosure," and (2) "voluntarily disclosed some information and therefore had a duty to disclose the whole truth."  *Plaintiff's Brief at p.8* (citing *Guevara v. Lackner*, 447 S.W.3d 566, 578 (Tex. App.—Corpus Christi 2014, no pet.)).

However, the "partial disclosure" and the "voluntarily disclosed information" came in the SPD that Renfro, as Plan Administrator and "Named Fiduciary," provided to Plaintiff, as required by ERISA, when she was electing to become a Participant in the Plan. These nondisclosure and fraudulent inducement claims are thus dependent on the existence of the Plan—particularly the Plan's SPD—for their existence, and they would not exist in the absence of the Plan's SPD. Plaintiff's "causes of action are not entirely independent of the federally regulated [SPD] itself." *Davila*, 542 U.S. at 213. Put differently, if Plaintiff's nondisclosure and fraudulent inducement claims "were stripped of their link to the" SPD, "they would cease to exist." *Hook*, 38 F.3d at 784 (quoting *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1220 (5th Cir. 1992), *cert. denied*, 506 U.S. 820 (1992)).[1]

First, as for the "relates to" test, Plaintiff's claims, whether or not based on Texas nondisclosure law, address an area of exclusive federal concern—the accuracy of the SPD required by ERISA to be provided to plan participants. Although Plaintiff's Brief may now contend that her nondisclosure and fraudulent inducement claims are based solely on Texas law, the detailed SPD requirements imposed by Congress in 29 U.S.C. §1022(a) make clear that Congress considers the accuracy of a plan's SPD an area of federal concern. The alleged conflict of interest between Renfro and DSI about which Plaintiff complains would be the kind of information—if the conflict actually existed—required by 29 U.S.C. §1022(a) to be disclosed by

---

[1] In *Noyola v. Oasis Car Wash, Inc.*, 220 F. Supp. 2d 638, 640 (E.D. Tex. 2002), an agent for the nonsubscriber ___orally___ induced Mrs. Noyola, post-accident at the hospital, to sign a waiver document. The Noyolas' fraudulent inducement claim was thus not dependent on the existence of the nonsubscriber's plan. *Id. at 644* (citing *Smith v. Texas Children's Hospital*, 84 F.3d 152, 155 (5th Cir. 1996)). Here, Plaintiff contends that Renfro, as Plan Administrator, breached its fiduciary duty under ERISA by not disclosing DSI's alleged conflict and that Renfro, as Plan Administrator, failed to disclose sufficient information in the ERISA-required SPD, not in oral misrepresentations between employee and employer separate from the ERISA-required SPD. *Plaintiff's FAOP at ¶¶6.02, 6.07, 7.02 & 7.07.*

Renfro, as Plan Administrator, in the SPD as required by 29 U.S.C. §1021(a).  Moreover, because Congress provided an express remedy under Section 502(a)(2) for a plan administrator's breach of its ERISA fiduciary duty to provide an accurate SDP, Plaintiff's claims against Renfro "address areas of **exclusive** federal concern, such as the right to receive" an accurate SPD. *McAteer*, 514 F.3d at 417 (quoting *Woods*, 459 F.3d at 602)(emphasis added).

Second, Plaintiff's claims also "address a second area of exclusive federal concern, such as the right" to sue an ERISA fiduciary for breach of fiduciary duty.  *Id.*  Renfro's failure as Plan Administrator to disclose the purported conflict between DSI and Renfro in the SPD, and its allegedly partially disclosing in the SPD information that created a false impression to Plaintiff, would, if true, both be violations of Renfro's fiduciary duties to Plaintiff.  <u>See</u> *Kujanek v. Houston Poly Bag I, Ltd.,* 658 F.3d at 487-88; *Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747, 750 (D.C. Cir. 1990)(observing that not only does an ERISA plan administrator owe the duty to furnish plan participants with an SPD, but also the duty to advise a plan participant "of circumstances that threaten interests relevant to the relationship").  In the Fifth Circuit, an inaccurate or incomplete SPD's failure to disclose information required by 29 U.S.C. §1022(a) can be the basis of a claim against a plan administrator under 29 U.S.C. §1132(a)(2) for breach of fiduciary duty under 29 U.S.C. §1109(a).  <u>See *Singletary*</u>, 828 F.3d at 348.

In ERISA terms, Plaintiff's claims against Renfro are claims against the Plan Administrator for breaching its fiduciary duty to provide an accurate and complete SPD that should have disclosed to a Plan Participant the fiduciary's and DSI's purported relationship.  It is difficult to conceive of a state law claim that more completely addresses areas of exclusive federal concern.  "Whether or not a state court petition mentions a benefit plan, the court must still consider the substance of the plan to see if ERISA preemption applies." *Tex. Ctr. For*

*Obesity Surgery, PLLC*, 2014 U.S. Dist. LEXIS 24996 at 9 (N.D. Tex. Feb. 27, 2014)(Lynn, J.)

(citing *Meyers v. Tex. Health Res.*, 2009 U.S. Dist. LEXIS 104609 at 13 (N.D. Tex. Nov. 9,

2009)(Fitzwater, C.J.), and *Roark v. Humana, Inc.*, 2001 WL 585874 at 1, 2001 U.S. Dist.

LEXIS 7554 at 4 (N.D. Tex. May 25, 2001)(Fitzwater, J.), *aff'd*, 307 F.3d 298 (5th Cir. 2002)).

### 2.    Plaintiff's Claims Directly Affect the Relationship Among the Traditional ERISA Entities.

As shown in Section I above, the Plan is an "employee welfare benefit plan" under 29

U.S.C. §1002(1).  Renfro is the "employer" for the Plan under 29 U.S.C. §1002(5), and on July

15, 2012, Renfro became the Plan "administrator" under 29 U.S.C. §1002(16) and the Plan's

"Named Fiduciary" under 29 U.S.C. §1102(a).  On August 6, 2012, Plaintiff, an "employee" of

the "employer" under 29 U.S.C. §1002(6), became a Plan "Participant" under 29 U.S.C.

§1002(7) by opting to agree to the terms of the Election And Arbitration Agreement and its

incorporated Arbitration Procedures from the Plan's SPD.

On August 6, 2012, as alleged in Plaintiff's FAOP, when Plaintiff was offered and signed

the Spanish version of the Election And Arbitration Agreement to become a Participant in the

Plan and eligible for its benefits for occupational injuries, Renfro failed to disclose to her "that

Renfro had hired DSI and/or ECS to prepare its arbitration documents," "that the arbitration

documents had been prepared by an attorney with a professional relationship with DSI and/or

ECS," and that "Sarles, an attorney with a professional relationship with and interest in DSI

and/or ECS[,] also represented Renfro." *Plaintiff's FAOP at ¶6.06 & ¶7.06.*  Plaintiff's FAOP

also alleges that, on August 6, 2012, "Renfro had a duty to disclose the information, inter alia,

because, as an administrator of a Plan it claimed was created under [ERISA], ***Renfro was a***

***fiduciary and therefore had a fiduciary relationship with [Plaintiff], a beneficiary [sic] of the***

***Plan***." *Id. at ¶6.07 & ¶7.07 (emphasis added).*

Clearly, Plaintiff's nondisclosure and fraudulent inducement claims involve the traditional, fiduciary relationship under ERISA between Plan Participant and Plan Administrator. Important to this point, Plaintiff's FAOP does not allege that any representative, agent, supervisor or owner of Renfro made any misrepresentations to Plaintiff about the terms of the Election And Arbitration Agreement or its Arbitration Procedures incorporated from the SPD, before July 15, 2012, when Renfro became Plan Administrator and its "Named Fiduciary." *See generally* Plaintiff's FAOP.  Indeed, it would have been impossible for Renfro to have failed to disclose anything to Plaintiff about the Plan before Renfro adopted it on July 15, 2012.

Unlike *Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir. 1990), where the fraudulent inducement claim was against an independent insurance agent and did "not affect the relations among the principal ERISA entities (the employer, the plan fiduciaries, the plan, and the beneficiaries)," Plaintiff's nondisclosure and fraudulent inducement claims against Renfro directly affect the principal ERISA entities—Plan Participant and Plan Administrator.  Similarly, although the claims of deceptive advertising against the defendant insurer association in *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 947 (5th Cir. 1995), did not affect the relations among principal ERISA entities because the insurer-defendant was not an ERISA entity, Plaintiff's nondisclosure and fraudulent inducement claims are expressly made against Renfro in its capacity as Plan Administrator.  *Plaintiff's FAOP at ¶¶6.07 & 7.07.*

In *Hobson v. Robinson*, 75 Fed. Appx. 949, 955, 2003 U.S. App. LEXIS 19633 at 16 (5th Cir. Sept. 23, 2003), the misrepresentations were made, and the fraudulent inducement was perpetrated, by an insurance salesman against the employer.  The Fifth Circuit explained that "[o]ur decisions since *Perkins* have reaffirmed that the important factor in ERISA preemption is the relationship between the parties involved in the claim itself and whether that claim is

intricately bound with an ERISA plan."   Unlike the claims in *Hobson*, claims by a Plan Participant asserting nondisclosure and fraudulent inducement against Renfro as the Plan Administrator—for failure to include information in the SPD about DSI's purported conflict of interest—in obtaining her agreement to become a Plan Participant "is intricately bound" with the Renfro Plan and the accuracy of its SPD.

Nor is *Cotner v. Hartford Life & Annuity Ins. Co.*, 2008 WL 59174, 2008 U.S. Dist. LEXIS 591 at 12-13 (N.D. Tex. Jan. 4, 2008)(Fish, J.), to the contrary.   There, Judge Fish observed that the fraud, misrepresentation, DTPA and conspiracy claims against the insurer's sales agents for a retirement investment product all arose "from Hartford's conduct which predated creation of the Plan," and were not completely preempted by ERISA §502(a)(2), because §409(b) provides that "no fiduciary shall be liable with respect to a breach of fiduciary duty under this title if such breach was committed before he became a fiduciary."   He in turn reasoned that the claims were not completely preempted by §502(a)(3), because the plan in question "was not yet in existence" when the conduct giving rise to the plaintiffs' claims for equitable relief occurred.   *2008 U.S. Dist. LEXIS 591 at 15*. The Renfro Plan was in existence as of July 15, 2012, and Renfro was the Plan Administrator and "Named Fiduciary" when it allegedly failed to disclose information to Plaintiff on August 6, 2012.   *See* <u>Arnold v. Bradley</u>, 2008 U.S. Dist. LEXIS 106696 at 12-13 (N.D. Tex. July 25, 2008)(Means, J.)("A review of Plaintiffs' petition, however, reveals that all of their state-law causes of action, including their cause of action for breach of fiduciary duty, stem from alleged fraudulent conduct, misrepresentations, and omissions that occurred prior to the 412(j) Plan being established.").

Under the two-prong *Hook*, *Woods* and *McAteer* "relate to" test, Plaintiff's nondisclosure, fraudulent inducement, conspiracy and injunction claims "relate to" the Renfro Plan and, in

particular, its ERISA-required SPD. Moreover, those claims "fall within the scope of" §502(a)(2)-(3) and would not exist in the absence of the Plan's SPD, because Plaintiff's ERISA-fiduciary-duty nondisclosure claim obviously depends upon ERISA, and Plaintiff's purported partial-disclosure nondisclosure claim (to disclose the additional information that Plaintiff contends is not fully provided in the SPD) depends upon the SPD's ERISA-required existence. Plaintiff's claims duplicate, supplement, or supplant ERISA's comprehensive civil enforcement scheme provided in 29 U.S.C. §§1132(a)(2), 1109 and 1132(a)(3), are completely preempted, and create federal question jurisdiction under 29 U.S.C. §1132(e).  *Davila*, 542 U.S. at 208-09.

## CONCLUSION

Plaintiff has expressly sued Defendant Renfro under ERISA for breaching its fiduciary duty as Plan Administrator by failing to disclose to Plaintiff when she opted to become a Plan Participant that DSI had an alleged conflict.  *Plaintiff's FAOP at ¶¶6.07 and 7.07.*  Rather than basing her fraudulent inducement, nondisclosure, conspiracy and injunction claims on oral misrepresentations or nondisclosures in communications not governed by ERISA, she expressly complains that the Plan's ERISA-required SPD only conveyed partial information that "conveyed a false impression."  *Id.*  As the Fifth Circuit explained earlier this year, an SPD's failure to disclose information as required by 29 U.S.C. §1022(a) can be the basis of a claim against a plan administrator under 29 U.S.C. §1132(a)(2) for breach of fiduciary duty under 29 U.S.C. §1109(a).  *See Singletary v. United Parcel Service, Inc.*, 828 F.3d 342, 348 (5th Cir. 2016)(citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252-53, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993)).  As a result, one or more of Plaintiff's claims falls within the scope of 29 U.S.C. §1132(a)(2)-(3), is completely preempted, and creates federal jurisdiction under 29 U.S.C. §1132(e).  Moreover, for the reasons shown in Defendants' Response to Plaintiff's Motion for

Leave to File Second Amended Complaint, that slightly-altered iteration of Plaintiff's allegations continues to assert completely-preempted claims, adds nothing to the analysis, and does not support Plaintiff's Motion to Remand.

WHEREFORE, Defendants pray that Plaintiff's Motion to Remand be denied and that they be granted such other and further relief to which they may be entitled.

Respectfully submitted,

**/s/ Gary D. Sarles_____**
Gary D. Sarles
Texas Bar No. 17651100
Email: gsarles@sarleslaw.com
O. Paul Dunagan
Texas Bar No. 06202700
Email: dunagan@sarleslaw.com
**SARLES & OUIMET**
900 Jackson Street, Suite 370
Dallas, Texas  75202-4436
Telephone:  (214) 573-6300
Telecopier:  (214) 573-6306
**ATTORNEY FOR DEFENDANT
RENFRO INDUSTRIES, INC.**

**/s/ Curtis L. Marsh_____**
Curtis L. Marsh
Texas Bar No. 13020050
Email: curtis.marsh@airmail.net
**THE LAW FIRM OF CURTIS MARSH, PLLC**
900 Jackson Street, Suite 370
Dallas, Texas 75202
214.573.6310
214.752.1140 FAX
**ATTORNEY FOR DEFENDANTS ESSENTIAL
CORPORATE SOLUTIONS, INC. and
DISPUTE SOLUTIONS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 5th day of December, 2016, a true and correct copy of the above and foregoing Defendants' Brief in Support of Their Response to Plaintiff's Motion to Remand was served through the Court's ECF system on Plaintiff's counsel of record:

Clay Miller, Esq.
Lawrence R. Lassiter, Esq.
Miller Weisbrod, LLP
11551 Forest Central Drive
Forest Central II, Suite 300
Dallas, Texas 75231
cmiller@millerweisbroad.com
llassiter@millerweisbroad.com

Houston Smith, Esq.
Law Offices of Houston M. Smith, PC
210 East Moore
Terrell, Texas 75160
houstonsmith@aol.com

<u>**/s/ Gary D. Sarles**</u>
Gary D. Sarles