**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MARIA ROJAS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **RENFRO INDUSTRIES, INC.,** | § | **CIVIL ACTION NO. 3:16-CV-02896-D** |
| **DISPUTE SOLUTIONS, INC. and** | § | |
| **ESSENTIAL CORPORATE** | § | |
| **SOLUTIONS, INC.,** | § | |
| **Defendants.** | § | |

**APPENDIX IN SUPPORT OF DEFENDANTS' RESPONSE**
**TO PLAINTIFF'S MOTION TO REMAND**

Defendants submit the following Appendix is filed in support of Defendants' Response to

Plaintiff's Motion to Remand:

Declaration of Gary D. Sarles, pp.3-5.

Exhibit 1    Renfro Industries, Inc. Employee Injury Benefit Plan (the "**Plan**"), pp.6-54.

Exhibit 2    Renfro Industries, Inc. Employee Injury Benefit Plan Summary Plan Description with Exhibits A and B thereto ("**SPD**"), pp.55-92.

Exhibit 3    Plan de Beneficios por Lastimaduras Ocupacionales de Renfro Industries, Inc. Descripcion del Plan en Resumen, the Spanish-language version of the Renfro Industries, Inc. Employee Injury Benefit Plan Summary Plan Description with Anexos A and B thereto ("**SPD**"), pp.93-136.

Exhibit 4    Acuerdo de Eleccion y Arbitraje (Spanish-language version of the Election And Arbitration Agreement) signed by Plaintiff Maria Rojas, pp.137-140.

Exhibit 5    Dispute Solutions, Inc.'s Rules of Mediation and Arbitration, pp.141-149.

Exhibit 6    The American Arbitration Association's Employment Arbitration Rules and Mediation Procedures, pp.150-201.

Respectfully submitted,

**/s/ Gary D. Sarles**
Gary D. Sarles

Texas Bar No. 17651100
Email: gsarles@sarleslaw.com
O. Paul Dunagan
Texas Bar No. 06202700
Email: dunagan@sarleslaw.com

**SARLES & OUIMET**
900 Jackson Street, Suite 370
Dallas, Texas  75202-4436
Telephone:  (214) 573-6300
Telecopier:  (214) 573-6306
**ATTORNEY FOR DEFENDANT
RENFRO INDUSTRIES, INC.**


**/s/ Curtis L. Marsh_____**
Curtis L. Marsh
Texas Bar No. 13020050
Email: curtis.marsh@airmail.net

**THE LAW FIRM OF CURTIS MARSH, PLLC**
900 Jackson Street, Suite 370
Dallas, Texas 75202
214.573.6310
214.752.1140 FAX
**ATTORNEY FOR DEFENDANTS ESSENTIAL
CORPORATE SOLUTIONS, INC. and
DISPUTE SOLUTIONS, INC.**

## CERTIFICATE OF SERVICE

This is to certify that on this 5th day of December, 2016, a true and correct copy of the above and foregoing Appendix in Support of Defendants' Response to Plaintiff's Motion to Remand was served via the Court's ECF system on Plaintiff's counsel of record:

Clay Miller, Esq.
Lawrence R. Lassiter, Esq.
Miller Weisbrod, LLP
11551 Forest Central Drive
Forest Central II, Suite 300
Dallas, Texas 75231
cmiller@millerweisbroad.com
llassiter@millerweisbrod.com

Houston Smith, Esq.
Law Offices of Houston M. Smith, PC
210 East Moore
Terrell, Texas 75160
houstonsmith@aol.com


**/s/ Gary D. Sarles_____**
Gary D. Sarles

# Appendix p.2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MARIA ROJAS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **RENFRO INDUSTRIES, INC.,** | § | **CIVIL ACTION NO. 3:16-CV-02896-D** |
| **DISPUTE SOLUTIONS, INC. and** | § | |
| **ESSENTIAL CORPORATE** | § | |
| **SOLUTIONS, INC.,** | § | |
| **Defendants.** | § | |

## DECLARATION OF GARY D. SARLES

1.      My name is Gary D. Sarles.  I am over 21 years of age, have never been convicted of a felony or crime involving moral turpitude, and I am fully competent to make this Declaration.  The statements made herein are true and correct and within my own personal knowledge.  I am counsel of record in this lawsuit for Defendant Renfro Industries, Inc. ("**Renfro**").  My testimony in this Declaration relates to undisputed issues or matters of formality, and I have no reason to believe that substantial evidence will be offered in opposition to this testimony.

2.      In 2012, Renfro, a "nonsubscriber" to the optional Texas Workers' Compensation Act, directly hired me to draft a welfare benefit plan under the Employee Retirement Income Security Act of 1974 ("**ERISA**") to offer Renfro's employees benefits for on-the-job injuries.  At Renfro's request, direction and expense, I drafted the Renfro Industries, Inc. Employee Injury Benefit Plan (the "**Plan**"), a true and correct copy of which is attached hereto as Exhibit 1, Appendix pages 6-54.

3.      I also drafted at Renfro's request, direction and expense the Summary Plan Description ("**SPD**") for the Plan, in English and Spanish.  A true and correct copy of the

Appendix p.3

English SPD for the Plan is attached hereto as Exhibit 2, Appendix pages 55-92.  A true and correct copy of the Spanish SPD for the Plan is attached hereto as Exhibit 3, Appendix pages 93-136.

4.      I also drafted at Renfro's request, direction and expense an Election And Arbitration Agreement, in English and Spanish, for Renfro employees to elect to participate in the Plan by accepting the Election And Arbitration Agreement's optional terms.   Renfro employees who elected to accept the terms of the Election And Arbitration Agreement would become Participants in the Plan and eligible for its benefits in the event of an on-the-job injury, but such employees would agree to arbitrate disputes with Renfro before Dispute Solutions, Inc. ("**DSI**") or the American Arbitration Association ("**AAA**") under the Election And Arbitration Agreement.  Renfro employees who elected to reject the terms of the Election And Arbitration Agreement would not become Participants in the Plan, would not be eligible for its benefits in the event of an on-the-job injury, but would not agree to arbitrate disputes with Renfro under the Election And Arbitration Agreement.  A true and correct copy of the Election And Arbitration Agreement is attached as Exhibit A to the English and Spanish SPDs, Appendix pages 88-91 and 132-135.

5.      DSI is a dispute-resolution service provider.   Renfro did not hire DSI or Defendant Essential Corporate Solutions, Inc. ("**ECS**") to do anything.  Renfro is not a client of either DSI or ECS.  Neither ECS nor DSI hired me to draft the Plan, the SPD or the Election And Arbitration Agreement for Renfro; instead, Renfro directly hired me to draft those documents. Neither ECS nor DSI had any involvement whatsoever in my drafting of the above-referenced documents for Renfro.  DSI is simply named in the Arbitration Procedures set forth in the Plan and the SPD as one of two arbitrator and mediator providers for disputes covered by the Election

Appendix p.4

And Arbitration Agreement.  I have no professional relationship with ECS or DSI, and I have never represented either of them as an attorney.  I have no financial interest or ownership in either ECS or DSI.  The only entity in this lawsuit which has ever been my client is Renfro.  I am not the "ERISA attorney" allegedly listed on ECS's or DSI's website.

6.      Attached hereto as Exhibit 4, Appendix pages 137-140, is a true and correct copy of the Acuerdo de Eleccion y Arbitraje, the Spanish version of the Election And Arbitration Agreement that I drafted for Renfro, that Renfro provided to me from its personnel file for Plaintiff Maria Rojas.

7.      Attached hereto as Exhibit 5, Appendix pages 141-149, is a true and correct copy of DSI's Rules of Mediation and Arbitration ("**DSI Rules**").  I did not draft the DSI Rules.

8.       Attached hereto as Exhibit 6, Appendix pages 150-201, is a true and correct copy of the AAA's Employment Arbitration Rules and Mediation Procedures.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 5, 2016.

**/s/ Gary D. Sarles_____**
Gary D. Sarles

Appendix p.5

# Renfro Industries, Inc.
# Employee Injury Benefit Plan

Renfro Industries, Inc. (the "Company"), a non-subscriber to the Texas Workers' Compensation Act, hereby amends and entirely restates, effective only for Injuries sustained from Occurrences on or after 12:01 a.m. on the Effective Date, the Renfro Industries, Inc. Employee Injury Benefit Plan (the "Plan"), a group health employee occupational injury welfare benefit plan established under the Employee Retirement Income Security Act of 1974 ("ERISA"), to provide as of the Effective Date as follows:

# I.   ELIGIBILITY AND ARBITRATION PROCEDURES

**A.**   **Eligibility:**  Each Employee who is an Employee on the Effective Date shall be eligible to elect to participate in the Plan.  Each other Employee shall be eligible to elect to participate in the Plan as of the time and date that his or her employment as an Employee of the Company begins.

**1.**   **Employee Election:**  In order to elect to participate in the Plan and as a condition to participation in this Plan and in exchange for eligibility for any benefits provided for in this Plan, an Employee must fully execute an <u>agreeing</u> to the terms of an Election And Arbitration Agreement in the form attached hereto as Exhibit "A" and made an part hereof for all purposes. Once an Employee delivers such a fully-executed Election And Arbitration Agreement to the Committee (or its designee), he or she shall become a Participant in this Plan and shall be eligible for the benefits provided for in this Plan as of the later of (i) 12:01 a.m. on the Effective Date, or (ii) 12:01 a.m. on the date of his or her fully-executed, agreed Election And Arbitration Agreement.

**2.**   **Arbitration of Employment Disputes:**  By executing and <u>agreeing</u> to an Election And Arbitration Agreement, an Employee affirmatively agrees to submit to binding arbitration all claims or disputes covered by the Election And Arbitration Agreement.  The result of the binding arbitration will be the sole and exclusive remedy for resolving any such claim or dispute.  The Election And Arbitration Agreement is mutually binding upon the Company and the Participant, as well as the Participant's Beneficiaries, spouse, minor children, heirs, parents and legal representatives and the Company's successors, subsidiaries, affiliates, customers, directors, officers, partners, shareholders, members, managers and agents.  Any arbitration proceeding initiated under the Election And Arbitration Agreement shall be conducted in accordance with the provisions of Paragraph B. below, which provisions are expressly incorporated by reference into, and made part of, the form of Election And Arbitration Agreement attached hereto as Exhibit "A".

**3.**   **Participation by Receipt of Benefits:**  Notwithstanding an Employee's failure to execute, agree to, and deliver an Election And Arbitration

Appendix p.6

Agreement as required, he or she shall become a Participant under this Plan upon receipt and acceptance of any benefits under this Plan and shall be bound by the terms of the Plan and by the terms of the Election And Arbitration Agreement the same as if he or she had complied with all of the requirements to be a Participant and the same as if he or she had fully executed and agreed to an Election And Arbitration Agreement.

**4.     Cessation of Participation and Reemployment:**  Except to the limited extent provided under Section II regarding the continuation of certain benefit payments to injured Participants, if a Participant ceases to be an Employee, he or she shall thereupon cease to participate in this Plan; provided, however, that if such Participant is thereafter reemployed as an Employee, he or she shall resume participating in the Plan as of the time and date of such reemployment.  A Participant's participation in this Plan shall also cease: (1) on the date the Committee determines that the Participant has committed fraud or made a misrepresentation in the presentation of a claim for benefits under this Plan, or (2) on the date that the Participant becomes covered, eligible for benefits, or seeks benefits under any State's workers' compensation laws or any policy of workers' compensation insurance.  If a Participant's participation ceases, such Employee shall thereafter be reinstated as a Participant only at such time and under such conditions as may be specified by the Committee.

**B.     Arbitration Procedures.**     The following provisions are incorporated by reference into, and made part of, the Election And Arbitration Agreement, the same as if they were set forth at length in the Election And Arbitration Agreement itself:

**1.     Required Notice for All Claims:**  I and the Company agree that a party asserting one or more claims or causes of action against the other party must make a written demand for arbitration on the other party within the applicable statute of limitations, and that failure to make such written demand for arbitration within the applicable statute of limitations bars the claims and causes of action.  Written demand on the Company (or an Employer) or one or more of its managers, members, officers, directors, shareholders, employees, agents, affiliates or benefit plans shall be sent to Renfro Industries, Inc., Attention: Mr. Richard L. Renfro, 102 Metro Drive, Terrell, Texas 75160 (or such other person or address as the Company may specify).  If the Company (or an Employer, officer, affiliate, etc.) wishes to assert a claim, it will make written demand for arbitration on me at the last address recorded in my personnel file.  This demand for arbitration shall be sent to the other party (or parties) by certified or registered mail, return receipt requested.  **Neither filing nor serving a lawsuit stops the applicable statute of limitations from continuing to run.**

**2.     Representation**:  Any party may be represented during pre-hearing procedures (as defined below), at the arbitration hearing and/or during the arbitration appeal (as defined below) by an attorney or other representative selected by the party.

**3.     Mediation:**  The Company and I agree that any arbitration that has been timely and properly demanded under Paragraph 1 above shall be stayed and shall not

Appendix p.7

proceed until the parties to the arbitration have mediated the dispute with a mediator either agreed upon by all parties or, if agreement by all parties cannot be reached, by a mediator provided by Dispute Solutions, Inc.   This mediation requirement may be waived by written agreement signed by all parties or their counsel.   The cost of any mediation shall be split evenly between the two sides to the dispute; however, my part of such mediation cost shall not exceed $50.00.

**4.      General Procedures:**

a.      The Company and I agree that the arbitration hearing will be conducted before one arbitrator (hereinafter the "hearing arbitrator") appointed by Dispute Solutions, Inc., or if Dispute Solutions, Inc. is unable to appoint an arbitrator, by the American Arbitration Association.   The Company and I agree that the then-current rules of Dispute Solutions, Inc. governing employment disputes (or, if Dispute Solutions, Inc. is unable to appoint an arbitrator, then the then-current Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association) shall control and be applied by the hearing arbitrator and by the appellate arbitrators (as defined below).

b.      The hearing arbitrator shall apply the substantive law (and the laws of remedies, if applicable), in the state in which the claim arose, or federal law, or both, depending upon the claims asserted.   The hearing arbitrator shall also strictly apply the Federal Rules of Evidence, except that deposition testimony of a witness may be used at the arbitration hearing without regard to whether the witness is unavailable.   The hearing arbitrator shall provide brief findings of fact and conclusions of law.   All arbitration decisions and awards rendered pursuant to the Election And Arbitration Agreement shall be kept strictly confidential and shall not, except for filings regarding their judicial enforcement, be disclosed to anyone not a witness, attorney, party representative, or party who actually attended the arbitration hearing.

c.      **The hearing arbitrator shall have the authority to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the agreement to arbitrate.**   The hearing arbitrator shall have the authority to hear and rule on prehearing disputes and is authorized to hold prehearing conferences by telephone or in person as the arbitrator deems necessary.   The hearing arbitrator will have the authority to hear a motion to dismiss and/or a motion for summary judgment by any party and in doing so shall apply the standards governing such motions under the Federal Rules of Civil Procedure.   The hearing arbitrator shall stay any timely and properly demanded arbitration until the parties mediate the dispute, unless mediation has been waived by written agreement signed by all parties or their counsel.

**5.      Pre-Hearing Procedures**: Each party will have the right to take the deposition of one individual and any expert witness designated by another party.   Each

Appendix p.8

party will have the right to subpoena witnesses in accordance with the Federal Arbitration Act, Title 9 of the United States Code.  Additional discovery may be had only where the hearing arbitrator so orders, upon a showing of substantial need.  At least 30 days before the arbitration, the parties must exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration hearing.

**6.    Arbitration Fees and Costs:**  There will be both administrative fees and arbitrator compensation incurred for any arbitration hearing.  When I file and serve a demand, the filing fee, included in the administrative fees, for the arbitration hearing will be paid $350.00 by me and the remainder by the Company.  Unless I choose to pay all or a part of them, all other administrative fees and all of the hearing arbitrator's compensation will be paid by the Company.  Arbitrator compensation and administrative fees are not subject to re-allocation in the award, but any fees for postponements will be paid by the party causing the postponement.  Unless agreed otherwise, the Company will arrange for and pay the cost of a court reporter to provide a stenographic record of the proceedings at the hearing.

**7.    Attorneys' Fees:**  The Company and I further agree as follows:

a.    Each party shall be responsible for their own attorney's fees, if any; however, if any party prevails on a statutory claim which allows the winning party to be awarded attorney's fees, or if there is a written agreement providing for fees, the hearing arbitrator shall award reasonable fees to the prevailing party.  The hearing arbitrator shall determine the prevailing party in accordance with the meaning of "prevailing party" under the Civil Rights Attorney's Fees Awards Act of 1976.

b.    The hearing arbitrator shall assess attorney's fees against a party upon a showing that such party's claim, defense or position is frivolous, or unreasonable, or factually groundless.

c.    If either party pursues a claim covered by this Agreement by any means other than those set forth in this Agreement, the responding party shall be entitled to dismissal of such action, and the recovery of all costs and attorney's fees and losses related to such action.

**8.    Appeal Procedures:**  The Company and I further agree as follows:

a.    Any party **may** appeal any arbitration award that has been rendered and become final under the rules governing the arbitration.  The written appeal must be served in writing on the other party or parties to the arbitration and on Dispute Solutions, Inc. (or, if the American Arbitration Association appointed the hearing arbitrator, then on the American Arbitration Association) by certified mail within thirty (30) days after the hearing arbitrator caused the arbitration award to be mailed to the parties or to their representatives.  The writing evidencing the appeal must specify those elements of the arbitration

Appendix p.9

award that are being appealed and must contain a short statement of the appeal's basis.  Once an appeal is timely served, the arbitration award by the hearing arbitrator shall no longer be considered final for purposes of seeking judicial enforcement, modification or vacation under the Federal Arbitration Act.

b.      Within fifteen (15) days after receipt of the appeal, the other party or parties may serve a written cross-appeal by serving it by certified mail on the other party or parties to the arbitration and on Dispute Solutions, Inc. (or, if the American Arbitration Association appointed the hearing arbitrator, then on the American Arbitration Association).  The writing evidencing the cross-appeal must specify those elements of the arbitration award that are being appealed and must contain a short statement of the cross-appeal's basis.  Once a cross-appeal is timely served, the arbitration award by the hearing arbitrator shall no longer be considered final for purposes of seeking judicial enforcement, modification or vacation under the Federal Arbitration Act, even if the appeal is subsequently withdrawn.

c.      Within forty-five (45) days after receipt of the appeal, the parties to the appeal shall select a panel of three arbitrators (hereinafter the "appellate arbitrators") utilizing the procedures to select arbitrators set forth in the then-current rules of Dispute Solutions, Inc.  The hearing arbitrator shall not be eligible to serve as an appellate arbitrator.

d.      The fees and expenses of the appellate arbitrators shall be shared equally if both an appeal and a cross-appeal are served.  If only an appeal is served, the fees and expenses of the appellate arbitrators shall be paid by the appellant party (or parties).  Each party serving an appeal or cross-appeal shall deposit funds or post other appropriate security for the appellate arbitrators' fees, in an amount and manner determined by Dispute Solutions, Inc., (or, if the American Arbitration Association appointed the hearing arbitrator, then by the American Arbitration Association) within thirty (30) days after that party's service of an appeal or cross-appeal.

e.      The record on appeal to the appellate arbitrators shall consist of any stenographic record or other record of the hearing before the hearing arbitrator and shall include all exhibits and deposition transcripts admitted into the record by the hearing arbitrator.  The parties to an appeal shall assist and cooperate with the Dispute Solutions, Inc. (or, if the American Arbitration Association appointed the hearing arbitrator, then the American Arbitration Association) in providing the record, exhibits and deposition transcripts to the appellate arbitrators.

f.      The appellate arbitrators shall establish a briefing schedule, page limitations for briefs and a date and duration for oral argument; provided, however, that prior to the appellate arbitrators' rulings on these subjects, the

Appendix p.10

parties to the appeal may agree to waive briefing and/or oral argument and may agree to their own page limitations for briefs.

g.      The appellate arbitrators shall apply the same standard of review as the first-level appellate court would apply to the cause of action or defense on appeal in similar circumstances.  If both federal and state-law causes of action (and/or defenses) are before the appellate arbitrators (either in a single appeal or as the result of a cross-appeal), the appellate arbitrators shall apply only the standards of review utilized by the United States Court of Appeals for the Fifth Circuit in similar circumstances.

h.      By majority vote, the appellate arbitrators may affirm, reverse, render or modify an arbitration award.  The appellate arbitrators may remand, but they may not remand to the original hearing arbitrator.  In the event of a remand, the parties shall select a new hearing arbitrator under the procedures set forth in the rules governing the arbitration, and the fees and expenses of the new hearing arbitrator shall be shared equally by the parties to the re-hearing, unless otherwise agreed or ordered.  The appellate arbitrators' decision shall include a brief, written opinion addressing the issues before them, and such opinion shall be delivered to the parties and to Dispute Solutions, Inc. (or, if the American Arbitration Association appointed the hearing arbitrator, then to the American Arbitration Association) within thirty (30) days after the conclusion of any briefing schedule or any oral argument or as the parties may agree.  Fifteen (15) days after receipt of the appellate arbitrators' opinion setting forth their decision, any award by them shall be considered final for purposes of judicial enforcement, modification or vacation under the Federal Arbitration Act.

**9.      Interstate Commerce and the Federal Arbitration Act:**  I understand and agree that the Company is involved in transactions involving interstate commerce (*e.g.*, purchasing goods and services from outside Texas which are shipped to Texas; utilizing the interstate mail, telephone and highway systems; and recruiting and advertising outside Texas) and that my employment and participation in the Plan involve such commerce.  The Federal Arbitration Act, Title 9 of the United States Code, will govern the interpretation, enforcement, and all judicial proceedings under and/or with respect to the Election And Arbitration Agreement and this Paragraph B.  However, if the Federal Arbitration Act should be held to be inapplicable to the Election And Arbitration Agreement and this Paragraph B, or if the Election And Arbitration Agreement and this Paragraph B should be held to be unenforceable, for any reason, under the Federal Arbitration Act, then the Texas common law shall govern the Election And Arbitration Agreement, this Paragraph B, and all judicial proceedings under and/or with respect to them to the extent necessary to make them enforceable to the maximum extent possible.

Appendix p.11

## II.   BENEFITS AND NATURE OF BENEFITS

**A.    Requirements**:   Participants who comply with all Plan requirements are eligible for the benefits set forth below in Paragraphs B, C and D in the event of any Injury sustained by the Participant in the Scope Of Employment with an Employer and during his or her participation in this Plan.

**B.    Medical Benefits:**    The Plan shall pay Medical Benefits to or for a Participant for Medical Expenses incurred by the Participant as the result of an Injury. The first Medical Expense caused by the Occurrence must be incurred within 30 days of the Occurrence.  Medical Benefits shall terminate upon the earliest of (i) the date of the Participant's death, (ii) the date that the Participant reaches Maximum Rehabilitative Capacity, (iii) the date of any termination for Gross Misconduct of the Participant's employment with the Employer, (iv) as otherwise provided in Section III.C. of this Plan, (v) the expiration of 116 weeks from the date such Medical Benefits began, or (vi) when the Total Benefits Limit is reached.

**C.    Disability Benefits:**

1.    After the expiration of five (5) consecutive working days (A working day is considered any day on which the Participant would normally be at work.) during which a Participant must have been Totally Disabled as the result of an Injury, the Plan shall thereafter pay the Participant who is Totally Disabled as the result of an Injury a Disability Benefit equal to 75% of the Participant's Pre-Disability Pay.  A Participant shall not be eligible for Disability Benefits if the Participant is entitled to a Dismemberment Benefit.

2.    Notwithstanding the foregoing, no Participant shall receive Disability Benefits in excess of $900.00 per week, which amount is the maximum weekly Disability Benefit provided by this Plan.  Disability Benefits are calculated on a weekly basis, and paid on regular paydays.  Prorated Disability Benefits, for portions of a week of Total Disability, will be calculated using the Participant's hourly Pre-Disability Pay. Only the Participant's regularly-scheduled workdays are used to calculate Disability Benefits.

3.    Disability Benefits shall be paid only while the Participant remains Totally Disabled as the result of an Injury, but shall terminate, in any event, at the earliest of:  (i) the expiration of 116 weeks from the date of the Bodily Injury or Cumulative Trauma, (ii) the expiration of 116 weeks from the date such Disability Benefits began to accrue as the result of Occupational Disease, (iii) the date of the Participant's death, (iv) the date that the Participant reaches Maximum Rehabilitative Capacity, (v) the date of any termination for Gross Misconduct of the Participant's employment with the Employer, (vi) as otherwise provided in Section III.C. of this Plan, or (vii) when the Total Benefits Limit is reached.

Appendix p.12

**D.**    <u>**Death, Burial and Dismemberment Benefits**</u>

     1.     If a Participant is killed as the direct and sole result of an Occurrence, then the Participant's Death Beneficiary shall be eligible to receive a Death Benefit of $150,000, unless the Death Benefit must be reduced so that the Total Benefits Limit will not be exceeded.

     2.     If, as a direct and sole result of an Occurrence, a Participant sustains one or more of the following Dismembering Injuries, the Participant shall be eligible to receive, subject to the Total Benefits Limit, one (the larger) Dismemberment Benefit in a dollar amount equal to the corresponding percentage of the Death Benefit (as would be determined under Subparagraph 1 above if the Participant had been killed by the Occurrence that caused the Dismembering Injury) as indicated for that one particular Dismembering Injury:

| | |
|---|---|
| Loss of Both Hands or Both Feet | 100% |
| Loss of Sight of Both Eyes | 100% |
| Loss of One Hand and One Foot | 100% |
| Loss of Hearing and Speech | 100% |
| Loss of One Foot and Sight of One Eye | 100% |
| Loss of One Hand and Sight of One Eye | 100% |
| Loss of Use of Both Arms and Both Legs | 100% |
| Loss of Use of Both Arms or Both Legs | 75% |
| Loss of Use of One Arm and One Leg | 75% |
| Loss of Hearing or Speech | 50% |
| Loss of One Hand or One Foot | 50% |
| Loss of Sight of One Eye | 50% |
| Loss of Use of One Arm or One Leg | 50% |
| Loss of Thumb | 25% |

"Loss" as used in this Subparagraph means: (a) regarding a hand or foot, severance at or above the respective wrist or ankle joint or total loss of the ability to perform each and every act and service that the hand or foot was able to perform before the Occurrence, (b) regarding sight of an eye, entire and irrevocable loss of sight, (c) regarding hearing, the total and irrevocable loss of hearing in both ears, (d) regarding speech, total and irrevocable loss of the entire faculty, (e) regarding thumb, severance through or above the metacarpophalangeal joint. Any "Loss" must continue without interruption for a period of not less than 52 consecutive weeks and must be total and irrevocable and beyond remedy by surgical or other means, all as determined by the Treating Physician.

     3.     Notwithstanding Subparagraphs 1 and 2 above, the Plan will pay for only one death or Dismembering Injury to a Participant due to the same Occurrence. In such event, the Plan will pay, subject to the Total Benefits Limit, the larger of either (a) the Death Benefit, or (b) the larger applicable Dismemberment Benefit. A Death Benefit or Dismemberment Benefit payable under this Plan shall be in addition to Medical Benefits payable with respect to the Occurrence, subject to the Total Benefits Limit.

4.      A Death Benefit shall be paid to the Participant's Death Beneficiary (or divided and paid to the Participant's Death Beneficiaries) as follows:  (a) 20% of the Death Benefit shall be paid in a lump sum cash payment (or divided into equal amounts if there is more than one Death Beneficiary) as soon as administratively possible following the death of the Participant and the determination of the proper Death Beneficiary or Death Beneficiaries (or to the deceased Participant's estate if there is no Death Beneficiary); and (b) the remaining 80% of the Death Benefit shall be paid (without interest) in thirty-six (36) equal monthly installments to the Participant's Death Beneficiary (or each installment will be divided and paid in equal amounts to the Participant's Death Beneficiaries), commencing on the first day of the month following the initial lump sum payment(s).   Dismemberment Benefits shall be paid to the Participant in the same manner (using the same percentages and number of monthly installments) described in this Subparagraph for the payment of Death Benefits.

5.      If a Participant is killed as the direct and sole result of an Occurrence, then the Participant's Death Beneficiary shall be eligible to receive a Burial Benefit equal to the lesser of:  (a) the actual cost incurred for the Participant's burial, or (b) $5,000, unless the Burial Benefit must be reduced so that the Total Benefits Limit will not be exceeded.

6.      The receipt and acceptance of all or any part of a Death Benefit, Burial Benefit or Dismemberment Benefit shall constitute agreement and acceptance by the accepting person or entity of the terms and conditions of the Plan, including those of the Election And Arbitration Agreement, and the payment of any Death Benefit, Burial Benefit or Dismemberment Benefit shall be expressly conditioned upon receipt from the payee(s) of an indemnification agreement and release of liability, including the Company's, the Employer's and the Plan's liability, if any.

## E.    **Nature of Benefits**

**1.      Liability Denied:**  The Company has adopted this Plan to protect itself as a nonsubscriber to the Texas Workers' Compensation Act.  Benefits are paid by the Plan without regard to the Participant's fault or negligence and without the necessity of the Participant proving that the Company or one of its employees was negligent in causing the Participant's injury or death.  Therefore, payments made through this Plan are not, in any way, an admission of liability or responsibility by the Company for an injury or death, and any such liability or responsibility is specifically denied.

**2.      Offset to Liability:**  Benefit payments through this Plan are made by the Company and are not payment from a "collateral source" as defined by any rule, statute, judicial decision, or directive.  All benefits paid through this Plan shall offset, reduce or eliminate any alleged liability of the Company and its owners, officers, directors, employees or agents to a Participant or Participant's beneficiaries, spouse, children, heirs, legal representatives and assigns.

Appendix p.14

# III.  **REPORTING REQUIREMENTS, APPROVED PROVIDERS AND LOSS OF BENEFITS**

**A.**    **Reporting Injuries:**    A Participant must report as follows every event that results, or might later result, in an on-the-job injury:

**1.    Written Notice of Injury Resulting from an Accident or Event:**  A Participant must notify his or her supervisor in writing, on forms provided by the Company, immediately after being injured on the job as the result of any type of accident or event (regardless of whether it is an Accident as defined by this Plan), even if the injury appears minor, and must do so no later than the end of the Participant's work shift during which the accident or event occurred.

**2.    Written Notice of Pain, Bodily Problem, Cumulative Trauma and Disease:**  A Participant must notify his or her supervisor in writing, on forms provided by the Company, immediately after experiencing injury, pain, a bodily problem, physical condition, disease or cumulative trauma sustained on the job (regardless of whether it is an Injury, Cumulative Trauma or Disease as defined by this Plan), even if the injury, pain, problem, condition, disease or trauma appears minor, and must do so no later than the 30th day after the date on which the Participant knew or should have known that the injury, pain, problem, condition, disease or trauma may be related to the Participant's employment with the Company.  No benefits will be paid under this Plan if notice of an injury, pain, bodily problem, physical condition, disease or cumulative trauma is not provided in writing within 24 months from the date of the Occurrence.

**3.    Providing Necessary Information:**  An injured Participant and his or her supervisor must fill out, sign and date all injury report forms, make written or sworn statements, and give proof as the Committee may require.  No benefits (except Death Benefits in an appropriate circumstance) will be paid through this Plan if such written notification is not given or all information required by the Committee is not provided to it, and the Committee may suspend or terminate benefits if additional information is subsequently requested by the Committee but not provided to it.  If an Injury requiring Emergency Treatment prevents the written notification to the Participant's supervisor required in the two preceding paragraphs, the Participant must have his or her supervisor notified by telephone of the need for the Emergency Treatment, and the Participant must complete the injury report forms within two (2) business days after receiving written notice from the Committee's representative.  An injured Participant must also notify his or her supervisor in writing within twenty-four (24) hours after receiving Emergency Treatment and after each appointment or treatment session with a Physician or at a Facility.

Appendix p.15

**B.** **Approved Providers and Treatment:**

**1.** **Physicians and Facilities:** A Medical Expense incurred by a Participant shall be paid or reimbursed by this Plan only if it was provided by a Physician (practicing in his or her field of expertise) or by a Facility (acting within the scope of its license) or was Emergency Treatment.   Physicians and Facilities are approved on an as-needed, case-by-case basis; therefore, no actual list of approved Physicians and Facilities exists.   If such a list is created by or at the direction of the Committee, a copy shall be provided to each Participant without charge.

Although benefits under this Plan are conditioned on a Participant's use of only approved Physicians and Facilities, a Participant remains free to forsake benefits under this Plan and see any medical provider he or she chooses at his or her own expense. However, all determinations about a Participant's condition relevant to benefit decisions under this Plan must be made by a Treating Physician, in consultation with other Physicians as necessary.

**2.** **The Treating Physician:**    After any Emergency Treatment, the Treating Physician shall approve, direct and coordinate the Participant's course of treatment or rehabilitation. To continue to be eligible for Plan benefits, the Participant must follow the Treating Physician's, and other treating Physicians', advice and course of treatment or rehabilitation.   The Participant must keep and cooperate during all scheduled appointments.   The Committee will require a Participant to authorize and undergo alcohol or drug testing, and it may require a Participant (or a Death Beneficiary or the Participant's estate to permit a deceased Participant's body) to be examined by one or more Physicians, as often as it deems necessary or appropriate while a Participant (or Death Beneficiary or Participant's estate) is seeking or receiving Plan benefits.

**3.** **Additional Plan Providers:** The Plan may assign Physicians, rehabilitation nurses and other healthcare professionals to a Participant's case to oversee, supervise, coordinate and expedite the Participant's course of treatment or rehabilitation established by the Treating Physician.   Under rules adopted by the Committee, the Plan may require a second medical opinion (or even third opinion in accordance with the Committee's rules) from a Physician selected by the Committee.  If an injured Participant refuses to be examined by a Physician selected by the Committee for the second (or third) opinion, all benefits under the Plan will be suspended, or terminated if such refusal persists.

**C.** **Loss Of Benefits:**   The Committee shall deny, terminate or suspend Plan benefits (including Death Benefits) otherwise due a Participant (or a Death Beneficiary or a deceased Participant's estate) if:

1.      the alleged injury is not an Injury as defined in this Plan;

# Appendix p.16

2.      the Participant fails or refuses to comply with any of the requirements or provisions of the Plan or the rules and procedures adopted by the Committee for the administration of the Plan;

3.      the Participant failed to report the Injury and provide required information in accordance with Section III, Paragraph A;

4.      the Participant refuses to submit to drug and alcohol testing or if the Participant was in violation of the Employer's policy, if any, on substance abuse at the time of the Injury;

5.      the alleged injury is discovered not to have been caused by an Accident or Occurrence but rather to have been intentional, self-inflicted, feigned or an attempt to defraud the Company or the Plan;

6.      the Participant fails to provide, upon request by the Committee, a complete statement, affidavit, or deposition concerning the incident that the Participant believes resulted in an Injury;

7.      the Participant was untruthful in regard to any aspect of the information supplied as part of the employment process, including information as to physical or mental abilities to perform the job;

8.      the Participant is untruthful or otherwise fails to fully cooperate with the Committee or demonstrates bad faith in connection with the administration of the Plan, including, but not limited to, subrogation or coordination of benefits procedures;

9.      the Participant utilizes a non-approved physician or facility (other than for Emergency Treatment) without the prior written approval of the Committee;

10.     the Participant fails to provide accurate information to or fails to follow the advice or directions, or ceases to be under the care, of a Treating Physician;

11.     the Participant fails to keep, is late for, or does not cooperate during, a scheduled appointment with or directed by a Physician, or fails or refuses to allow an authorized representative of the Plan to accompany the Participant to an appointment;

12.     the Participant engages in conduct following an Injury which is determined by the Treating Physician to be an injurious practice that is hindering the Participant's recovery from the Injury;

13.     the Participant fails or refuses to report in to the Participant's supervisor periodically as directed, including notice of expected recovery time, after each appointment  with a Physician;

14.     the Participant's employment with his or her Employer is terminated for Gross Misconduct;

15.     the Participant fails to report to his or her supervisor or to return to work for his or her Employer after:

> a.     the Treating Physician has released the Participant to return to work for the Employer; and

> b.     the Participant is scheduled to return to work for the Employer;

16.     the Participant fails to report to the Employer immediately after being informed that he or she has reached Maximum Rehabilitative Capacity or maximum medical improvement; or

17.     the Participant or his or her Death Beneficiary, spouse, minor child, heir, parent, sibling or legal representative brings a lawsuit in violation of the Election And Arbitration Agreement.

# IV.  ADMINISTRATION

## A.  Plan Administrator

**1.     Administrative Committee:**  The Company is the Plan Administrator. The Plan shall be administered for the Company by a committee comprised of three persons appointed by the Company (the "Committee").  Each Committee member shall serve until removed or resigned.  The Company may remove a Committee member for any reason at any time and may fill any vacancies on the Committee or add additional members at any time.  The Committee shall act by majority vote.  The Committee shall keep such records of its proceedings and decisions as it deems necessary.  After each Plan Year, the Committee shall prepare, distribute and file any and all documents necessary to comply with ERISA.  Committee members shall not be compensated for their services.

**2.     The Committee's Authority:**  The Committee is authorized to take such actions as may be necessary to carry out the provisions and purposes of the Plan and shall have the authority to control and manage the operation and administration of the Plan.  In order to effectuate the purposes of the Plan, the Committee shall have discretionary power and authority to construe and interpret the Plan and its terms, to supply any omissions therein, to reconcile and correct any errors or inconsistencies, to make factual determinations, to decide any questions in the administration and application of the Plan, (including, but not limited to, determining (1) eligibility for participation, (2) whether an injury constitutes an Injury, (3) whether expenses are Medically Necessary and/or Usual And Customary, (4) the eligibility of expenses for reimbursement under the Plan, (5) whether a Participant has complied with all Plan

requirements, (6) the amount of a Participant's Pre-Disability Pay, (7) the amount of any fixed sum of money to be paid under Section V, Paragraph B, (8) whether an amendment to the Plan has caused a material reduction in benefits triggering the five-day revocation right set forth on the last page of the Election And Arbitration Agreement, and (9) concerning the qualified status of and procedures governing a domestic relations order or a medical child support order), to make equitable adjustments for any mistakes or errors made in the administration of the Plan, and to delegate fiduciary and non-fiduciary responsibilities or duties (including reviewing the propriety of any and all treatment services and supplies and the charges for them) among or to Committee members or third persons, including any contract administrator, relieving the Committee, to the maximum extent permitted by law, of liability for the acts or omissions of the delegatees.  Except as required by Section IV, Paragraphs D, E and F and ERISA, all actions or determinations made by the Committee shall not be subject to review by anyone and shall be final, binding and conclusive on all persons ever interested hereunder.   In construing the Plan and in exercising its power under provisions requiring Committee approval, the Committee shall attempt to ascertain the purpose of the provisions in question and when such purpose is known or reasonably ascertainable, such purpose shall be given effect to the extent feasible.  Likewise, the Committee is authorized to determine all questions with respect to the individual rights of all Participants under this Plan.  The Committee shall have all powers necessary or appropriate to accomplish its duties under this Plan.

**3.    Committee Indemnification:**  Except for intentional misconduct, the Company shall indemnify, to the fullest extent permitted by law, the Committee and its members against any claim, award or judgment and any settlement of a claim, award or judgment approved by the Company arising out of any act or omission to act of the Committee or one of its members.  Such indemnification includes reasonable attorneys' fees and expenses incurred by the Committee or the Committee member in responding to the claim.

**B.    Plan Funding:**  All Plan benefits payable to or for a Participant shall be paid or provided for by the Company.  The Committee (or its authorized representative) shall direct payment of all Plan benefits out of the general assets of the Company and the Employers.  The Company and the Employers shall have no obligation to establish any fund or trust or purchase any insurance for the payment of Plan benefits, but the Company and the Employers may purchase insurance to provide funds to pay all or part of any Plan benefit.  Any insurance funds shall not be considered "plan assets" under ERISA, but shall instead be part of the Company's or an Employer's general assets.  Any insurance policy shall be owned by and payable to the Company or the Employers, and no Participant shall have any interest in or right to any payments under the policy.

**C.    General Claims Procedures**

**1.    Authorized Representative:**   A Participant, Death Beneficiary or Participant's estate may designate an authorized representative to represent him, her,

# Appendix p.19

them or it regarding a claim for Plan benefits only by providing a signed writing to that effect to the Committee or its designee.  Such an authorization shall remain in effect until revoked by a signed writing, and the Committee and its designees will provide all notices, requests and determinations to such authorized representative.  An assignment of benefits to a health care provider, itself prohibited by the Plan's terms, shall not constitute the designation of an authorized representative.  Notwithstanding the foregoing, in the case of a claim involving Emergency Treatment, a physician or other health care professional licensed, accredited or certified to perform specified health services consistent with applicable State law who has knowledge of the Participant's medical condition is permitted to act as the authorized representative for purposes of the Emergency Treatment claim only.

**2.    Administrative Safeguards:**  To ensure and verify that benefit claim determinations are made in accordance with the terms of this Plan and any rules of the Committee and that, where appropriate, this Plan's provisions have been applied consistently with respect to similarly situated Participants, the Committee or its designee will periodically conduct examinations, reviews and/or audits of benefit claims to determine whether the appropriate protocols, guidelines, criteria, rate tables, fee schedules, requirements and rules were applied in the claims determination process.

**3.    Exhaustion of Claim/Appeal Procedures:**  No legal action or arbitration shall be brought to recover Plan Benefits before the applicable claim and appeal procedures in this Section IV have been exhausted.  Denial of a claim for Plan benefits does not render an appeal of that denial futile or otherwise excuse it from being made.

**D.    Claims Procedures for Medical Benefits**

**1.    Three Categories:**  The Plan pays for three categories of medical treatment:  Emergency Treatment, Approval-Required Treatment, and Regular Medical Treatment.  Claims for these three categories of medical treatment are handled separately and governed, generally, by the Department of Labor regulations for urgent care claims, pre-service claims, and post-service claims, respectively.  Emergency Treatment Medical Claims do not require pre-approval from the Committee (or its designee) and the health care services are not required to be provided by a Physician or Facility.  Approval-Required Treatment Medical Claims require both pre-approval by the Committee (or its designee) and provision of the health care services by a Physician or Facility.  Regular Medical Treatment Medical Claims do not require pre-approval from the Committee (or its designee) but do require provision of the health care services by a Physician or Facility.

**2.    Incomplete Medical Benefits Claims:**  If a Participant or his or her authorized representative fails to follow the Plan's procedures for filing a claim for Medical Benefits for Approval-Required Treatment or Emergency Treatment, the Committee or its designee shall notify the Participant or authorized representative as

soon as possible, but not later than 5 days (24 hours for Emergency Treatment) after the failure, of the specific information necessary to complete the claim.  This notification shall be oral, unless written notification is requested by the Participant or representative. This notification shall only apply if the failure is a communication by the Participant or representative that is received by the Company's personnel designated as responsible for handling Plan benefit matters and is a communication that names a specific Participant, identifies a specific medical condition or symptom, and references a specific treatment, service or product for which approval is requested.  Benefit determinations shall be made within the timeframes in this Paragraph D and in Paragraphs  E and F below without regard to whether all the information necessary to make a benefit determination accompanies the filing.

**3.    Making a Claim:**  In order to "file" a claim for Medical Benefits for any category of medical treatment, a Participant or Participant's authorized representative must comply with the requirements of Section III, Paragraph A, Subparagraph 1.  In order to "file" a claim for Medical Benefits for Approval-Required Treatment and for Regular Medical Treatment, a Participant or Participant's authorized representative must also comply with the requirements of Section III, Paragraph A, Subparagraph 2 and submit to any and all examinations required by the Committee.

**4.    Claims for Medical Benefits for Emergency Treatment**

**a.    Timing of Notification of Determination of Medical Benefit Claim for Emergency Treatment:**  As soon as possible, taking into account the medical exigencies, but not later than 72 hours after receipt of notice by The Committee's designated representative(s) (as required by Section III, Paragraph A, Subparagraph 1) of an occupational injury requiring Emergency Treatment, the Committee's designated representative(s) shall notify the requesting Participant or any authorized representative (the "claimant") as to whether or not he or she is entitled to Medical Benefits for the Emergency Treatment.    If the Committee's designated representative determines that additional information is needed to determine whether and to what extent Medical Benefits are payable under the Plan for the treatment, the Committee's representative shall notify the claimant of the specific information needed as soon as possible, but no later than 24 hours after receipt of the claim.    The claimant shall be given reasonable time under the circumstances, but not less than 48 hours, to provide the specified information.    The Committee's representative shall notify the claimant of the benefit decision as soon as possible, but no later than 48 hours after the earlier of the receipt of the specific information requested or the end of the period given the claimant to provide that specific information.

**b.    Manner and Content of Notification of Determination of Medical Benefit Claim for Emergency Treatment:**    The Committee's designated representative shall, within the timeframe set forth

above, provide a claimant with oral or written notification of any denial of Medical Benefits for Emergency Treatment.  A written notification of the denial shall be provided not later than 3 days after any oral notification.  The written notification shall:  (1) set forth the specific reason or reasons for the adverse determination; (2) refer to the specific Plan provision on which the determination is based; (3) describe any additional material or information necessary for the claimant to perfect the claim and explain why such material or information is necessary; (4) describe the Plan's appeal procedures and the time limits applicable to such procedures, including a statement of the Participant's right to bring a civil action under section 502(a) of ERISA after any adverse determination on such an appeal; (5) if an internal rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination, state that such rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination and that a copy of it will be provided free of charge to the Participant upon request; (6) if the adverse determination is based on a medical necessity or experimental treatment or similar exclusion or limit, state that an explanation of the scientific or clinical judgment for the determination, applying the Plan's terms to the Participant's medical circumstances, will be provided free of charge upon request; and (7) notify the claimant that he or she may make an expedited appeal of the denial orally or in writing and that, if he or she requests an expedited appeal, all necessary information, including the Committee's benefit determination on the expedited appeal, will be transmitted to the claimant by telephone, facsimile, electronic or other expeditious means.

c. **Appeal of Denial of Medical Benefit Claim for Emergency Treatment:**  A claimant seeking Medical Benefits for Emergency Treatment shall have a reasonable opportunity for a full and fair appeal of a claim denied by the Committee's designated representative.  Such an appeal shall be to the Committee to review the adverse determination under, among others, the following rules:    (1) the claimant shall have 180 days after receipt of the notification of the adverse benefit determination by the Committee's designated representative in which to appeal to the Committee; (2) the claimant shall have the opportunity to submit written comments, documents, records and other information relating to the claim for benefits; (3) the claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all information relevant to the claim for benefits; (4) the Committee shall take into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination by the Committee's designated representative; (5) the Committee's review shall not afford deference to the initial adverse benefit determination by its designated representative, and the designated representative, if a Committee member, shall not be permitted to vote on the claimant's appeal of the designated representative's prior benefit determination that was adverse to the appealing claimant; (6) if the appeal is of an adverse benefit determination that was based in whole or in part on a medical judgment (including determinations with regard to whether a particular treatment,

drug or other item is experimental investigational or not medically necessary or appropriate), the Committee shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment; (7) the Committee shall identify medical or vocational experts whose advice was obtained by its designated representative in connection with the adverse benefit determination, regardless of whether the advice was relied upon in making the adverse benefit determination; and (8) when the Committee consults with a health care professional under (6) above, such an individual shall neither be the same individual, nor the subordinate of the same individual, who was consulted in connection with the designated representative's adverse benefit determination that is being appealed.

**d.    Notification of Appeal Determination of Medical Benefit Claim for Emergency Treatment:**  As soon as possible, taking into account the medical exigencies, but not later than 72 hours after receipt of the claimant's appeal to the Committee for review of the adverse benefit determination regarding Medical Benefits for Emergency Treatment, the Committee shall notify the claimant of the Plan's final decision on the claim for such benefits.   The Committee shall provide a claimant with written notification of its determination on the claimant's appeal of the claim for Medical Benefits for Emergency Treatment.   In the case of an adverse benefit determination, the notification shall:   (1) set forth the specific reason or reasons for the adverse determination; (2) refer to the specific Plan provision on which the determination is based; (3) state that the claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all information relevant to the claim for benefits; (4) state the claimant's right to bring a civil action under section 502(a) of ERISA; (5) if an internal rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination, state that such rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination and that a copy of it will be provided free of charge to the claimant upon request; (6) if the adverse determination is based on a medical necessity or experimental treatment or similar exclusion or limit, state that an explanation of the scientific or clinical judgment for the determination, applying the Plan's terms to the Participant's medical circumstances, will be provided free of charge upon request; and (7) state:   "You and the Plan may have other alternative dispute resolution options, such as mediation.  One way to find out what may be available is to contact your local U.S. Department of Labor Office or the Plan Committee."

**5.    Claims for Medical Benefits for Approval-Required Treatment and for Regular Medical Treatment**

**a.    Decision on Claim for Benefits:**  Within a reasonable time appropriate to the medical circumstances, but not later than 15 days after the receipt of a claim for Medical Benefits for Approval-Required Treatment or than

Appendix p.23

30 days after the receipt of a claim for Medical Benefits for Regular Medical Treatment (unless special circumstances require an extension of time for processing the claim), the Committee's designated representative(s) shall notify the requesting Participant or his or her authorized representative (the "claimant") as to whether the claimant is entitled to the Medical Benefits.  If an extension of time for processing is required, written notice of the extension, of no more than 15 days, shall be furnished to the claimant prior to the termination of the initial, applicable 15-day or 30-day period.  Any written notice of a 15-day extension shall specify the special circumstances requiring the extension, the date by which a final decision shall be reached, specifically explain the standards on which entitlement to a benefit is based, set out the unresolved issues that prevent a decision on the claim, and identify any additional information needed to resolve those issues.  The Participant shall be afforded 45 days within which to provide the specified information.  If a 15-day extension is necessary due to the Participant's failure to submit information necessary to decide the claim, the period for making the benefit determination shall be tolled from the date the 15-day extension notice was sent until the date that the Participant responds to the request for the additional information.  The Committee's designated representative shall provide a claimant with written notification of any adverse benefit determination regarding Medical Benefits for Approval-Required Treatment and for Regular Medical Treatment.  The notification shall include the information described in items (1) through (6) of Section IV.D.4.b. above.

**b.   Appeal of Adverse Determination of Medical Benefit Claims for Approval-Required Treatment and Regular Medical Treatment:**  A claimant seeking Medical Benefits for Approval-Required Treatment or for Regular Medical Treatment shall have a reasonable opportunity for a full and fair appeal of a claim denied by the Committee's designated representative.  Such an appeal shall be to the Committee to review the adverse determination under, among others, the rules in Section IV.D.4.c. above.

**c.   Notification of Appeal Determination of Medical Benefit Claims for Approval-Required Treatment and for Regular Medical Treatment:**  Within a reasonable time appropriate to the medical circumstances, but not later than 30 days after the receipt of an appeal to the Committee of an adverse benefit determination regarding Medical Benefits for Approval-Required Treatment nor later than 60 days after the receipt of an appeal to the Committee of an adverse benefit determination regarding Medical Benefits for Regular Medical Treatment, the Committee shall notify the requesting claimant of the Plan's final decision on the claim for such benefits. The Committee shall provide a claimant with written notification of its determination on the claimant's appeal of the claim.  In the case of an adverse benefit determination, the notification shall include the information described in Section IV.D.4.d. above.

E.    **Claims Procedures for Disability Benefits**

**1.    Filing of Claim for Disability Benefits:**    A Participant or a Participant's authorized representative may "file" a claim for Disability Benefits by complying with the requirements of Section III, Paragraph A and submitting to any and all examinations required by the Committee.

**2.    Decision on Claim for Disability Benefits:**    Within a reasonable time, but not later than 45 days after the receipt of such claim (unless special circumstances require an extension of time for processing the claim), the Committee's designated representative(s) shall notify the requesting Participant or the Participant's authorized representative (the "claimant") as to whether the Participant is entitled to Disability Benefits.  If an extension of time for processing is required, written notice of the extension, of no more than 30 days, shall be furnished to the claimant prior to the termination of the initial 45-day period.  If, prior to the end of the first 30-day extension period, the Committee's designated representative determines that, due to matters beyond the control of the Plan, a decision cannot be rendered within that 30-day extension period, the period for making the determination on the claim for benefit(s) may be extended for an additional 30 days.  Any written notice of a 30-day extension shall specify the special circumstances requiring the extension, the date by which a final decision shall be reached, specifically explain the standards on which entitlement to a benefit is based, set out the unresolved issues that prevent a decision on the claim, and identify any additional information needed to resolve those issues.  The claimant shall be afforded at least 45 days within which to provide the specified information.  If a 30-day extension is necessary due to the claimant's failure to submit information necessary to decide the claim, the period for making the benefit determination shall be tolled from the date the 30-day extension notice was sent until the date that the claimant responds to the request for the additional information. The Committee's designated representative shall provide a claimant with written notification of any adverse benefit determination regarding Disability Benefits.  The notification shall include the information described in items (1) through (6) of Section IV.D.4.b. above.

**3.    Appeal of Adverse Disability Benefit Determinations:**    A claimant seeking Disability Benefits shall have a reasonable opportunity for a full and fair appeal of a claim denied by the Committee's designated representative.  Such an appeal shall be to the Committee to review the adverse determination under, among others, the rules in Section IV.D.4.c. above.

**4.    Decision on Appeal after Review by Committee:** Within a reasonable time, but not later than 45 days (unless special circumstances require an extension of time for processing the claim) after the receipt of the claimant's appeal to the Committee for review of the adverse benefit determination regarding Disability Benefits, the Committee shall notify the claimant of the Plan's final decision on the claim for such benefits.  If the Committee determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the

termination of the initial 45-day period, and such an extension shall not exceed a period of 45 days from the end of the initial 45-day period. The extension notice shall indicate the special circumstances requiring the extension and the date by which the Committee expects to render its determination on review. If the 45-day extension is necessary due to the claimant's failure to submit information necessary to decide the claim, the period for making the benefit determination shall be tolled from the date the 45-day extension notice was sent until the date that the claimant responds to the request for the additional information. The Committee shall provide a claimant with written notification of its Disability Benefit determination after its review of the claimant's appeal. In the case of an adverse benefit determination, the notification shall include the information described in Section IV.D.4.d. above.

**F.**   **Claims Procedures for Death, Burial and Dismemberment Benefits**

**1.**   **Filing a Claim:** A Participant (or Participant's Death Beneficiary, estate or authorized representative) may "file" a claim for Dismemberment Benefits, Death Benefits and/or Burial Benefits by complying with the requirements of Section III, Paragraph A and submitting to any and all examinations required by the Committee.

**2.**   **Decision on a Claim:** Within a reasonable time (but no later than 90 days, unless special circumstances exist) after receipt of a claim for Dismemberment, Death or Burial Benefits, the Committee's designated representative will notify the requesting Participant or his or her authorized representative (the "claimant") as to whether he or she is entitled to the Benefit. If an extension of time for processing is required, written notice of the extension, of no more than 90 days, will be given to the claimant before the end of the first 90-day period. The written notice will state the special circumstances requiring the extension and when a decision on the claim will be made. Even in special circumstances, a decision on a claim will be made within 180 days. The Committee's designated representative will notify the claimant in writing of any adverse decision regarding the Benefit sought. The notification will include the information described in items (1) through (4) of Section IV.D.4.b. above.

**3.**   **Appeal of Adverse Benefit Determination:** A claimant seeking Dismemberment Benefits, Death Benefits and/or Burial Benefits will have a reasonable opportunity for a full and fair appeal of an adverse benefit determination by the Committee's designated representative. Such an appeal is to the Committee to review the adverse determination. The claimant will have at least 60 days after receipt of the notification of the adverse benefit determination by the Committee's designated representative to appeal to the Committee. Rules (2) through (4) of Section IV.D.4.c will also apply.

**4.**   **Decision on Appeal:** The Committee's final decision on an appealed claim for Dismemberment Benefits, Death Benefits and/or Burial Benefits will be made within 60 days after the claimant submitted it in writing to the Committee (unless special

Appendix p.26

circumstances require an extension of time for processing the appeal).  The Committee will notify the claimant in writing of its decision on an appeal, again stating the reason or reasons for its decision and referencing the applicable Plan provisions.  If an extension of time for processing is required, written notice of the need for the extension will be provided to the claimant within 60 days of the appeal's receipt.  The notice of extension will state the special circumstances requiring the extension and when a decision on the claim will be made.  Even in special circumstances, a decision on an appeal will be made within 120 days.  The Committee will provide a claimant with written notification of its determination on the claimant's appeal of the claim.  In the case of an adverse benefit determination, the notification will include the information described in items (1) through (4) of Section IV.D.4.d. above.

# V.   <u>COORDINATION, ACCELERATION AND RECOVERY OF PLAN BENEFITS</u>

**A.    <u>Coordination of Benefits:</u>**  Payments of Plan benefits shall be reduced by any and all amounts paid to a Participant, or on his or her behalf, due to an Injury, including amounts as Social Security, Medicare or Medicaid benefits or under any state or federal workers' compensation act or similar law or under any other benefit plan or insurance contract or policy covering the Participant ("other sources of benefits").  Plan benefits, however, shall only be reduced to the extent necessary to prevent the total amount of all benefits (Plan benefits plus other sources of benefits) paid to a Participant, or on his or her behalf, from exceeding 100% of the Medical Expenses incurred by the Participant and 100% of the Participant's Pre-Disability Pay for any week in which Plan benefits are paid.  Benefits under this Plan are secondary to and excess of all other sources of benefits covering a Participant, such that all other sources of benefits pay in full before any benefits are paid under this Plan.  A Participant shall, upon request, provide the Committee copies (or provide an authorization to permit the Committee to obtain copies) of and information about any other sources of benefits potentially providing coverage for a Participant's injury, treatment or disability.

**B.    <u>Acceleration Of Benefits and Final Compromise and Settlement:</u>**  A Participant or Death Beneficiary may apply to the Committee for the accelerated payment of any benefits under Section II.  The Plan may grant or deny, in whole or in part, such application in accordance with such rules and procedures as the Committee may adopt. The Plan, a Participant, a Death Beneficiary, the Employer, and any other related parties may, at any time after an injury or death but before all benefits relating to such injury or death are paid, enter into a final compromise and settlement of any remaining benefits to be paid on account of the injury or death.

**C.    <u>Recovery of Plan Benefits</u>**

1.    If a Participant (or if the Participant's Death Beneficiaries, spouse, heirs, parents or legal representatives) seeks, becomes entitled to, or receives Plan benefits for any injury or death caused by the negligent or wrongful act or omission of any

Appendix p.27

person, entity or organization other than the Company, and is entitled to or recovers any damages or other compensation (in any form) on account of the injury or death, whether by insurance, litigation, arbitration, settlement or otherwise, the Participant (or his or her Death Beneficiaries, spouse, children, heirs, parents or legal representatives) shall:

a.    subrogate his or her right to and reimburse the Plan out of said damages or other compensation (including, if necessary, all such damages or other compensation received by the Participant including, without limitation, punitive or exemplary damages and any interest awarded and any portion awarded or paid to the Participant as attorneys' fees or to otherwise compensate the Participant's attorney for pursuing the claim against the person, entity or organization) to the full extent (i.e., 100%) of the Plan benefits paid to and on behalf of the Participant and without regard to whether said damages or other compensation fully compensate the Participant for his or her injuries and claims against the person, entity or organization, without regard to whether the Participant was able to recover the full amount of his or her claims against the person, entity or organization, and without regard to the nature of the damages or other compensation recovered by the Participant;

b.    execute any assignment, lien form or other document requested by the Committee to enable the Plan to recover such Plan benefits;

c.    not take any action which would prejudice the above rights of the Plan to subrogation and reimbursement;

d.    to cooperate in doing what is reasonably necessary to assist the Plan in any recovery; and

e.    to include in any liability claim against such a person or organization any benefits payable to or on behalf of the Participant under this Plan.

2.    A Participant, by participation in this Plan, agrees that his or her Death Beneficiaries, spouse, children, heirs, parents and legal representatives shall be obligated to comply with all of the Participant's obligations under this Paragraph with regard to any claim arising from an injury to or the death of the Participant, and the receipt and acceptance of all or part of a Death Benefit shall constitute agreement and acceptance by the accepting person or entity of all the terms and conditions of the Plan, including those of this Paragraph.

3.    The Plan may offset and withhold (in addition to other legal remedies it may have) future Plan benefits of any Participant who the Plan determines has either (a) failed to comply with the requirements of this Paragraph C, (b) received benefits based on fraudulent information, or (c) received benefits in excess of the Plan's provisions.

Appendix p.28

4.      Prior to filing or settling a lawsuit, arbitration or other proceeding against anyone (other than the Company or an Employer) for injuries to or the death of a Participant for which Plan benefits have been paid or may in the future be sought, a Participant (or the Participant's Death Beneficiaries, spouse, heirs, parents or legal representatives) shall provide the Committee prior notice of the intended filing or settlement. lawsuit, arbitration, proceeding, settlement discussion or mediation.  The Plan shall be entitled to intervene in the lawsuit, arbitration, proceeding, settlement discussion or mediation, and upon the request of the Committee, a Participant (or the Participant's Death Beneficiaries, spouse, heirs, parents or legal representatives) shall assign to the Plan the right to intervene in or institute any lawsuit, arbitration, proceeding, settlement discussion or mediation, and to do so in the Participant's name. The Participant (and the Participant's Death Beneficiaries, spouse, heirs, parents and legal representatives) shall fully cooperate with the Plan and its counsel in any such lawsuit, arbitration, proceeding, settlement discussion or mediation.

5.      The Plan shall have the right to assign any and all of its rights under this Paragraph to the Company or an Employer, which is the source for payment of benefits under this Plan.

## VI.  **<u>GENERAL PROVISIONS</u>**

**A.      <u>No Alienation of Plan Benefits</u>.**  Notwithstanding Section V, Paragraph B, none of the payments, benefits or rights of any Participant shall be subject to any claim of any creditor, and, in particular, to the fullest extent permitted by law, all such payments, benefits and rights shall be free from attachment, garnishment, trustee's process, or any other legal or equitable process available to any creditor of such Participant, except to the extent such rights are provided to the Plan (and its assignees) under Section V, Paragraph C.  No Participant shall have the right to transfer, alienate, pledge, encumber or assign, in whole or in part, either directly or by operation of law, any of the benefits or payments, contingent or otherwise, which he or she may expect to receive under this Plan.

**B.      <u>Termination and Amendment:</u>**      The Company may at any time amend or terminate this Plan, in whole or in part.  However, no amendment or termination shall reduce any Plan benefit then due a Participant (or Death Beneficiary or Participant's estate) on account of an Injury or death that occurred before the amendment or termination.  Any amendment or termination shall be effected pursuant to formal action of the Company's manager or managers. As a binding contract between a Participant and the Company, a Participant's Election And Arbitration Agreement can only be revoked or modified in accordance with its terms.

**C.      <u>Not an Employment Agreement:</u>** Neither this Plan, nor the Summary Plan Description, nor the Election And Arbitration Agreement shall be construed to create any contract of employment, express or implied.  Nor does this Plan, the Summary Plan Description or the Election And Arbitration Agreement in any way alter the at-will status

of an Employee's or Participant's at-will employment with the Company. The Company may terminate the employment of any at-will Employee or Participant at any time or modify an at-will Employee's or Participant's working relationship as desired for any or no reason, with or without cause, and as freely and with the same effect as if this Plan had never been established and the Summary Plan Description and Election And Arbitration Agreement never distributed.

**D.     This Document Controls:**  This document constitutes the entire Plan, and its text, rather than its titles and headings, controls.  No oral or written representation or promise concerning the Plan or Plan benefits that is not set forth in this document shall be binding on the Plan or the Company.  This document prevails over any contrary provision in the Plan's Summary Plan Description or in any other document.

**E.     Severability:**  If any provision of this Plan is determined to be void, invalid, unenforceable or contrary to law, in whole or in part, such determination shall not affect the validity or operation of the remainder of this Plan.

**F.     Applicable Law and Venue:**  This Plan shall be governed and construed in accordance with the provisions of ERISA, the Federal Arbitration Act, federal law in general, and, except where superseded by federal law, the laws of the State of Texas. Venue for any court proceeding relating in any way to this Plan shall be in the United States District Court for the Northern District of Texas, Dallas Division.

**G.     HIPAA Compliance:**  The Plan shall take reasonable steps to ensure the privacy of a Participant's Protected Health Information to the extent that the privacy requirements of the Health Insurance Portability and Accountability Act ("HIPAA") apply to health benefits provided under this Plan.

"Protected Health Information" ("PHI") includes any individually identifiable health information that is transmitted or maintained by the Plan, but does not include (1) individually identifiable health information contained in education records and employment records held by the Employer, or (2) "de-identified information", which is information that does not identify a particular Participant and there is no reasonable basis to believe that it can be used to do so.

The Plan shall give notice to Participants of (1) the Plan's uses and disclosures of PHI, (2) the Plan's rights and responsibilities with respect to PHI, and (3) their privacy rights with respect to PHI.  The form of notice shall be in substantially in the following form or in such modified form as may be necessary to comply with the privacy requirements of HIPAA.

**USES AND DISCLOSURES OF PROTECTED HEALTH INFORMATION**
The Plan may use and disclose your PHI in the following situations without first obtaining your written consent or authorization:

Appendix p.30

**Uses and Disclosures Directly to You**

Access to Your PHI - Upon your request, the Plan is required to give you access to certain PHI in order for you to inspect and copy it.

Accounting of Your PHI - Upon your request, the Plan is required to provide you with an accounting of certain disclosures of your PHI that the Plan has made.

**Treatment, Payment and Health Care Operations**

General Rule - The Plan may use or disclose your PHI in the following situations that relate to treatment, payment or health care operations:

- Treatment - The Plan may disclose your PHI to a doctor, hospital or other health care provider in order for you to receive medical treatment. "Treatment" includes the provision, coordination or management of health care and related services and includes, but is not limited to, consultations and referrals between one or more of your health care providers.

- Payment - The Plan may use your PHI and disclose your PHI to another health plan or health care provider in order to pay claims under the Plan.  For example, the Plan may tell a doctor whether you are eligible for coverage and whether the bill can be paid by the Plan. "Payment" activities also include things such as coverage determinations, billing, claims management, coordination of benefits, subrogation, plan reimbursement, reviews of medical necessity, utilization review and preauthorization.

- Plan's Health Care Operations - The Plan may use your PHI for the Plan's health care operations.  "Health Care Operations" includes (1) quality assessment and improvement, (2) reviewing qualifications of health care professionals, (3) underwriting, premium rating and other insurance activities relating to creating, renewing or replacing health insurance contracts (including excess loss insurance), (4) conducting or arranging for medical review, legal services and audit functions, including fraud and abuse detection, and compliance programs, (5) business planning and development, (6) business management activities, such as customer service, resolution of internal grievances, and due diligence activities related to the sale or transfer of assets to another entity, (7) creating de-identified health information in certain cases, and (8) contacting you to provide appointment reminders or information about treatment alternatives or other health-related benefits and services that may be of interest to you.

- Another Entity's Health Care Operations - The Plan may also disclose your PHI to another health plan or health care provider for the health care operations of the entity that receives the PHI, provided that each entity either has or had a relationship with you, the PHI pertains to this relationship and the disclosure is for (1) health care operations, or (2) health care fraud and abuse detection or compliance purposes.

**Uses and Disclosures to Plan Sponsor**

The Plan may disclose PHI to the Company in its capacity as the Plan's sponsor for the sole purpose of permitting the Company to perform plan administration functions that are consistent with the following rules:

**Uses and Disclosures of PHI**

- The Company shall use and disclose PHI provided by the Plan only to the extent that the use and disclosure is permitted or required under the HIPAA Privacy Rules;

- The Company shall not use or further disclose PHI other than as permitted or required by the plan documents for the Plan or as required by law;

- The Company shall require any agents, including a subcontractor to whom it provides PHI from the Plan, to agree to the same restrictions and conditions that apply to the Company with respect to PHI;

- The Company shall not use or disclose PHI from the Plan for employment-related actions and decisions or in connection with any other benefit of the Company;

- The Company shall report to the Plan any use or disclosure of PHI provided by the Plan that is inconsistent with the purpose for which the PHI was provided, once the Company becomes aware of such inconsistent use or disclosure;

- The Company shall provide you with access to your PHI in accordance with the HIPAA Privacy Rules;

- The Company shall make PHI available for amendment by you and shall incorporate any amendments made into your PHI;

- The Company shall make available to you information required in order to provide an accounting of any disclosures of your PHI made by the Plan, to extent that these disclosures must be accounted for under the HIPAA Privacy Rules;

- The Company shall make its internal practices, books, and records relating to the use and disclosure of PHI from the Plan available to the U.S. Department of Health and Human Services to determine Plan compliance with the HIPAA Privacy Rules;

- If feasible, the Company shall return or destroy all PHI received from the Plan that the Company still maintains in any form and shall retain no copies of such PHI when no longer needed for the purpose for which disclosure was made. However, if this return or destruction is not feasible, the Company shall limit further uses and disclosures of the PHI to those purposes that make the return or destruction of the PHI infeasible; and

- The Company shall ensure that adequate separation has been established between the Company, in its capacity as the Plan's sponsor, and the Plan.

Appendix p.32

**Separation Between Company and the Plan**
The Plan's designated Claims Administrator, the Plan's designated Committee members and their respective staff members that are designated to perform Plan functions shall be the only employees or other persons under the direct control of the Company that shall be given access to PHI for use and disclosure. Their access to and use of PHI shall be restricted to the Plan Administrator functions that the Company, in its capacity as plan sponsor, performs for the Plan. In the event that any of these persons fails to comply with the requirements of the HIPAA Privacy Rules, you may submit a complaint in writing to the Contact Person listed at the end of this Notice. However, the Plan may disclose to the Company as plan sponsor without complying with the requirements of this Section if the disclosure involves:

- PHI to the extent specified in a valid, written authorization from you;
- summary health information, if the Company requests summary health information for the limited purpose of (1) obtaining premium bids for insurance coverage related to the Plan, or (2) modifying, amending or terminating the Plan; or
- information on whether an individual is participating in the Plan.

**Uses and Disclosures Requiring An Opportunity for You to Agree or Object**
The Plan may use or disclose PHI in the following situations in which you have been informed in advance of the use or disclosure and have the opportunity to agree to, prohibit or restrict the use or disclosure in accordance with the HIPAA Privacy Rules:

- disclosure to your family member, other relative, or a close personal friend (or any person you identify) of PHI that is directly relevant to the person's involvement with your care or payment related to your care; or
- disclosure of PHI to notify, or assist in the notification of (including identifying or locating) your family member, a personal representative (or another person responsible for your care) of your location, general condition, or death.

**Requirements When You Are Present**
If you are present for, or otherwise available prior to, a use or disclosure specified above, the Plan must (1) obtain your agreement; (2) provide you with the opportunity to object to the disclosure and determine that you do not express an objection; or (3) reasonably infer from the circumstances, based on the exercise of professional judgment, that you do not object to the disclosure.

**Requirements When You Are Not Present**
If you are not present, or the opportunity to agree or object to the use or disclosure cannot practicably be provided because of your capacity or an emergency circumstance, the Plan may, in the exercise of professional judgment, determine (and make reasonable inferences as to) whether the disclosure is in your best interests and, if so, disclose only the PHI that is directly relevant to the person's involvement with your health care.

Appendix p.33

**Other Special Circumstances**

Required by Law - To the extent that the use or disclosure is required by law and complies with and is limited to the relevant requirements of the law. For example, the Plan must disclose your PHI when requested by the U.S. Department of Health and Human Services in order to investigate or determine whether the Plan is in compliance with HIPAA Privacy Rules.

Public Health - For public health activities, including disclosure to (1) a public health authority authorized by law to collect information to prevent or control disease or conduct public health surveillance, (2) a public health authority empowered by law to receive reports of child abuse or neglect, (3) under certain circumstances, a person subject to the jurisdiction of the U.S. Food and Drug Administration (FDA), (4) a person exposed to a communicable disease, or (5) in certain circumstances, an employer regarding workplace-related medical surveillance activities.

Public Safety - To an authorized government authority when the Plan reasonable believes that you are a victim of abuse, neglect or domestic violence, or the extent necessary to avert a serious and imminent threat to health and safety.

Health Oversight - For health oversight activities authorized by law, such as fraud or abuse audits, investigations and civil, administrative or criminal proceedings (unless the activity does not arise out of and is not directly related to the receipt of health care or qualification for public health benefits).

Judicial/Administration Proceedings – For judicial and administrative proceedings, such as responding to a court order, subpoena, discovery request or other lawful process, when certain conditions are met.

Law Enforcement - For law enforcement purposes to a law enforcement official, provided that the requesting party must satisfy certain HIPAA Privacy Rule requirements when PHI is to be disclosed for identification and location purposes.

Death - For certain uses and disclosures to coroners, medical examiners and funeral directors related to decedents, subject to the limitations of the HIPAA Privacy Rules.

Organ Donation - To organ procurement organizations, regarding cadaveric organs, eyes or tissue for donation purposes.

Research - For research purposes provided that an Institution Review Board or privacy board approves the waiver of individual authorization required under the HIPAA Privacy Rules and certain other conditions are met.

Military and National Security - For specialized government functions, such as separation or discharge from the military, to determine eligibility for veterans' health benefits, national security or lawful intelligence activities, or for protective services.

Appendix p.34

Workers' Compensation - To the extent necessary to comply with workers' compensation or other similar programs established by law.

## PLAN RIGHTS AND RESPONSIBILITIES

### Authorization

Except as otherwise indicated in this Notice, the Plan will only make uses and disclosures of your PHI with your valid, written authorization. You have the right to revoke this authorization at any time, provided that your revocation is made in writing to the Contact Person listed at the end of this Notice. Your revocation will not affect any use or disclosure permitted by your authorization while it was in effect. Such revocation may, however, impact the Plan's ability to investigate and pay your claim for benefits.

### Notice

The Plan is required by law to maintain the privacy of PHI and to provide you with this Notice of its legal duties and privacy practices with respect to PHI. The Plan is required to abide by the terms of the Notice currently in effect and shall not use or disclose PHI in a manner that is inconsistent with this Notice. However, the Plan reserves the right to change the terms of this Notice and to make the new Notice provisions effective for all PHI that it maintains. The Plan may provide this revised Notice by distributing amended benefit materials, by distributing a summary of material modifications to the Plan's SPD or by providing the Notice as a separate document.

### Minimum Necessary

When using or disclosing PHI or when requesting PHI, the Plan shall make reasonable efforts to limit PHI to the minimum necessary to accomplish the intended purpose of the use, disclosure or request. However, this minimum-necessary requirement shall not apply to:
- disclosures to or requests by a health care provider for treatment;
- permitted or required uses or disclosures made to you;
- uses or disclosures that are made in accordance with a valid written authorization from you;
- required disclosures made to the Department of Health and Human Services; and
- uses or disclosures that are otherwise required by law, including compliance with the HIPAA Privacy Rules.

### Agreed Restrictions

If you and the Plan agree to a restriction of your PHI, the Plan may not use or disclose PHI in violation of the restriction, except to the limited extent that the restricted PHI is needed to provide you with emergency care and the health care provider providing emergency care agrees not to further use or disclose the PHI. You and the Plan may not agree to restrictions with respect to:
- required disclosures to you, as specified under the HIPAA Privacy Rules; or
- uses and disclosures that are required or permitted under the HIPAA Privacy Rule without your authorization or agreement (See the Section of this Notice entitled "Other Special Circumstances").

Appendix p.35

## De-Identified Information

The Plan may use PHI to create information that is not individually identifiable health information ("de-identified information") or disclose PHI only to a Business Associate for that purpose, regardless of whether the Plan will use the de-identified information. The HIPAA Privacy Rules do not apply to de-identified information that meets the standard and implementation specifications of the HIPAA Privacy Rules, unless:

- the Plan discloses a code or other means of record identification that is designed to enable de-identified information to be re-identified; or
- the de-identified information is otherwise re-identified.

## Business Associates

A "Business Associate" is generally a third party that provides certain services to or on behalf of the Plan (such as claims administration services, billing, legal, actuarial, accounting, consulting, data aggregation, etc.) and the services involve the use or disclosure of PHI. The Plan may disclose PHI to a Business Associate and may allow a Business Associate to create or receive PHI on its behalf, if the Plan obtains satisfactory assurance that the Business Associate will appropriately safeguard the PHI. The Plan shall document these satisfactory assurances through a written contract or other written arrangement with the Business Associate and must ensure that these satisfactory assurances satisfy the HIPAA Privacy Rules that apply to Business Associate communications.  However, this requirement shall not apply:

- if the Plan discloses PHI to a health care provider concerning your treatment; and
- if the Plan discloses PHI to the Company in its capacity as plan sponsor for the Plan, provided that the Plan complies with the requirements for these disclosures (refer to the "Uses and Disclosures to Plan Sponsor" Section of this Notice).

## Personal Representatives

For purposes of using and disclosing PHI, the Plan must treat your personal representative as if it were you, in accordance with the HIPAA Privacy Rules. Your personal representative will be required to produce evidence of his/her authority to act on your behalf (for example, a court order of appointment or a notarized power of attorney) before that person will be given access to your PHI or allowed to take any action for you. The Plan retains discretion to deny access to your PHI to a personal representative.

## Other Uses and Disclosures

A Plan Participant may disclose PHI if the Participant is a "whistleblower" or victim of a crime, provided that these disclosures are made in accordance with the standards of the HIPAA Privacy Rules.

## **YOUR RIGHTS REGARDING PROTECTED HEALTH INFORMATION**

- Restrictions on PHI - You have the right to request restrictions on uses and disclosures of PHI to carry out treatment, payment or health care operations. However, the Plan is not required to agree to a restriction.

- Alternate Communications - You have the right to request that the Plan communicate PHI to you by alternative means or at alternative locations, if you clearly state that the disclosure of all or part of that information could endanger you. These requests must be reasonable and may be conditioned upon you providing, when appropriate, information as to how payment, if any, will be handled and specification of an alternative address or other method of contact.

- Access – You have the right to inspect and copy your PHI that the Plan maintains for "payment" activities as described in the Section of this Notice entitled "Treatment, Payment and Health Care Operations," subject to certain exceptions specified in the HIPAA Privacy Rules. If you request copies, the Plan may charge a reasonable fee for locating, copying and mailing your PHI to you.

- Amendments - You have the right to amend and make corrections to your PHI and any agreed upon amendment will be either attached to or included in your PHI records. However, your amendment request may be denied if the PHI subject to your request (1) was not created by the Plan, unless you provide a reasonable basis to believe that the originator of the PHI is no longer able to make your requested amendment; (2) is not part of your PHI that the Plan maintains for "payment" activities; or (3) is already accurate and complete.

- Accounting - You have the right to receive an accounting of disclosures of your PHI that were made by the Plan within the six (6) years prior to the date of your request, except for disclosures:

  - that apply to the treatment, payment and health care operations of the Plan;
  - that were made to you or that were made pursuant to a valid, written authorization;
  - that occurred prior to the Effective Date of this Notice;
  - as part of a limited data set, as provided under the HIPAA Privacy Rules;
  - for national security or intelligence purposes as provided by law;
  - to correctional institutions or other custodial law enforcement officials as permitted by the HIPAA Privacy Rules; or
  - incidental to a use or disclosure required or permitted by HIPAA Privacy Rules.

If you request more than one accounting within a 12-month period, the Plan will   charge a reasonable, cost-based fee for each subsequent accounting that you request.

Copy of This Notice - You have the right to obtain a paper copy of this Notice upon request, including individuals who agree to receive this Notice electronically.

Appendix p.37

Complaints - You may complain to the Plan or the Secretary of Health of Human Services if you believe that your privacy rights have been violated.   You will not be retaliated against for filing a complaint.

**Exercising Your Rights**
You or your personal representative may exercise any of your rights specified in this Section by submitting a written request to the Contact Person listed below. You will receive a response to your request within 30 days, subject to a 30-day extension. If your request is denied in whole or in part, the Plan shall provide you with a written denial that explains the basis for the denial. If you disagree with to denial of your request or complaint, you may provide to written statement to the Contact Person and/or take any further action provided in this Notice or by law.

**Contact Person**
For further information regarding privacy rights or this Notice, please contact Ms. Brittney Bearden at (800) 333-8419.

## VII. __DEFINED TERMS__

A.    "__Accident__" shall mean an event which:

      1.    was unforeseen, unplanned and unexpected by the Participant; and

      2.    occurred at a specifically identifiable time and place; and

      3.    occurred by chance or from unknown causes; and

      4.    resulted in physical injury to the Participant; and

      5.    arose out of the Participant's Scope Of Employment with his or her Employer; and

      6.    occurred after the Effective Date.

B.    "__Approval-Required Treatment__" shall mean a Medical Expense for any magnetic resonance imaging (MRI), computerized axial tomography (CAT) scan, surgical procedure, physical therapy, steroid injections, work hardening, Functional Capacity Evaluation, electromyogram (EMG), electroencephalogram (EEG), electrocardiogram (ECG/EKG), myleogram, hospitalization, or organ or tissue transplant provided by a Physician or at a Facility that is not Emergency Treatment.  Approval of the Committee or its designee is required prior to any Approval-Required Treatment in order for Medical Benefits to be paid for such a Medical Expense.

C.    "__Bodily Injury__" shall mean an identifiable physical injury, including resulting death, caused by an Accident that occurs after the Effective Date.  "Bodily Injury" does

# Appendix p.38

not include Occupational Disease or Cumulative Trauma unless it results directly from an Accident.

**D.**     **"Committee"** shall mean the persons appointed by the Company to administer the Plan for the Company.

**E.**     **"Company"** shall mean Renfro Industries, Inc.

**F.**     **"Cumulative Trauma"** shall mean damage to the physical structure of the Participant's body occurring as a result of repetitious, physically traumatic activities that occur in the Participant's Scope Of Employment with an Employer if, and only if, the Participant's last day of last exposure to the conditions causing or aggravating such damage took place after the Effective Date. "Cumulative Trauma" does not include Bodily Injury or Occupational Disease.

**G.**     **"Death Beneficiary"** and "Death Beneficiaries" shall mean the person(s) determined as follows:

    1.     If there is a Child and a Spouse, half of the Death Benefit shall be paid to the Spouse and the other half shall be divided and paid in equal shares to each Child.

    2.     If there is no Child, the entire Death Benefit shall be paid to the Spouse.

    3.     If there is no Spouse, the Death Benefit shall be divided and paid in equal shares to each Child.

    4.     If the Participant is not survived by a Spouse or Child, the Death Benefit shall be paid to a surviving dependent (as determined in the sole discretion of the Committee) of the Participant who is a parent, sibling, or grandparent of the deceased Participant.  If more than one of those dependents survives the Participant, the Death Benefit shall be divided among them in equal shares.

    5.     If the Participant is not survived by a Spouse, Child, or dependent who is a parent, sibling, or grandparent, the Death Benefit shall be paid to the deceased Participant's estate.

    6.     For purposes of this Paragraph only:

        a.     "Spouse" means the spouse of the deceased Participant at the time of the Participant's death (as established by marriage certificate, a court of competent jurisdiction, or such other means satisfactory to the Committee in its sole discretion).

        b.     "Child" means a surviving child of the deceased Participant, whether by blood, marriage, or legal adoption, so long as the child is less than 18 years of age, or enrolled as a full-time student in an accredited educational

Appendix p.39

institution and is less than 25 years of age, or because of a physical or mental handicap was a dependent (as determined in the sole discretion of the Committee) of the deceased Participant when he or she died.

**H.**     *"**Death, Burial and Dismemberment Benefit(s)**"* shall mean a benefit paid under Section II, Paragraph D.

**I.**     **"Disability Benefit(s)"** shall mean a benefit paid under Section II, Paragraph C.

**J.**     **"Disease"** shall mean a condition marked by a pronounced deviation from the normal healthy state or normal pregnancy of a Participant.

**K.**     **"Dismembering Injury"** shall mean an Injury for which a Dismemberment Benefit is payable under Section II, Paragraph D.

**L.**     **"Effective Date"** shall mean July 15, 2012.

**M.**     *"**Election And Arbitration Agreement**"* shall mean the written agreement, substantially in the form of Exhibit A attached hereto, and which incorporates by reference the provisions of Section I, Paragraph B (which is also set forth in Section IX of the Summary Plan Description), that an Employee is to sign as of the Effective Date in order to elect to be a Participant under this Plan.

**N.**     *"**Emergency Treatment**"* shall mean a Medical Expense not provided by a Physician or at a Facility because one is not reasonably available and because a Participant injured on the job has a medical condition that has suddenly, unexpectedly manifested itself, resulting in acute symptoms so severe that without immediate treatment (1) could seriously jeopardize the life or health of the Participant or the ability of the Participant to regain maximum function, or (2) in the opinion of a physician with knowledge of the Participant's medical condition, would subject the Participant to severe pain without the care or treatment.  Whether a Medical Benefits claim is for "Emergency Treatment" shall be determined either by the Committee's designee, who shall apply the judgment of a prudent layperson possessing an average knowledge of health and medicine, or by a physician with knowledge of the Participant's medical condition. Approval of the Committee or its designee is not required prior to any Emergency Treatment in order for Medical Benefits to be paid for such a Medical Expense.

**O.**     **"Employee"** shall mean:

1.     a person who is employed in an Employer's regular business and receives his or her pay on a regular basis by means of a salary, wage, or commission directly from an Employer and for whom the Employer files a W2 with the Internal Revenue Service; and

Appendix p.40

2.      a person (and any class of substantially similarly situated persons) determined to be an Employer's employee by a court of competent jurisdiction, by an arbitrator (where a sole arbitrator presides), or by an arbitration panel majority.

"Employee" does not include an independent contractor or third-party agent. "Employee" also does not include any employee of an Employer whose employment with the Employer is principally located outside the State of Texas.

P.      **"Employer"** shall mean the Company and any other entity that is a member of a control group (as defined by Section 3(40) of ERISA) that chooses to adopt this Plan for its Employees.

Q.      **"Facility"** shall mean a hospital or other medical care facility approved by the Committee.  The Committee reserves the right, at any time, to add to, delete from, or otherwise modify its list, if any, of approved Facilities.  No Facility is an agent of the Company, of the Plan, of an Employer, or of their agents.

R.      **"Gross Misconduct"** shall mean a Participant's "gross misconduct" as defined under Section 4980B of the current Internal Revenue Code.

S.      **"Hospital"** shall mean a Facility which:

1.      is licensed as a hospital (if required in its location); and

2.      is open at all times; and

3.      functions chiefly for the care and treatment of sick and injured persons as admitted in-patients; and

4.      has a staff of one or more licensed physicians present at all times; and

5.      provides 24-hour services of Nurses; and

6.      has on its premises, or available on a prearranged basis, organized facilities for diagnosis and major surgery.

An institution which provides for the care and treatment of mentally ill, emotionally ill or retarded persons, or persons confined for alcoholism or substance abuse may be considered a Hospital, whether or not it has organized facilities on the premises for major surgery, so long as it meets the rest of the requirements listed above.

T.      **"Injury"** shall mean Bodily Injury, Occupational Disease or Cumulative Trauma to the physical structure of the Participant's body incurred in the Scope of Employment with an Employer and sustained from an Occurrence on or after 12:01 a.m. on the

Effective Date.  Regardless of any other provision of this Plan, "Injury" shall <u>not</u> include, and this Plan will <u>not</u> pay benefits for, any of the following:

1.      Bodily Injury, Occupational Disease, Cumulative Trauma or other damage or injury occurring while the Participant would have been considered Legally Intoxicated;

2.      Bodily Injury, Occupational Disease, Cumulative Trauma or other damage or injury occurring while the Participant was under the influence of alcohol or any chemical substance not lawfully available or consumed in accordance with the Controlled Substances Act in force at the time and location of the Occurrence;

3.      any mental trauma, emotional distress, or similar injury to the mental or emotional state and which is not identifiable as damage or harm to the physical structure of the body, including, without limitation, any mental or emotional damage or harm that arises from a personnel action, including a transfer, promotion, demotion or termination of employment;

4.      Bodily Injury, Occupational Disease, Cumulative Trauma or other damage or injury that arose out of the Participant participating in horseplay, scuffling, fighting, or similar inappropriate behavior;

5.      Bodily Injury, Occupational Disease, Cumulative Trauma or other damage or injury that arose out of the Participant's participation in:

a.      an assault, except an assault committed in defense of an Employer's business or property;

b.      any illegal act; or

c.      service in the military of any country or any civilian non-combatant unit serving with such forces;

6.      an intentionally self-inflicted Bodily Injury, Occupational Disease, Cumulative Trauma or other damage or injury while either sane or insane, or Bodily Injury, Occupational Disease, Cumulative Trauma or other damage or injury intentionally caused or intentionally aggravated by any Employer or its owners, officers, directors, managers, supervisors or superintendents;

7.      Bodily Injury, Occupational Disease, Cumulative Trauma or other damage or injury that arose out of an act of a third person intended to injure the Participant because of personal reasons and not directed at the Participant as an Employee of or because of his or her employment by an Employer;

8.      a heart attack, unless the heart attack was proximately caused by and arose out of an Accident;

9.      Bodily Injury, Occupational Disease, Cumulative Trauma or other damage or injury that arose out of an act of the Participant's voluntary participation in any recreational, social or athletic activity not constituting part of the Participant's Scope Of Employment with an Employer;

10.      Bodily Injury, Occupational Disease, Cumulative Trauma or other damage or injury that arose out of an act of God, unless the Participant's employment with the Employer exposes such Participant to a greater risk of injury from an act of God than ordinarily applies to the general public;

11.      Bodily Injury, Occupational Disease, Cumulative Trauma or other damage or injury that is feigned or an attempt to defraud an Employer, the Plan, any other employee benefit plan or insurance policy provided by an Employer, or any agent, employee or representative of an Employer;

12.      Bodily Injury, Occupational Disease, Cumulative Trauma or other damage or injury resulting from, relating to or connected in any way with:

     a.      asbestos, asbestos fibers or asbestos products;

     b.      silicon, silica, silicate dust or silicosis, sand blasting;

     c.      mold, microbes or fungus,

     d.      the hazardous properties of Nuclear Material;

     e.      a sexually-transmitted disease, including Herpes, Syphilis and Gonorrhea;

     f.      psychiatric or emotional disease, distress or disorder;

     g.      pollution related sickness, disease or death; or

     h.      the ownership, operation, maintenance, use, loading or unloading, or entrustment to others of any aircraft owned or operated by or rented or loaned to the Company or an Employer.

13.      Bodily Injury, Occupational Disease, Cumulative Trauma, other damage or injury that arises from a pre-existing condition or pre-existing injury for which diagnosis, treatment or care, including prescription medication or medical advice, was recommended or received by the Participant within the six months immediately before the Participant was hired by an Employer;

Appendix p.43

14. Bodily Injury, Occupational Disease, Cumulative Trauma, other damage or injury, damages, fines, assessments or penalties resulting from, relating to or connected in any way with any of the following:

a. claims against an Employer for liability assumed under any contract or agreement, including representations, warranties or indemnities of any kind;

b. claims arising from the Participant's employment relationship with an Employer including, without limitation, claims for any type of employment discrimination, wrongful discharge, retaliatory discharge, coercion, sexual harassment, Americans with Disabilities Act claims, claims arising under the Texas Labor Code, and all other claims affecting or arising from the employment relationship whether arising under state or federal statutes or regulations or the common law;

c. claims or causes of action against an Employer under, or alleged or actual violations by an Employer of:  Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Civil Rights Act of 1866, the Age Discrimination in Employment Act, the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the Bankruptcy Code, the Texas Commission on Human Rights Act, the Texas Workers' Compensation Act, the Railway Labor Act, National Labor Relations Act, the Federal Employers Liability Act, the United States Longshore & Harbor Workers Compensation Act, the Jones Act, the Non-Appropriated Fund Instrumentalities Act, the Defense Bases Act, the Outer Continental Shelf Lands Act, the Federal Coal Mine Health and Safety Act of 1969, the Migrant and Seasonal Agricultural Worker Protection Act, or any other state or federal workers compensation law, occupational disease law, unemployment compensation law, disabilities benefits law, or other similar law, or any amendments to those laws; or

d. claims or causes of action against an Employer under, or alleged or actual violations by an Employer of:  any contract of employment, whether written, oral or implied; negligence; gross negligence; negligence per se; the duty of good faith and fair dealing; any non-competition agreements; tortious interference with contractual relations; infliction of emotional distress; negligent hiring (unless such negligent hiring otherwise results in an Injury); negligent promotion; negligent retention; assault or battery by an Employer or at its direction; defamation; invasion of privacy; false light publicity; misrepresentation; fraud; false imprisonment; false arrest; malicious prosecution; unreasonable search; retaliatory discharge; improper claim handling or the failure to pay or the delay in payment of benefits under this Plan, whether or not filed in conformance with ERISA; or

15. Bodily Injury, Occupational Disease, Cumulative Trauma or other damage or injury arising out of, directly or indirectly, contributed by, caused by, resulting from, or in connection with any of the following, regardless of any other cause or event, including

Appendix p.44

any action taken in controlling, preventing, suppressing, retaliating against or responding to:

      a.    war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, mutiny, revolution, rebellion, insurrection, uprising, military or usurped power, confiscation by order of any public authority or government de jure or de facto, martial law;

      b.    riots, strikes or civil commotion; or

      c.    any "act of terrorism," Which shall mean an activity that (1) involves a violent act or the unlawful use of force or an unlawful act dangerous to human life, tangible or intangible property or infrastructure, or a threat thereof; and (2) appears to be intended to (i) intimidate or coerce a civilian population; or (ii) disrupt any segment of the economy of a government de jure or de facto, state, or country, or (iii) overthrow, influence, or affect the conduct or policy of any government de jure or de facto by intimidation or coercion; or (iv) affect the conduct of a government de jure or de facto by mass destruction, assassination, kidnapping or hostage-taking.

**U.**    **"Legally Intoxicated"** shall mean either (1) the state of having an alcohol concentration as defined by the Texas Penal Code of 0.08 or more, or (2) not having the normal use of mental or physical faculties resulting from the voluntary introduction into the body of (a) an alcoholic beverage as defined by the Texas Alcoholic Beverage Code, (b) a controlled substance, controlled substance analogue, dangerous drug, an abusable glue or aerosol paint (as defined by the Texas Health and Safety Code), (c) a combination of two or more of the substances listed in (a) and/or (b), or (d) any other substance. "Legally Intoxicated" does not include the loss of normal use of mental or physical faculties resulting from the introduction into the body of a substance: (a) taken under and in accordance with a prescription written by a Physician, or (b) inhaled or absorbed incidental to employment with an Employer.

**V.**    **"Maximum Rehabilitative Capacity"** shall mean the point at which a Physician determines that a Participant who suffered an injury will not improve substantially as a result of additional medical treatment or physical therapy.

**W.**    **"Medical Benefit(s)"** shall mean a benefit paid under Section II, Paragraph B.

**X.**    **"Medical Expense"** shall mean an expense incurred by a Participant and paid by the Plan for medical or dental services, procedures or supplies, provided the expense is Medically Necessary, Usual And Customary and prescribed by a Physician acting within the scope of his or her license. "Medical Expense" shall include confinement within a Hospital or Skilled Nursing Facility and shall also include the cost of Medically Necessary supplies and ambulance hire. "Medical Expense" does not include expenses incurred for:

Appendix p.45

1.    biofeedback and other forms of self-care or self-help training or any related diagnostic testing;

2.    hypnosis or acupuncture;

3.    the purchase, rental or repair of environmental control devices including but not limited to air conditioners, humidifiers, dehumidifiers or air purifiers;

4.    services performed by a person who normally lives with the Participant, the spouse of the Participant, the parents of the Participant or the Participant's spouse, a child of the Participant or the Participant's spouse or a brother or sister of the Participant or of the Participant's spouse;

5.    any diagnostic or preventive procedure, treatment, service, supply or drug which is not Medically Necessary; or

6.    that part of any Medical Expense which is in excess of the Usual And Customary fee for it.

**Y.    "Medically Necessary"** shall mean medical services, procedures or supplies which are:

1.    required, recognized and professionally accepted nationally by Physicians as the usual, customary and effective means of diagnosing or treating the condition; and

2.    the most economical supplies or levels of service that are appropriate and available for the safe and effective treatment of the Participant; and

3.    not primarily for the convenience of the Participant, the Participant's family or the Participant's Physician or other provider of medical services, supplies or procedures.

Even if the service, supply or procedure is Medically Necessary, this Plan will not cover services, procedures or supplies excluded by any condition, exclusion or definition in this Plan.

**Z.    "Nuclear Material"** shall mean source material, special nuclear material or by-product material.

**AA.    "Nurse"** shall mean a Registered Nurse (R.N.); Licensed Practical Nurse (LPN); Licensed Vocational Nurse (LVN) or, person currently licensed in the state in which the service was performed, practicing within the scope of such license.

Appendix p.46

**BB.** **"Occupational Disease"** shall mean a Disease arising out of a Participant's assigned duties in his or her Scope Of Employment with an Employer which causes damage or harm to the physical structure of the body if, and only if, the Participant's last day of last exposure to the conditions causing or aggravating such damage or harm took place after the Effective Date. "Occupational Disease" includes other Diseases or infections that naturally result from the work-related Disease.  "Occupational Disease" does not include ordinary Diseases of life to which the general public is exposed outside of a Participant's assigned duties in his or her Scope Of Employment with an Employer or a Disease resulting directly from an Accident.

**CC.** **"Occurrence"** shall mean an Accident or series of Accidents arising out of one event or incident after the Effective Date.   As respects Occupational Disease or Cumulative Trauma, "Occurrence" means the Participant's last day of last exposure, after the Effective Date, to the conditions causing or aggravating such Occupational Disease or Cumulative Trauma.

**DD.** **"Participant"** shall mean an Employee who satisfies all of the eligibility requirements of Section I.

**EE.** **"Physician"** shall mean a duly qualified physician who is legally licensed to practice medicine in the state where the service is performed and approved by the Committee.   "Physician" does not include the Participant, a member of his or her immediate family, or a person normally residing in the Participant's home.   The Committee reserves the right, at any time, to add to, delete from, or otherwise modify its list, if any, of approved Physicians.  No Physician is an agent of the Company, of the Plan, of an Employer, or of their agents.

**FF.** **"Plan"** shall mean this Renfro Industries, Inc. Employee Injury Benefit Plan.

**GG.** **"Plan Administrator"** shall mean, as of the Effective Date, the Company, and the Company is also designated, in accordance with ERISA, as the Plan's "Named Fiduciary."

**HH.** **"Plan Year"** shall mean the period from January 1 to December 31.

**II.** **"Pre-Disability Pay"** shall mean --

    1.     for a Participant paid an hourly wage by the Company (or an Employer), the Participant's average regular hourly rate of pay for no more than forty (40) hours per week for the six consecutive weeks immediately before he or she became Totally Disabled, but if an hourly Participant has not worked for the Company (or an Employer) for six weeks or his or her rate of pay cannot otherwise be reasonably determined by the Committee (in its sole discretion), then the six-week average weekly rate of pay

Appendix p.47

shall be based on the rate of pay of a similar Employee, as determined by the Committee in its sole discretion;

2.      for a Participant paid a salary by the Company (or an Employer), the Participant's total regular weekly salary on the date he or she became Totally Disabled (in turn divided by forty (40) hours per week, regardless of the number of hours normally worked by the salaried Participant in a week, to determine hourly rate of pay);

3.      for a Participant paid by commission by the Company (or an Employer), the Participant's average weekly commissions for the six consecutive weeks immediately before he or she became Totally Disabled, but if a commission-paid Participant has not worked for the Company (or an Employer) for six weeks or his or her rate of pay cannot otherwise be reasonably determined by the Committee (in its sole discretion), then the six-week average weekly rate of pay shall be based on the rate of pay of a similar Employee, as determined by the Committee in its sole discretion.

4.      "Pre-Disability Pay" is calculated using the appropriate foregoing weekly rate of pay and corresponding hourly rate of pay, is paid to a Totally Disabled Participant on a weekly basis, and excludes any overtime, bonuses, benefits or other extraordinary remuneration.      "Pre-Disability Pay" shall include a Participant's contributions made in the form of an authorized salary reduction, which are diverted by the Participant for payment, by the Employer, into a savings plan such as Salary Reduction Plans, Cafeteria Plans or Flexible Benefit Plans.

**JJ.   "Regular Medical Treatment"** shall mean a Medical Expense provided by a Physician or at a Facility that is neither Emergency Treatment nor Approval-Required Treatment.   So long as provided by a Physician or at a Facility, approval of the Committee or its designee is not required prior to any Regular Medical Treatment in order for Medical Benefits to be paid for such a Medical Expense.

**KK.   "Scope Of Employment"** shall mean an activity of any kind or character that has to do with and originates in the Employer's work, business, trade or profession and that is performed by a Participant while engaged in or about the furtherance of the Employer's business including activities conducted on the Employer's premises or at other locations.   "Scope Of Employment" does not include a Participant's commuting between his or her home and his or her place of employment, under any circumstances.

**LL.   "Skilled Nursing Facility"** shall mean a section, ward or wing of a Hospital**,** or a freestanding healthcare Facility, which:

1.      provides room and board; and

2.      provides nursing care by or under the supervision of a Nurse; and

3.      provides physical, occupational and speech therapy furnished by the facility or by others under arrangements made by the facility; and

Appendix p.48

4.      provides medical social services; and

5.      provides drugs, biologicals, supplies, appliances and equipment ordinarily furnished for use in a such a facility; and

6.      provides medical services by staff Physicians; and

7.      has an agreement with a Hospital for diagnostic and therapeutic services, the transfer of patients and exchange of clinical records; and

8.      provides other services necessary to the health and care of patients that are generally provided by such facilities; and

9.      is licensed or registered in accordance with local and state laws and regulations.

**MM.  "Total Benefits Limit"** shall mean:

1.      that the total of all Medical Benefits, Disability Benefits, Dismemberment Benefits, Burial Benefits and Death Benefits paid under this Plan to or for any one Participant as the result of any one Occurrence shall not exceed the sum of $250,000, and

2.      that the total of all Medical Benefits, Disability Benefits, Dismemberment Benefits, Burial Benefits and Death Benefits paid under this Plan to or for all Participants as the result of any one Occurrence shall not exceed the sum of $2,000,000, and

3.      that the total of all Medical Benefits, Disability Benefits, Dismemberment Benefits, Burial Benefits and Death Benefits paid under this Plan to or for all Participants as the result of all Occurrences during any calendar year shall not exceed the sum of $10,000,000.

**NN.  "Total Disability"** shall mean a medically demonstrable anatomical or physiological abnormality which, within 90 days of the Occurrence, causes:

1.      the Participant to be unable to perform the normal duties for which he or she was employed; and

2.      the Participant to be under the regular care of a Physician; and

3.      the Participant to be unable to engage in any other occupation for wage or profit.

A Participant who is "Totally Disabled" is a Participant who has a "Total Disability."

Appendix p.49

**OO.** *"Treating Physician"* shall mean the Physician who is, at any particular time, the current Physician who has the Participant under his or her care and who is primarily responsible for the Participant's course of medical treatment or physical rehabilitation. No Treating Physician is an agent of the Company, of the Plan, of an Employer, or of their agents.

**PP.** **"Usual And Customary"** shall mean that the expense is:

1.      usual when it is the fee regularly charged (and which the patient is responsible to pay) in the absence of insurance or other third party reimbursement, by a health care provider or physician for a given treatment, service or supply; and

2.      customary in relation to what other physicians and health care providers in the same geographic area charge for the same and similar treatment, service or supply.

"Usual And Customary" shall generally be the then-current medical, hospital and other fee guidelines promulgated by the Texas Department of Insurance's Division of Workers' Compensation.

Signed at Terrell, Texas, to be effective as of the Effective Date.

**Renfro Industries, Inc.**


By: _____
        (Officer's Name and Title)

Appendix p.50

# ELECTION AND ARBITRATION AGREEMENT

By signing this Election and Arbitration Agreement (hereinafter "Agreement"), I, the undersigned employee, voluntarily elect to participate in the Renfro Industries, Inc. Employee Injury Benefit Plan (hereinafter the "Plan") and agree with Renfro Industries, Inc. (hereinafter "the Company") to the following:

**ENROLLMENT IN THE PLAN:**  I understand that the Company, as expressly permitted by Texas law, does not carry workers' compensation insurance for its Texas employees, that it is a "nonsubscriber" under the Texas Workers' Compensation Act (hereinafter the "Act"), that it is not required as a nonsubscriber to provide any benefits whatsoever for on-the-job injuries, that it has instead voluntarily established the Plan under federal law to provide certain benefits for on-the-job injuries, and that the Plan is not workers' compensation insurance.

I understand that if I am injured on the job, I am, by signing and agreeing to this Agreement, eligible under the Plan's terms for the medical, disability, death, burial and dismemberment benefits described in the Plan and summarized in the Summary Plan Description.  I understand that if I reject this Agreement, I will not be eligible for Plan Benefits.

I understand and agree that the Plan's benefits are not workers' compensation benefits, but are provided without regard to my own fault or negligence, without the necessity of me initiating a lawsuit or arbitration, and without me proving that the Company (or one of its employees) was negligent in causing my injury (or death).

I have received a copy of the Summary Plan Description of the Plan.  I understand and agree that, if I am injured on the job, I will follow the rules and procedures described in the Summary Plan Description.

**MUTUAL PROMISES TO RESOLVE CLAIMS BY BINDING ARBITRATION:**   I recognize that disputes may arise between the Company and me during or after my employment.  I agree with the Company to submit any and all such disputes to binding arbitration.

**I acknowledge and understand that by signing this Agreement I am giving up the right to a jury trial on all of the claims covered by this Agreement** in exchange for eligibility for the Plan's medical, disability, dismemberment, death and burial benefits and in anticipation of gaining the benefits of a speedy, impartial, mutually-binding procedure for resolving disputes.

**This agreement to resolve claims by arbitration mutually binds and benefits both me (and my spouse, minor children, heirs, parents and legal representatives) and the Company (and its successors, subsidiaries and affiliates, and all of their managers, members, officers, directors, shareholders, partners, owners,**

Appendix p.51

**employees, agents and landlords and the Plan and its administrators and fiduciaries).**

**EXAMPLES OF CLAIMS SUBJECT TO ARBITRATION:**   Examples of claims and disputes covered by this Agreement include, but are not limited to:

(a) all claims and disputes that I (and my spouse, minor children, heirs, parents and legal representatives, if any) may now have or may in the future have against the Company or against its successors, subsidiaries and affiliates or any of their officers, directors, shareholders, members, partners, owners, employees and agents, or against the Plan or its administrators and fiduciaries, and
(b) all claims and disputes that the Company or its successors, subsidiaries and affiliates or any of their officers, directors, shareholders, members, partners, owners or the Plan may now have or may in the future have against me (and my spouse, minor children, heirs, parents and legal representatives, if any).

Examples of the types of claims covered by this Agreement include, but are not limited to, any and all:

- claims for wages or other compensation;
- claims for breach of any contract, covenant or warranty (express or implied);
- tort claims, including negligence, negligence per se and gross negligence claims (including claims for personal or bodily injury or physical, mental or psychological injury, without regard to whether or not such injury was sustained on the job);
- claims for wrongful termination (including retaliation claims under Chapter 451 of the Texas Labor Code);
- claims of harassment or discrimination (including claims based on race, sex, religion, national origin, age, medical condition or disability);
- claims for benefits under the Plan (after exhausting administrative remedies under the terms of the Plan);
- claims for a violation of any other federal, state or other governmental law, statute, regulation or ordinance; and
- **claims challenging the existence, validity or enforceability of this Agreement (in whole or in part) or challenging the applicability of this Agreement to a particular dispute or claim.**

**CLAIMS NOT SUBJECT TO ARBITRATION:** The following matters only are not covered by this Agreement:  (a) any criminal complaint or proceedings, and (b) claims before administrative agencies for unemployment benefits.

**COMPLETE AGREEMENT:**  The Arbitration Procedures in Section IX of the Summary Plan Description (and also in Section I, Paragraph B of the Plan) are incorporated by reference into, and made part of, this Agreement the same as if they were all written here.  This Agreement, together with the incorporated Arbitration Procedures in Section IX of the Summary Plan Description, is the complete agreement between the Company and me.  It takes the place of any other oral understanding about arbitration, but other

Appendix p.52

written agreements, policies or procedures may also require me to arbitrate any disputes that I may have with the Company.

I am not relying on any statements, oral or written, on the subject, effect, enforceability or meaning of this Agreement, except as specifically stated in this Agreement.  If any provision of this Agreement is determined to be void or otherwise unenforceable, in whole or in part, such determination shall not affect the validity of the remainder of this Agreement.

**NOT AN EMPLOYMENT AGREEMENT:**   Neither this Agreement, the Plan nor the Summary Plan Description shall ever be construed to create any contract of employment, express or implied.  Nor does this Agreement, the Plan or the Summary Plan Description in any way alter the at-will status of my employment.

**RATIFICATION BY RECEIPT OF PLAN BENEFITS:**  I agree that each and every time that I receive Plan benefits, or have Plan benefits paid to a medical provider on my behalf, I ratify and reaffirm this Agreement the same as if I had signed this Agreement again on the date the benefits were paid.

**REQUIREMENTS FOR MODIFICATION OR REVOCATION:**   This Agreement will survive the termination of my employment.  This Agreement can only be revoked (except as provided in the paragraph below) or modified by a writing signed by both me and the Company's authorized representative that specifically states an intent to revoke or modify this Agreement, and this requirement of a signed writing cannot itself be waived except by such a signed writing.

**REVOCATION OF ACCEPTANCE:** If, after accepting this Agreement by signing below, I decide to revoke my acceptance of this Agreement, I may do so only by notifying the Company in writing by certified mail, return receipt requested, of my revocation.  I understand and agree that I may not revoke my acceptance of this Agreement if the Plan has paid (or become obligated to pay) benefits to or for me.  I understand and agree that I may only revoke my acceptance of this Agreement:  (a) within five (5) calendar days after the date of my signature below, or (b) within five (5) calendar days after receiving written notice of a material reduction in benefits provided by the Plan.

**VOLUNTARY AGREEMENT:**  I acknowledge and agree that I have carefully read this Agreement, that I understand its terms, and that I have entered into this Agreement voluntarily and without duress, pressure or coercion from any person and without relying on any promises or representations by the Company other than those contained in this Agreement itself.  I am not under the influence of alcohol or any other impairing substance, nor am I under any mental incapacity that would affect me at the time of signing this Agreement.  I am aware of the consequences of signing this Agreement and, to the extent that I deem necessary, I have consulted or will consult with an attorney.  Finally, I agree and acknowledge that signing this Agreement is **not** a condition of my employment.

Appendix p.53

# CHECK ONLY <u>ONE</u> OF THE FOLLOWING BOXES:

☐ I <u>agree</u> to the terms of this Agreement.   **OR**   ☐ I <u>reject</u> the terms of this Agreement.

_____          _____

**Signature Of Employee**                                                     **Date**

_____

**Name Of Employee Printed**

_____          _____

**Witness Signature**                                      **Witness Signature**

_____          _____

**Printed Name of Witness**                              **Printed Name of Witness**

**Accepted and Agreed:**   *Renfro Industries, Inc.*

# Appendix p.54

# RENFRO INDUSTRIES, INC.
# EMPLOYEE INJURY BENEFIT PLAN
# SUMMARY PLAN DESCRIPTION

## I.   GENERAL INFORMATION

Renfro Industries, Inc. (hereinafter simply "the Company") has rejected coverage for its Texas employees under the Texas Workers' Compensation Act, become a "nonsubscriber" to that Act, and does not provide workers' compensation insurance benefits to Texas employees.  Rather, the Company has voluntarily established an occupational injury benefit plan (the "Plan") under federal law.  The Plan is an employee group health and disability welfare benefit plan under the federal Employee Retirement Income Security Act of 1974 ("ERISA").  The Company is the Plan Administrator.

Generally, under the Plan, necessary medical treatment expenses are provided to participating employees for accidental, work-related, on-the-job injuries, and under certain conditions disability, dismemberment, burial and death benefits will be paid.  The Plan pays these benefits without regard to the participating employee's fault or negligence and without the necessity of the participating employee proving that the Company or its employee was negligent.  The Company pays the entire cost to provide benefits under, and to operate, the Plan.  Employees participating in the Plan make no payments or payroll deductions to be eligible for Plan benefits and pay no deductibles or co-pay amounts.

This Summary is intended to briefly describe the principal provisions of the Plan.  Please read it carefully.  A complete copy of the Plan document is on file for any eligible Employee desiring more detailed information.  If a question should arise concerning the Plan, the Plan document (and not this Summary) shall govern and determine a Participant's rights.  Capitalized terms used in this Summary are defined in the Plan.

The Plan described in this Summary applies to on-the-job injuries sustained on or after the "Effective Date," **July 15, 2012**.  The Company does not carry Texas Workers' Compensation Insurance, and the Plan does not constitute workers' compensation insurance coverage.  See Exhibit "B" attached hereto.

## II.   ELIGIBILITY AND PARTICIPATION:  ELECTION AND ARBITRATION AGREEMENT

Every Texas Employee of the Company is **eligible** to participate in the Plan.  In order actually to **participate** in the Plan, however, an Employee hired on or after the Effective Date must make a written election to become a **Participant** in the Plan by executing and agreeing to the terms of an "Election and Arbitration Agreement"  in the form attached to this Summary as Exhibit "A".  The "Arbitration Procedures" of Section IX of this Summary are incorporated by reference into the Election and Arbitration Agreement, so **please read it and the Election and Arbitration Agreement carefully.**

Appendix p.55

**The Election and Arbitration Agreement involves the waiver and release of certain legal rights of a Participant.**

By executing and agreeing to the Election and Arbitration Agreement, a Participant agrees to submit to binding arbitration all disputes or differences that may arise between the Participant and the Company (or one of its affiliates) during or after the Participant's employment with the Company, whether or not such dispute is related to the Participant's employment with the Company.  **A Participant waives, releases and gives up any rights that the Participant has to sue in court and to have a jury determine a dispute.**  All claims and disputes that a Participant (or his or her spouse, minor children, heirs, parents and legal representatives) has or may have in the future against the Company and/or its successors, officers, directors, owners, shareholders, members, managers, employees, agents, affiliates or benefit plans (including this Plan) and such plans' administrators and fiduciaries, and these persons' and entities' claims and disputes against the Participant are subject to binding arbitration under the terms of the Election and Arbitration Agreement.

## III.   HOW A PARTICIPANT OBTAINS BENEFITS

### A.   <u>What to Do If You Are Injured</u>

- In order to receive Plan benefits, an employee must be a Participant in the Plan.

- A Participant must notify his or her supervisor in writing, on forms provided by the Company, immediately after being injured on the job as the result of any type of **accident or event** (regardless of whether it is an Accident as defined by the Plan), <u>even if the injury appears minor</u>.  **This notice must be provided no later than the <u>end of the Participant's work shift</u> on the day of the accident or event.   No benefits will be payable under the Plan if this notice is not provided.**

- A Participant must notify his or her supervisor in writing, on forms provided by the Company, immediately after experiencing **injury, pain, a bodily problem, physical condition, disease or cumulative trauma** sustained on the job (regardless of whether it is a Bodily Injury, Occupational Disease or Cumulative Trauma as defined by the Plan), <u>even if the injury, pain, problem, condition, disease or trauma appears minor</u>.  **This notice must be provided no later than the <u>30th day</u> after the date on which the Participant knew or should have known that the injury, pain, problem, condition, disease or trauma may be related to the Participant's employment with the Company.  No benefits will be paid under this Plan if notice of an injury, pain, bodily problem, physical condition, disease or cumulative trauma is not provided in writing within 24 months from the date it occurred.**

Appendix p.56

- An injured Participant and his or her supervisor must complete an injury report form, file written statements and provide such other information as required by the Committee.

- If necessary, the supervisor will assist in arranging for medical treatment.

- A Participant will be required to submit to drug and alcohol testing.

- A Participant will receive medical care only from a **Physician or Facility approved by the Committee appointed to administer the Plan.**

- An unapproved physician or facility may be used **only** for **"Emergency Treatment,"** defined as a Medical Expense not provided by an approved Physician or Facility because one is not reasonably available and because a Participant injured on the job has a medical condition that has suddenly, unexpectedly manifested itself, resulting in acute symptoms so severe that without immediate treatment: (1) could seriously jeopardize the life or health of the Participant or his or her ability to regain maximum function, or (2) in the opinion of a physician with knowledge of the Participant's medical condition, would subject the Participant to severe pain without the care or treatment.

- Whether a Medical Benefits claim is for "Emergency Treatment" is determined either by the Committee's designee, or by a physician with knowledge of the Participant's medical condition.

- Approval of the Committee or its designee is not required prior to any Emergency Treatment in order for Medical Benefits to be paid for such a Medical Expense, but **an injured Participant must notify the Plan Administrator within 24 hours after receiving Emergency Treatment.**

## B.   Approved Physicians and Facilities

As described above, except for "Emergency Treatment," all medical care must be provided by "Physicians" or "Facilities" approved by the Committee appointed by the Company to administer the Plan.  The capitalized terms **"Physician"** and **"Facility"** have the following meanings when used in this Summary:

- **Facility** -- a hospital or other medical care facility that is either pre-approved by the Committee or otherwise approved in writing by the Committee upon the request of a Participant.  **No Facility is an agent of the Company.**

- **Physician** -- a duly qualified Physician who is legally licensed to practice medicine in the state where the service is performed and either pre-approved by the Committee or otherwise approved in writing by the Committee upon the request of a Participant.  **No Physician is an agent of the Company.**

Appendix p.57

Plan benefits are conditioned upon the use of only approved Physicians and Facilities, and Plan benefits can be suspended or terminated if unapproved healthcare providers are used.   However, every Employee of the Company and every Plan Participant remains entitled **to forsake Plan benefits** and seek any medical care he or she deems appropriate from any provider of his or her choice **at his or her own expense.**

Because Physicians and Facilities are approved on an as-needed, case-by-case basis, no actual list of approved Physicians and Facilities exists.  If such a list is created by or at the direction of the Committee, a copy will be provided without charge.

## IV.   INJURIES:  WHAT IS COVERED AND WHAT IS NOT

The Plan provides benefits to a Participant with respect to a wide range of Injuries sustained in the Participant's Scope Of Employment with the Company.  Subject to the limitations and exclusions described briefly in this Summary (and described completely in the Plan), a Participant may be entitled to receive free medical attention for an Injury. If a Participant becomes Totally Disabled due to an Injury, he or she may be entitled to Disability or Dismemberment Benefits under the Plan.   If an Injury results in a Participant's death, his or her Death Beneficiary may receive a Death Benefit and Burial Benefit under the Plan.

### A.   Covered Injuries

The Plan pays benefits for any Injury (including Bodily Injury, Cumulative Trauma and Occupational Disease) to the physical structure of the Participant's body incurred in his or her Scope Of Employment with the Company that is caused by an Accident or series of Accidents occurring on or after the Effective Date stated on page 1 of this Summary.

An **"Accident"** is an event which was unforeseen, unplanned and unexpected by the Participant that occurred at a specifically identifiable time and place by chance or from unknown causes and that resulted in physical injury to the Participant, who at the time is acting within his or her Scope Of Employment with the Company, as further described in the Plan document.

**"Bodily Injury"** is an identifiable physical injury, including resulting death, caused by an Accident that occurred after the Effective Date.   "Bodily Injury" does not include Cumulative Trauma or Occupational Disease unless it results directly from an Accident. As further described in the Plan document, **"Cumulative Trauma"** is damage to the physical structure of the Participant's body occurring as a result of repetitious, physically traumatic activities that occur in the Participant's Scope Of Employment with the Company if, and only if, the Participant's last day of last exposure to the conditions causing or aggravating such damage took place after the Effective Date.

As further described in the Plan document, **"Occupational Disease"** is a disease (but not including ordinary diseases of life to which the general public is exposed) arising out of a Participant's assigned duties in his or her Scope Of Employment with the Company which causes damage or harm to the physical structure of the body if, and only if, the

Appendix p.58

Participant's last day of last exposure to the conditions causing or aggravating such damage or harm took place after the Effective Date.

**"Scope Of Employment"** is an activity of any kind or character that has to do with and originates in the Company's work, business, trade or profession and that is performed by a Participant while engaged in or about the furtherance of the Company's business, including activities conducted on the Company's premises or at other locations.   "Scope Of Employment" does not include, under any circumstances, a Participant's commuting between his or her home and place of employment.

## B.   Excluded Injuries

The term **"Injury"** as used in this Summary and in the Plan, does not include, and no benefits will be payable for:

• any injury occurring while the Participant would have been considered "intoxicated"  under the Texas Penal Code or under the influence of alcohol or any illegal drug or substance;

• any mental trauma, emotional distress, or similar injury which is not identifiable as damage or harm to the physical structure of the body, including without limitation, any mental or emotional damage or harm that arises primarily from a legitimate personnel action, including a transfer, promotion, demotion or termination of employment;

• any injury arising out of the Participant participating in horseplay, scuffling, fighting or similar inappropriate behavior;

• any injury arising out of the Participant participating in an assault (except an assault committed in defense of the Company's business or property), any illegal act, or service in the military or in any civilian non-combatant unit serving with such forces;

• any self-inflicted or intentionally caused or aggravated injury;

• any injury arising out of an act of a third person intended to injure the Participant because of personal reasons and not directed at the Participant as an employee of or because of his or her employment by the Company;

• a heart attack, unless proximately caused by and arising out of an Accident;

• any injury arising out of voluntary participation in an off-duty recreational, social or athletic activity not constituting part of the Participant's Scope Of Employment with the Company;

• any injury arising out of an act of God, unless the employment with the Company exposes the Participant to a greater risk of Injury from an act of God than ordinarily applies to the general public;

# Appendix p.59

- any injury that is feigned or an attempt to defraud the Company, the Plan, any other employee benefit plan or insurance policy provided by the Company, or any agent, employee or representative of the Company;

- any injury resulting from, relating to or connected in any way with asbestos, asbestos fibers or asbestos products, silicon, silica, silicate dust or silicosis, sand blasting; mold, microbes or fungus, the hazardous properties of Nuclear Material, a sexually-transmitted disease, psychiatric or emotional disease, distress or disorder, pollution related sickness, disease or death, or the ownership, operation, maintenance, use, loading or unloading, or entrustment to others of any aircraft owned or operated by or rented or loaned to the Company or an Employer;

- any injury that arises from a pre-existing condition or pre-existing injury for which diagnosis, treatment or care, including prescription medication or medical advice, was recommended or received by the Participant within the six months immediately before the Participant was hired by an Employer;

- any injury, damages, fines, assessments or penalties resulting from, relating to or connected in any way with claims:  (1) against the Company for liability assumed under any contract, agreement, representation, warranty or indemnity of any kind; (2) arising from the Participant's employment relationship with the Company (such as employment discrimination, wrongful discharge, sexual harassment, Americans with Disabilities Act claims, and claims under the Texas Labor Code); (3) arising from alleged or actual violations of any federal or state statute; and/or (4) arising under the common law; and/or

- any injury, damages or loss arising in any way out of, directly or indirectly:  (1) war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, mutiny, revolution, confiscation by governmental order, or martial law; (2) riots, strikes or civil commotion; or (3) any "act of terrorism" as defined in the Plan.

## V.   BENEFITS AVAILABLE TO PARTICIPANTS

### A.   <u>Medical Benefits</u>

#### 1.   **What is Covered**

A Participant shall be entitled to receive Medical Benefits for Medical Expenses incurred by the Participant as the result of an Injury sustained in the Scope Of Employment with the Company.  Subject to the conditions below and more fully described in the Plan document, "Medical Expenses" are covered at 100%, provided that (1) the employee has elected to become a Participant in the Plan by having signed and accepted the terms of the Election and Arbitration Agreement; (2) the Participant follows the procedures in Section III, Paragraph A above; and (3) the first Medical Expense must be incurred within 30 days of the Accident or Injury.

Appendix p.60

The Plan pays for three categories of medical treatment:  Emergency Treatment, Approval-Required Treatment, and Regular Medical Treatment.  **Emergency Treatment** does not require prior approval of the Committee and may be provided by an unapproved physician or facility if timely notice is given to the Plan Administrator of the on-the-job injury <u>and</u> of the Emergency Treatment, as described above in Section III.A.

Surgical procedures, hospitalizations, physical therapy, magnetic resonance imaging (MRI), computerized axial tomography (CAT) scan, steroid injections, work hardening, Functional Capacity Evaluation, electromyogram (EMG), electroencephalogram (EEG), electrocardiogram (ECG/EKG), myleogram, and organ and tissue transplants, when not provided as Emergency Treatment, are **Approval-Required Treatment** and must:  (1) be pre-approved by the Committee, and (2) provided by an approved Physician or Facility.

**Regular Medical Treatment** does not require prior approval from the Committee so long as it is provided by an approved Physician or Facility.

**"Medical Benefits"** terminate upon the earliest of (1) the date of the Participant's death, (2) the date that the Participant reaches Maximum Rehabilitative Capacity, (3) the date of any termination for Gross Misconduct of the Participant's employment with the Company, (4) as provided in Section VII of this Summary, (5) the expiration of **116** weeks from the date such Medical Benefits began, or (6) when the Total Benefits Limit is reached.

**"Total Benefits Limit"** means that the total of all Medical Benefits, Disability Benefits, Dismemberment Benefits, Burial Benefits and Death Benefits paid under this Plan:
(1) to or for **one** Participant as the result of any **one** Accident (or series of related Accidents) shall not exceed the sum of **$250,000,** and
(2) to or for **all** Participants as the result of **one** Accident (or series of related Accidents) shall not exceed the sum of  **$1,000,000**, and
(3) to or for **all** Participants as the result of **all** Accidents during the period from January 1 through December 31 shall not exceed the sum of **$10,000,000.**

**"Maximum Rehabilitative Capacity"** is the point at which a Physician determines that the injured Participant will not improve substantially as a result of additional medical treatment or physical therapy.  **"Gross Misconduct"** means gross misconduct as defined under Section 4980B of the U.S. Internal Revenue Code.

**"Medical Expenses"** are expenses incurred by a Participant and paid by the Plan for medical or dental services, procedures or supplies, provided that the expense is Medically Necessary, Usual And Customary and prescribed by a Physician acting within the scope of his or her license.  "Medical Expenses" include confinement in a Hospital or Skilled Nursing Facility and the cost of Medically Necessary supplies and ambulance hire.

**"Medically Necessary"** means medical services, procedures or supplies which are:  (1) required, recognized and professionally accepted nationally by Physicians as the usual,

Appendix p.61

customary and effective means of diagnosing or treating the condition; (2) the most economical supplies or levels of service that are appropriate and available for the safe and effective treatment of the Participant; and (3) not primarily for the convenience of the Participant, the Participant's family or the Participant's Physician or other provider of medical services, supplies or procedures.

**"Usual And Customary"** means the expense is:  (1) usual when it is the fee regularly charged (and which the patient is responsible to pay) in the absence of insurance or other third party reimbursement, by a health care provider or physician for a given treatment, service or supply; and (2) customary in relation to what other physicians and health care providers in the same geographic area charge for the same and similar treatment, service or supply.

### 2.      What is Excluded

"Medical Expenses" do not include expenses incurred for:

*   biofeedback (and other forms of self-care or self-help training or any related diagnostic testing), hypnosis or acupuncture;

*   the purchase, rental or repair of environmental control devices including but not limited to air conditioners, humidifiers, dehumidifiers or air purifiers;

*   services performed by a person who normally lives with the Participant, the spouse of the Participant, the parents of the Participant or the Participant's spouse, a child of the Participant or the Participant's spouse or a brother or sister of the Participant or of the Participant's spouse;

*   any diagnostic or preventive procedure, treatment, service, supply or drug which is not Medically Necessary; or

*   that part of any Medical Expense which is in excess of the Usual And Customary fee for it.

## B.      Disability Benefits

After the expiration of five (5) consecutive working days (A working day is considered any day on which the Participant would normally be at work.) during which a Participant must have been Totally Disabled as the result of an Injury, the Plan will then pay the Participant who is Totally Disabled as the result of an Injury a Disability Benefit equal to **75%** of the Participant's Pre-Disability Pay.

Nevertheless, no Participant shall receive Disability Benefits in excess of **$900.00 per week**, which amount is the maximum weekly Disability Benefit provided by this Plan.

**"Pre-Disability Pay"** means:

# Appendix p.62

(A)      for a Participant paid an **hourly wage** by the Company (or an Employer), the Participant's average regular hourly rate of pay for no more than forty (40) hours per week for the six consecutive weeks immediately before he or she became Totally Disabled, but if an hourly Participant has not worked for the Company (or an Employer) for six weeks or his or her rate of pay cannot otherwise be reasonably determined by the Committee (in its sole discretion), then the six-week average weekly rate of pay shall be based on the rate of pay of a similar Employee, as determined by the Committee in its sole discretion;

(B)      for a Participant paid a **salary** by the Company (or an Employer), the Participant's total regular weekly salary on the date he or she became Totally Disabled (in turn divided by forty (40) hours per week, regardless of the number of hours normally worked by the salaried Participant in a week, to determine hourly rate of pay);

(C)      for a Participant paid by **commission** by the Company (or an Employer), the Participant's average weekly commissions for the six consecutive weeks immediately before he or she became Totally Disabled, but if a commission-paid Participant has not worked for the Company (or an Employer) for six weeks or his or her rate of pay cannot otherwise be reasonably determined by the Committee (in its sole discretion), then the six-week average weekly rate of pay shall be based on the rate of pay of a similar Employee, as determined by the Committee in its sole discretion.

**"Pre-Disability Pay"** is calculated using the appropriate foregoing weekly rate of pay and corresponding hourly rate of pay, is paid to a Totally Disabled Participant on regular paydays, and excludes any overtime, bonuses, benefits or other extraordinary remuneration.  "Pre-Disability Pay" shall include a Participant's contributions made in the form of an authorized salary reduction, which are diverted by the Participant for payment, by the Employer, into a savings plan such as Salary Reduction Plans, Cafeteria Plans or Flexible Benefit Plans.  Participants can obtain from the Committee, without charge, a copy of the procedures governing qualified medical child support orders.

**Disability Benefits** shall continue to be paid only while the Participant remains Totally Disabled as the result of an Injury, but shall terminate, in any event, at the earliest of: (1) the expiration of **116** weeks from the date of the Bodily Injury or Cumulative Trauma, (2) the expiration of **116** weeks from the date such Disability Benefits began to accrue as the result of Occupational Disease, (3) the date of the Participant's death, (4) the date that the Participant reaches Maximum Rehabilitative Capacity, (5) the date of any termination for Gross Misconduct of the Participant's employment with the Company, (6) as provided in Section VII of this Summary, or (7) when the Total Benefits Limit is reached.

## C.   <u>Death, Burial and Dismemberment Benefits</u>

### 1.   **Death and Burial Benefits**

If a Participant dies as the direct and sole result of an Accident or series of Accidents, then the Participant's Death Beneficiary shall be eligible to receive a Death Benefit of

Appendix p.63

**$150,000, unless the Death Benefit must be reduced so that the Total Benefits Limit will not be exceeded.**

If a Participant dies as the direct and sole result of an Accident or series of Accidents, then the Participant's Death Beneficiary shall be eligible to receive a Burial Benefit equal to the <u>lesser</u> of:  (1) the actual cost of the Participant's burial, or (2) $5,000, unless the Burial Benefit must be reduced so that the Total Benefits Limit will not be exceeded.

## 2.    Dismemberment Benefits

If a Participant sustains one or more of the following Dismembering Injuries as the direct and sole result of an Accident or series of Accidents, then the Participant shall be eligible to receive, subject to the Total Benefits Limit, one (the larger) Dismemberment Benefit in a dollar amount equal to the percentage of the Death Benefit (as would be determined under the immediately preceding paragraph above if the Participant had been killed by the Accident or series of Accidents that caused the Dismembering Injury) as indicated for that one particular Dismembering Injury:

| | |
|---|---|
| Loss of Both Hands or Both Feet | 100% |
| Loss of Sight of Both Eyes | 100% |
| Loss of One Hand and One Foot | 100% |
| Loss of Hearing and Speech | 100% |
| Loss of One Foot and Sight of One Eye | 100% |
| Loss of One Hand and Sight of One Eye | 100% |
| Loss of Use of Both Arms and Both Legs | 100% |
| Loss of Use of Both Arms or Both Legs | 75% |
| Loss of Use of One Arm and One Leg | 75% |
| Loss of Hearing or Speech | 50% |
| Loss of One Hand or One Foot | 50% |
| Loss of Sight of One Eye | 50% |
| Loss of Use of One Arm or One Leg | 50% |
| Loss of Thumb | 25% |

"Loss" regarding a Dismembering Injury means: (a) regarding a hand or foot, severance at or above the respective wrist or ankle joint or total loss of the ability to perform each and every act and service that the hand or foot was able to perform before the Accident or series of Accidents, (b) regarding sight of an eye, entire and irrevocable loss of sight, (c) regarding hearing, the total and irrevocable loss of hearing in both ears, (d) regarding speech, total and irrevocable loss of the entire facility, (e) regarding thumb, severance through or above metacarpophalangeal joint.   Any "Loss" must continue without interruption for a period of not less than 52 consecutive weeks and must be total and irrevocable and beyond remedy by surgical or other means, all as determined by the Treating Physician.

## 3.    Limitations, Payment Method and Conditions

The Plan will pay for only one death or Dismembering Injury to a Participant due to the same Accident or series of Accidents.  If a Participant is both killed and dismembered,

or if a Participant sustains more than one Dismembering Injury, then the Plan will pay, subject to the Total Benefit Limit, the largest Benefit.

A Death Benefit or Dismemberment Benefit is in addition to Medical Benefits payable by the Plan, subject to the Total Benefits Limit.

A Death Benefit is paid to the Participant's Death Beneficiary (or Beneficiaries) as follows:
(1) 20% of the Death Benefit is paid in a lump sum cash payment (or equal lump sum cash payments if there is more than one Death Beneficiary) as soon as administratively possible following the death of the Participant and the determination of the proper Death Beneficiary (or to the deceased Participant's estate if there is no Death Beneficiary); and
(2) the remaining 80% of the Death Benefit is paid in thirty-six (36) equal monthly installments (without interest), commencing on the first day of the month following the initial lump sum payment.

A Dismemberment Benefit is paid to the Participant in the same way (using the same percentages and number of monthly installments) described above for the payment of Death Benefits.

Accepting all or part of a Death, Burial or Dismemberment Benefit shall mean that the accepting person agrees to the terms and conditions of the Plan and the Election and Arbitration Agreement, and the Plan shall require a Death Beneficiary or Participant or other person receiving a Death, Burial or Dismemberment Benefit to sign an indemnification agreement and release of liability for the fatal or dismembering injury.

## VI. THE PLAN'S COMMITTEE

The Committee appointed by the Plan Administrator (the Company) has discretionary and final authority to interpret and implement the provisions of the Plan.  Every interpretation, choice, determination, or other exercise of authority by the Committee will be binding upon all affected parties, without restriction, however, on the right of the Committee to reconsider such action.

## VII.  LOSS OF BENEFITS

Benefits under the Plan will be suspended or terminated if the Participant fails to–

• comply with the provisions of this Summary, the Plan, the rules and procedures adopted by the Committee for the administration of the Plan, and the Committee's requests;

• report the Injury and provide the required information in accordance with Section III, Paragraph A of this Summary;

# Appendix p.65

- comply with the Company's policy, if any, on substance abuse and submit to any drug and alcohol testing requested by the Committee;

- provide, upon request by the Committee, a complete statement, affidavit, or deposition concerning the incident that the Participant believes resulted in an Injury;

- provide truthful information during the hiring process at the Company;

- provide truthful information and cooperate fully with the Committee and act in good faith in connection with the administration of the Plan;

- utilize only approved Physicians and Facilities (except in the case of Emergency Treatment);

- provide accurate information to, and follow the directions and continue to be under the care of, a Treating Physician;

- keep and be on time for all scheduled appointments with health care providers and allow an authorized representative of the Company to go with the Participant to appointments with health care providers;

- refrain from conduct which hinders recovery from the Injury;

- report in to the Participant's Company supervisor periodically as directed until able to return to work, including notice of expected recovery time after each appointment with a Physician;

- refrain from, and is terminated from the Company's employment for, Gross Misconduct;

- report to the Company immediately after being informed that he or she has reached Maximum Rehabilitative Capacity or maximum medical improvement;

- report to his or her supervisor and return to work at the Company after the Treating Physician releases the Participant to work for the Company; and

- comply with the Election and Arbitration Agreement (or the Participant's spouse, minor child, heir, parent or legal representative fails to comply).

## VIII.  HOW TO APPEAL A DENIAL OF BENEFITS

A Participant (or Death Beneficiary, Participant's estate, or representative authorized by the Participant in writing to represent him or her) may file claims for Plan benefits by complying with the procedures set forth in Section III, Paragraph A of this Summary and by submitting to any and all examinations required by the Committee.  In the case of a claim involving Emergency Treatment, a physician or other health care professional knowledgeable of the Participant's medical condition is permitted to act as the

Appendix p.66

authorized representative for purposes of the Emergency Treatment claim only. If a Participant (or other claimant) believes that a request for benefits has been improperly denied, he or she may appeal such denial.

If a Participant or his or her authorized representative fails to follow the Plan's procedures for filing a claim for Medical Benefits for Approval-Required Treatment or Emergency Treatment, the Committee will notify the Participant (or other claimant) as soon as possible, but not later than 5 days (24 hours for Emergency Treatment) after the failure, of the specific information necessary to complete the claim. This notification will be oral, unless written notification is requested by the Participant (or claimant). This notification will be given only if the failure is a communication by the Participant (or claimant) received by the Company's personnel responsible for handling Plan benefit matters and that names a specific Participant, identifies a specific medical condition or symptom, and references a specific treatment, service or product for which approval is requested.

Separate claim and appeal procedures exist for: (1) Medical Benefits for Emergency Treatment, (2) Medical Benefits for Approval-Required and Regular Medical Treatment, (3) Disability Benefits, and (4) Dismemberment, Burial and Death Benefits. Benefit determinations will be made within the timeframes in Subsections A, B, C and D below without regard to whether all the information necessary to make a benefit determination accompanies the filing.

No legal action or arbitration can be brought to recover Plan Benefits before the applicable claim and appeal procedures in this Section VIII have been exhausted. Denial of a claim for benefits does not make an appeal of that denial futile or otherwise excuse a Participant from making the appeal.

## A.   Claims for Medical Benefits for Emergency Treatment

   **1.    Decision on Claim for Benefits**

      a.    Timing of Notification of Determination of Medical Benefit Claim for Emergency Treatment: As soon as possible, taking into account the medical exigencies, but not later than 72 hours after receipt of notice by the Committee's designated representative(s) (as required by Section III.A above) of an occupational injury requiring Emergency Treatment, the Committee's designated representative will notify the requesting Participant or any authorized representative (the "claimant") as to whether or not he or she is entitled to Medical Benefits for the Emergency Treatment. If the Committee's representative determines that additional information is needed to determine whether and to what extent Medical Benefits are payable under the Plan for the treatment, the Committee's representative will notify the claimant of the specific information needed as soon as possible, but no later than 24 hours after receipt of the claim. The claimant will have reasonable time under the circumstances, but not less than 48 hours, to provide the specified information. The Committee's representative will notify the claimant of the benefit decision as soon as possible, but no later than 48 hours after the earlier of the receipt of the specific

Appendix p.67

information requested or the end of the period given the claimant to provide that specific information.

b.      Manner and Content of Notification of Determination of Medical Benefit Claim for Emergency Treatment:   The Committee's designated representative will, within the above timeframe, orally notify a claimant of any denial of Medical Benefits for Emergency Treatment.  A written notification of the denial will be provided not later than 3 days after the oral notification.  The written notification will:   (1) state the specific reason or reasons for the adverse determination; (2) refer to the specific Plan provision on which the determination is based; (3) describe any additional material or information necessary for the claimant to perfect the claim and explain why such material or information is necessary; (4) describe the Plan's appeal procedures and the time limits applicable to such procedures, including a statement of the Participant's right to bring a civil action under section 502(a) of ERISA after any adverse determination on such an appeal; (5) if an internal rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination, state that such rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination and that a copy of it will be provided free of charge to the Participant upon request; (6) if the adverse determination is based on a medical necessity or experimental treatment or similar exclusion or limit, state that an explanation of the scientific or clinical judgment for the determination, applying the Plan's terms to the Participant's medical circumstances, will be provided free of charge upon request; and (7) notify the claimant that he or she may make an expedited appeal of the denial orally or in writing and that, if he or she requests an expedited appeal, all necessary information, including the Committee's benefit determination on the expedited appeal, will be transmitted to the claimant by telephone, facsimile, electronic or other expeditious means.

2.      Appeal of Denial of Medical Benefit Claim for Emergency Treatment: A claimant seeking Medical Benefits for Emergency Treatment will have a reasonable opportunity for a full and fair appeal of a claim denied by the Committee's designated representative.   Such an appeal is to the Committee to review the adverse determination under, among others, the following rules:  (1) the claimant will have 180 days after receipt of the notification of the adverse benefit determination by the Committee's designated representative to appeal to the Committee; (2) the claimant will have the opportunity to submit written comments, documents, records and other information relating to the claim for benefits; (3) the claimant will be provided, upon request and free of charge, reasonable access to, and copies of, all information relevant to the claim for benefits; (4) the Committee will take into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination by the Committee's designated representative; (5) the Committee's review will not afford deference to the initial adverse benefit determination by its designated representative, and the designated representative, if a Committee member, will not be permitted to vote on the claimant's appeal of the designated representative's prior benefit determination that was adverse to the appealing claimant;

Appendix p.68

(6) if the appeal is of an adverse benefit determination that was based in whole or in part on a medical judgment (including determinations with regard to whether a particular treatment, drug or other item is experimental investigational or not medically necessary or appropriate), the Committee will consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment; (7) the Committee will identify medical or vocational experts whose advice was obtained by its designated representative in connection with the adverse benefit determination, regardless of whether the advice was relied upon in making the adverse benefit determination; and (8) when the Committee consults with a health care professional under (6) above, such an individual will neither be the same individual, nor the subordinate of the same individual, who was consulted in connection with the designated representative's adverse benefit determination that is being appealed.

**3.     Decision on Appeal after Review by Committee:**  As soon as possible, taking into account the medical exigencies, but not later than 72 hours after receipt of the claimant's appeal to the Committee for review of the adverse benefit determination regarding Medical Benefits for Emergency Treatment, the Committee will notify the claimant of the Plan's final decision on the claim for such benefits.  The Committee will provide a claimant with written notification of its determination on the claimant's appeal of the claim for Medical Benefits for Emergency Treatment.  In the case of an adverse benefit determination, the notification will:  (1) state the specific reason or reasons for the adverse determination; (2) refer to the specific Plan provision on which the determination is based; (3) state that the claimant will be provided, upon request and free of charge, reasonable access to, and copies of, all information relevant to the claim for benefits; (4) state the claimant's right to bring a civil action under section 502(a) of ERISA; (5) if an internal rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination, state that such rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination and that a copy of it will be provided free of charge to the claimant upon request; (6) if the adverse determination is based on a medical necessity or experimental treatment or similar exclusion or limit, state that an explanation of the scientific or clinical judgment for the determination, applying the Plan's terms to the Participant's medical circumstances, will be provided free of charge upon request; and (7) state:  "You and the Plan may have other alternative dispute resolution options, such as mediation.  One way to find out what may be available is to contact your local U.S. Department of Labor Office or the Plan Committee."

## B.     Claims for Medical Benefits for Approval-Required Treatment and for Regular Medical Treatment

**1.     Decision on Claim for Benefits:**  Within a reasonable time appropriate to the medical circumstances, but not later than 15 days after the receipt of a claim for Medical Benefits for Approval-Required Treatment nor later than 30 days after the receipt of a claim for Medical Benefits for Regular Medical Treatment (unless special circumstances require an extension of time for processing the claim), the Committee's designated representative will notify the requesting Participant or his or her authorized representative (the "claimant") as to whether the claimant is entitled to the Medical Benefits.  If an extension of time for processing is required, written notice of the

Appendix p.69

extension, of no more than 15 days, will be furnished to the claimant prior to the termination of the initial, applicable 15-day or 30-day period.  Any written notice of a 15-day extension will specify the special circumstances requiring the extension, the date by which a final decision shall be reached, specifically explain the standards on which entitlement to a benefit is based, set out the unresolved issues that prevent a decision on the claim, and identify any additional information needed to resolve those issues. The claimant will be afforded 45 days within which to provide the specified information. If a 15-day extension is necessary due to the claimant's failure to submit information necessary to decide the claim, the period for making the benefit determination shall be tolled from the date the 15-day extension notice was sent until the date that the claimant responds to the request for the additional information. The Committee's designated representative will notify a claimant in writing of any adverse benefit determination regarding Medical Benefits for Approval-Required Treatment or for Regular Medical Treatment.  The notification will include the information described in items (1) through (6) of Section VIII.A.1.b. above.

      **2.**     **Appeal of Adverse Benefit Determination:**  A claimant seeking Medical Benefits for Approval-Required Treatment or for Regular Medical Treatment will have a reasonable opportunity for a full and fair appeal of a claim denied by the Committee's designated representative.  Such an appeal is to the Committee to review the adverse determination under, among others, the rules in Section VIII.A.2. above.

      **3.**     **Decision on Appeal after Review by Committee:**  Within a reasonable time appropriate to the medical circumstances, but not later than 30 days after the receipt of an appeal to the Committee of an adverse benefit determination regarding Medical Benefits for Approval-Required Treatment nor later than 60 days after the receipt of an appeal to the Committee of an adverse benefit determination regarding Medical Benefits for Regular Medical Treatment, the Committee will notify the requesting claimant of the Plan's final decision on the claim for such benefits.  The Committee will provide a claimant with written notification of its determination on the claimant's appeal of the claim.  In the case of an adverse benefit determination, the notification will include the information described in Section VIII.A.3. above.

## C.   <u>Claims Procedures for Disability Benefits</u>

      **1.**     **Decision on Claim for Disability Benefits:**  Within a reasonable time (but no later than 45 days, unless special circumstances exist) after receipt of a claim for Disability Benefits, the Committee's designated representative will notify the requesting Participant or his or her authorized representative (the "claimant") as to whether he or she is entitled to Disability Benefits.  If an extension of time for processing is required, written notice of the extension, of no more than 30 days, will be given to the claimant before the end of the first 45-day period.  If, before the end of the first 30-day extension period, the Committee's designated representative determines that, due to matters beyond the Plan's control, a decision cannot be made within 30 days, the time for deciding the claim for Disability Benefits may be extended for an additional 30 days. Written notice of any 30-day extension will state the special circumstances requiring the extension, the date when a final decision will be made, explain the standards on which entitlement to a benefit is based, state any unresolved issues that prevent a decision on

the claim, and identify any additional information needed to resolve those issues.  The claimant will be given 45 days to provide the specified information.  If a 30-day extension is necessary due to the claimant's failure to provide the necessary information, the time for deciding the claim will be extended until the claimant responds to the request for the additional.   The Committee's designated representative will notify the claimant in writing of any adverse decision regarding Disability Benefits.  The notification will include the information described in (1)-(6) of Section VIII.A.1.b. above.

**2.     Appeal of Adverse Disability Benefit Determination:**   A claimant seeking Disability Benefits will have a reasonable opportunity for a full and fair appeal of a claim for Disability Benefits denied by the Committee's designated representative.  Such an appeal is to the Committee to review the denial under the rules in Section VIII.A.2. above.

**3.     Decision on Appeal after Review by Committee:**   Within a reasonable time (but no later than 45 days, unless special circumstances exist) after the receipt of the claimant's appeal to the Committee for it to review the denial of Disability Benefits, the Committee will notify the claimant of its final decision.  If the Committee determines that an extension of time for processing is required, written notice of the extension will be provided to the claimant before the end of the 45-day period.  Any extension will not be for more than 45 more days.   The extension notice will state the special circumstances requiring it and the date when the Committee expects to render its decision.  If a 45-day extension is necessary due to the claimant's failure to provide necessary information, the time for making the decision will be extended until the claimant responds to the request for the additional information.  The Committee will provide a claimant with written notification of its final decision determination on the claim for Disability Benefits.  In the case of an adverse benefit determination, the notification will include the information described in Section VIII.A.3. above.

## D.     Claims Procedures for Dismemberment, Death & Burial Benefits

**1.     Decision on Claim:**  Within a reasonable time (but no later than 90 days, unless special circumstances exist) after receipt of a claim for Dismemberment, Death or Burial Benefits, the Committee's designated representative will notify the requesting Participant or his or her authorized representative (the "claimant") as to whether he or she is entitled to the Benefit.  If an extension of time for processing is required, written notice of the extension, of no more than 90 days, will be given to the claimant before the end of the first 90-day period.  The written notice will state the special circumstances requiring the extension and when a decision on the claim will be made.  Even in special circumstances, a decision on a claim will be made within 180 days.  The Committee's designated representative will notify the claimant in writing of any adverse decision regarding the Benefit sought.  The notification will include the information described in items (1) through (4) of Section VIII.A.1.b. above.

**2.     Appeal of Adverse Benefit Determination:**   A claimant seeking Dismemberment Benefits, Death Benefits and/or Burial Benefits will have a reasonable opportunity for a full and fair appeal of an adverse benefit determination by the Committee's designated representative.  Such an appeal is to the Committee to review

Appendix p.71

the adverse determination.  The claimant will have at least 60 days after receipt of the notification of the adverse benefit determination by the Committee's designated representative to appeal to the Committee.  Rules (2)-(4) of Section VIII.A.2. also apply.

**3.     Decision on Appeal:**  The Committee's final decision on an appealed claim for Dismemberment Benefits, Death Benefits and/or Burial Benefits will be made within 60 days after the claimant submitted it in writing to the Committee (unless special circumstances require an extension of time for processing the appeal).  The Committee will notify the claimant in writing of its decision on an appeal, again stating the reason or reasons for its decision and referencing the applicable Plan provisions.  If an extension of time for processing is required, written notice of the need for the extension will be provided to the claimant within 60 days of the appeal's receipt.  The notice of extension will state the special circumstances requiring the extension and when a decision on the claim will be made.  Even in special circumstances, a decision on an appeal will be made within 120 days.  The Committee will provide a claimant with written notification of its determination on the claimant's appeal of the claim.  In the case of an adverse benefit determination, the notification will include the information described in items (1) through (4) of Section VIII.A.3. above.

# IX. ARBITRATION PROCEDURES

The following provisions of Section I, Paragraph B of the Plan are incorporated by reference into, and made part of, the Election and Arbitration Agreement, the same as if they were set forth at length in the Election and Arbitration Agreement itself, and apply to the Participant (referred to throughout as "I") and to the Company:

**1.     Required Notice for All Claims:** I and the Company agree that a party asserting one or more claims or causes of action against the other party must make a written demand for arbitration on the other party within the applicable statute of limitations, and that failure to make such written demand for arbitration within the applicable statute of limitations bars the claims and causes of action.  Written demand on the Company (or an Employer) or one or more of its managers, members, officers, directors, shareholders, employees, agents, affiliates or benefit plans shall be sent to Renfro Industries, Inc., Attention:  Mr. Richard L. Renfro, 102 Metro Drive, Terrell, Texas 75160 (or such other person or address as the Company may specify).  If the Company (or an Employer, officer, affiliate, etc.) wishes to assert a claim, it will make written demand for arbitration on me at the last address recorded in my personnel file.  This demand for arbitration shall be sent to the other party (or parties) by certified or registered mail, return receipt requested.  **Neither filing nor serving a lawsuit stops the applicable statute of limitations from continuing to run.**

**2.     Representation**:  Any party may be represented during pre-hearing procedures (as defined below), at the arbitration hearing and/or during the arbitration appeal (as defined below) by an attorney or other representative selected by the party.

**3.     Mediation:**  The Company and I agree that any arbitration that has been timely and properly demanded under Paragraph 1 above shall be stayed and shall not

Appendix p.72

proceed until the parties to the arbitration have mediated the dispute with a mediator either agreed upon by all parties or, if agreement by all parties cannot be reached, by a mediator provided by Dispute Solutions, Inc.   This mediation requirement may be waived by written agreement signed by all parties or their counsel.   The cost of any mediation shall be split evenly between the two sides to the dispute; however, my part of such mediation cost shall not exceed $50.00.

**4.     General Procedures:**

a.     The Company and I agree that the arbitration hearing will be conducted before one arbitrator (hereinafter the "hearing arbitrator") appointed by Dispute Solutions, Inc., or if Dispute Solutions, Inc. is unable to appoint an arbitrator, by the American Arbitration Association.   The Company and I agree that the then-current rules of Dispute Solutions, Inc. governing employment disputes (or, if Dispute Solutions, Inc. is unable to appoint an arbitrator, then the then-current Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association) shall control and be applied by the hearing arbitrator and by the appellate arbitrators (as defined below).

b.     The hearing arbitrator shall apply the substantive law (and the laws of remedies, if applicable), in the state in which the claim arose, or federal law, or both, depending upon the claims asserted.   The hearing arbitrator shall also strictly apply the Federal Rules of Evidence, except that deposition testimony of a witness may be used at the arbitration hearing without regard to whether the witness is unavailable.   The hearing arbitrator shall provide brief findings of fact and conclusions of law.   All arbitration decisions and awards rendered pursuant to the Election And Arbitration Agreement shall be kept strictly confidential and shall not, except for filings regarding their judicial enforcement, be disclosed to anyone not a witness, attorney, party representative, or party who actually attended the arbitration hearing.

c.     **The hearing arbitrator shall have the authority to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the agreement to arbitrate.**   The hearing arbitrator shall have the authority to hear and rule on prehearing disputes and is authorized to hold prehearing conferences by telephone or in person as the arbitrator deems necessary.   The hearing arbitrator will have the authority to hear a motion to dismiss and/or a motion for summary judgment by any party and in doing so shall apply the standards governing such motions under the Federal Rules of Civil Procedure.   The hearing arbitrator shall stay any timely and properly demanded arbitration until the parties mediate the dispute, unless mediation has been waived by written agreement signed by all parties or their counsel.

**5.     Pre-Hearing Procedures**:   Each party will have the right to take the deposition of one individual and any expert witness designated by another party.   Each party will have the right to subpoena witnesses in accordance with the Federal Arbitration Act, Title 9 of the United States Code.   Additional discovery may be had only

Appendix p.73

where the hearing arbitrator so orders, upon a showing of substantial need.  At least 30 days before the arbitration, the parties must exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration hearing.

**6.    Arbitration Fees and Costs:**  There will be both administrative fees and arbitrator compensation incurred for any arbitration hearing.  When I file and serve a demand, the filing fee, included in the administrative fees, for the arbitration hearing will be paid $350.00 by me and the remainder by the Company.  Unless I choose to pay all or a part of them, all other administrative fees and all of the hearing arbitrator's compensation will be paid by the Company.  Arbitrator compensation and administrative fees are not subject to re-allocation in the award, but any fees for postponements will be paid by the party causing the postponement.  Unless agreed otherwise, the Company will arrange for and pay the cost of a court reporter to provide a stenographic record of the proceedings at the hearing.

**7.    Attorneys' Fees:**  The Company and I further agree as follows:

a.    Each party shall be responsible for their own attorney's fees, if any; however, if any party prevails on a statutory claim which allows the winning party to be awarded attorney's fees, or if there is a written agreement providing for fees, the hearing arbitrator shall award reasonable fees to the prevailing party. The hearing arbitrator shall determine the prevailing party in accordance with the meaning of "prevailing party" under the Civil Rights Attorney's Fees Awards Act of 1976.

b.    The hearing arbitrator shall assess attorney's fees against a party upon a showing that such party's claim, defense or position is frivolous, or unreasonable, or factually groundless.

c.    If either party pursues a claim covered by this Agreement by any means other than those set forth in this Agreement, the responding party shall be entitled to dismissal of such action, and the recovery of all costs and attorney's fees and losses related to such action.

**8.    Appeal Procedures:**  The Company and I further agree as follows:

a.    Any party **may** appeal any arbitration award that has been rendered and become final under the rules governing the arbitration.  The written appeal must be served in writing on the other party or parties to the arbitration and on Dispute Solutions, Inc. (or, if the American Arbitration Association appointed the hearing arbitrator, then on the American Arbitration Association) by certified mail within thirty (30) days after the hearing arbitrator caused the arbitration award to be mailed to the parties or to their representatives.  The writing evidencing the appeal must specify those elements of the arbitration award that are being appealed and must contain a short statement of the appeal's basis.  Once an appeal is timely served, the arbitration award by the hearing arbitrator shall no longer be considered final for purposes of seeking judicial enforcement, modification or vacation under the Federal Arbitration Act.

Appendix p.74

b.      Within fifteen (15) days after receipt of the appeal, the other party or parties may serve a written cross-appeal by serving it by certified mail on the other party or parties to the arbitration and on Dispute Solutions, Inc. (or, if the American Arbitration Association appointed the hearing arbitrator, then on the American Arbitration Association).  The writing evidencing the cross-appeal must specify those elements of the arbitration award that are being appealed and must contain a short statement of the cross-appeal's basis.  Once a cross-appeal is timely served, the arbitration award by the hearing arbitrator shall no longer be considered final for purposes of seeking judicial enforcement, modification or vacation under the Federal Arbitration Act, even if the appeal is subsequently withdrawn.

c.      Within forty-five (45) days after receipt of the appeal, the parties to the appeal shall select a panel of three arbitrators (hereinafter the "appellate arbitrators") utilizing the procedures to select arbitrators set forth in the then-current rules of Dispute Solutions, Inc.  The hearing arbitrator shall not be eligible to serve as an appellate arbitrator.

d.      The fees and expenses of the appellate arbitrators shall be shared equally if both an appeal and a cross-appeal are served.  If only an appeal is served, the fees and expenses of the appellate arbitrators shall be paid by the appellant party (or parties).  Each party serving an appeal or cross-appeal shall deposit funds or post other appropriate security for the appellate arbitrators' fees, in an amount and manner determined by Dispute Solutions, Inc., (or, if the American Arbitration Association appointed the hearing arbitrator, then by the American Arbitration Association) within thirty (30) days after that party's service of an appeal or cross-appeal.

e.      The record on appeal to the appellate arbitrators shall consist of any stenographic record or other record of the hearing before the hearing arbitrator and shall include all exhibits and deposition transcripts admitted into the record by the hearing arbitrator.  The parties to an appeal shall assist and cooperate with the Dispute Solutions, Inc. (or, if the American Arbitration Association appointed the hearing arbitrator, then the American Arbitration Association) in providing the record, exhibits and deposition transcripts to the appellate arbitrators.

f.      The appellate arbitrators shall establish a briefing schedule, page limitations for briefs and a date and duration for oral argument; provided, however, that prior to the appellate arbitrators' rulings on these subjects, the parties to the appeal may agree to waive briefing and/or oral argument and may agree to their own page limitations for briefs.

g.      The appellate arbitrators shall apply the same standard of review as the first-level appellate court would apply to the cause of action or defense on appeal in similar circumstances.  If both federal and state-law causes of action (and/or defenses) are before the appellate arbitrators (either in a single appeal or as the result of a cross-appeal), the appellate arbitrators shall apply only the

Appendix p.75

standards of review utilized by the United States Court of Appeals for the Fifth Circuit in similar circumstances.

h.    By majority vote, the appellate arbitrators may affirm, reverse, render or modify an arbitration award.  The appellate arbitrators may remand, but they may not remand to the original hearing arbitrator.  In the event of a remand, the parties shall select a new hearing arbitrator under the procedures set forth in the rules governing the arbitration, and the fees and expenses of the new hearing arbitrator shall be shared equally by the parties to the re-hearing, unless otherwise agreed or ordered.  The appellate arbitrators' decision shall include a brief, written opinion addressing the issues before them, and such opinion shall be delivered to the parties and to Dispute Solutions, Inc. (or, if the American Arbitration Association appointed the hearing arbitrator, then to the American Arbitration Association) within thirty (30) days after the conclusion of any briefing schedule or any oral argument or as the parties may agree.  Fifteen (15) days after receipt of the appellate arbitrators' opinion setting forth their decision, any award by them shall be considered final for purposes of judicial enforcement, modification or vacation under the Federal Arbitration Act.

9.    **Interstate Commerce and the Federal Arbitration Act:**  I understand and agree that the Company is involved in transactions involving interstate commerce (*e.g.*, purchasing goods and services from outside Texas which are shipped to Texas; utilizing the interstate mail, telephone and highway systems; and recruiting and advertising outside Texas) and that my employment and participation in the Plan involve such commerce.  The Federal Arbitration Act, Title 9 of the United States Code, will govern the interpretation, enforcement, and all judicial proceedings under and/or with respect to the Election And Arbitration Agreement and this Section IX.  However, if the Federal Arbitration Act should be held to be inapplicable to the Election And Arbitration Agreement and this Section IX, or if the  Election And Arbitration Agreement and this Section IX should be held to be unenforceable, for any reason, under the Federal Arbitration Act, then the Texas common law shall govern the Election And Arbitration Agreement, this Section IX, and all judicial proceedings under and/or with respect to them to the extent necessary to make them enforceable to the maximum extent possible.

# X.    COORDINATION, ACCELERATION AND RECOVERY OF BENEFITS

## A.    Coordination of Benefits

Payments of Plan benefits will be reduced by amounts paid by Social Security, Medicare or Medicaid benefits or under any state or federal workers' compensation act or similar law or under any other benefit plan or insurance contract or policy covering the Participant.  However, Plan benefits will only be reduced to the extent necessary to prevent the total amount of Plan and these other benefits from exceeding 100% of the Medical Expenses incurred by the Participant and 100% of the Participant's Pre-Disability Pay.  Benefits under this Plan are secondary to and excess of all other

sources of benefits covering a Participant, such that all other sources of benefits pay in full before any benefits are paid under this Plan.  A Participant must, upon request, provide the Committee copies of and information about any other sources of benefits potentially providing coverage for a Participant's injury, treatment or disability.

## B.   Acceleration Of Benefits and Final Compromise and Settlement

A Participant or Beneficiary can apply to the Committee for acceleration of the payment of benefits, and a Participant, Beneficiary, the Plan and the Company may enter into a final compromise and settlement of any remaining benefits payable as a result of a Participant's injury or death.

## C.   Recovery of Benefits

If a Participant (or his or her beneficiaries, spouse, children, heirs, parents or legal representatives) seeks, becomes entitled to or receives benefits under the Plan for any Injury caused by another person, entity or organization and becomes entitled to or collects any compensation for such Injury (whether by insurance, litigation, arbitration, settlement or other proceeding), the Participant must (1) reimburse the Plan out of such other compensation to the extent of the Plan benefits paid to and on behalf of the Participant (without regard to whether said damages or other compensation fully compensate the Participant for his or her injuries and claims against the person or organization), and (2) execute any documents requested by the Administrator to enable the Plan to recover such benefits.

If a Participant fails or refuses to reimburse the Plan, then the Participant must return all Plan benefits paid to him or her and the Plan may withhold and offset further benefits to or on behalf of such Participant.

Prior to filing a lawsuit, arbitration or other proceeding or to entering into a settlement discussion or mediation to obtain from any person, entity or organization (other than the Company or an Employer) damages or compensation (in any form) for or on account of an injury to or the death of a Participant for which Plan benefits have been paid or may in the future be sought, a Participant (or the Participant's Death Beneficiaries, spouse, heirs, parents or legal representatives) shall provide the Committee (at the address listed on the last page of this Summary) prior written notice of the lawsuit or other type of proceeding.  The Plan may intervene in the lawsuit or other proceeding.

If a Participant (or his or her beneficiaries, spouse, heirs, parents or legal representatives) fails or refuses to seek damages or compensation from someone for any injury or death caused by his, her or its negligent or wrongful act or omission (for which Plan benefits have been paid or may in the future be sought) the Plan may file a lawsuit or other proceeding to pursue reimbursement of Plan benefits paid and to be paid in the future, plus any costs and expenses incurred by the Plan in pursuing such reimbursement.

Upon the request of the Committee, a Participant (or the Participant's Death Beneficiaries, spouse, heirs, parents or legal representatives) must assign to the Plan the right to intervene in or institute any lawsuit or other proceeding, and to do so in the Participant's name. The Plan shall have complete control over the lawsuit or proceeding until finally resolved. The Participant (and the Participant's Death Beneficiaries, spouse, heirs, parents and legal representatives) must fully cooperate with the Plan and its counsel in any such lawsuit or proceeding and must release the Plan, the Company, the Employer, the Committee, and their respective directors, officers, agents, attorneys, and employees from all claims, causes of action, damages and liabilities of whatever kind or character that may directly or indirectly arise out of the pursuit or handling by the Plan of any such lawsuit or proceeding.

## XI.   AMENDMENT OR TERMINATION OF PLAN

The Company presently intends to continue the Plan indefinitely, but the Company may amend, modify or terminate the Plan at any time. Any such amendment or termination will be approved pursuant to formal written action by the Company and would not reduce any Plan benefit then due a Participant (or Death Beneficiary or Participant's estate) on account of an Injury or death that occurred before the amendment or termination. As a binding contract between a Participant and the Company, a Participant's Election And Arbitration Agreement can only be revoked or modified in accordance with its terms.

## XII.  ERISA RIGHTS STATEMENT

A Participant in the Plan is entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 as amended ("ERISA"). ERISA provides that Plan Participants shall be entitled to:

<u>**Receive Information About Your Plan and Benefits**</u>

- Examine, without charge, at the Plan Administrator's office and at other specified locations, such as work sites, all documents governing the Plan, including insurance contracts and a copy of the latest annual report (Form 5500 series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration.

- Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts and a copy of the latest annual report (Form 5500 series) and any updated summary plan description. The Plan Administrator may make a reasonable charge for the copies.

- Receive a summary of the Plan's annual financial report. The plan administrator of such a plan is required by law to furnish each participant with a copy of this summary annual report.

Appendix p.78

**Prudent Actions by Plan Fiduciaries**

In addition to creating rights for Plan Participants, ERISA imposes duties upon the people who are responsible for the operation of the Plan, including the members of the Committee.  The people who operate the Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of the Participants and beneficiaries.  No one, including the Company or any other person, may fire or otherwise discriminate against a Participant in any way to prevent him or her from obtaining a benefit or exercising these rights under ERISA.

**Enforce Your Rights**

If a Participant's claim for a benefit is denied or ignored, in whole or in part, he or she has a right to know why this was done, to obtain copies of documents relating to the decisions without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps that a Participant can take to enforce the above rights. For instance, if a Participant requests a copy of Plan documents or the latest annual report, if any, from the Plan and does not receive them within 30 days, he or she may be entitled to not only receive the materials, but also up to $110 per day from the Plan Administrator until the Participant receives the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator.  If a Participant has a claim for benefits which is denied or ignored, in whole or in part, he or she may be entitled to file a federal lawsuit (in the Northern District of Texas, Dallas Division) or initiate an arbitration (under the Election and Arbitration Agreement or other binding arbitration provision).  In addition, if a Participant disagrees with the Plan Administrator's decision or lack thereof concerning the qualified status of a domestic relations order or a medical child support order, he or she may be entitled to file suit in the specified federal court or initiate an arbitration.  If it should happen that Plan fiduciaries misuse the Plan's money, or if a Participant is discriminated against for asserting his or her rights, he or she may seek assistance from the U.S. Department of Labor, or may be entitled to file suit in the specified federal court or initiate an arbitration.  The court or arbitrator will decide who should pay court costs and legal fees.  If the Participant is successful, the court or arbitrator may order the other person to pay these costs and fees.  If the Participant loses, the court or arbitrator may order the Participant to pay these costs and fees, for example, if the Participant's claim is found to be frivolous.

**Assistance with Your Questions**

If a Participant has any questions about the Plan, he or she should contact the Plan Administrator.  If a Participant has any questions about this statement or about his or her rights under ERISA, or if he or she needs assistance in obtaining documents from the Plan Administrator, the Participant should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in the telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210.  A Participant may also obtain certain publications about his or her rights and responsibilities under ERISA by calling the publications hotline of the Pension and Welfare Benefits Administration.

Appendix p.79

# XIII.  HIPAA RIGHTS STATEMENT

The Plan shall take reasonable steps to ensure the privacy of your Protected Health Information to the extent that the privacy requirements of the Health Insurance Portability and Accountability Act ("HIPAA") apply to the Plan's medical benefits.

"Protected Health Information" ("PHI") includes any individually-identifiable health information that is transmitted or maintained by the Plan, but does not include (1) individually identifiable health information contained in education records and employment records held by the Employer, or (2) "de-identified information," which is information that does not identify a particular Participant and there is no reasonable basis to believe that it can be used to do so.

The Plan shall give notice to Participants of (1) the Plan's uses and disclosures of PHI, (2) the Plan's rights and responsibilities with respect to PHI, and (3) their privacy rights with respect to PHI.  The form of notice shall be in substantially in the following form or in such modified form as may be necessary to comply with the privacy requirements of HIPAA.

## <u>USES AND DISCLOSURES OF PROTECTED HEALTH INFORMATION</u>
The Plan may use and disclose your PHI in the following situations without first obtaining your written consent or authorization:

### Uses and Disclosures Directly to You
Access to Your PHI - Upon your request, the Plan is required to give you access to certain PHI in order for you to inspect and copy it.

Accounting of Your PHI - Upon your request, the Plan is required to provide you with an accounting of certain disclosures of your PHI that the Plan has made.

### Treatment, Payment and Health Care Operations
General Rule - The Plan may use or disclose your PHI in the following situations that relate to treatment, payment or health care operations:

•   Treatment - The Plan may disclose your PHI to a doctor, hospital or other health care provider in order for you to receive medical treatment. "Treatment" includes the provision, coordination or management of health care and related services and includes, but is not limited to, consultations and referrals between one or more of your health care providers.

•   Payment - The Plan may use your PHI and disclose your PHI to another health plan or health care provider in order to pay claims under the Plan.  For example, the Plan may tell a doctor whether you are eligible for coverage and whether the bill can be paid by the Plan. "Payment" activities also include things such as coverage determinations, billing, claims management, coordination of benefits, subrogation, plan reimbursement, reviews of medical necessity, utilization review and preauthorization.

Appendix p.80

- Plan's Health Care Operations - The Plan may use your PHI for the Plan's health care operations. "Health Care Operations" includes (1) quality assessment and improvement, (2) reviewing qualifications of health care professionals, (3) underwriting, premium rating and other insurance activities relating to creating, renewing or replacing health insurance contracts (including excess loss insurance), (4) conducting or arranging for medical review, legal services and audit functions, including fraud and abuse detection, and compliance programs, (5) business planning and development, (6) business management activities, such as customer service, resolution of internal grievances, and due diligence activities related to the sale or transfer of assets to another entity, (7) creating de-identified health information in certain cases, and (8) contacting you to provide appointment reminders or information about treatment alternatives or other health-related benefits and services that may be of interest to you.

- Another Entity's Health Care Operations - The Plan may also disclose your PHI to another health plan or health care provider for the health care operations of the entity that receives the PHI, provided that each entity either has or had a relationship with you, the PHI pertains to this relationship and the disclosure is for (1) health care operations, or (2) health care fraud and abuse detection or compliance purposes.

**Uses and Disclosures to Plan Sponsor**

The Plan may disclose PHI to the Company in its capacity as the Plan's sponsor for the sole purpose of permitting the Company to perform plan administration functions that are consistent with the following rules:

**Uses and Disclosures of PHI**

- The Company shall use and disclose PHI provided by the Plan only to the extent that the use and disclosure is permitted or required under the HIPAA Privacy Rules;

- The Company shall not use or further disclose PHI other than as permitted or required by the plan documents for the Plan or as required by law;

- The Company shall require any agents, including a subcontractor to whom it provides PHI from the Plan, to agree to the same restrictions and conditions that apply to the Company with respect to PHI;

- The Company shall not use or disclose PHI from the Plan for employment-related actions and decisions or in connection with any other benefit of the Company;

- The Company shall report to the Plan any use or disclosure of PHI provided by the Plan that is inconsistent with the purpose for which the PHI was provided, once the Company becomes aware of such inconsistent use or disclosure;

- The Company shall provide you with access to your PHI in accordance with the HIPAA Privacy Rules;

- The Company shall make PHI available for amendment by you and shall incorporate any amendments made into your PHI;

Appendix p.81

- The Company shall make available to you information required in order to provide an accounting of any disclosures of your PHI made by the Plan, to extent that these disclosures must be accounted for under the HIPAA Privacy Rules;

- The Company shall make its internal practices, books, and records relating to the use and disclosure of PHI from the Plan available to the U.S. Department of Health and Human Services to determine Plan compliance with the HIPAA Privacy Rules;

- If feasible, the Company shall return or destroy all PHI received from the Plan that the Company still maintains in any form and shall retain no copies of such PHI when no longer needed for the purpose for which disclosure was made. However, if this return or destruction is not feasible, the Company shall limit further uses and disclosures of the PHI to those purposes that make the return or destruction of the PHI infeasible; and

- The Company shall ensure that adequate separation has been established between the Company, in its capacity as the Plan's sponsor, and the Plan.

**Separation Between Company and the Plan**
The Plan's designated Claims Administrator, the Plan's designated Committee members and their respective staff members that are designated to perform Plan functions shall be the only employees or other persons under the direct control of the Company that shall be given access to PHI for use and disclosure. Their access to and use of PHI shall be restricted to the Plan Administrator functions that the Company, in its capacity as plan sponsor, performs for the Plan. In the event that any of these persons fails to comply with the requirements of the HIPAA Privacy Rules, you may submit a complaint in writing to the Contact Person listed at the end of this Notice.  However, the Plan may disclose to the Company as plan sponsor without complying with the requirements of this Section if the disclosure involves:

- PHI to the extent specified in a valid, written authorization from you;
- summary health information, if the Company requests summary health information for the limited purpose of (1) obtaining premium bids for insurance coverage related to the Plan, or (2) modifying, amending or terminating the Plan; or
- information on whether an individual is participating in the Plan.

**Uses and Disclosures Requiring An Opportunity for You to Agree or Object**
The Plan may use or disclose PHI in the following situations in which you have been informed in advance of the use or disclosure and have the opportunity to agree to, prohibit or restrict the use or disclosure in accordance with the HIPAA Privacy Rules:
- disclosure to your family member, other relative, or a close personal friend (or any person you identify) of PHI that is directly relevant to the person's involvement with your care or payment related to your care; or
- disclosure of PHI to notify, or assist in the notification of (including identifying or locating) your family member, a personal representative (or another person responsible for your care) of your location, general condition, or death.

Appendix p.82

**Requirements When You Are Present**

If you are present for, or otherwise available prior to, a use or disclosure specified above, the Plan must (1) obtain your agreement; (2) provide you with the opportunity to object to the disclosure and determine that you do not express an objection; or (3) reasonably infer from the circumstances, based on the exercise of professional judgment, that you do not object to the disclosure.

**Requirements When You Are Not Present**

If you are not present, or the opportunity to agree or object to the use or disclosure cannot practicably be provided because of your capacity or an emergency circumstance, the Plan may, in the exercise of professional judgment, determine (and make reasonable inferences as to) whether the disclosure is in your best interests and, if so, disclose only the PHI that is directly relevant to the person's involvement with your health care.

**Other Special Circumstances**

Required by Law - To the extent that the use or disclosure is required by law and complies with and is limited to the relevant requirements of the law. For example, the Plan must disclose your PHI when requested by the U.S. Department of Health and Human Services in order to investigate or determine whether the Plan is in compliance with HIPAA Privacy Rules.

Public Health - For public health activities, including disclosure to (1) a public health authority authorized by law to collect information to prevent or control disease or conduct public health surveillance, (2) a public health authority empowered by law to receive reports of child abuse or neglect, (3) under certain circumstances, a person subject to the jurisdiction of the U.S. Food and Drug Administration (FDA), (4) a person exposed to a communicable disease, or (5) in certain circumstances, an employer regarding workplace-related medical surveillance activities.

Public Safety - To an authorized government authority when the Plan reasonable believes that you are a victim of abuse, neglect or domestic violence, or the extent necessary to avert a serious and imminent threat to health and safety.

Health Oversight - For health oversight activities authorized by law, such as fraud or abuse audits, investigations and civil, administrative or criminal proceedings (unless the activity does not arise out of and is not directly related to the receipt of health care or qualification for public health benefits).

Judicial/Administration Proceedings – For judicial and administrative proceedings, such as responding to a court order, subpoena, discovery request or other lawful process, when certain conditions are met.

Law Enforcement - For law enforcement purposes to a law enforcement official, provided that the requesting party must satisfy certain HIPAA Privacy Rule requirements when PHI is to be disclosed for identification and location purposes.

Appendix p.83

Death - For certain uses and disclosures to coroners, medical examiners and funeral directors related to decedents, subject to the specific limitations of the HIPAA Privacy Rules.

Organ Donation - To organ procurement organizations, regarding cadaveric organs, eyes or tissue for donation purposes.

Research - For research purposes provided that an Institution Review Board or privacy board approves the waiver of individual authorization required under the HIPAA Privacy Rules and certain other conditions are met.

Military and National Security - For specialized government functions, such as separation or discharge from the military, to determine eligibility for veterans' health benefits, national security or lawful intelligence activities, or for protective services.

Workers' Compensation - To the extent necessary to comply with workers' compensation or other similar programs established by law.

## PLAN RIGHTS AND RESPONSIBILITIES

### Authorization

Except as otherwise indicated in this Notice, the Plan will only make uses and disclosures of your PHI with your valid, written authorization. You have the right to revoke this authorization at any time, provided that your revocation is made in writing to the Contact Person listed at the end of this Notice. Your revocation will not affect any use or disclosure permitted by your authorization while it was in effect. Such revocation may, however, impact the Plan's ability to investigate and pay your claim for benefits.

### Notice

The Plan is required by law to maintain the privacy of PHI and to provide you with this Notice of its legal duties and privacy practices with respect to PHI. The Plan is required to abide by the terms of the Notice currently in effect and shall not use or disclose PHI in a manner that is inconsistent with this Notice. However, the Plan reserves the right to change the terms of this Notice and to make the new Notice provisions effective for all PHI that it maintains. The Plan may provide this revised Notice by distributing amended benefit materials, by distributing a summary of material modifications to the Plan's SPD or by providing the Notice as a separate document.

### Minimum Necessary

When using or disclosing PHI or when requesting PHI, the Plan shall make reasonable efforts to limit PHI to the minimum necessary to accomplish the intended purpose of the use, disclosure or request. However, this minimum-necessary requirement shall not apply to:
- disclosures to or requests by a health care provider for treatment;
- permitted or required uses or disclosures made to you;
- uses or disclosures that are made in accordance with a valid written authorization from you;
- required disclosures made to the Department of Health and Human Services; and

Appendix p.84

- uses or disclosures that are otherwise required by law, including compliance with the HIPAA Privacy Rules.

## Agreed Restrictions

If you and the Plan agree to a restriction of your PHI, the Plan may not use or disclose PHI in violation of the restriction, except to the limited extent that the restricted PHI is needed to provide you with emergency care and the health care provider providing emergency care agrees not to further use or disclose the PHI. You and the Plan may not agree to restrictions with respect to:

- required disclosures to you, as specified under the HIPAA Privacy Rules; or
- uses and disclosures that are required or permitted under the HIPAA Privacy Rule without your authorization or agreement (See the Section of this Notice entitled "Other Special Circumstances").

## De-Identified Information

The Plan may use PHI to create information that is not individually identifiable health information ("de-identified information") or disclose PHI only to a Business Associate for that purpose, regardless of whether the Plan will use the de-identified information. The HIPAA Privacy Rules do not apply to de-identified information that meets the standard and implementation specifications of the HIPAA Privacy Rules, unless:

- the Plan discloses a code or other means of record identification that is designed to enable de-identified information to be re-identified; or
- the de-identified information is otherwise re-identified.

## Business Associates

A "Business Associate" is generally a third party that provides certain services to or on behalf of the Plan (such as claims administration services, billing, legal, actuarial, accounting, consulting, data aggregation, etc.) and the services involve the use or disclosure of PHI. The Plan may disclose PHI to a Business Associate and may allow a Business Associate to create or receive PHI on its behalf, if the Plan obtains satisfactory assurance that the Business Associate will appropriately safeguard the PHI. The Plan shall document these satisfactory assurances through a written contract or other written arrangement with the Business Associate and must ensure that these satisfactory assurances satisfy the HIPAA Privacy Rules that apply to Business Associate communications.  However, this requirement shall not apply:
- if the Plan discloses PHI to a health care provider concerning your treatment; and
- if the Plan discloses PHI to the Company in its capacity as plan sponsor for the Plan, provided that the Plan complies with the requirements for these disclosures (refer to the "Uses and Disclosures to Plan Sponsor" Section of this Notice).

## Personal Representatives

For purposes of using and disclosing PHI, the Plan must treat your personal representative as if it were you, in accordance with the HIPAA Privacy Rules. Your personal representative will be required to produce evidence of his/her authority to act on your behalf (for example, a court order of appointment or a notarized power of attorney) before that person will be given access to your PHI or allowed to take any

# Appendix p.85

action for you. The Plan retains discretion to deny access to your PHI to a personal representative.

**Other Uses and Disclosures**
A Plan Participant may disclose PHI if the Participant is a "whistleblower" or victim of a crime, provided that these disclosures are made in accordance with the standards of the HIPAA Privacy Rules.

## YOUR RIGHTS REGARDING PROTECTED HEALTH INFORMATION

• Restrictions on PHI - You have the right to request restrictions on uses and disclosures of PHI to carry out treatment, payment or health care operations. However, the Plan is not required to agree to a restriction.

• Alternate Communications - You have the right to request that the Plan communicate PHI to you by alternative means or at alternative locations, if you clearly state that the disclosure of all or part of that information could endanger you. These requests must be reasonable and may be conditioned upon you providing, when appropriate, information as to how payment, if any, will be handled and specification of an alternative address or other method of contact.

• Access – You have the right to inspect and copy your PHI that the Plan maintains for "payment" activities as described in the Section of this Notice entitled "Treatment, Payment and Health Care Operations," subject to certain exceptions specified in the HIPAA Privacy Rules. If you request copies, the Plan may charge a reasonable fee for locating, copying and mailing your PHI to you.

• Amendments - You have the right to amend and make corrections to your PHI and any agreed upon amendment will be either attached to or included in your PHI records. However, your amendment request may be denied if the PHI subject to your request (1) was not created by the Plan, unless you provide a reasonable basis to believe that the originator of the PHI is no longer able to make your requested amendment; (2) is not part of your PHI that the Plan maintains for "payment" activities; or (3) is already accurate and complete.

• Accounting - You have the right to receive an accounting of disclosures of your PHI that were made by the Plan within the six (6) years prior to the date of your request, except for disclosures:
  • that apply to the treatment, payment and health care operations of the Plan;
  • that were made to you or that were made pursuant to a valid, written authorization;
  • that occurred prior to the Effective Date of this Notice;
  • as part of a limited data set, as provided under the HIPAA Privacy Rules;
  • for national security or intelligence purposes as provided by law;
  • to correctional institutions or other custodial law enforcement officials as permitted by the HIPAA Privacy Rules; or
  • incidental to a use or disclosure required or permitted by HIPAA Privacy Rules.

Appendix p.86

If you request more than one accounting within a 12-month period, the Plan will charge a reasonable, cost-based fee for each subsequent accounting that you request.

Copy of This Notice - You have the right to obtain a paper copy of this Notice upon request, including individuals who agree to receive this Notice electronically.

Complaints - You may complain to the Plan or the Secretary of Health of Human Services if you believe that your privacy rights have been violated.   You will not be retaliated against for filing a complaint.

### Exercising Your Rights

You or your personal representative may exercise any of your rights specified in this Section by submitting a written request to the Contact Person listed below. You will receive a response to your request within 30 days, subject to a 30-day extension. If your request is denied in whole or in part, the Plan shall provide you with a written denial that explains the basis for the denial. If you disagree with a denial of your request or complaint, you may provide a written statement to the Contact Person and/or take any further action provided in this Notice or by law.

### Contact Person

For further information regarding privacy rights or this Notice, please contact Ms. Brittney Bearden at (800) 333-8419.

## XIV.  AVISO PARA EMPLEADOS QUE NO HABLAN INGLÉS

Este Resúmen del Renfro Industries, Inc. Employee Injury Benefit Plan contiene un resúmen en inglés de sus derechos y prestaciones bajo el Plan.  Si usted tiene dificultad en comprenderlo o si desea verificación o clarificación de cualquier parte de este Resúmen, favor de comunicarse con el Administrador del Plan, localizado en 102 Metro Drive, Terrell, Texas 75160.  Si lo desea puede usted llamar al número de teléfono (972) 563-4295.  Horas de oficina son de las 8:30 a.m. a las 4:30 p.m., de lunes a viernes.

## XV.  PLAN DIRECTORY

Sponsor and Plan Administrator:   Renfro Industries, Inc., 102 Metro Drive, Terrell, Texas 75160; (972) 563-4295.

Agent for Service of Legal Process:  Service of legal process may be made upon the Plan Administrator at the above address.

Sponsor Identification Number:  75-2370781

Plan Number:  501

Plan Fiscal Year:  The Plan Fiscal Year is January 1 to December 31.

# ELECTION AND ARBITRATION AGREEMENT

By signing this Election and Arbitration Agreement (hereinafter "Agreement"), I, the undersigned employee, voluntarily elect to participate in the Renfro Industries, Inc. Employee Injury Benefit Plan (hereinafter the "Plan") and agree with Renfro Industries, Inc. (hereinafter "the Company") to the following:

**ENROLLMENT IN THE PLAN:**  I understand that the Company, as expressly permitted by Texas law, does not carry workers' compensation insurance for its Texas employees, that it is a "nonsubscriber" under the Texas Workers' Compensation Act (hereinafter the "Act"), that it is not required as a nonsubscriber to provide any benefits whatsoever for on-the-job injuries, that it has instead voluntarily established the Plan under federal law to provide certain benefits for on-the-job injuries, and that the Plan is not workers' compensation insurance.

I understand that if I am injured on the job, I am, by signing and agreeing to this Agreement, eligible under the Plan's terms for the medical, disability, death, burial and dismemberment benefits described in the Plan and summarized in the Summary Plan Description.  I understand that if I reject this Agreement, I will not be eligible for Plan Benefits.

I understand and agree that the Plan's benefits are not workers' compensation benefits, but are provided without regard to my own fault or negligence, without the necessity of me initiating a lawsuit or arbitration, and without me proving that the Company (or one of its employees) was negligent in causing my injury (or death).

I have received a copy of the Summary Plan Description of the Plan.  I understand and agree that, if I am injured on the job, I will follow the rules and procedures described in the Summary Plan Description.

**MUTUAL PROMISES TO RESOLVE CLAIMS BY BINDING ARBITRATION:**   I recognize that disputes may arise between the Company and me during or after my employment.  I agree with the Company to submit any and all such disputes to binding arbitration.

**I acknowledge and understand that by signing this Agreement I am giving up the right to a jury trial on all of the claims covered by this Agreement** in exchange for eligibility for the Plan's medical, disability, dismemberment, death and burial benefits and in anticipation of gaining the benefits of a speedy, impartial, mutually-binding procedure for resolving disputes.

**This agreement to resolve claims by arbitration mutually binds and benefits both me (and my spouse, minor children, heirs, parents and legal representatives) and the Company (and its successors, subsidiaries and affiliates, and all of their managers, members, officers, directors, shareholders, partners, owners,**

**employees, agents and landlords and the Plan and its administrators and fiduciaries).**

**EXAMPLES OF CLAIMS SUBJECT TO ARBITRATION:**   Examples of claims and disputes covered by this Agreement include, but are not limited to:

(a) all claims and disputes that I (and my spouse, minor children, heirs, parents and legal representatives, if any) may now have or may in the future have against the Company or against its successors, subsidiaries and affiliates or any of their officers, directors, shareholders, members, partners, owners, employees and agents, or against the Plan or its administrators and fiduciaries, and
(b) all claims and disputes that the Company or its successors, subsidiaries and affiliates or any of their officers, directors, shareholders, members, partners, owners or the Plan may now have or may in the future have against me (and my spouse, minor children, heirs, parents and legal representatives, if any).

Examples of the types of claims covered by this Agreement include, but are not limited to, any and all:

- claims for wages or other compensation;
- claims for breach of any contract, covenant or warranty (express or implied);
- tort claims, including negligence, negligence per se and gross negligence claims (including claims for personal or bodily injury or physical, mental or psychological injury, without regard to whether or not such injury was sustained on the job);
- claims for wrongful termination (including retaliation claims under Chapter 451 of the Texas Labor Code);
- claims of harassment or discrimination (including claims based on race, sex, religion, national origin, age, medical condition or disability);
- claims for benefits under the Plan (after exhausting administrative remedies under the terms of the Plan);
- claims for a violation of any other federal, state or other governmental law, statute, regulation or ordinance; and
- **claims challenging the existence, validity or enforceability of this Agreement (in whole or in part) or challenging the applicability of this Agreement to a particular dispute or claim.**

**CLAIMS NOT SUBJECT TO ARBITRATION:** The following matters only are not covered by this Agreement:  (a) any criminal complaint or proceedings, and (b) claims before administrative agencies for unemployment benefits.

**COMPLETE AGREEMENT:**   The Arbitration Procedures in Section IX of the Summary Plan Description (and also in Section I, Paragraph B of the Plan) are incorporated by reference into, and made part of, this Agreement the same as if they were all written here.  This Agreement, together with the incorporated Arbitration Procedures in Section IX of the Summary Plan Description, is the complete agreement between the Company and me.  It takes the place of any other oral understanding about arbitration, but other

Appendix p.89

written agreements, policies or procedures may also require me to arbitrate any disputes that I may have with the Company.

I am not relying on any statements, oral or written, on the subject, effect, enforceability or meaning of this Agreement, except as specifically stated in this Agreement.  If any provision of this Agreement is determined to be void or otherwise unenforceable, in whole or in part, such determination shall not affect the validity of the remainder of this Agreement.

**NOT AN EMPLOYMENT AGREEMENT:**  Neither this Agreement, the Plan nor the Summary Plan Description shall ever be construed to create any contract of employment, express or implied.  Nor does this Agreement, the Plan or the Summary Plan Description in any way alter the at-will status of my employment.

**RATIFICATION BY RECEIPT OF PLAN BENEFITS:**  I agree that each and every time that I receive Plan benefits, or have Plan benefits paid to a medical provider on my behalf, I ratify and reaffirm this Agreement the same as if I had signed this Agreement again on the date the benefits were paid.

**REQUIREMENTS FOR MODIFICATION OR REVOCATION:**  This Agreement will survive the termination of my employment.  This Agreement can only be revoked (except as provided in the paragraph below) or modified by a writing signed by both me and the Company's authorized representative that specifically states an intent to revoke or modify this Agreement, and this requirement of a signed writing cannot itself be waived except by such a signed writing.

**REVOCATION OF ACCEPTANCE:** If, after accepting this Agreement by signing below, I decide to revoke my acceptance of this Agreement, I may do so only by notifying the Company in writing by certified mail, return receipt requested, of my revocation.  I understand and agree that I may not revoke my acceptance of this Agreement if the Plan has paid (or become obligated to pay) benefits to or for me.  I understand and agree that I may only revoke my acceptance of this Agreement:  (a) within five (5) calendar days after the date of my signature below, or (b) within five (5) calendar days after receiving written notice of a material reduction in benefits provided by the Plan.

**VOLUNTARY AGREEMENT:**  I acknowledge and agree that I have carefully read this Agreement, that I understand its terms, and that I have entered into this Agreement voluntarily and without duress, pressure or coercion from any person and without relying on any promises or representations by the Company other than those contained in this Agreement itself.  I am not under the influence of alcohol or any other impairing substance, nor am I under any mental incapacity that would affect me at the time of signing this Agreement.  I am aware of the consequences of signing this Agreement and, to the extent that I deem necessary, I have consulted or will consult with an attorney.  Finally, I agree and acknowledge that signing this Agreement is **not** a condition of my employment.

Appendix p.90

# CHECK ONLY <u>ONE</u> OF THE FOLLOWING BOXES:

☐ I <u>agree</u> to the terms of this Agreement.   **OR**   ☐ I <u>reject</u> the terms of this Agreement.

_____   _____
**Signature Of Employee**                                    **Date**

_____
**Name Of Employee Printed**

_____   _____
**Witness Signature**                                    **Witness Signature**

_____   _____
**Printed Name of Witness**                              **Printed Name of Witness**

**Accepted and Agreed:**   *Renfro Industries, Inc.*

Appendix p.91

# NOTICE TO EMPLOYEES CONCERNING WORKERS' COMPENSATION IN TEXAS

**COVERAGE:**    Renfro Industries, Inc. has elected not to obtain workers' compensation insurance coverage.  As an employee of a non-covered employer, you are not eligible to receive workers' compensation benefits under the Texas Workers' Compensation Act.  However, a non-covered employer can and may provide other benefits to injured employees.  You should contact your employer regarding the availability of other benefits or compensation for a work-related injury or illness. In addition, you may have rights under the common law of Texas should you suffer an on the job injury or illness.  Your employer is required to provide you with coverage information, in writing,  when you are hired or whenever the employer becomes, or ceases to be, covered by workers' compensation insurance.

**SAFETY HOTLINE:**    The Division has established a 24 hour toll-free telephone number for reporting unsafe conditions in the workplace that may violate occupational health and safety laws.  Employers are prohibited by law from suspending, terminating, or discriminating against any employee because he or she in good faith reports an alleged occupational health or safety violation. Contact Workers' Health & Safety at 1-800-452-9595.

Appendix p.92

# PLAN DE BENEFICIOS
# POR LASTIMADURAS OCUPACIONALES DE
# RENFRO INDUSTRIES, INC.
# DESCRIPCIÓN DEL PLAN EN RESUMEN

## I.   INFORMACIÓN GENERAL

Renfro Industries, Inc. (de aquí en adelante simplemente "la Compañía") ha rechazado la cobertura para sus empleados en Texas conforme a la Ley de Indemnización por Accidentes de Trabajo de Texas (Texas Workers' Compensation Act), se ha convertido en una empresa "no suscriptora" a dicha Ley, y no les proporciona seguro de indemnización por accidentes de trabajo a empleados en Texas.  En su defecto, la Compañía ha establecido voluntariamente un plan de lastimaduras ocupacionales (el "Plan") conforme a la ley federal.  Se trata de un plan colectivo de beneficios de salud e incapacidad para el bienestar del empleado conforme a la Ley federal de Seguridad de los Ingresos para la Jubilación del Empleado (Employee Retirement Income Security Act – "ERISA") de 1974.  La Compañía es el Administrador del Plan.

En general, conforme al Plan, se les proporcionan gastos necesarios de tratamiento médico a empleados por lastimaduras accidentales sufridas en el trabajo y relacionadas con el trabajo, y en ciertas condiciones se pagarán beneficios por incapacidad, desmembramiento, entierro y muerte.  El Plan paga estos beneficios sin importar la culpa o negligencia del empleado/de la empleada participante y sin la necesidad de que el empleado/la empleada participante compruebe que la Compañía o sus empleados hayan sido negligentes.  La Compañía paga el costo completo de proporcionar cobertura conforme al Plan y de operar el mismo.  Los empleados participantes en el Plan no pagan nada para poder recibir beneficios conforme a este Plan.

Este Resumen describe brevemente las disposiciones principales del Plan.  Sírvase leerlo detalladamente.  Hay una copia completa del documento del Plan en los archivos para que cualquier empleado/empleada elegible pueda revisarla si desea información más detallada.  Si llegara a surgir una duda con respecto al Plan, el documento del Plan (y no este Resumen) regirá y determinará los derechos del/de la Participante.  Los términos usados en este Resumen que empiezan con letra mayúscula se definen en el Plan.

El Plan descrito en este Resumen se refiere a lastimaduras sufridas en el trabajo en o después de la "Fecha Efectiva," el **15 de julio de 2012**.  La Compañía no tiene el Seguro de Indemnización por Accidentes de Trabajo de Texas, y el Plan no constituye cobertura de dicho seguro.  Véase el Anexo "B" adjunto a este Resumen.

## II.   ELEGIBILIDAD Y PARTICIPACIÓN:  ACUERDO DE ELECCIÓN Y ARBITRAJE

Cada Empleado/Empleada de la Compañía en Texas **tiene el derecho de** participar en el Plan.  Sin embargo, para poder **participar** en efecto en el Plan, un Empleado/una Empleada debe hacer una elección por escrito para convertirse en **Participante** en el Plan, suscribiendo y <u>aceptando</u> los términos del formulario "Acuerdo de Elección y Arbitraje" adjunto a este Resumen como Anexo "A."  Los "Procedimientos Arbitrales" de la Sección IX de este Resumen se incorporan por referencia en el Acuerdo de Elección y Arbitraje, así que, **por favor, léalos, así como el Anexo "Acuerdo de Elección y Arbitraje," detalladamente.  El Acuerdo de Elección y Arbitraje implica la Elección y el abandono de ciertos derechos legales de un/una Participante.**

Al firmar y acordar con el Acuerdo de Elección y Arbitraje, un/una Participante acuerda someter a arbitraje obligatorio todo tipo de disputa o diferencias que pudieran surgir entre el/la Participante y la Compañía (o una de sus compañías filiales) en el transcurso o después del empleo del/de la Participante con la Compañía, si dicha disputa estuviera relacionada con el empleo del/de la Participante con la Compañía o no.  **Un/una Participante renuncia, abandona y cede cualesquier derechos que el/la Participante pudiera tener de entablar demanda en una corte y de que un jurado determine una disputa.**  Todas las reclamaciones y disputas relacionada a lastimaduras ocupacionales que un/una Participante (o su esposo/esposa, hijos menores, herederos, padres y representantes legales) tenga o pudiera tener en el futuro contra la Compañía y/o sus sucesores, funcionarios, directores, accionistas, miembros, gerentes, empleados, agentes, compañías filiales o planes de beneficios (incluido este Plan) y los administradores y fiduciarios de dichos planes, y todas las reclamaciones y disputas de todas estas personas y entidades contra el/la Participante están sujetas al arbitraje obligatorio conforme a los términos del Acuerdo de Elección y Arbitraje.

## III.   COMO OBTIENE BENEFICIOS UN/UNA PARTICIPANTE

### A.   <u>Procedimientos en Caso de Lastimadura</u>

- Para poder recibir beneficios conforme a este Plan, un empleado/una empleada debe ser Participante del Plan.

- Un/una Participante debe avisar a su supervisor en la escritura, en formas proporcionadas por la Compañía, inmediatamente después de que sea herido en el trabajo como el resultado de cualquier tipo del **accidente o el acontecimiento** (a pesar de si es un Accidente como definido por el Plan), <u>incluso si la herida aparezca menor</u>.  **Este aviso se debe dar a más tardar <u>al final del turno de el/la Participante</u> en el día del accidente o el acontecimiento.  No se pagarán beneficios conforme al Plan si este aviso no se proporciona.**

Appendix p.94

- Un/una Participante debe avisar a su supervisor en la escritura, en formas proporcionadas por la Compañía, inmediatamente después de experimentar **la herida, la lastimadura, el dolor, un problema corporal, una condición física, una enfermedad ocupacional o el trauma acumulativo** sostuvieron en el trabajo (a pesar de si es una Lastimadura del Cuerpo, una Enfermedad Ocupacional, o un Trauma Acumulativo como definido por el Plan), <u>incluso si la herida, la lastimadura, el dolor, el problema, la condición, la enfermedad o el trauma aparezcan menores</u>. **Este aviso debe ser proporcionada no luego que el día <u>trigésimo</u> <u>(30 días)</u> después de que la fecha en que el/la Participante supiera ni deba haber sabido que la herida, la lastimadura, el dolor, el problema, la condición, la enfermedad ni el trauma pueden ser relacionados al empleo del/de la Participante con la Compañía. Ningunos beneficios serán pagados bajo este Plan si nota de la herida, la lastimadura, el dolor, el problema, la condición, la enfermedad ni trauma acumulativo no son proporcionados por escrito dentro de 24 meses de la fecha que ocurrió.**

- Un/una Participante lastimado(a) y su supervisor deben llenar un formulario de reporte de lastimadura, presentar declaraciones por escrito y proporcionar la información adicional que requiera el Comité.

- Si es necesario, el supervisor/la supervisora ayudará a hacer las gestiones para el tratamiento médico.

- Se le podría exigir a un/una Participante que se someta a pruebas por droga o alcohol.

- Un/una Participante recibirá tratamiento médico sólo de un **Médico o Centro Médico aprobado por el Comité nombrado para administrar el Plan.**

- Se podrá utilizar a un médico o centro médico no aprobado **sólo** para un **"Tratamiento de Emergencia,"** definido como Gasto Médico no suministrado por un Médico o Centro aprobado debido a que no se encuentra uno razonablemente disponible y porque un/una Participante que se lesione en el trabajo tiene una afección que se ha manifestado súbita e inesperadamente, dando como resultado síntomas agudos tan severos que, sin el tratamiento inmediato: (1) podría poner en peligro de manera grave la vida o salud del/de la Participante o su capacidad para recuperar la función máxima, o (2) en la opinión de un médico que conoce la afección del/de la Participante, sometería al/a la Participante a un dolor fuerte sin el cuidado o tratamiento.

- El que una reclamación de Beneficios Médicos sea para un "Tratamiento de Emergencia" lo determina quien designe el Comité o un médico que conoce la afección del/de la Participante.

Appendix p.95

- No es necesaria la aprobación del Comité ni de su designado antes de ningún Tratamiento de Emergencia a fin de que se paguen los Beneficios Médicos de tal Gasto Médico, pero **un/una Participante lastimado(a) debe notificar al Administrador del Plan dentro de 24 horas después de haber recibido el Tratamiento de Emergencia.**

## B. Médicos y Centros Médicos Aprobados

Como se describe más arriba, con la excepción de situaciones de "Tratamiento de Emergencia," todo tratamiento médico debe ser proporcionado por "Médicos" o "Centros Médicos" aprobados por el Comité nombrado por la Compañía para administrar el Plan.  Los términos que empiezan con letras mayúsculas "**Médico**" y "**Centro Médico**" tienen los significados siguientes al usarse en este Resumen:

- **Centro Médico** - un hospital u otro lugar de tratamiento médico que es preaprobado por el Comité o de otra forma aprobado por escrito por el Comité a petición de un/una Participante.  **Ningún Centro Médico es agente de la Compañía**.

- **Médico** - un Médico debidamente calificado que esté autorizado legalmente para practicar la medicina en el estado donde se presta el servicio y que es preaprobado por el Comité o de otra forma aprobado por escrito por el Comité a petición de un/una Participante.  **Ningún Médico es agente de la Compañía**.

Los beneficios del Plan están condicionados al uso solamente de Médicos y Centros Médicos aprobados, y los beneficios del Plan se pueden suspender o terminar si se usan proveedores de tratamiento médico no aprobados.   Sin embargo, cada Empleado/Empleada de la Compañía y cada Participante del Plan conserva el derecho de **abandonar beneficios del Plan** y buscar **por cuenta propia** cualquier tratamiento médico que él o ella juzgue apropiado de cualquier proveedor que escoja.

Ya que los Médicos y los Centros Médicos son aprobados según se necesiten, caso por caso, no existe en sí una lista de Médicos y Centros Médicos aprobados. Si tal lista es creada por el Comité o a instrucciones del mismo, se suministrará una copia sin cargo alguno.

# IV.   LASTIMADURAS:  CUBIERTAS Y NO CUBIERTAS

El Plan proporciona beneficios a un/una Participante con respecto a una gama amplia de lastimaduras sufridas en el Alcance de Empleo del/de la Participante dentro de la Compañía.  Con sujeción a las limitaciones y exclusiones brevemente descritas en este Resumen (y descritas por completo en el Plan), un/una Participante podrá tener el derecho de recibir atención médica gratis por una Lastimadura.  Si un Participante queda Totalmente Incapacitado debido a una Lastimadura, él puede tener derecho a Beneficios por Incapacidad o Desmembramiento conforme al Plan.  Si una Lastimadura

ocasionara la muerte de un/una Participante, el beneficiario de muerte de él puede recibir un Beneficio por Muerte y un Beneficio por Entierro conforme al Plan.

## A.    Lastimaduras Cubiertas

El Plan paga beneficios para cualquier Lastimadura (incluidas Lastimaduras del Cuerpo, Trauma Acumulativo y Enfermedad Ocupacional) a la estructura física del cuerpo del/de la Participante incurrida en el Alcance de su Empleo con la Compañía, que sea causada por un Accidente o una serie de Accidentes que ocurra después de la Fecha Efectiva declarada en la página 1 de este Resumen.

Un **"Accidente"** es un evento que no era previsto, planeado o esperado, por el/la Participante y que ocurrió por casualidad en un momento y en un lugar específicamente identificables o de causas desconocidas y que haya ocasionado una lastimadura física al/a la Participante, quien en el momento esté actuando dentro del Alcance de su Empleo con la Compañía, como se describe en más detalle en el documento del Plan.

Una **"Lastimadura del Cuerpo"** es una lastimadura física identificable, incluida la muerte resultante, causada por un Accidente que haya ocurrido después de la Fecha Efectiva.  La "Lastimadura del Cuerpo" no incluye el Trauma Acumulativo o Enfermedad Ocupacional a menos que sea resultante directamente de un Accidente.  Como se describe en más detalle en el documento del Plan, el **"Trauma Acumulativo"** es daño a la estructura física del cuerpo del/de la Participante ocurriendo como resultado de actividades repetitivas y físicamente traumáticas que ocurran en el Alcance del Empleo del/de la Participante con la Compañía si, y solamente si, el último día en que el/la Participante fue expuesto a las condiciones que causaron o empeoraron dicho daño tuvo lugar después de la Fecha Efectiva.

Como se describe en más detalle en el Plan, la **"Enfermedad Ocupacional"** es una enfermedad (pero no incluidas las enfermedades normales de la vida a las cuales el público en general esté expuesto) que surge de las responsabilidades asignadas de un/una Participante dentro de su Alcance De Empleo con la Compañía y la cual cause daño o peligro a la estructura física del cuerpo si, y solamente si, el último día en que el/la Participante haya sido expuesto/expuesta a las condiciones que causan o empeoran dicho daño o peligro haya tenido lugar después de la Fecha Efectiva.

El **"Alcance De Empleo"** es una actividad de cualquier tipo o carácter que tenga que ver con y tenga su origen en el trabajo, negocio, oficio o profesión de la Compañía y que desempeñe el/la Participante mientras esté ocupado o con respecto a la realización del negocio de la Compañía, incluidas actividades realizadas en las instalaciones de la Compañía o en otros lugares.  El "Alcance De Empleo" no incluye en ninguna circunstancia los viajes del/de la Participante entre la casa y el lugar de empleo.

## B.   Lastimaduras No Cubiertas

El término **"Lastimadura"** como se usa en este Resumen y en el Plan, <u>no</u> incluye, y no se pagarán beneficios por:

- ninguna lastimadura ocurrida mientras el/la Participante se hubiera considerado "embriagado o drogado" conforme al Código Penal de Texas (the Texas Penal Code) o ebrio o ninguna droga o la sustancia ilegales;

- ningún trauma mental, angustia emocional, o lastimadura similar que no sea identificable como daño o peligro a la estructura física del cuerpo, incluido, sin limitación, cualquier daño o peligro emocional que surja principalmente de una acción legítima de personal, incluido un traslado, un ascenso, un descenso o terminación de empleo;

- ninguna lastimadura que surja de la participación del/de la Participante en juegos rudos, luchas, peleas o conducta indebida similar.

- ninguna lastimadura que surja de la participación del/de la Participante en un asalto, (excepto un asalto cometido en defensa del negocio o de la propiedad de la Compañía), o servicio en las fuerzas armadas o en cualquier unidad no combatiente y civil que preste servicio con dichas fuerzas;

- ninguna lastimadura auto-infligida o causada o empeorada intencionalmente;

- ninguna lastimadura que surja de un acto de un tercero que tenga la intención de lastimar al Participante debido a razones personales y no dirigida al Participante como empleado o debido a su empleo con la Compañía;

- un ataque al corazón, a menos que haya sido causado y surja directamente de un Accidente;

- ninguna lastimadura que surja de la participación voluntaria en una actividad recreativa, social o deportiva fuera del trabajo que no constituya parte del Alcance De Empleo del/de la Participante con la Compañía;

- ninguna lastimadura que surja de un caso fortuito (act of God), a menos que el empleo con la Compañía exponga al Participante a mayor riesgo de Lastimadura por un caso fortuito que se aplique normalmente al público en general;

- ninguna lastimadura que sea fingida o un intento de defraudar a la Compañía, el Plan, cualquier otro plan de beneficios para empleados o póliza de seguro proporcionada por la Compañía, o algún agente, empleado/empleada o representante de la Compañía;

- ninguna lastimadura que surja o esté relacionada o vinculada de alguna manera

Appendix p.98

al asbesto, fibras del asbesto o productos de asbesto, silicón, sílice, los silicate desempolvan o silicosis, o destrucción de arena, el molde, los microbios o el hongo, las propiedades peligrosas de Material Nuclear, una enfermedad de transmisión sexual, la enfermedad psiquiátrica o emocional, la pena o el desorden, la contaminación relacionó la enfermedad, la enfermedad o la muerte, o a la propiedad, la operación, el mantenimiento, el uso, cargando o descargando, o la confianza en otros de cualquier avión poseído u operado por o rentado o prestado a la Compañía o un Empleador;

· ninguna lastimadura que surge de una condición preexistente o lastimadura preexistente para que diagnóstico, el tratamiento o el cuidado, inclusive medicina de prescripción o consejo médico, fue recomendados o fueron recibidos por el Participante dentro de los seis meses inmediatamente antes que el Participante fuera empleado por un Empleador;

· ninguna lastimadura, perjuicio, multa, gravamen o sanción  que surja o esté relacionado o vinculado de alguna manera a reclamaciones:   (1) contra la Compañía por responsabilidad asumida conforme a algún contrato, acuerdo, declaración, garantía o indemnización de cualquier tipo; (2) que surja de la relación de empleo que el/la Participante tenga con la Compañía (tal como discriminación en el trabajo, despido improcedente, acoso sexual, reclamaciones conforme a la Ley de Americanos con Incapacidades (Americans with Disabilities Act) y reclamaciones conforme al Código de Trabajo de Texas (Texas Labor Code); (3) que surja de violaciones alegadas o reales de alguna ley federal o estatal; y/o (4) que surja conforme al derecho consuetudinario, y/o

· toda lesión, daño o pérdida que se derive de algún modo, directa o indirectamente, de: (1) una guerra, invasión, actos de enemigos extranjeros, hostilidades u operaciones bélicas (sin importar si se ha declarado o no una guerra), guerra civil, motín, revolución, confiscación por orden gubernamental o ley marcial; (2) disturbios, huelgas o conmoción civil; o (3) todo "acto de terrorismo" según se define en el Plan.

## V.   BENEFICIOS

### A.   Beneficios Médicos

#### 1.   Gastos Médicos Cubiertos

Un/una Participante tendrá el derecho de recibir Beneficios Médicos por Gastos Médicos incurridos por el/la Participante como resultado de una Lastimadura sufrida dentro del Alcance de su Empleo con la Compañía.  Con sujeción a las condiciones más adelante y como se describe en más detalle en el documento del Plan, los "Gastos Médicos" están cubiertos al 100%, a condición de que (1) el empleado/la empleada haya elegido hacerse Participante en el Plan al haber firmado y aceptado los términos

Appendix p.99

del Acuerdo de Elección y Arbitraje; (2) el/la Participante siga los "Procedimientos en Caso de Lastimadura" descritos en la Sección III, Párrafo A más arriba; y (3) el primer Gasto Médico debe ser contraído dentro de 30 días del Accidente o la Lastimadura.

El Plan paga tres categorías de tratamiento médico: Tratamiento de Emergencia, Tratamiento que requiere Aprobación y Tratamiento Médico Ordinario.  El **Tratamiento de Emergencia** no requiere la aprobación previa del Comité y podrá ser suministrado por un médico o centro no aprobado si se le da aviso oportuno al Administrador del Plan acerca de la lesión en el trabajo y acerca del Tratamiento de Emergencia, según se describe más arriba en la Sección III.A.

Los procedimientos quirúrgicos, hospitalizaciones, fisioterapia, formación de imágenes por resonancia magnética (MRI), tomografía axial computarizada (CAT scan), inyecciones de esteroides, programas para preparar al empleado a regresar al trabajo (work hardening), Evaluación de Capacidad Funcional, electromiogramas (EMG), electroencefalogramas (EEG), electrocardiogramas (ECG/EKG), mielogramas y transplantes de órganos y tejidos, cuando no se suministran como Tratamiento de Emergencia, son **Tratamientos que requieren Aprobación** y deben:  (1) ser aprobados previamente por el Comité y (2) ser suministrados por un Médico o Centro aprobado.

El **Tratamiento Médico Ordinario** no requiere la aprobación previa del Comité, siempre y cuando lo suministre un Médico o Centro aprobado.

"**Los Beneficios Médicos**" se terminan en la fecha de las siguientes que ocurra primero:  (1) la fecha de la muerte del/de la Participante, (2) la fecha en que el/la Participante llegue a su Capacidad de Rehabilitación Máxima, (3) la fecha de cualquier terminación por Mala Conducta Grave del empleo del/de la Participante con la Compañía, (4) según se dispone en la Sección VII de este Resumen, (5) el vencimiento de **116** semanas desde la fecha en que dichos Beneficios empezaran, o (6) cuando se llegue al Límite Total de Beneficios.

El "**Límite Total de Beneficios**" significa que el total de todo los Beneficios Médicos, Beneficios por Incapacidad, Beneficios por Desmembramiento, Beneficios de Entierro y Beneficios por Muerte pagado por el Plan:
(1) a o para **un(a)** Participante como resultado de **un** Accidente (o serie de Accidentes conexos) no deberá exceder la suma de **$250,000**, y
(2) a **todos** los Participantes como resultado de **un** Accidente (o serie de Accidentes conexos) no deberá exceder la suma de **$1,000,000**, y
(3) a o para **todos** los Participantes como el resultado de **todos** Accidentes durante el período del 1º de enero hasta el 31 de diciembre no excederá la suma de **$10,000,000**.

"**La Capacidad de Rehabilitación Máxima**" es el punto en que un Médico determine que el/la Participante lastimado/lastimada no mejorará sustancialmente como resultado de tratamiento médico adicional o fisioterapia.  "**Mala Conducta Grave**" significa mala conducta grave ("Gross Misconduct") como se define abajo la Sección 4980B del

Código de Impuestos sobre Ingresos de los Estados Unidos (Internal Revenue Code).

**"Los Gastos Médicos"** son gastos incurridos por un/una Participante y pagados por el Plan por servicios médicos o dentales, procedimientos o suministros, a condición de que el gasto sea Médicamente Necesario, Normal y Acostumbrado y recetado por un Médico que actúe dentro del alcance de su licencia. "Los Gastos Médicos" incluyen estar internado en un Hospital o una Institución de Enfermeras Especializadas y el costo de suministros Médicamente Necesarios y la contratación de una ambulancia.

**"Médicamente Necesario"** significa servicios médicos, procedimientos o suministros que sean: (1) requeridos, reconocidos y profesionalmente aceptados nacionalmente por Médicos como la manera normal, acostumbrada y eficaz de diagnosticar o tratar la condición; (2) los suministros o niveles de servicios más económicos que sean apropiados y disponibles para el tratamiento seguro y eficaz del/de la Participante; y (3) no principalmente para la conveniencia del/de la Participante, la familia del/de la Participante o el Médico del/de la Participante o algún otro proveedor de servicios médicos, suministros o procedimientos.

**"Normal y Acostumbrado"** significa que el gasto es: (1) normal cuando sea el honorario cobrado de costumbre (y por el cual el/la Participante tenga responsabilidad de pagar) en la ausencia de un seguro u otro reembolso por un tercero, por un proveedor de tratamiento médico por un tratamiento, servicio o suministro en particular; y (2) acostumbrado con relación a lo que cobren otros médicos y proveedores de tratamiento médico en la misma área geográfica por el mismo y similar tratamiento, servicio o suministro.

## 2.    Gastos Médicos No Cubiertos

"Gastos Médicos" no incluyen gastos incurridos por:

- bio-retroalimentación (biofeedback) (y otras formas de auto-tratamiento o capacitación de auto-ayuda o cualquier examen diagnóstico relacionado), la hipnosis o la acupuntura;

- la compra, alquiler o reparación de aparatos de control del ambiente, incluidos, sin limitación, aparatos de aire acondicionado, humidificadores, deshumidificadores o purificadores de aire;

- servicios realizados por una persona quien de costumbre viva con el/la Participante, el/la cónyuge del Participante, los padres del/de la Participante o de el/la cónyuge del/de la Participante, un hijo/una hija del/de la Participante o de el/la cónyuge del/de la Participante o un hermano o una hermana del/de la Participante o de el/la cónyuge del Participante;

- ningún procedimiento, tratamiento, servicio, suministro o medicamento, diagnóstico(a) o preventivo(a), que no sea Médicamente Necesario(a); o

- ninguna parte de ningún Gasto Médico que exceda lo que sea el honorario Normal y Acostumbrado.

## B.   Beneficios por Incapacidad

Después de vencerse cinco (5) días hábiles consecutivos (un día hábil se considera cualquier día en que el/la Participante estaría de costumbre en el trabajo), período durante el cual un/una Participante debe haber estado Totalmente Incapacitado(a) como resultado de una Lastimadura, entonces el Plan pagará al/a la Participante que esté Totalmente Incapacitado(a) como resultado de una Lastimadura un Beneficio por Incapacidad igual al **75%** del Sueldo Pre-Incapacidad.

No obstante, ningún Participante recibirá Beneficios por Incapacidad que excedan **$900.00 por semana**, suma que representa el máximo Beneficio por Incapacidad semanal establecido por este Plan.

El "**Sueldo Pre-Incapacidad**" significa:

(A)   para un/una Participante que recibe un **salario por horas** de la Compañía (o Empresa Patronal), el promedio de la tarifa de sueldo normal por hora del/de la Participante por no más de cuarenta (40) horas por semana para las seis semanas consecutivas inmediatamente antes de la fecha en que él o ella se haya vuelto Totalmente Incapacitado(a), pero si un/una Participante a quien se paga por horas no ha trabajado para la Compañía por seis semanas o si su sueldo no puede ser determinado de otra manera razonablemente por el Comité (según su juicio exclusivo), entonces el promedio de la tarifa de sueldo semanal para las seis semanas se basará en el sueldo de otro Empleado semejante, según lo determinado por el Comité a su juicio exclusivo.

(B)   para un/una Participante que recibe **un salario** de la Compañía (o una Empresa Patronal), el total del salario normal semanal del/de la Participante en la fecha en que él o ella se haya vuelto Totalmente Incapacitado(a) (a su vez dividido entre cuarenta (40) horas por semana, sin importar el número de horas trabajadas normalmente por el/la Participante en una semana, para determinar su tarifa de sueldo horario);

(C)   para un/una Participante que recibe **una comisión** de la Compañía (o una Empresa Patronal), el promedio de comisiones semanales para las seis semanas consecutivas inmediatamente antes de la fecha en que él o ella se haya vuelto Totalmente Incapacitado(a), pero si un/una Participante que recibe una comisión no ha trabajado para la Compañía (o para una Empresa Patronal) por seis semanas o si su sueldo no puede ser determinado de otra manera razonablemente por el Comité (según su juicio exclusivo), entonces el promedio de la tarifa de sueldo semanal para las seis semanas (a su vez dividido entre cuarenta (40) horas por semana para determinar el sueldo horario) se basará en el sueldo de otro Empleado semejante, según lo

Appendix p.102

determinado por el Comité a su juicio exclusivo.

El **"Sueldo Pre-Incapacidad"** se calcula usando la antedicha tarifa de sueldo semanal y la tarifa de sueldo horario correspondiente, se paga a un/una Participante Totalmente Incapacitado(o) por semana, y excluye cualquier tiempo extra, bonificación, beneficios o remuneraciones extraordinarias. El "Sueldo Pre-Incapacidad" incluirá las contribuciones que haya hecho el/la Participante en la forma de una reducción de salario autorizada, las cuales son desviadas por el/la Participante para que la Empresa Patronal las pague a un plan de ahorros como Planes de Reducción de Sueldo (Salary Reduction Plans), Planes de Cafetería (Cafeteria Plans) o Planes de Beneficios Flexibles (Flexible Benefit Plans). Los Participantes pueden obtener del Comité, sin cargo alguno, una copia de los procedimientos que rigen las órdenes médicas idóneas de pensión alimenticia (medical child support orders).

**Los Beneficios por Incapacidad** seguirán pagándose sólo mientras el/la Participante siga Totalmente Incapacitado(a) como resultado de una Lastimadura, pero se terminarán, de cualquier modo, en la primera de las fechas siguientes: (1) el vencimiento de **116** semanas desde la fecha de la Lastimadura del Cuerpo o Trauma Acumulativo, (2) el vencimiento de **116** semanas desde la fecha en que dichos Beneficios por Incapacidad empezaran a acumularse como resultado de Enfermedad Ocupacional, (3) la fecha de la muerte del/de la Participante, (4) la fecha en que el/la Participante llegue a su Capacidad de Rehabilitación Máxima, (5) la fecha de cualquier terminación por Mala Conducta Grave del empleo con la Compañía del/de la Participante, (6) según se dispone en la Sección VII de este Resumen, o (7) cuando se llegue al Límite Total de Beneficios.

## C.   Beneficios por Muerte, Entierro o Desmembramiento

### 1.   Beneficios Por Muerte Y Entierro

Si un/una Participante llegara a morir como resultado directo y único de un Accidente o serie de Accidentes, entonces el Beneficiario de Muerte del/de la Participante será elegible para recibir un Beneficio por Muerte de **$150,000, a menos que el Beneficio por Muerte tenga que ser reducido para que no exceda el Límite Total de Beneficios.**

Si un/una Participante llegara a morir como resultado directo y único de un Accidente o serie de Accidentes, entonces el Beneficiario de Muerte del/de la Participante será elegible para recibir un Beneficio por Entierro igual al <u>menor</u> de: (1) el costo efectivo del entierro del/de la Participante, o (2) $5,000, a menos que el Beneficio por Entierro tenga que ser reducido para que no exceda el Límite Total de Beneficios.

### 2.   Beneficios Por Desmembramiento

Si un/una Participante llegara a tener una o más de las siguientes Lastimaduras de Desmembramiento como resultado directo y único de un Accidente o serie de

# Appendix p.103

Accidentes, entonces deberá ser elegible para recibir, con sujeción al Límite Total de Beneficios, un (el más grande) Beneficio por Desmembramiento por un monto en dólares igual al porcentaje del Beneficio por Muerte (como sería determinado según el párrafo inmediatamente precedente si un/una Participante ha resultado muerto por el Accidente o serie de Accidentes que causó la Lastimadura de Desmembramiento) como lo indique una Lastimadura de Desmembramiento en particular:

| | |
|---|---|
| Pérdida de Ambas Manos o Ambos Pies | 100% |
| Pérdida de La Vista de Ambos Ojos | 100% |
| Pérdida de Una Mano y Un Pie | 100% |
| Pérdida del Oído y Habla | 100% |
| Pérdida de Un Pie y Vista de Un Ojo | 100% |
| Pérdida de Una Mano y Vista de Un Ojo | 100% |
| Pérdida del Uso de Ambos Brazos y Ambas Piernas | 100% |
| Pérdida del Uso de Ambos Brazos o Ambas Piernas | 75% |
| Pérdida del Uso de un Brazo y una Pierna | 75% |
| Pérdida del Oído o Habla | 50% |
| Pérdida de Una Mano o Un Pie | 50% |
| Pérdida de Vista de Un Ojo | 50% |
| Pérdida del Uso de un Brazo o una Pierna | 50% |
| Pérdida del Pulgar | 25% |

"Pérdida" respecto a Lastimadura de Desmembramiento significa: (a) con respecto a una mano o pie, separación en o arriba de la respectiva muñeca o tobillo o pérdida total de la habilidad para ejecutar todo y cada acto y servicio que la mano o el pie podía ejecutar antes del Accidente o serie de Accidentes, (b) con respecto a la vista de un ojo, pérdida de vista total e irreversible, (c) con respecto al oído, la pérdida total e irreversible del oído en ambos oídos, (d) con respecto al habla, la pérdida total e irreversible del sentido completo, (e) con respecto al pulgar, separación a través o arriba de la articulacion falangemetacarpiana. Cualquier "Pérdida" debe continuar sin interrupción por un período de no menos de 52 semanas consecutivas y deberá ser total e irreversible y sin remedio a través de medios quirúrgicos u otros medios, todos según lo determinado por el Médico que Atiende.

### 3.    Limitaciones, Métodos de Pago y Condiciones

El Plan pagará sólo una muerte o Lastimadura de Desmembramiento a un/una Participante debido al mismo Accidente o serie de Accidentes. Si un/una Participante muere y es desmembrado, o si un/una Participante sufre más de una Lastimadura de Desmembramiento, entonces el Plan pagará, con sujeción al Límite Total de Beneficios, el Beneficio más grande.

Un Beneficio por Muerte o Beneficio por Desmembramiento será además de los Beneficios Médicos pagaderos por el Plan, a menos que el Beneficio tenga que ser reducido para que no exceda el Límite Total de Beneficios.

El Beneficio por Muerte se pagará al Beneficiario (o Beneficiarios) de Muerte del

Appendix p.104

Participante como sigue:

(1)  el 20% del Beneficio por Muerte se pagará en una suma global en efectivo (o en pagos iguales de suma global en efectivo si hay más de un Beneficiario de Muerte) tan pronto como sea posible administrativamente después de la muerte del/de la Participante y la determinación del Beneficiario de Muerte apropiado (o al caudal hereditario del/de la Participante difunto(a) si no hay Beneficiarios de Muerte); y
(2)  el 80% restante del Beneficio por Muerte se pagará en treinta y seis (36) pagos mensuales iguales (sin interés), comenzando el primer día del mes después del pago de suma global inicial.

Se paga un Beneficio por Desmembramiento al Participante de la misma forma (usando el mismo porcentaje y número de pagos mensuales) descrita más arriba para el pago de Beneficios por Muerte.

El aceptar todo o parte de un Beneficio por Muerte, de Entierro o de Desmembramiento significa que la persona que acepta está de acuerdo con los términos y condiciones del Plan y el Acuerdo de Elección y Arbitraje, y el Plan exige que el Beneficiario de Muerte o Participante u otra persona que está recibiendo los Beneficios por Muerte, Entierro o Desmembramiento firme un acuerdo de indemnización y descargo de responsabilidad por la lastimadura fatal o de desmembramiento.

## VI.   EL COMITÉ DEL PLAN

El Comité nombrado por el Administrador del Plan (la Compañía) tiene autoridad discrecional y final para interpretar e implementar las disposiciones del Plan.  Cada interpretación, opción, determinación, u otro ejercicio de autoridad por el Comité será obligatorio para todas las partes afectadas, sin restringir, sin embargo, el derecho del Comité de reconsiderar dicha acción.

## VII.   PÉRDIDA DE BENEFICIOS

Los beneficios conforme al Plan serán suspendidos o terminados si el/la Participante falta en

•      cumplir con las disposiciones de este Resumen, el Plan, y las reglas y procedimientos adoptados por el Comité para la administración del Plan, y lo que pida el Comité;

•      reportar la Lastimadura y proporcionar la información requerida de acuerdo con la Sección III, Párrafo A de este Resumen;

•      cumplir con la política de la Compañía, si existe, con respecto al abuso de sustancias y someterse a cualquier prueba para drogas o alcohol pedida por el Comité;

- proporcionar, a petición del Comité, una declaración completa, una declaración jurada o una deposición con respecto al incidente que crea el/la Participante que haya resultado en una Lastimadura;

- proporcionar información verídica durante el proceso de contratación de la Compañía;

- proporcionar información verídica y cooperar completamente con el Comité y actuar de buena fe con respecto a la administración del Plan;

- utilizar sólo Médicos y Centros Médicos aprobados (excepto en caso de Tratamiento de Emergencia);

- proporcionarle información correcta a un Médico que Atiende, seguir las instrucciones de éste y seguir bajo el tratamiento del mismo;

- asistir y llegar a tiempo para todas las citas que tenga con los proveedores de atención médica y permitir que un representante autorizado de la Compañía acompañe al/a la Participante a las citas con los proveedores de atención médica;

- evitar conducta que perjudique la recuperación de la Lastimadura;

- contactar con el supervisor/la supervisora de la Compañía del/de la Participante periódicamente hasta que pueda regresar al trabajo, incluida la notificación del tiempo de recuperación esperado después de cada cita con un Médico;

- evitar la Mala Conducta Grave y ser destituido por la Compañía debido a dicha conducta;

- informarle a la Compañía inmediatamente después de que le haya informado que él o ella haya llegado a su Capacidad de Rehabilitación Máxima o Mejoría Médica Máxima (Maximum Medical Improvement);

- informarle a su supervisor(a) y regresar al trabajo en la Compañía después de que el Médico que Atiende le haya dado de alta al Participante para trabajar para la Compañía; y

- cumplir con el Acuerdo de Elección y Arbitraje (y la falta en cumplir de el/la cónyuge, los hijos menores, los padres y los representantes legales).

Appendix p.106

## VIII. COMO SOLICITAR UNA RECONSIDERACIÓN TRAS LA DENEGACIÓN DE BENEFICIOS

Un/una Participante (o Beneficiario por Muerte, la sucesión de un/una Participante o el representante autorizado por escrito por el Participante para representarlo/la) puede presentar reclamaciones para beneficios del Plan, cumpliendo con los procedimientos establecidos en la Sección III, Párrafo A, de este Resumen y sometiéndose a todo examen exigido por el Comité.  Tratándose de una reclamación con respecto a un Tratamiento de Emergencia, a un médico u otro profesional de salud que conozca la afección del/de la Participante se le permite actuar como representante autorizado únicamente para fines de la reclamación del Tratamiento de Emergencia.  Si un/una Participante (u otro reclamante) cree que se ha denegado indebidamente una solicitud para beneficios, él o ella podrá apelar tal denegación.

Si un/una Participante o su representante autorizado no siguiera los procedimientos del Plan para presentar una reclamación de Beneficios Médicos para un Tratamiento que requiere Aprobación o un Tratamiento de Emergencia, el Comité notificará al/ a la Participante (u otro reclamante) tan pronto como sea posible, pero, a más tardar 5 días (24 horas para un Tratamiento de Emergencia) después de la falta, de la información específica necesaria para completar la reclamación.  Esta notificación será verbal, a menos que el/la Participante (o reclamante) solicite una notificación por escrito.  Esta notificación se aplicará sólo si la falta es una comunicación por el/la Participante (o reclamante) recibida por el/los representante(s) designado(s) por el comité, responsable(s) de manejar los asuntos de beneficios del Plan y que designa a un Participante específico, identifica una afección o síntoma médico específico y hace referencia a un tratamiento, servicio o producto específico para el cual se solicita la aprobación.

Existen procedimientos de reclamación y apelación por separado para:  (1) Beneficios Médicos para un Tratamiento de Emergencia, (2) Beneficios Médicos para un Tratamiento que requiere Aprobación y un Tratamiento Médico Ordinario, (3) Beneficios por Incapacidad, y (4) Beneficios por Desmembramiento, Entierro y Muerte.  Las determinaciones de los beneficios se harán dentro de los plazos en los Incisos A, B, C y D a continuación, sin importar si toda la información necesaria para hacer una determinación de los beneficios acompaña la presentación.

No se puede entablar ninguna acción legal ni arbitraje para recuperar Beneficios del Plan antes de que se hayan agotado los procedimientos aplicables de reclamación y apelación en esta Sección VIII. La denegación de una reclamación de beneficios no hace que una apelación de esa denegación sea inútil ni de otro modo excusa a un/una Participante de hacer la apelación.

A.    **Reclamaciones de Beneficios Médicos para un Tratamiento de Emergencia**

    1.    **Decisión sobre una reclamación de Beneficios**

a.      Oportunidad de la Notificación de la Determinación sobre la Reclamación de Beneficios Médicos para un Tratamiento de Emergencia:  Tan pronto como sea posible, teniendo en cuenta las exigencias médicas, a más tardar 72 horas después de la recepción de un aviso por el/los representante(s) designado(s) del Comité (según lo requerido por la Sección III.A más arriba) de una lesión ocupacional que requiera un Tratamiento de Emergencia, el representante designado del Comité notificará al/a la Participante solicitante o cualquier representante autorizado (el/la "reclamante") en cuanto a si él o ella tiene o no derecho a Beneficios Médicos para el Tratamiento de Emergencia. Si el representante del Comité determina que se necesita información adicional para determinar si, y en qué medida, son pagaderos los Beneficios Médicos para el tratamiento según el Plan, el representante del Comité le notificará al reclamante de la información específica necesaria tan pronto como sea posible, a más tardar 24 horas después de la recepción de la reclamación. El reclamante dispondrá de tiempo razonable en estas circunstancias, pero no menos de 48 horas, para proporcionar la información especificada. El representante del Comité le notificará al reclamante de la decisión sobre los beneficios tan pronto como sea posible, a más tardar 48 horas después de lo que ocurra primero entre la recepción de la información específica solicitada o el vencimiento del plazo que se le dio al reclamante para suministrar esa información específica.

b.      Tipo y Contenido de la Notificación de la Determinación sobre la Reclamación de Beneficios Médicos para un Tratamiento de Emergencia: El representante designado del Comité, dentro del plazo antedicho, notificará verbalmente a un reclamante acerca de toda denegación de Beneficios Médicos para un Tratamiento de Emergencia. Se proporcionará una notificación por escrito de la denegación a más tardar 3 días después de la notificación verbal. La notificación por escrito: (1) indicará el/los motivo(s) específico(s) de la determinación adversa; (2) hará referencia a la disposición específica del Plan en la cual se basa la determinación; (3) describirá cualquier material o información adicional necesario para que el/la reclamante perfeccione la reclamación y explicará por qué tal material o información es necesario; (4) describirá los procedimientos de apelación del Plan y los plazos aplicables a tales procedimientos, incluida una declaración del derecho del/de la Participante a entablar una acción civil según la sección 502(a) de ERISA después de cualquier determinación adversa con respecto a tal apelación; (5) si la determinación adversa se basó en una regla, pauta, protocolo u otro criterio interno semejante, se deberá indicar que la determinación adversa se basó en tal regla, pauta, protocolo u otro criterio interno semejante y que, a solicitud, se le suministrará sin cargo al/a la Participante una copia del/de la mismo(a); (6) si la determinación adversa se basa en una necesidad médica o un tratamiento experimental o una exclusión o límite semejante, se deberá indicar que, a solicitud, se suministrará, sin cargo alguno, una explicación del juicio científico o clínico para la determinación, aplicando los términos del Plan a las circunstancias médicas del/de la Participante; y (7) le notificará al/a la

Appendix p.108

reclamante que él o ella puede hacer una apelación agilizada de la denegación, verbalmente o por escrito, y que, si él o ella solicita una apelación agilizada, toda la información necesaria, incluida la determinación de beneficios del Comité con respecto a la apelación agilizada, será transmitida al/a la reclamante por teléfono, facsímil, electrónicamente u otro medio expeditivo.

**2.     Apelación de la Denegación de una Reclamación de Beneficios Médicos para un Tratamiento de Emergencia:** Un/una reclamante que procura obtener Beneficios Médicos para un Tratamiento de Emergencia dispondrá de una oportunidad razonable para una apelación completa y justa de una reclamación denegada por el representante designado del Comité. Tal apelación es ante el Comité para que éste revise la determinación adversa según, entre otras, las reglas siguientes: (1) el/la reclamante tendrá 180 días después de la recepción de la notificación de la determinación adversa sobre los beneficios tomada por el representante designado del Comité para apelar ante el Comité; (2) el/la reclamante tendrá la oportunidad de presentar comentarios por escrito, documentos, registros y otra información relativa a la reclamación de beneficios; (3) a solicitud, y sin cargo alguno, al/a la reclamante se le proporcionará acceso razonable a toda la información pertinente sobre la reclamación de beneficios, y copias de dicha información; (4) el Comité tendrá en cuenta todos los comentarios, documentos, registros y otra información presentada por el/la reclamante relativos a la reclamación, sin importar si tal información se presentó o fue considerada en la determinación inicial de beneficios por el representante designado del Comité; (5) la revisión del Comité no le otorgará deferencia a la determinación adversa inicial sobre los beneficios por su representante designado, y en caso de que el representante designado sea miembro del Comité, no se le permitirá votar con respecto a la apelación de la determinación previa sobre los beneficios tomada por el representante designado que fue adversa al reclamante apelante; (6) si la apelación es con respecto a una determinación adversa de beneficios que se basó total o parcialmente en un juicio médico (incluidas determinaciones con respecto a si cierto tratamiento, medicamento u otro artículo es parte de una investigación experimental o no es médicamente necesario o apropiado), el Comité consultará con un profesional de la salud que tenga las debidas formación y experiencia en el campo de la medicina vinculado al juicio médico; (7) el Comité identificará a peritos médicos o profesionales cuyo asesoramiento fue obtenido por su representante designado con respecto a la determinación adversa sobre los beneficios, sin importar si la determinación adversa sobre los beneficios se basó en el asesoramiento; y (8) cuando el Comité consulta con un profesional de la salud según (6) más arriba, tal individuo no será el mismo individuo, ni el subalterno del mismo individuo, que se consultó con respecto a la determinación adversa sobre los beneficios tomada por el representante designado y la cual es el objeto de la apelación.

**3.     Decisión sobre una Apelación después de la Revisión por el Comité:** Tan pronto como sea posible, teniendo en cuenta las exigencias médicas, a más tardar 72 horas después de la recepción de la apelación del reclamante ante el Comité para la revisión de la determinación adversa con respecto a los Beneficios Médicos para un Tratamiento de Emergencia, el Comité le notificará al/a la reclamante la decisión

Appendix p.109

definitiva del Plan acerca de la reclamación de tales beneficios. El Comité le dará al/a la reclamante la notificación por escrito de su determinación sobre la apelación del/de la reclamante de la reclamación de Beneficios Médicos para el Tratamiento de Emergencia. Tratándose de una determinación adversa sobre beneficios, la notificación: (1) indicará el/los motivo(s) específico(s) de la determinación adversa; (2) hará referencia a la disposición específica del Plan en la cual se basa la determinación; (3) afirmará que, a solicitud, y sin cargo alguno, al/a la reclamante se le proporcionará acceso razonable a toda la información pertinente sobre la reclamación de beneficios y copias de dicha información; (4) afirmará el derecho del/de la reclamante a entablar una acción civil según la sección 502(a) de ERISA; (5) si la determinación adversa se basó en una regla, pauta, protocolo u otro criterio interno semejante, se deberá indicar que la determinación adversa se basó en tal regla, pauta, protocolo u otro criterio interno semejante y que, a solicitud, se le suministrará al/a la reclamante una copia sin cargo del/de la mismo(a); (6) si la determinación adversa se basa en una necesidad médica o un tratamiento experimental o una exclusión o límite semejante, se deberá indicar que, a solicitud, se suministrará, sin cargo alguno, una explicación del juicio científico o clínico para la determinación, aplicando los términos del Plan a las circunstancias médicas del/de la Participante; y (7) dirá: "Es posible que usted y el Plan tengan otras opciones de resolución de disputa alternativas, tales como la mediación. Una manera de averiguar lo que podrá estar disponible es ponerse en contacto con su Oficina local del Departamento del Trabajo de EE.UU. o el Comité del Plan."

**B.**    **Reclamaciones de Beneficios Médicos para Tratamiento que requiere Aprobación y para Tratamiento Médico Ordinario**

**1.**    **Decisión sobre una reclamación de Beneficios:** Dentro de un plazo razonable apropiado para las circunstancias médicas, a más tardar 15 días después de la recepción de una reclamación de Beneficios Médicos para un Tratamiento que requiere Aprobación y, a más tardar 30 días después de la recepción de una reclamación de Beneficios Médicos para un Tratamiento Médico Ordinario (a menos que circunstancias especiales requieran una prórroga para tramitar la reclamación), el representante designado del Comité notificará al/a la Participante solicitante o su representante autorizado (el "reclamante") en cuanto a si el/la reclamante tiene derecho a los Beneficios Médicos. Si se requiere una prórroga para el trámite, se le suministrará al reclamante un aviso por escrito de la prórroga, de no más de 15 días, antes de que venza el período inicial aplicable de 15 días ó 30 días. Cualquier aviso por escrito de una prórroga de 15 días especificará las circunstancias especiales que hacen necesaria la prórroga, la fecha para la cual se tomará una decisión definitiva, explicará específicamente las normas en las cuales se basa cualquier derecho a un beneficio, estipulará los temas no resueltos que impiden una decisión sobre la reclamación, e identificará información adicional necesaria para resolver esos temas. Al reclamante se le darán 45 días dentro de los cuales debe suministrar la información especificada. Si es necesaria una prórroga de 15 días debido a la falta del/de la reclamante en presentar la información necesaria para tomar una decisión sobre la reclamación, el plazo para hacer la determinación de los beneficios se interrumpirá desde la fecha en la cual se envió el aviso de la prórroga de 15 días hasta la fecha en la cual el/la

reclamante responda a la solicitud de información adicional. El representante designado del Comité le notificará al/a la reclamante por escrito de cualquier determinación adversa sobre los beneficios con respecto a Beneficios Médicos para Tratamiento que requiere Aprobación o para Tratamiento Médico Ordinario. La notificación incluirá la información descrita en los renglones (1) a (6), inclusive, de la Sección VIII.A.1.b. más arriba.

**2.     Apelación de una Determinación Adversa sobre Beneficios:** Un/una reclamante que procura obtener Beneficios Médicos para un Tratamiento que requiere Aprobación o para un Tratamiento Médico Ordinario dispondrá de una oportunidad razonable para una apelación completa y justa de una reclamación denegada por el representante designado del Comité. Tal apelación es ante el Comité para que éste revise la determinación adversa según, entre otras, las reglas en la Sección VIII.A.2. más arriba.

**3.     Decisión sobre una Apelación después de la Revisión por el Comité:** Dentro de un plazo razonable apropiado para las circunstancias médicas, a más tardar 30 días después de la recepción de una apelación ante el Comité de una determinación adversa sobre beneficios con respecto a Beneficios Médicos para un Tratamiento que requiere Aprobación, y a más tardar 60 días después de la recepción de una apelación ante el Comité de una determinación adversa sobre beneficios con respecto a Beneficios Médicos para un Tratamiento Médico Ordinario, el Comité le notificará al/a la reclamante solicitante la decisión definitiva del Plan sobre la reclamación de tales beneficios. El Comité le proporcionará al/a la reclamante una notificación por escrito de su determinación sobre la apelación de la reclamación por parte del/de la reclamante. Tratándose de una determinación adversa sobre beneficios, la notificación incluirá la información descrita en la Sección VIII.A.3. más arriba.

## C.     Reclamaciones de Beneficios por Incapacidad

**1.     Decisión sobre una reclamación de Beneficios:** Dentro de un plazo razonable (que no podrá exceder de los 45 días, a menos que existan circunstancias especiales) tras la recepción de una reclamación de Beneficios por Incapacidad, el representante designado por el Comité notificará al/a la Participante solicitante o su representante autorizado (el "reclamante") en cuanto a si el/la reclamante tiene derecho a los Beneficios por Incapacidad. De necesitarse un espacio de tiempo adicional para la tramitación, se proporcionará a el/la Participante (o a su representante debidamente autorizado) notificación escrita de una prórroga que no podrá exceder de los 30 días, antes de finalizar el primer plazo de 45 días. Si antes de finalizar el primer período de prórroga de 30 días el representante designado por el Comité determinara que, debido a cuestiones fuera del control del Plan, no podrá tomarse una decisión dentro del plazo de 30 días, el plazo para tomar una decisión respecto de la reclamación de Beneficios de Incapacidad podrá prorrogarse por un plazo adicional de 30 días. La notificación escrita de toda prórroga de 30 días indicará las circunstancias especiales que la hagan necesaria y la fecha en que se tomará la decisión definitiva, explicará los criterios en los que se basa la determinación del derecho a los beneficios, mencionará toda cuestión

sin resolver que impida tomar una decisión respecto de la reclamación e identificará toda información adicional que se necesite para resolver dichas cuestiones.    El/la Participante contará con un plazo de por lo menos 45 días para suministrar la información estipulada.    De necesitarse una prórroga de 30 días porque el/la Participante no suministra la información necesaria, el plazo para tomar una decisión respecto de la reclamación se prorrogará hasta que el/la Participante responda a la solicitud de información adicional.    El representante designado del Comité le notificará al/a la reclamante por escrito de cualquier determinación adversa sobre los beneficios con respecto a Beneficios Médicos para Tratamiento que requiere Aprobación o para Tratamiento Médico Ordinario. La notificación incluirá la información descrita en los renglones (1) a (6), inclusive, de la Sección VIII.A.1.b. más arriba.

      **2.**    **Apelación de una Determinación Adversa sobre Beneficios:** Un/una reclamante que procura obtener Beneficios por Incapacidad dispondrá de una oportunidad razonable para una apelación completa y justa de una reclamación denegada por el representante designado del Comité.  Tal apelación es ante el Comité para que éste revise la determinación adversa según, entre otras, las reglas en la Sección VIII.A.2. más arriba.

      **3.**    **Decisión sobre una Apelación después de la Revisión por el Comité:** Dentro de un plazo razonable (que no podrá exceder de los 45 días, a menos que existan circunstancias especiales) tras la recepción de la solicitud de el/la Participante al Comité para que éste reconsidere la denegación de los Beneficios por Incapacidad, el Comité notificará al/a la reclamante su decisión definitiva.  Si el Comité determinara que se necesita un espacio de tiempo adicional para la tramitación, se proporcionará a el/la Participante notificación escrita de la prórroga, antes de finalizar el plazo de 45 días.  La prórroga no excederá de los 45 días adicionales.  La notificación de la prórroga indicará las circunstancias especiales que la hagan necesaria y la fecha en que el Comité anticipa dictar su resolución.  De necesitarse una prórroga de 45 días porque el /la Participante no suministra la información necesaria, el plazo para tomar la decisión se prorrogará hasta que el/la Participante responda a la solicitud de información adicional.  El Comité le proporcionará al/a la reclamante una notificación por escrito de su determinación sobre la apelación de la reclamación por parte del/de la reclamante.  Tratándose de una determinación adversa sobre beneficios, la notificación incluirá la información descrita en la Sección VIII.A.3. más arriba.

**D.**    **Procedimientos de reclamación de Beneficios por Desmembramiento, Muerte y Entierro**

      **1.**    **Decisión sobre una reclamación:**    Dentro de un plazo razonable (a más tardar 90 días, a menos que existan circunstancias especiales) después de la recepción de una reclamación de Beneficios por Desmembramiento, Muerte o Entierro, el representante designado del Comité le notificará al/a la Participante solicitante o a su representante autorizado (el "reclamante") en cuanto a si él o ella tiene derecho al Beneficio. Si se requiere una prórroga para el trámite, se le suministrará al reclamante un aviso por escrito de la prórroga, de no más de 90 días, antes de que venza el primer

período de 90 días.  El aviso por escrito indicará las circunstancias especiales que hacen necesaria la prórroga y cuándo se tomará una decisión sobre la reclamación. Aun en circunstancias especiales, se tomará una decisión sobre la reclamación dentro de 180 días.  El representante designado del Comité le notificará al reclamante por escrito de cualquier decisión adversa con respecto al Beneficio que se procura obtener. La notificación incluirá la información descrita en los renglones (1) a (4), inclusive, de la Sección VIII.A.1.b. más arriba.

2.     **Apelación de una Determinación Adversa sobre Beneficios:**  Un/una reclamante que procura obtener Beneficios por Desmembramiento, Beneficios por Muerte y/o Beneficios de Entierro dispondrá de una oportunidad razonable para una apelación completa y justa de una determinación adversa sobre beneficios por el representante designado del Comité.  Tal apelación es ante el Comité para que que éste revise la determinación adversa.  El/la reclamante dispondrá de por lo menos 60 días después de la recepción de la notificación de la determinación adversa sobre beneficios hecha por el representante designado del Comité para apelar ante el Comité.  Se aplican también las reglas (2)-(4) de la Sección VIII.A.2.

3.     **Decisión sobre una Apelación:**  La decisión definitiva del Comité sobre una reclamación apelada para Beneficios por Desmembramiento, Beneficios por Muerte y/o Beneficios de Entierro se tomará dentro de 60 días después de que el/la reclamante la presentó por escrito al Comité (a menos que circunstancias especiales requieran una prórroga para tramitar la apelación).  El Comité le notificará al/a la reclamante por escrito de su decisión sobre una apelación, indicando una vez más el/los motivo(s) de su decisión y haciendo referencia a las disposiciones aplicables del Plan.  Si se requiere una prórroga para el trámite, se le suministrará al/a la reclamante, dentro de 60 días de la recepción de la apelación, un aviso por escrito de la necesidad para la prórroga.  El aviso por escrito indicará las circunstancias especiales que hacen necesaria la prórroga y cuándo se tomará una decisión sobre la reclamación. Aun en circunstancias especiales, se tomará una decisión sobre la reclamación dentro de 120 días.  El Comité le suministrará al/a la reclamante una notificación por escrito de su determinación sobre la apelación de la reclamación hecha por el/la reclamante. Tratándose de una determinación adversa sobre beneficios, la notificación incluirá la información descrita en los renglones (1) a (4), inclusive, de la Sección VIII.A.3. más arriba.

# IX.   PROCEDIMIENTOS ARBITRALES

Las siguientes disposiciones de la Sección I, Párrafo B del Plan están incorporadas por referencia al Acuerdo de Elección y Arbitraje y constituyen parte del mismo, igual que si estuvieran establecidas en su totalidad en el propio Acuerdo de Elección y Arbitraje, y se aplican al/a la Participante (referido/referida a como "yo" en todo el documento) y a la Compañía:

**1.     Avisos de Reclamaciones:** Yo y la Compañía estamos de acuerdo en que la parte que afirma uno o más reclamos o las causas de la acción contra la otra parte deben hacer una demanda escrita para el arbitraje en la otra parte dentro del período de prescripción aplicable, y el fracaso para hacer tal demanda escrita para el arbitraje dentro período de prescripción aplicable impide los reclamos y las causas de la acción.    Las demandas escritas a la Compañía (o un Empleador) o a sus funcionarios, directores, accionistas, empleados, agentes, compañías filiales o planes de beneficios se enviarán a Renfro Industries, Inc., Atención: Mr. Richard L. Renfro, 102 Metro Drive, Terrell, Texas 75160 (o cualquier otra persona o dirección que la Compañía especifique).  Si la Compañía (or un Empleador, funcionario, compañía filial, etc.) desea hacer un reclamo, hará la demanda escrita para el arbitraje en mí a la última dirección registrada en mi archivo de personal. Esta demanda para arbitraje se enviará a las otras parte(s) por correo certificado o registrado, con acuse de recibo. **Ni la entablación ni el diligenciamiento de un pleito impiden que el período de prescripción aplicable siga su curso.**

**2.     Representación:** Cualquier parte puede ser representada por un abogado u otro representante escogido por la parte durante los procedimientos antes de la audiencia (según se definen más adelante), en la audiencia de arbitraje y/o durante la apelación del arbitraje (según se define más adelante).

**3.     Mediación:**   La Compañía y yo estamos de acuerdo en que cualquier arbitraje que ha sido oportuno y correctamente ha exigido conforme al Párrafo 1 encima será suspendido y no procederá hasta que las partes al arbitraje hayan mediado la disputa con un mediador de común acuerdo o, si no se pueden poner de acuerdo todas las partes, por un mediador proporcionado por Dispute Solutions, Inc. Podrá dispensarse este requisito de mediación mediante acuerdo escrito firmado por todas las partes interesadas o sus abogados.  El costo de la mediación se cobrará en partes iguales a los dos lados de la disputa; sin embargo, mi parte de tal costo de mediación no excederá $50.00.

**4.     Procedimientos Generales:**

a.     La Compañía y yo estamos de acuerdo en que la audiencia de arbitraje será conducida ante un árbitro (de aquí en adelante el "juez árbitro de la audiencia") designado por Dispute Solutions, Inc., o si ni Dispute Solutions, Inc. puede designar a un árbitro, por la Asociación Americana de Arbitraje.  Yo y la Compañía estamos de acuerdo en que las reglas entonces corrientes de Dispute Solutions, Inc., cualesquiera están aplicables, para disputas de empleo (o, si ni Dispute Solutions, Inc. puede designar a un árbitro, entonces las Reglas de entonces corrientes de Arbitraje y los Procedimientos De Mediación para Empleo de la Asociación Americana del Arbitraje) controlarán y aplicarán por el juez árbitro de la audencia y por los jueces árbitros de apelación (como se definen más adelante).

Appendix p.114

b.      El juez árbitro de la audiencia aplicará la ley sustantiva (y, en su caso, las leyes de remedios), en el estado en el cual surgió la reclamación, o la ley federal, o las dos, dependiendo de las reclamaciones que se hacen valer.  El juez árbitro de la audiencia también aplicará estrictamente las Reglas Federales de Evidencia (the Federal Rules of Evidence), con la excepción de que el testimonio de un testigo tomado en deposición se puede usar en la audiencia de arbitraje sin importar si el testigo se encuentre disponible o no.  El juez árbitro de la audiencia proporcionará conclusiones de hecho y conclusiones de derecho breves.  Todas las decisiones y todos los laudos arbitrales dictados de acuerdo con el Acuerdo De Elección Y Arbitraje se mantendrán estrictamente confidenciales y no se divulgarán, menos expedientes con respecto a su aplicación judicial, a nadie, ni a un testigo, un abogado, un representante de una parte, ni a una parte quien en efecto haya asistido a la audiencia de arbitraje.

c.      **El juez árbitro de la audiencia tendrá la autoridad para gobernar en su propia jurisdicción, inclusive cualquier objeción con respecto a la existencia, el alcance o la validez del acuerdo para arbitrar.**  El juez árbitro de la audiencia tendrá la autoridad para conocer y decidir sobre disputas antes de la audiencia y está autorizado para celebrar conferencias por teléfono o en persona antes de la audiencia según lo juzgue necesario el juez árbitro de la audiencia.  El juez árbitro tendrá la autoridad para conoceruna petición para declarar sin lugar y/o una petición para sentencia sumaria de cualquier parte y al hacerlo aplicará las normas que rigen dichas peticiones según Las Reglas Federales de Procedimiento Civil (the Federal Rules of Civil Procedure).  El juez árbitro de la audiencia suspenderá cualquier arbitraje que ha sido oportuno y correctamente ha exigido y no procederá hasta que las partes al arbitraje hayan mediado la disputa, a menos que se haya renunciado a la mediación mediante acuerdo por escrito firmado por todas las partes o sus abogados.

5.      **Procedimientos de antes de la Audiencia**:  Cada parte tendrá el derecho de tomar la deposición de un individuo y de cualquieres testigos peritos designado por otra parte.  Cada parte tendrá el derecho de citar a testigos de acuerdo con el Acto Federal del Arbitraje, Título 9 del Código de los Estados Unidos (the Federal Arbitration Act, Title 9 of the United States Code).  Se podrá tener exhibición adicional sólo en caso de que el juez árbitro de la audiencia lo ordene, previa demostración de necesidad sustancial.  Por lo menos 30 días antes del arbitraje, las partes deben intercambiar listas de testigos, incluidos cualesquier peritos, y copias de todos los documentos de prueba que se propone usar en la audiencia.

6.      **Honorarios y Costos de Arbitraje**:  Hay honorarios administrativos y remuneración del juez árbitros de la audiencia para cualquier audiencia de arbitraje.  Cuándo yo entablo y sirvo una demanda, el honorario de la entablación, incluido en los honorarios administrativos, para la audiencia de arbitraje será pagado $350.00 por yo y el resto por la Compañía.  A menos que yo opto por pagarlos total o parcialmente, la Compañía pagará todos los demás honorarios administrativos y toda la remuneración

del juez árbitro de la audiencia.   La remuneración del juez árbitro y honorarios administrativos no son sujetos a la reasignación en el laudo, pero en ningún honorario para postergaciones será pagado por la parte que causa la postergación.  A menos que concordado de otro modo, la Compañía arreglará para y pagará el costo de un taquígrafo para que suministre un registro taquigráfico del proceso en la audiencia.

**7.    Honorarios de Abogados**:  La Compañía y yo acordamos además como sigue:

a.    Cada parte se hará responsable por los honorarios de su propio abogado, si los hay; sin embargo, si alguna parte gana en una reclamación conforme a la ley que permite que se le pague a la parte ganadora los honorarios de abogado, o si hay un acuerdo por escrito que cubra los honorarios, el juez árbitro de la audiencia adjudicará honorarios razonables a la parte ganadora de acuerdo con el significado de "parte ganadora" conforme al Acto de Derechos Civiles que rige Honorarios de Abogados de 1976 (the Civil Rights Attorney's Fees Awards Act of 1976).

b.    El juez árbitro de la audiencia le cobrará los honorarios de abogado a una parte si se demuestra que la reclamación, defensa o posición de dicha parte es frívola, o no razonable, o sin base en hechos.

c.    Si alguna parte sigue con una reclamación cubierta por este Acuerdo De Elección Y Arbitraje por otros modos que no sean los establecidos en este Acuerdo De Elección Y Arbitraje, la parte respondedora tendrá el derecho de que la acción se dé por terminada y la recuperación de todos los gastos y honorarios de abogado y pérdidas relacionados con la acción.

**8.    Procedimientos de Apelación**:  La Compañía y yo acordamos además como sigue:

a.    Cualquier parte **puede** apelar cualquier laudo arbitral que se haya dictado y finalizado conforme a las reglas gobernantes.  La apelación se debe notificar por escrito a la otra parte o partes del arbitraje y a Dispute Solutions, Inc. (o, si la Asociación Americana de Arbitraje ha designado el juez árbitro de la audiencia, entonces a la Asociación Americana de Arbitraje) por correo certificado dentro de treinta (30) días después de que el juez árbitro de la audiencia haya hecho que el laudo arbitral se haya enviado por correo a las partes o a sus representantes.  El escrito que deje constancia de la apelación debe especificar aquellos elementos del laudo arbitral que se estén apelando y debe contener una declaración corta de la base de la apelación.  Una vez que la apelación haya sido notificada oportunamente, el laudo arbitral del juez árbitro de la audiencia ya no se considerará definitivo para fines de procurar la ejecución judicial, modificación o anulación conforme al Acto Federal del Arbitraje (Federal Arbitration Act).

b.      Dentro de quince (15) días después de recibir la apelación, la otra parte o partes pueden diligenciar una contra-apelación por escrito, diligenciándola por correo certificado a la otra parte o partes del arbitraje y a Dispute Solutions, Inc. (o, si la Asociación Americana de Arbitraje ha designado el juez árbitro de la audiencia, entonces a la Asociación Americana de Arbitraje). El escrito en que conste la contra-apelación debe especificar aquellos elementos del laudo arbitral que se estén apelando y debe contener una declaración corta de la base de la contra-apelación.  Una vez que la contra-apelación haya sido notificada oportunamente, el laudo arbitral del juez árbitro de la audiencia ya no se considerará definitivo para fines de procurar la ejecución judicial, modificación o anulación según el Acto Federal del Arbitraje (Federal Arbitration Act), aun en el caso de que la apelación se retire subsecuentemente.

c.      Dentro de cuarenta y cinco (45) días después de recibir la apelación, las partes de la apelación seleccionarán un panel de tres árbitros (de aquí en adelante "los jueces árbitros de apelación") utilizando los procedimientos para seleccionar jueces árbitros establecidos en las reglas gobernantes.  El juez árbitro de la audiencia no será elegible para servir como juez árbitro de apelación.

d.      Los honorarios y gastos de los jueces árbitros de apelación se compartirán en partes iguales si se diligencian tanto una apelación como una contra-apelación.  Si se diligencia solamente una apelación, los honorarios y gastos de los jueces árbitros de apelación serán pagados por la parte o partes que estén apelando.  Cada parte que diligencie una apelación o contra-apelación depositará fondos o pondrá otra garantía colateral adecuada para los honorarios de los jueces árbitros de apelación, de una cantidad y manera determinadas por Dispute Solutions, Inc. (o, si la Asociación Americana de Arbitraje ha designado el juez árbitro de la audiencia, entonces por la Asociación Americana de Arbitraje) dentro de treinta (30) días después de la notificación de una apelación o contra-apelación de aquella parte.

e.      El registro de la apelación ante los jueces árbitros de apelación consistirá en cualquier registro u otro registro de la audiencia ante el juez árbitro de la audiencia e incluirá todos los documentos de prueba y transcripciones de las deposiciones admitidas en autos por el juez árbitro de la audiencia.  Las partes de una apelación ayudarán y cooperarán con Dispute Solutions, Inc. (o, si la Asociación Americana de Arbitraje ha designado el juez árbitro de la audiencia, con la Asociación Americana de Arbitraje) a proporcionar a los jueces árbitros de apelación los registros, los documentos de prueba y las transcripciones de las deposiciones.

f.      Los jueces árbitros de apelación establecerán un programa de escritos, un límite de hojas de los escritos y una fecha y duración de alegatos orales; a condición, sin embargo, de que antes de los fallos de los jueces árbitros de apelación sobre estos temas, las partes de la apelación puedan

Appendix p.117

ponerse de acuerdo a renunciar a los escritos y/o alegatos orales y puedan acordar sus propias limitaciones de hojas para los escritos.

g. Los jueces árbitros de apelación aplicarán las mismas normas de revisión que la corte de apelaciones de primer nivel aplicaría a la causa de acción o defensa que está en apelación en circunstancias similares. Si tanto las causas de acción (y/o defensas) de ley federal como las de ley estatal son ante los jueces árbitros de apelación (o en una sola apelación o como resultado de una contra-apelación), los jueces árbitros de apelación aplicarán sólo las normas de revisión utilizadas por el Tribunal Federal De Apelación del Quinto Circuito de los Estados Unidos (United States Court of Appeals for the Fifth Circuit) en circunstancias similares.

h. Por voto de mayoría, los jueces árbitros de apelación pueden afirmar, revocar, dictar o modificar un laudo arbitral. Los jueces árbitros de apelación pueden devolver, pero no pueden devolver al juez árbitro original. En caso de devolución, las partes seleccionarán a un nuevo juez árbitro de audiencia conforme a los procedimientos establecidos en las reglas gobernantes, y los honorarios y gastos del nuevo juez árbitro serán compartidos en partes iguales por las partes involucradas en la nueva audiencia, a menos que de otro modo concordado u ordenado. El laudo de los jueces árbitros de apelación incluirá una opinión breve por escrito abordando las cuestiones ante ellos, y dicha opinión se entregará a las partes y a Dispute Solutions, Inc. (o, si la Asociación Americana de Arbitraje ha designado el juez árbitro de la audiencia, entonces a la Asociación Americana de Arbitraje) dentro de treinta (30) días después de la conclusión de cualquier programa de escritos o cualesquier alegatos orales o según acuerden las partes. Quince (15) días después de recibir la opinión de los jueces árbitros explicando su decisión, cualquier decisión de su parte se considerará definitiva para fines de ejecución judicial, modificación o anulación conforme al Acto Federal del Arbitraje.

**9.     Comercio Interestatal y el Acto Federal del Arbitraje**: Yo comprendo y reconozco que la Compañía está involucrada en transacciones en que está envuelto el comercio interestatal (por ejemplo, comprando bienes y servicios desde fuera de Texas que se transportan a Texas; utilizando los sistemas interestatales del correo, teléfonos y carreteras; y reclutando y poniendo anuncios fuera de Texas) y que dicho comercio está envuelto en mi empleo y mi participación en el Plan. El Acto Federal del Arbitraje, Título 9 del Código de los Estados Unidos (the Federal Arbitration Act, Title 9 of the United States Code) regirá la interpretación, ejecución, y todos los procesos judiciales conforme y/o con respecto al Acuerdo De Elección Y Arbitraje y esta Sección IX. Sin embargo, si el Acto Federal del Arbitraje debe ser inaplicable al Acuerdo De Elección Y Arbitraje y esta Sección IX, o si el Acuerdo De Elección Y Arbitraje y esta Sección IX deben ser no ejecutable, para cualquier razón, bajo el Acto Federal del Arbitraje, entonces la ley de derecho consuetudinario de Texas regirá el Acuerdo De Elección Y Arbitraje y esta Sección IX y todos los procesos judiciales conforme y/o con respecto a los hasta el punto necesario para hacerlos ejecutable a la extensión máxima posible.

Appendix p.118

## X. COORDINACIÓN, ACELERACIÓN, Y RECUPERACIÓN DE BENEFICIOS

### A. Coordinación de Beneficios

Los pagos de beneficios del Plan se reducirán en las cantidades pagadas por el Seguro Social, beneficios de Medicare o Medicaid o conforme a cualquier ley de compensación de trabajadores estatal o federal o ley semejante o conforme a cualquier otro plan de beneficios o contrato o póliza de seguros que cubra al/a la Participante. Sin embargo, los beneficios del Plan se reducirán sólo en el grado necesario para prevenir que la suma total del Plan y estos otros beneficios excedan el 100% del Sueldo Pre-Incapacidad del/de la Participante. Los beneficios conforme a este Plan son secundarios y en exceso de toda otra fuente de beneficios que cubran a un/una Participante de tal manera que todas las otras fuentes de beneficios se paguen en su totalidad antes de que cualquier beneficio conforme a este Plan se pague. A solicitud, un /una Participante debe proporcionar al Comité copias de información con respecto a cualquier otra fuente de beneficios que potencialmente pueda proporcionar cobertura por la lastimadura, tratamiento o incapacidad del/de la Participante.

### B. Aceleración de Beneficios y Arreglo Final y Finiquito

Un/una Participante o Beneficiario(a) puede hacer una solicitud ante el Comité para la aceleración del pago de beneficios, y un/una Participante, el/la Beneficiario(a), el Plan y la Compañía pueden celebrar un arreglo final y finiquito de cualquier beneficio pagadero que quede como resultado de la lastimadura o muerte de un/una Participante.

### C. Recuperación de Beneficios

Si un/una Participante (o sus beneficiarios, cónyuge, hijos, herederos, padres o representantes legales) buscara, llegara a tener derecho a o recibiera beneficios conforme al Plan por cualquier lastimadura causada por otra persona, entidad u organización y llegara a tener derecho a o de algún otro modo recibiera alguna otra indemnización relacionada con dicha lastimadura (sea por seguro, litigio, finiquito u otro procedimiento), el/la Participante debe (1) reembolsar al Plan de dicha otra indemnización hasta que llegue a la suma de los beneficios del Plan pagados a y de parte del/de la Participante (sin importar si dicha indemnización u otra compensación ha indemnizado por completo al Participante por sus lastimaduras y reclamaciones contra la persona u organización), y (2) suscribir cualquier documento solicitado por el Administrador para permitir que el Plan recupere dichos beneficios.

Si un/una Participante falta o se niega a reembolsar al Plan, entonces el/la Participante debe regresar todos los beneficios del Plan pagados a él o a ella y el Plan puede retener y compensar beneficios adicionales a o de parte de dicho(a) Participante.

Antes de entablar cualquier pleito, arbitraje, u otro proceso o antes de celebrar pláticas o mediación para recuperar de cualquier persona, entidad u organización (con la excepción de la Compañía o el Empleador) indemnización o compensación (de cualquier forma) por o debido a una lastimadura al/a la, o muerte del/de la Participante para la cual beneficios del Plan hayan sido pagados o se pudieran reclamar en el futuro, el/la Participante (o los Beneficiarios por Muerte, el/la cónyuge, los herederos, los padres o los representantes legales del/de la Participante) proporcionará al Comité (en la dirección relacionada en la última página de este Resumen) aviso previo por escrito del pleito u otro tipo de procedimiento.  El Plan tiene el derecho de intervenir en cualquier pleito u otro procedimiento.

Si un/una Participante (o sus beneficiarios, esposo/esposa, herederos, padres o representantes legales) falta o se niega a buscar indemnización o compensación de alguien por cualquier lastimadura o muerte causada por su acto u omisión negligente o injusta (por el cual se han pagado beneficios del Plan o se puedan llegar a buscar en el futuro), el Plan puede entablar un pleito u otro proceso para buscar reembolso por beneficios del Plan pagados y los que se pagarán en el futuro, más cualesquier costos y gastos incurridos por el Plan en la búsqueda de dicho reembolso.

A petición del Comité, un/una Participante (o los Beneficiarios por Muerte, el/la cónyuge, los herederos, los padres o los representantes legales del/de la Participante) debe ceder al Plan el derecho de intervenir en o entablar cualquier pleito u otro proceso y de hacerlo a nombre del/de la Participante.  El Plan tendrá control completo sobre el pleito o proceso hasta que se resuelva por completo.  El/la Participante (o los Beneficiarios por Muerte, el/la cónyuge, los herederos, los padres o los representantes legales del/de la Participante)  deben cooperar con el Plan y sus abogados en cualquier tal pleito o proceso y debe dejar a salvo al Plan, la Compañía, el Empleador, el Comité y sus respectivos directores, funcionarios, agentes, abogados y empleados de toda reclamación, causa de acción, indemnización o responsabilidad de cualquier tipo o carácter que pudiera surgir directa o indirectamente de la búsqueda o el manejo por el Plan de cualquier demanda o procedimiento de este tipo.

## XI.   ENMIENDA O TERMINACIÓN DEL PLAN

Actualmente, la Compañía tiene la intención de seguir con el Plan indefinidamente, pero la Compañía podría enmendar, modificar o terminar el Plan en cualquier momento.  Tal enmienda o terminación se aprobará de acuerdo con una acción formal por escrito de la Compañía y no reduciría ningún beneficio del Plan pagadero a un/una Participante (o Beneficiario/Beneficiaria por Muerte o caudal hereditario) debido a una Lastimadura o muerte que ocurrió antes de la enmienda o terminación. Como un contrato obligatorio entre un Participante y la Compañía, el Acuerdo de Elección y Arbitraje Elección de un Participante sólo pueden ser revocados o pueden ser modificados de acuerdo con sus términos.

Appendix p.120

# XII.  LA DECLARACIÓN DE LOS DERECHOS DE ERISA

Un Participante en el Plan se titula a ciertos derechos y protections bajo la Ley federal de Seguridad de los Ingresos para la Jubilación del Empleado (Employee Retirement Income Security Act – "ERISA") de 1974, como enmendado.  ERISA proporciona ese Participantes del Plan se titularán a:

## Reciba la Información Sobre Su Plan y Beneficios

● Examine, sin el cargo, en la oficina del Administrador del Plan y a otras situaciones especificadas, como los sitios de trabajo, todos los documentos que gobiernan el Plan, incluso los contratos de seguros y una copia del último informe anual (la Forma 5500 serie) archivó por el Plan con la Sección americana de Labor y disponible en el Cuarto del Descubrimiento Público de la Pensión y Administración de Beneficio de Bienestar.

● Obtenga, en la demanda escrito al Administrador del Plan, copias de documentos que gobiernan el funcionamiento del Plan, incluso los contratos de seguros y una copia del último informe anual (la Forma 5500 serie) y cualquiera puso al día la descripción del plan sumaria.  El Administrador del Plan puede hacer un cargo razonable para las copias.

● Reciba un resumen del informe financiero anual del Plan.  El administrador del plan de tal un plan se requiere por la ley para amueblar cada participante con una copia de este informe anual sumario.

## Las Acciones prudentes por los Fiduciarios del Plan

Además de crear los derechos para los Participantes del Plan, ERISA impone los deberes en las personas que son responsable para el funcionamiento del Plan, incluso los miembros del Comité.  Las personas que operan el Plan, los fiduciarios " llamados " del Plan, tienen un deber para hacer tan prudentemente y en el interés de los Participantes y beneficiarios. Nadie, incluso la Compañía o cualquier otra persona, puede disparar o por otra parte puede diferencial de forma alguna contra un Participante impedirles le u obteniendo un beneficio o ejercer estos derechos bajo ERISA.

## Dé fuerza a Sus Derechos

Si la demanda de un Participante para un beneficio se niega o se ignora, en el todo o en parte, el él o ella tiene un derecho para saber por qué esto fue hecho, para obtener copias de documentos que relacionan a las decisiones sin el cargo, y apelar algún rechazo, todos dentro de ciertos horarios de tiempo.

Bajo ERISA, hay pasos que un Participante puede tomar para dar fuerza a los

Appendix p.121

derechos anteriores.   Por ejemplo, si un demandas Participantes una copia de documentos del Plan o el último informe anual, si cualquiera, del Plan y no los recibe dentro de 30 días, el él o ella puede titularse para no sólo recibir los materiales, pero también a a $110 por día del Administrador del Plan hasta que el Participante reciba los materiales, a menos que los materiales no se enviaron debido a las razones más allá del mando del Administrador del Plan.   Si un Participante tiene una demanda para beneficios que se niegan o se ignoran, en el todo o en parte, el él o ella puede titularse para archivar un pleito federal (en el Northern District of Texas, Dallas Division) o comienza un arbitraje (bajo el Acuerdo de Elección y Arbitraje u otra provisión del arbitraje obligatoria). además, si un Participante discrepa de eso con la decisión del Administrador del Plan o falta acerca del estado calificado de un relaciones domésticas pida o un orden de apoyo de niño médico, el él o ella puede titularse archivar el traje en la corte federal especificada o comenzar un arbitraje.  Si debe pasar que ese fiduciarios del Plan emplean mal el dinero del Plan, o si un Participante se diferencia contra por afirmar su o sus derechos, el él o ella puede buscar la ayuda de la Sección Americana de Labor, o puede titularse archivar el traje en la corte federal especificada o comenzar un arbitraje.  La corte o árbitro decidirán quién debe pagar costos judiciales y las cuotas legales.  Si el Participante tiene que el éxito, la corte o árbitro pueden pedir que la otra persona pague estos costos y cuotas.  Si el Participante pierde, la corte o árbitro pueden ponerle en orden al Participante pagar estos costos y cuotas, por ejemplo, si la demanda del Participante se encuentra para ser frívola.

**La Ayuda con Sus Preguntas**

Si un Participante tiene cualquier pregunta sobre el Plan, el él o ella debe avisar al Administrador del Plan.   Si un Participante tiene cualquier pregunta sobre esta declaración o sobre su o sus derechos bajo ERISA, o si él o ella necesitan la ayuda obteniendo los documentos del Administrador del Plan, el Participante debe avisar a la oficina más cercana de la Pensión y Administración de Beneficios de Bienestar, la Sección Americana de Labor, listada en el directorio del teléfono o la División de soporte técnica y Preguntas, Pensión y Administración de Beneficios de Bienestar, la Sección Americana de Labor, 200 Avenida de la Constitución N.W., Washington, D.C. 20210.  Un Participante también puede obtener ciertas publicaciones sobre su o sus derechos y responsabilidades bajo ERISA llamando el hotline de las publicaciones de la Pensión y Administración de Beneficios de Bienestar.

# XIII.  LA DECLARACIÓN DE LOS DERECHOS DE HIPAA

El Plan tomará los pasos razonables para asegurar el secreto de su Información de Salud Protegida a la magnitud que los requisitos privados de la Portabilidad del Seguro de Salud y Acto de Responsabilidad ("HIPAA") aplique a los beneficios médicos del Plan.

La "Información de Salud Protegida" ("PHI") incluye cualquiera información de salud individualmente identificable que se transmite o mantuvo por el Plan, pero no incluye (1) información de salud individualmente identificable contenida en los archivos de educación y archivos del empleo sostenidos por el Patrón, o (2) "información de

Appendix p.122

identificada" que es información que no identifica a un/una Participante particular y no hay ninguna base razonable para creer que puede usarse para hacer para que.

El Plan notificará al aviso a los Participantes de (1) los usos del Plan y descubrimientos de PHI, (2) los derechos y responsabilidades del Plan con respecto a PHI, y (3) sus derechos privados con respecto a PHI.  La forma de aviso será substancialmente en la forma siguiente o en cosas así modificado la forma como puede ser necesario obedecer los requisitos privados de HIPAA.

## LOS USOS Y DESCUBRIMIENTOS DE INFORMACIÓN DE SALUD PROTEGIDA

El Plan puede usar y puede descubrir su PHI en las situaciones siguientes sin obtener su consentimiento escrito o autorización primero:

**Usos y Descubrimientos Directamente a Usted**
Acceso a Su PHI - En su demanda, el Plan se exige darle acceso a cierto PHI para que usted inspeccione y copiarlo.

Contabilidad de Su PHI - En su demanda, el Plan se exige proporcionarle una contabilidad de ciertos descubrimientos de su PHI que el Plan ha hecho.

**Tratamiento, Pago Y Funcionamientos Médicos**
Regla general - El Plan puede usar o puede descubrir su PHI en las situaciones siguientes que relacionan al tratamiento, pago o funcionamientos de cuidado de salud:

• Tratamiento - El Plan puede descubrir su PHI a un  doctor, hospital u otro proveedor de cuidado de salud para que usted reciba el tratamiento médico.  "Tratamiento" incluye la provisión, coordinación o dirección de cuidado de salud y los servicios relacionados e incluye, pero no se limita a, las consultaciones y referencias entre uno o más de sus proveedores de cuidado de salud.

• Pago - El Plan puede usar su PHI y puede descubrir su PHI a otro plan de salud o proveedor médico para pagar las demandas bajo el Plan.  Por ejemplo, el Plan puede decirle a un doctor si usted es elegible para el fondos y si la factura puede pagarse por el Plan.  Las actividades del "pago" también incluyen las cosas como las determinaciones del fondos, mientras cargando en cuenta, la dirección de las demandas, la coordinación de beneficios, la subrogación, el reembolso del plan, las revisiones de necesidad médica, revisión de utilización y preauthorization.

• Funcionamientos Médicos del Plan - El Plan puede usar su PHI para los funcionamientos médicos del Plan.  "Los Funcionamientos Médicos" incluyen (1) la valoración de calidad y mejora, (2) repasando calificaciones de profesionales médicos, (3) subscribiendo, premio que tasa y las actividades de otros seguros que relacionan a crear, mientras renovando o reemplazando los contratos de seguros de salud (incluso seguro de pérdida de exceso), (4) dirigiendo o poniendo en orden para la revisión médica, servicios legales y funciones de la auditoría, incluso el

Appendix p.123

fraude y descubrimiento de abuso, y la complacencia programa, (5) la planificación comercial y desarrollo, (6) las actividades de dirección comerciales, como el servicio del cliente, la resolución de agravios interiores, y las actividades de la diligencia debidas relacionaron a la venta o traslado de recursos a otra entidad, (7) creando la información de salud de-identificada en ciertos casos, y (8) avisandolo proporcionar recordatorios de la cita o información sobre alternativas del tratamiento u otros beneficios salud-relacionados y servicios que pueden ser de interés a usted.

- Funcionamientos Médicos de Otra Entidad - El Plan también puede descubrir su PHI a otro plan de salud o proveedor médico para los funcionamientos médicos de la entidad que recibe el PHI, con tal de que cada entidad o tiene o tenía una relación con usted, el PHI pertenece a esta relación y el descubrimiento es para (1) los funcionamientos médicos, o (2) descubrimiento de fraude o abuso o propósitos de complacencia.

**Usos y Descubrimientos al Patrocinador del Plan**

El Plan puede descubrir PHI a la Compañía en su capacidad como el Patrocinador del Plan para el solo propósito de permitir a la Compañía realizar funciones de administración de plan que son consistente con las reglas siguientes:

**Usos y Descubrimientos de PHI**

- La Compañía usará y descubrirá PHI sólo proporcionó por el Plan a la magnitud que el uso y el descubrimiento se permite o requirió bajo las Reglas Privadas de HIPAA.

- La Compañía no usará o más allá descubrirá PHI de otra manera que como permitido o requirió por los documentos del plan para el Plan o como requerido por la ley;

- La Compañía le requerirá a cualquier agente, incluso un subcontratante a quien proporciona PHI del Plan, para aceptar las mismas restricciones y condiciones que aplican a la Compañía con respecto a PHI;

- La Compañía no usará o descubrirá PHI del Plan para las acciones y decisiones empleo-relacionadas o en relación con cualquier otro beneficio de la Compañía;

- La Compañía informará al Plan que cualquier uso o descubrimiento de PHI proporcionaron por el Plan que es incoherente con el propósito que el PHI fue mantenido, una vez la Compañía se da cuenta de tal uso incoherente o descubrimiento;

- La Compañía le proporcionará el acceso a su PHI de acuerdo con las Reglas Privadas de HIPAA;

- La Compañía hará PHI disponible para la enmendadura por usted e incorporará cualquier enmendadura hecha en su PHI;

Appendix p.124

• La Compañía hará disponible a usted información exigida para proporcionar una contabilidad de cualquier descubrimiento de su PHI hecha por el Plan, a magnitud que estos descubrimientos deben considerarse para bajo las Reglas Privadas de HIPAA;

• La Compañía hará a sus prácticas interiores, libros, y archivos que relacionan al uso y descubrimiento de PHI del Plan disponible a la Sección Americana de Salud y Servicios del Humano determinar la complacencia del Plan con las Reglas Privadas de HIPAA;

• Si factible, la Compañía volverá o destruirá todo el PHI recibió del Plan que la Compañía todavía mantiene en cualquier forma y retendrá ninguna copia de tal PHI cuando ya no necesitó para el propósito para que el descubrimiento era hecho. Sin embargo, si este retorno o la destrucción no es factible, la Compañía limitará los usos extensos y descubrimientos del PHI a esos propósitos que hacen el retorno o destrucción del infeasible de PHI; y

• La Compañía asegurará esa separación adecuada se ha establecido entre la Compañía, en su capacidad como el Patrocinador del Plan, y el Plan.

**La Separación Entre la Compañía y el Plan**
El Administrador de las Demandas designado del Plan, los miembros del Comité del Plan y sus miembros del personal respectivos que se designan para realizar las funciones del Plan serán los únicos empleados u otras personas bajo el mando directo de la Compañía que se dará el acceso a PHI para el uso y descubrimiento. Su acceso a y el uso de PHI se restringirá a las funciones del Administrador de Plan que la Compañía, en su capacidad como el Patrocinador del Plan, realiza para el Plan.  En caso de cualquiera de estas personas no obedece los requisitos de las Reglas Privadas de HIPAA, usted puede someter una queja por escrito a la Persona del Contacto listada al final de este Aviso.  Sin embargo, el Plan puede descubrir a la Compañía como el patrocinador del plan sin obedecer los requisitos de esta Sección si el descubrimiento involucra:
• PHI a la magnitud especificada en una autorización válida, escrito de usted;
• la información de salud sumaria, si la Compañía pide la información de salud sumaria para el propósito limitado de (1) obteniendo las ofertas del premio para el fondos de seguro relacionaron al Plan, o (2) modificando, mientras enmendando o terminando el Plan; o
• la información de o en si un individuo está participando en el Plan.

**Usos y Descubrimientos que Requieren Una Oportunidad para Acordar u Objetar**
El Plan puede usar o puede descubrir PHI en las situaciones siguientes en que usted ha estado de antemano informado del uso o descubrimiento y ha tenido la oportunidad de estar de acuerdo a, puede prohibir o puede restringir el uso o descubrimiento de acuerdo con las Reglas Privadas de HIPAA:
• el descubrimiento a su miembro familiar, otro pariente, o un amigo personal íntimo (o cualquier persona usted identifica) de PHI que es directamente pertinente al

Appendix p.125

envolvimiento de la persona con su cuidado o el pago relacionó a su cuidado; o

• el descubrimiento de PHI para notificar, o ayuda en la notificación de (incluyendo identificando o localizando) su miembro familiar, representante personal (u otra persona responsable para su cuidado) de su situación, condición general, o muerte.

**Requisitos Cuando Usted Está Presente**

Si usted está presente para, o por otra parte el prior disponible a, un uso o descubrimiento especificaron sobre, el Plan debe (1) obtener su acuerdo; (2) proporcionarle la oportunidad para objetar al descubrimiento y determinar que usted no expresa una objeción; o (3) inferir razonablemente de las circunstancias, basado en el ejercicio de juicio profesional que usted no objeta al descubrimiento.

**Requisitos Cuando Usted No Está Presente**

Si usted no está presente, o la oportunidad de acordar u objetar al uso o el descubrimiento no puede proporcionarse factiblemente debido a su capacidad o una circunstancia de la emergencia, el Plan puede, en el ejercicio de juicio profesional, determine (y hace las inferencias razonables acerca de) si el descubrimiento está en sus intereses más buenos y, en ese caso, descubra sólo el PHI que es directamente pertinente al envolvimiento de la persona con su tratamiento médico.

**Otras Circunstancias Especiales**

Requerido por la Ley - A la magnitud que el uso o el descubrimiento se requiere por la ley y cumple con y se limita a los requisitos pertinentes de la ley.  Por ejemplo, el Plan debe descubrir su PHI cuando pidió por la Sección Americana de Salud y Servicios del Humano en el orden investigar o determinar si el Plan conforme a las Reglas Privadas de HIPAA.

Salud Pública - Para las actividades de salud públicas, incluso el descubrimiento a (1) una autoridad de salud pública autorizada por la ley para coleccionar la información para prevenir o controlar enfermedad o conducta la vigilancia de salud pública, (2) una autoridad de salud pública autorizada por la ley recibir informes de abuso del niño o descuidar, (3) bajo ciertas circunstancias, una persona sujeto a la jurisdicción de la Administración Americana de Comida y Droga (FDA), (4) una persona expuso a una enfermedad comunicativa, o (5) en ciertas circunstancias, un patrón que considera las actividades de vigilancia médicas lugar de trabajo-relacionadas;

Seguridad Pública - A una autoridad gubernamental autorizada cuando el Plan razonable cree que usted es una víctima de abuso, abandono o violencia doméstica, o la magnitud necesario apartar una amenaza seria e inminente a la salud y seguridad.

Vigilancia de Salud - Para actividades de vigilancia de salud autorizadas por la ley, como fraude o auditorías de abuso, investigaciones y procedimientos civiles, administrativos o delictivos (a menos que la actividad no se levanta fuera de y no relaciona directamente al recibo de cuidado de salud o calificación para la salud pública beneficia).

Procedimientos Judiciales/Administrativos - Para los procedimientos judiciales y

administrativos, como responder a un orden judicial, citación, demanda del descubrimiento u otro proceso legal, cuando se reúnen ciertas condiciones.

Policía - Para la entrada en vigor de la ley propone a un oficial de entrada en vigor de ley, con tal de que la fiesta pidiendo debe satisfacer ciertos Reglas Privadas de HIPAA cuando PHI será descubierto para la identificación y propósitos de la situación.

Muerte – Para descubrimientos ciertos a jueces, los examinadores médicos y directores del entierro relacionaron al decedents, sujeto a las limitaciones específicas de las Reglas Privadas de HIPAA.

Donación del Órgano - A las organizaciones de procuración de órgano, con respecto a los órganos cadavéricos, ojos o tejido para los propósitos de la donación.

Investigación - Para los propósitos de la investigación con tal de que una Tabla de Revisión de Institución o la tabla del secreto aprueba la renuncia de autorización individual requerida bajo las Reglas Privadas de HIPAA y ciertas otras condiciones se reúne.

Ejército y la Seguridad Nacional - Para las funciones gubernamentales especializadas, como la separación o descarga del ejército, determinar la elegibilidad por la salud de veterano beneficia, seguridad nacional o las actividades de inteligencias legales, o para los servicios de la protección.

Compensación de Obreros - A la magnitud necesario para obedecer la compensación de obreros u otros programas similares establecieron por la ley.

## LOS DERECHOS Y RESPONSABILIDADES DEL PLAN

### Autorización
Exceptúe por otra parte como indicó en este Aviso, el Plan sólo hará usa y descubrimientos de su PHI con su autorización válida, escrito. Usted tiene el derecho para revocar esta autorización cuando quiera a, con tal de que su revocación es por escrito hecho a la Persona del Contacto listada al final de este Aviso. Su revocación no afectará ningún uso o el descubrimiento permitió por su autorización mientras estaba en el efecto. La tal revocación puede, sin embargo, impacte a la habilidad del Plan investigar y pagar su demanda por los beneficios.

### Aviso
El Plan se requiere por la ley mantener confidencialmente el PHI y proporcionarle este Aviso de sus derechos legales y practica privada con respecto a PHI.  El Plan se exige cumplir las condiciones del Aviso actualmente en el efecto y no se usa o descubre PHI de una manera que es incoherente con este Aviso.  Sin embargo, el Plan reserva al derecho cambiar las condiciones de este Aviso y hacer los nuevos comestibleses del Aviso eficaz para todo el PHI que mantiene.  El Plan puede proporcionar esto revisó el Aviso distribuyendo los materiales de beneficio enmendados, distribuyendo un

memorando de modificaciones materiales al SPD del Plan o proporcionando el Aviso como un documento separado.

**Requisito Mínimo**

Cuando usando o descubriendo PHI o al pedirle a PHI, el Plan hará los esfuerzos razonables para limitar PHI al requisito mínimo lograr el propósito intencional del uso, descubrimiento o demanda.  Sin embargo, este requisito mínimo no aplicará a:
• los descubrimientos a o demandas por un proveedor para el tratamiento;
• usos or descubrimientos permitió o requirió por usted;
• usos o descubrimientos con una autorización escrito válida de usted;
• descubrimientos a la Sección Americana de Salud y Servicios del Humano; y
• usos o descubrimientos que se requieren por otra parte por la ley, incluso la complacencia con las Reglas Privadas de HIPAA.

**Restricciones Convenidas**

Si usted y el Plan aceptan una restricción de su PHI, el Plan no puede usar o puede descubrir PHI en la violación de la restricción, exceptúe a la magnitud limitada que el PHI restringido se necesita proporcionarle el tratamiento de emergencia y el proveedor que proporciona el tratamiento de emergencia no acepta ningún uso extenso o descubre el PHI.  Usted y el Plan no pueden aceptar las restricciones con respecto a:
• descubrimientos a usted, como especificado bajo las Reglas Privadas de HIPAA; o
• usos y descubrimientos que se requieren o permitieron bajo las Reglas Privadas de HIPAA sin su autorización o acuerdo (Vea la Sección de este Aviso tituló "Otras Circunstancias Especiales").

**Información De-identificada**

El Plan puede usar PHI para crear información que no es individualmente identificable ("información de-identificada") o sólo descubre PHI a un Socio Comercial para ese propósito, sin tener en cuenta si el Plan usará la información de-identificada.  Las Reglas Privadas de HIPAA no aplican a información de-identificada que se encuentra la norma y característica técnicas de aplicación de las Reglas Privadas de HIPAA, a menos que:
• el Plan descubre un código u otros medios de identificación del registro que se diseña para permitir re-identificar la información de-identificada; o
• la información de-identificada se re-identifica por otra parte.

**Socios Comerciales**

Un "Socio Comercial" generalmente es una persona or entidad tercera que proporciona ciertos servicios al, o en nombre del, Plan (como la administración de las demandas repara, mientras cargando en cuenta, legal, actuarial, la contabilidad, consultando, la agregación de los datos, etc.) y los servicios involucran el uso o descubrimiento de PHI. El Plan puede descubrir PHI a un Socio Comercial y puede permitirle a un Socio Comercial crear o recibir PHI en su nombre, si el Plan obtiene la convicción satisfactoria que el Socio Comercial resguardará apropiadamente el PHI.  El Plan documentará estas convicciones satisfactorias a través de un contrato escrito u otro arreglo escrito con el Socio Comercial y debe asegurar que estas convicciones

Appendix p.128

satisfactorias satisfacen las Reglas Privadas de HIPAA que aplican a las comunicaciones de Socios Comerciales.  Sin embargo, este requisito no aplicará:

• si el Plan descubre PHI a un proveedor que involucra su tratamiento; y
• si el Plan descubre PHI a la Compañía en su capacidad como el Patrocinador del Plan, con tal de que el Plan obedece los requisitos para estos descubrimientos (refiérase a la Sección de este Aviso tituló "Usos y Descubrimientos al Patrocinador del Plan").

**Representantes Personales**
Para los propósitos de usar y descubrir PHI, el Plan debe tratar a su representante personal como si era usted, de acuerdo con las Reglas Privadas de HIPAA. Su testamento representativo personal se exija producir evidencia de su autoridad para actuar en su nombre (por ejemplo, un orden judicial de cita o un poder escriturado de abogado) antes de que esa persona se dierá el acceso a su PHI o se permitirá tomar alguna acción para usted.  El Plan retiene la discreción para negar el acceso a su PHI a un representante personal.

**Otros Usos y Descubrimientos**
Un/una Participante del Plan puede descubrir PHI si el/la Participante es un "whistleblower" o víctima de un crimen, con tal de que estos descubrimientos complecen con las normas de las Reglas Privadas de HIPAA.

**SUS DERECHOS CON RESPECTO INFORMACIÓN DE SALUD PROTEGIDA**

• Restricciones en PHI - Usted tiene el derecho para pedir las restricciones en los usos y descubrimientos de PHI llevar a cabo tratamiento, pago o funcionamientos de cuidado de salud. Sin embargo, el Plan no se exige aceptar una restricción.

• Comunicaciones Alternativas - Usted tiene el derecho para pedir que el Plan comunica PHI a usted por los medios de la alternativa o a las situaciones alternativas, si usted claramente el estado que el descubrimiento de todos o parte de esa información pudiera ponerlo en peligro. Estas demandas deben ser razonables y pueden condicionarse en usted proporcionando, cuando apropiado, información acerca de cómo el pago, si cualquiera, se manejará y especificación de una dirección alternativa u otro método de contacto.

• Access - Usted tiene el derecho para inspeccionar y copiar su PHI como que el Plan mantiene para "las actividades del pago" descrito en la Sección de este Aviso tituló "Tratamiento, Pago y Funcionamientos Médicos," sujeto a ciertas excepciones especificadas en las Reglas Privadas de HIPAA. Si usted pide las copias, el Plan puede cobrar una cuota razonable por localizar, mientras copiando y mandando por correo su PHI a usted.

• Enmendaduras - Usted tiene el derecho para enmendar y hacer las correcciones a su PHI y cualquiera estaba de acuerdo en la enmendadura o se atará a o incluido en sus archivos de PHI.  Sin embargo, su demanda de la enmendadura puede

Appendix p.129

negarse si el PHI sujeto a su demanda (1) no se creó por el Plan, a menos que usted proporciona una base razonable a crea que el creador del PHI es ningún más largo capaz hacer su pidió la enmendadura; (2) o no es parte de su PHI que el Plan mantiene para " las actividades del pago";  o (3) ya es exacto y completo.

- Contabilidad - Usted tiene el derecho para recibir una contabilidad de descubrimientos de su PHI que era hecho por el Plan dentro de los seis (6) años antes de la fecha de su demanda, salvo los descubrimientos:
  - que aplica al tratamiento, pago y funcionamientos médicos del Plan;
  - que se hizo a usted o ese era consiguiente hecho a una autorización válida, escrito;
  - que ocurrió antes de a la Fecha Efectiva de este Aviso;
    como la parte de un datos limitado puesta, como con tal de que bajo las Reglas Privadas de HIPAA;
  - para seguridad nacional o los propósitos de inteligencias como con tal de que por la ley;
  - a instituciones correccionales u otros oficiales de entrada en vigor de ley custodiales como permitido por las Reglas Privadas de HIPAA; o
  - incidental a un uso o el descubrimiento requirió o permitió por las HIPAA  Reglas Privadas.

Si usted pide más de una contabilidad dentro de un periodo de 12 meses, el Plan cobrará una cuota razonable, costo-basado por cada contabilidad subsecuente que usted pide.

Copia de Este Aviso - Usted tiene el derecho para obtener una copia del papel de este Aviso en la demanda, incluso individuos que están de acuerdo en recibir este Aviso electrónicamente.

Las Quejas - Usted puede quejarse al Plan o la Secretaria Americana de Salud y Servicios Humanos si usted cree que sus derechos del retiro se han violado.   Usted no se desquitará contra por archivar una queja.

**Ejerciendo Sus Derechos**
Usted o su representante personal pueden ejercer cualquiera de sus derechos especificado en esta Sección sometiendo una demanda escrito a la Persona del Contacto listado abajo.  Usted recibirá una contestación a su demanda dentro de 30 días, sujeto a una extensión del 30 días.  Si su demanda se niega en el todo o en parte, el Plan le proporcionará un rechazo escrito que explica la base para el rechazo. Si usted discrepa con un rechazo de su demanda o queja, usted puede proporcionar una declaración escrito a la Persona del Contacto y/o puede tomar cualquier acción extensa proporcionada en este Aviso o por la ley.

**Persona del Contacto**
Para la información extensa con derechos privados o este Aviso, por favor avise Ms. Brittney Bearden en (800) 333-8419.

## XIV. DIRECTORIO DEL PLAN

Patrocinador y Administrador del Plan:  Renfro Industries, Inc., 102 Metro Drive, Terrell, Texas 75160; (972) 563-4295.

Agente para Diligenciamiento de Procesos Legales:  El diligenciamiento de procesos legales se puede hacer al Administrador del Plan en la antedicha dirección.

Número de Identificación del Patrocinador:  75-2370781

Número del Plan: 501

Año Fiscal del Plan: El Año Fiscal del Plan es del 1º de enero al 31 de diciembre.

# ACUERDO DE ELECCIÓN Y ARBITRAJE

Al firmar este Acuerdo De Elección Y Arbitraje (de aquí en adelante el "Acuerdo"), yo, el empleado/la empleada que suscribe, voluntariamente elijo participar en el Plan de Beneficios por Lastimaduras Ocupacionales de Renfro Industries, Inc. aquí en adelante el "Plan"), y estoy de acuerdo con Renfro Industries, Inc. (de aquí en adelante "la Compañía") en lo siguiente:

**INSCRIPCIÓN EN EL PLAN**:   Entiendo que la Compañía, como lo permite expresamente la ley de Texas, <u>no</u> tiene seguro de indemnización por accidentes de trabajo (workers' compensation insurance) en Texas, que es una "no suscriptora" conforme a la Ley de Indemnización por Accidentes de Trabajo de Texas (Texas Workers' Compensation Act) (de aquí en adelante la "Ley"), que, como "no suscriptora," <u>no</u> se le exige proveer <u>ningún</u> beneficio en lo absoluto <u>por</u> lastimaduras en el trabajo, que, en lugar de eso, ha establecido <u>voluntariamente</u> el Plan conforme a la ley <u>federal</u> para proveer ciertos beneficios por lastimaduras en el trabajo, y que el Plan <u>no</u> es un seguro de indemnización por accidentes de trabajo.

Entiendo que en caso de lastimarme en el trabajo, al firmar y <u>acordar</u> este Acuerdo, soy elegible conforme a los términos del Plan para los beneficios médicos, de incapacidad, de muerte, de entierro y de desmembramiento, descritos en su totalidad en el Plan y resumidos en la Descripción del Plan en Resumen.   Entiendo que si yo <u>rechazo</u> los términos de este Acuerdo, <u>no</u> seré elegible para los beneficios del Plan.

Entiendo y estoy de acuerdo en que los beneficios del Plan <u>no</u> son beneficios de indemnización por accidentes de trabajo, pero se proveen <u>sin</u> importar si media culpa o negligencia mía, <u>sin</u> la necesidad de que yo inicie una demanda o arbitraje, y <u>sin</u> que yo compruebe si la Compañía (o uno de sus empleados) fue negligente en causar mi lastimadura (o muerte).

He recibido una copia de la Descripción del Plan en Resumen.   Entiendo y estoy de acuerdo que, si me lastimo en el trabajo, seguiré las reglas y procedimientos descritos en la Descripción del Plan en Resumen.

**PROMESAS MUTUAS DE RESOLVER RECLAMACIONES POR MEDIO DE ARBITRAJE OBLIGATORIO:** Reconozco que pueden surgir disputas entre la Compañía y yo durante o después de mi empleo.   Concuerdo con la Compañía en someterse cualquier y todo tales disputas al arbitraje <u>obligatorio</u>.

**Reconozco y entiendo que al firmar este Acuerdo estoy cediendo el derecho a un juicio por jurado respecto a todas las reclamaciones cubiertas por este Acuerdo** a cambio de la elegibilidad para los beneficios médicos, de incapacidad, de desmembramiento, de muerte y de entierro del Plan y previendo obtener los beneficios de un procedimiento de resolver disputas rápido, imparcial, y mutuamente obligatorio.

**Esta promesa de resolver reclamaciones por medio de arbitraje obliga mutuamente y beneficia mutuamente tanto para mí (y mi cónyuge, mis hijos menores, mis herederos, mis padres y mis representantes legales) como para la**

Appendix p.132

**Compañía (y sus sucesores, subsidiarios y compañías filiales, y sus gerentes, miembros, oficiales, directores, accionistas, socios, dueños, empleados, agentes y propietarios y el Plan y sus administradores y fiduciarios).**

<u>EJEMPLOS DE RECLAMACIONES SUJETAS A ARBITRAJE</u>:   Ejemplos de las reclamaciones y disputas cubiertas por este Acuerdo incluyen, <u>pero no se limitan a</u>:
(a) toda reclamación y disputa que <u>yo</u> (y mi cónyuge, mis hijos menores, mis herederos, mis padres y mis representantes legales, si alguna) pudiera tener <u>ahora</u> o que pudiera llegar a tener en el <u>futuro</u> contra la Compañía o contra sus sucesores, subsidiarios y compañías filiales o cualquiera de sus oficiales, directores, accionistas, miembros, socios, dueños, empleados y agentes o contra el Plan o sus administradores y fiduciarios, y
(b) toda reclamación y disputa que la <u>Compañía</u> o sus sucesores, subsidiarios, y compañías filiales o cualquiera de sus oficiales, directores, accionistas, miembros, socios, dueños y el Plan pudiera tener <u>ahora</u> o que pudiera llegar a tener en el <u>futuro</u> contra mí (y mi cónyuge, mis hijos menores, mis herederos, mis padres y mis representantes legales).
Ejemplos del <u>tipo</u> de reclamaciones cubiertas por este Acuerdo incluyen, <u>sin limitación</u>, toda y cualquier :

- reclamación por sueldos u otra remuneración;
- reclamación por incumplimiento de cualquier contrato, convenio, o garantías (escritas o implícitas);
- reclamación por actos ilícitos, incluida una reclamación por negligencia, negligencia en sí y negligencia grave (incluidas reclamaciones por lastimaduras personales o corporales o lastimadura física, mental o psicológica, sin importar si dicha lastimadura fuera sufrida en el empleo);
- reclamación por despido improcedente (incluida una reclamación de represialia conforme al Capitulo 451 del Código Laboral de Texas (Chapter 451 of the Texas Labor Code));
- reclamación por acoso o discriminación (incluida una reclamación basada en raza, sexo, religión, origen nacional, edad, condición médica o incapacidad);
- reclamación para beneficios conforme al Plan (después de agotar los remedios administrativos conforme a los términos del Plan);
- reclamación por infracción de cualquier otra ley, estatuto, reglamento o decreto federal, estatal o gubernamental; y
- **reclamación que impugne la existencia, validez o ejecutabilidad de este Acuerdo (total o parcialmente) o que impugne la aplicabilidad de este Acuerdo a una reclamación o disputa en particular.**

<u>RECLAMACIONES NO SUJETAS A ARBITRAJE:</u> Los asuntos siguientes solamente no están cubiertos por este Acuerdo:  (a) cualquier denuncia o procedimiento penal, y (b) reclamos a la agencia administrativa para beneficios de desempleo.

<u>ACUERDO COMPLETO:</u>   Los Procedimientos Arbitrales en la Sección IX de la Descripción del Plan en Resumen (y también en la Sección I, Párrafo B del Plan) están incorporadas por referencia a este Acuerdo y forman parte del mismo, igual que si fueran establecidas todas aquí.  Este Acuerdo, junto con los Procedimientos Arbitrales incorporados de la Sección IX de la Descripción del Plan en Resumen, es el Acuerdo

completo entre la Compañía y yo.  Este Acuerdo sustituye a cualquier otro acuerdo verbal con respecto al arbitraje, pero otros acuerdos o pólizas por escrito también podrán exigir que yo arbitre cualquier disputa que yo tenga con la Compañía.

No me baso en ninguna declaración, verbal o escrita, con respecto al tema, efecto, ejecutabilidad o significado de este Acuerdo, salvo según se declare específicamente en este Acuerdo.  Si se determina que cualquier disposición de este Acuerdo es nula o de otra manera no ejecutable, total o parcialmente, dicha determinación no afectará la validez del resto de este Acuerdo.

**NO ES UN ACUERDO DE EMPLEO:** Ni este Acuerdo, ni el Plan, ni la Descripción del Plan en Resumen se interpretará nunca para crear algún contrato de empleo, escrito o implícito.  Tampoco cambia la condición de empleo a voluntad de mi empleo con la Compañía este Acuerdo, ni el Plan, ni la Descripción del Plan en Resumen.

**RATIFICACIÓN POR RECIBO DEL PLAN DE BENEFICIOS:** Estoy de acuerdo en que cada vez que recibo beneficios del Plan, o un médico o una instalación médica recibe beneficios del Plan a mi favor, yo ratifico y reafirmo este Acuerdo como si hubiera firmado este Acuerdo otra vez en el día en que los beneficios fueron pagados.

**REQUISITOS PARA MODIFICACIÓN O REVOCACIÓN:** Este Acuerdo sobrevivirá la terminación de mi empleo.  Solamente se puede revocar (salvo como se establece en el párrafo más adelante) o modificar por un escrito firmado tanto por mí como por el representante autorizado de la Compañía y que específicamente declara una intención de revocar o modificar este Acuerdo, y este requisito de un escrito firmado en sí no puede ser dispensado, salvo por un escrito firmado.

**REVOCACIÓN DE ACEPTACIÓN:** Si, después de aceptar este Acuerdo al firmar más adelante, decido revocar mi aceptación de este Acuerdo, puedo hacerlo sólo notificando a la Compañía por escrito por correo certificado con acuse de recibo de mi revocación.  Entiendo y estoy de acuerdo que no puedo revocar mi aceptación de este Acuerdo si el Plan ha pagado (o se ha obligado a pagar) beneficios a mí o para mí. Entiendo y estoy de acuerdo que yo puedo revocar mi aceptación de este Acuerdo solamente (a) dentro de cinco (5) días calendarios después de la fecha de mi firma más adelante, o (b) dentro de cinco (5) días calendario después de recibir notificación escrita de una reducción material en los beneficios proporcionados por el Plan.

**ACUERDO VOLUNTARIO:** Reconozco y estoy de acuerdo en que he leído este Acuerdo detalladamente, que entiendo sus términos y que he celebrado este Acuerdo voluntariamente y sin compulsión, presión o coerción de ninguna persona y sin depender de ninguna promesa o representación por parte de la Compañía con la excepción de aquellas contenidas en este Acuerdo en sí.  No estoy bajo la influencia de alcohol o ninguna otra sustancia que me debilite, ni estoy bajo ninguna incapacidad mental que me afectaría en el momento de firmar este Acuerdo.  Estoy consciente de las consecuencias de firmar este Acuerdo y, hasta donde yo lo juzgue necesario, he consultado o consultaré con un abogado.  Por último, estoy de acuerdo y reconozco que firmar este Acuerdo **no** es condición de mi empleo.

Appendix p.134

# MARQUE SOLO <u>UNO</u> DE LOS SIGUIENTES:

☐ Estoy <u>de acuerdo</u> con los términos de este Acuerdo. **O** ☐ <u>Rechazo</u> los términos de este Acuerdo.


_____          _____
**Firma del Empleado/de la Empleada**                              **Fecha**
**(Employee's Signature)**


_____
**Nombre del Empleado/de la Empleada en**
**Letras de Molde (Employee's Printed Name)**


_____          _____
**Firma del Testigo (Witness Signature)**          **Firma del Testigo (Witness Signature)**


_____          _____
**Nombre del Testigo en Letras de Molde**          **Nombre del Testigo en Letras de Molde**
**(Printed Name of Witness)**                      **(Printed Name of Witness)**


**Aceptado y Acordado:**  *Renfro Industries, Inc.*

# AVISO A EMPLEADOS SOBRE COMPENSACIÓN PARA TRABAJADORES EN TEXAS

**COBERTURA:** Renfro Industries, Inc. ha elegido no obtener cobertura de compensación para trabajadores. Como empleado de un empleador que ha elegido no obtener seguro de compensación para trabajadores usted no es elegible para recibir beneficios de compensación bajo la Ley de Compensación para Trabajadores de Texas.  Sin embargo, un empleador sin cobertura puede y debe proporcionar otros beneficios a los empleados lesionados. Usted debe comunicarse con su empleador para obtener información acerca de la disponibilidad de otros beneficios o compensación por una lesión o enfermedad relacionada con el trabajo. Además, usted puede tener derechos bajo la ley de "Derecho Común" de Texas, si usted ha sufrido una lesión o enfermedad relacionada con su trabajo. Es requerido que su empleador le proporcione información acerca de la cobertura, por escrito, cuando es contratado o cuando su empleador obtiene o deja de tener cobertura de seguros de compensación para trabajadores.

**LÍNEA DIRECTA PARA REPORTAR CONDICIONES INSEGURAS:**  La División ha establecido una línea telefónica gratuita las 24 horas del día, para reportar condiciones inseguras en el lugar de trabajo que pudiesen violar las leyes occupacionales de salud y seguridad.  La ley prohíbe que los empleadores suspendan, despidan o descriminen contra un empleado o empleada porque él o ella, de buena fe, reporta una prresunta violación occupacional de salud o seguridad.  Comuníquese con la Sección de Seguridad y Salud al teléfono 1-800-452-9595.

Appendix p.136

# ACUERDO DE ELECCIÓN Y ARBITRAJE

Al firmar este Acuerdo De Elección Y Arbitraje (de aquí en adelante el "Acuerdo"), yo, el empleado/la empleada que suscribe, voluntariamente elijo participar en el Plan de Beneficios por Lastimaduras Ocupacionales de Renfro Industries, Inc. aquí en adelante el "Plan"), y estoy de acuerdo con Renfro Industries, Inc. (de aquí en adelante "la Compañía") en lo siguiente:

<u>INSCRIPCIÓN EN EL PLAN:</u>   Entiendo que la Compañía, como lo permite expresamente la ley de Texas, <u>no</u> tiene seguro de indemnización por accidentes de trabajo (workers' compensation insurance) en Texas, que es una "no suscriptora" conforme a la Ley de Indemnización por Accidentes de Trabajo de Texas (Texas Workers' Compensation Act) (de aquí en adelante la "Ley"), que, como "no suscriptora," <u>no</u> se le exige proveer <u>ningún</u> beneficio en lo absoluto <u>por</u> lastimaduras en el trabajo, que, en lugar de eso, ha establecido <u>voluntariamente</u> el Plan conforme a la ley <u>federal</u> para proveer ciertos beneficios por lastimaduras en el trabajo, y que el Plan <u>no</u> es un seguro de indemnización por accidentes de trabajo.

Entiendo que en caso de lastimarme en el trabajo, al firmar y <u>acordar</u> este Acuerdo, soy elegible conforme a los términos del Plan para los beneficios médicos, de incapacidad, de muerte, de entierro y de desmembramiento, descritos en su totalidad en el Plan y resumidos en la Descripción del Plan en Resumen.   Entiendo que si yo <u>rechazo</u> los términos de este Acuerdo, <u>no</u> seré elegible para los beneficios del Plan.

Entiendo y estoy de acuerdo en que los beneficios del Plan <u>no</u> son beneficios de indemnización por accidentes de trabajo, pero se proveen <u>sin</u> importar si media culpa o negligencia mía, <u>sin</u> la necesidad de que yo inicie una demanda o arbitraje, y <u>sin</u> que yo compruebe si la Compañía (o uno de sus empleados) fue negligente en causar mi lastimadura (o muerte).

He recibido una copia de la Descripción del Plan en Resumen.   Entiendo y estoy de acuerdo que, si me lastimo en el trabajo, seguiré las reglas y procedimientos descritos en la Descripción del Plan en Resumen.

<u>PROMESAS MUTUAS DE RESOLVER RECLAMACIONES POR MEDIO DE ARBITRAJE OBLIGATORIO:</u> Reconozco que pueden surgir disputas entre la Compañía y yo durante o después de mi empleo.   Concuerdo con la Compañía en someterse cualquier y todo tales disputas al arbitraje <u>obligatorio</u>.

**Reconozco y entiendo que al firmar este Acuerdo estoy cediendo el derecho a un juicio por jurado respecto a todas las reclamaciones cubiertas por este Acuerdo a cambio de la elegibilidad para los beneficios médicos, de incapacidad, de desmembramiento, de muerte y de entierro del Plan y previendo obtener los beneficios de un procedimiento de resolver disputas rápido, imparcial, y mutuamente obligatorio.**

**Esta promesa de resolver reclamaciones por medio de arbitraje obliga mutuamente y beneficia mutuamente tanto para mí (y mi cónyuge, mis hijos menores, mis herederos, mis padres y mis representantes legales) como para la**

© 2012 Sarles & Ouimet

Appendix p.137

Compañía (y sus sucesores, subsidiarios y compañías filiales, y sus gerentes, miembros, oficiales, directores, accionistas, socios, dueños, empleados, agentes y propietarios y el Plan y sus administradores y fiduciarios).

EJEMPLOS DE RECLAMACIONES SUJETAS A ARBITRAJE: Ejemplos de las reclamaciones y disputas cubiertas por este Acuerdo incluyen, pero no se limitan a:
(a) toda reclamación y disputa que yo (y mi cónyuge, mis hijos menores, mis herederos, mis padres y mis representantes legales, si alguna) pudiera tener ahora o que pudiera llegar a tener en el futuro contra la Compañía o contra sus sucesores, subsidiarios y compañías filiales o cualquiera de sus oficiales, directores, accionistas, miembros, socios, dueños, empleados y agentes o contra el Plan o sus administradores y fiduciarios, y
(b) toda reclamación y disputa que la Compañía o sus sucesores, subsidiarios, y compañías filiales o cualquiera de sus oficiales, directores, accionistas, miembros, socios, dueños y el Plan pudiera tener ahora o que pudiera llegar a tener en el futuro contra mí (y mi cónyuge, mis hijos menores, mis herederos, mis padres y mis representantes legales).
Ejemplos del tipo de reclamaciones cubiertas por este Acuerdo incluyen, sin limitación, toda y cualquier :
- reclamación por sueldos u otra remuneración;
- reclamación por incumplimiento de cualquier contrato, convenio, o garantías (escritas o implícitas);
- reclamación por actos ilícitos, incluida una reclamación por negligencia, negligencia en sí y negligencia grave (incluidas reclamaciones por lastimaduras personales o corporales o lastimadura física, mental o psicológica, sin importar si dicha lastimadura fuera sufrida en el empleo);
- reclamación por despido improcedente (incluida una reclamación de represalia conforme al Capítulo 451 del Código Laboral de Texas (Chapter 451 of the Texas Labor Code));
- reclamación por acoso o discriminación (incluida una reclamación basada en raza, sexo, religión, origen nacional, edad, condición médica o incapacidad);
- reclamación para beneficios conforme al Plan (después de agotar los remedios administrativos conforme a los términos del Plan);
- reclamación por infracción de cualquier otra ley, estatuto, reglamento o decreto federal, estatal o gubernamental; y
- reclamación que impugne la existencia, validez o ejecutabilidad de este Acuerdo (total o parcialmente) o que impugne la aplicabilidad de este Acuerdo a una reclamación o disputa en particular.

RECLAMACIONES NO SUJETAS A ARBITRAJE: Los asuntos siguientes solamente no están cubiertos por este Acuerdo:  (a) cualquier denuncia o procedimiento penal, y (b) reclamos a la agencia administrativa para beneficios de desempleo.

ACUERDO COMPLETO:  Los Procedimientos Arbitrales en la Sección IX de la Descripción del Plan en Resumen (y también en la Sección I, Párrafo B del Plan) están incorporadas por referencia a este Acuerdo y forman parte del mismo, igual que si fueran establecidas todas aquí. Este Acuerdo, junto con los Procedimientos Arbitrales incorporados de la Sección IX de la Descripción del Plan en Resumen, es el Acuerdo

ACUERDO DE ELECCIÓN Y ARBITRAJE—PÁGINA 2 de 4
ANEXO "A"

© 2012 Sarles & Ouimet

completo entre la Compañía y yo.  Este Acuerdo sustituye a cualquier otro acuerdo <u>verbal</u> con respecto al arbitraje, pero otros acuerdos o pólizas por <u>escrito</u> también podrán exigir que yo arbitre cualquier disputa que yo tenga con la Compañía.

<u>No</u> me baso en ninguna declaración, verbal o escrita, con respecto al tema, efecto, ejecutabilidad o significado de este Acuerdo, salvo según se declare específicamente en este Acuerdo.  Si se determina que cualquier disposición de este Acuerdo es nula o de otra manera no ejecutable, total o parcialmente, dicha determinación <u>no</u> afectará la validez del <u>resto</u> de este Acuerdo.

<u>NO ES UN ACUERDO DE EMPLEO:</u> Ni este Acuerdo, <u>ni</u> el Plan, <u>ni</u> la Descripción del Plan en Resumen se interpretará <u>nunca</u> para crear algún contrato de empleo, escrito o implícito.  Tampoco cambia la condición de empleo <u>a voluntad</u> de mi empleo con la Compañía este Acuerdo, <u>ni</u> el Plan, <u>ni</u> la Descripción del Plan en Resumen.

<u>RATIFICACIÓN POR RECIBO DEL PLAN DE BENEFICIOS:</u> Estoy de acuerdo en que cada vez que recibo beneficios del Plan, o un médico o una instalación médica recibe beneficios del Plan a mi favor, yo <u>ratifico</u> y <u>reafirmo</u> este Acuerdo como si hubiera firmado este Acuerdo otra vez en el día en que los beneficios fueron pagados.

<u>REQUISITOS PARA MODIFICACIÓN O REVOCACIÓN:</u> Este Acuerdo <u>sobrevivirá</u> la terminación de mi empleo.  <u>Solamente</u> se puede revocar (salvo como se establece en el párrafo más adelante) o modificar por un escrito firmado <u>tanto</u> por mí como por el representante <u>autorizado</u> de la Compañía y que específicamente declara una intención de revocar o modificar este Acuerdo, y este requisito de un escrito firmado en sí <u>no</u> puede ser dispensado, salvo por un escrito firmado.

<u>REVOCACIÓN DE ACEPTACIÓN:</u>  Si, después de aceptar este Acuerdo al firmar más adelante, decido revocar mi aceptación de este Acuerdo, puedo hacerlo <u>sólo</u> notificando a la Compañía por escrito por correo certificado con acuse de recibo de mi revocación.  Entiendo y estoy de acuerdo que <u>no</u> puedo revocar mi aceptación de este Acuerdo <u>si</u> el Plan ha pagado (o se ha obligado a pagar) beneficios a mí o para mí. Entiendo y estoy de acuerdo que yo puedo revocar mi aceptación de este Acuerdo <u>solamente</u> (a) dentro de <u>cinco</u> (5) días calendarios después <u>de la fecha de mi firma más adelante</u>, o (b) dentro de <u>cinco</u> (5) días calendario después de recibir notificación escrita de una <u>reducción material</u> en los beneficios proporcionados por el Plan.

<u>ACUERDO VOLUNTARIO:</u>   Reconozco y estoy de acuerdo en que he <u>leído</u> este Acuerdo detalladamente, que entiendo sus términos y que he celebrado este Acuerdo voluntariamente y <u>sin</u> compulsión, presión o coerción de ninguna persona y <u>sin</u> depender de ninguna promesa o representación por parte de la Compañía con la excepción de aquellas contenidas en este Acuerdo en sí.  <u>No</u> estoy bajo la influencia de alcohol o ninguna otra sustancia que me debilite, <u>ni</u> estoy bajo ninguna incapacidad mental que me afectaría en el momento de firmar este Acuerdo.  Estoy consciente de las consecuencias de firmar este Acuerdo y, hasta donde <u>yo lo juzgue necesario</u>, he consultado o consultaré con un abogado.  Por último, estoy de acuerdo y reconozco que firmar este Acuerdo <u>no</u> es condición de mi empleo.

ACUERDO DE ELECCIÓN Y ARBITRAJE—PÁGINA 3 de 4

ANEXO "A"

© 2012 Sarles & Ouimet

## MARQUE SOLO <u>UNO</u> DE LOS SIGUIENTES:

✗ Estoy <u>de acuerdo</u> con los términos de este Acuerdo. **O** ☐ <u>Rechazo</u> los términos de este Acuerdo.


_Maria Guadalope Rojas._
Firma del Empleado/de la Empleada
(Employee's Signature)

_8 - 6 - 2012_
Fecha

_Maria Guadalupe Rojas_
Nombre del Empleado/de la Empleada en
Letras de Molde (Employee's Printed Name)


_ENRIQUE RECIO_
Firma del Testigo (Witness Signature)

_Benito Rodriguez_
Firma del Testigo (Witness Signature)

_Enrique Recio Soto_
Nombre del Testigo en Letras de Molde
(Printed Name of Witness)

_Benito Rodriguez_
Nombre del Testigo en Letras de Molde
(Printed Name of Witness)


Aceptado y Acordado:  ***Renfro Industries, Inc.***


ACUERDO DE ELECCIÓN Y ARBITRAJE—PÁGINA 4 de 4
ANEXO "A"

© 2012 Sarles & Ouimet

# Appendix p.140

# DISPUTE SOLUTIONS, INC.

## ARBITRATION RULES

### 1.  Notification of Use of DSI

Any company intending to incorporate these rules or to refer to the alternative dispute resolution (ADR) services of Dispute Solutions, Inc. (DSI) in an ADR plan shall, at least 30 days prior to the planned effective date of the program:

(a)  notify DSI of its intention to do so and,

(b)  provide DSI with a copy of the alternative dispute resolution plan.

DSI may decline its administrative services to any company that does not comply with this requirement.

### 2.  Applicable Rules of Arbitration

These rules, as amended from time to time by DSI, shall apply in the form in effect at the time the Demand for arbitration or joint submission is received by DSI.

### 3.  DSI as Administrator of the Arbitration

When parties agree to arbitrate under these rules, or when they provide for arbitration by DSI and an arbitration is initiated under these rules, they thereby authorize DSI to administer the arbitration. The authority and duties of DSI are described in these rules and may be carried out as DSI's representatives may direct.

### 4.  Initiation of Arbitration

Arbitration shall be initiated in the following manner.

(a)  The parties may make a joint submission for arbitration.

(b)  In the absence of a joint submission for arbitration:

  (i)  The initiating party (hereinafter "Claimant[s]") <u>shall</u>:

  (1)  File with DSI two (2) copies of a written notice (hereinafter "Demand") of its intention to arbitrate, within the time limit established by the applicable statute of limitations. Neither filing nor serving a lawsuit complies with this requirement. Any dispute over the timeliness of the demand shall be referred to the arbitrator. The Claimant shall include with the Demand a copy of the applicable arbitration agreement. The Demand shall set forth the names, addresses, and telephone numbers of the parties; a brief statement of the nature of the dispute; the amount in controversy, if any; the remedy sought; and the requested hearing location.

  (2)  Simultaneously serve a copy of the Demand on the other party (hereinafter "Respondent[s]").

  (3)  Include with its Demand the applicable filing fee, unless the parties agree to some other method of fee advancement.

  (ii)  The Respondent(s) shall file an Answer with DSI within 15 days after service of the Demand. The Answer shall provide the Respondent's brief response to the Demand. The Respondent(s) shall file the Answer with DSI and serve a copy on the Claimant. If no Answer is filed within the stated time, Respondent will be deemed to deny the Demand. Failure to file an Answer shall not delay the arbitration.

  (iii)  The Respondent(s):

  (1)  May file with DSI two (2) copies of a Counterclaim within 15 days after the service of the Demand. Any Counterclaim shall set forth the nature of the claim, the amount in controversy, if any, and the remedy sought.

  (2)  Simultaneously serve a copy of any Counterclaim on the Claimant.

  (3)  Shall include with its filing the applicable filing fee provided for by these rules.

  (iv)  The Claimant may file with DSI two (2) copies of an Answer to the Counterclaim within 15 days after service of the counterclaim. The Answer shall provide Claimant's brief response to the Counterclaim. The Claimant shall file the Answer with DSI and serve a copy on the Respondent. If no Answer is filed within the stated time, Claimant will be deemed to deny the Counterclaim. Failure to file an Answer shall not delay the arbitration.

Appendix p.141

5. JURISDICTION

   (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

   (b) The arbitrator shall have the power to determine the existence or validity of a contract that includes an arbitration clause. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

   (c) A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of its Answer to the Demand or Counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

6. ARBITRATION MANAGEMENT CONFERENCE

As soon as practicable, an arbitration management conference shall be held among the parties and/or their attorneys or other representatives and the arbitrator(s). Unless the parties agree otherwise, the Arbitration Management Conference will be conducted by telephone conference call. At the Arbitration Management Conference the matters to be considered shall include, without limitation:

   (a) the issues to be arbitrated;

   (b) the date, time, place, and estimated duration of the hearing;

   (c) the resolution of outstanding discovery issues and establishment of discovery parameters;

   (d) the law, standards, rules of evidence, and burdens of proof that are to apply to the proceeding;

   (e) the exchange of stipulations and declarations regarding facts, exhibits, witnesses, and other issues;

   (f) the names of witnesses (including expert witnesses), the scope of witness testimony, and witness exclusion;

   (g) the value of bifurcating the arbitration into a liability phase and damages phase;

   (h) the need for a stenographic record;

   (i) whether the parties will summarize their arguments orally or in writing;

   (j) the form of the award;

   (k) any other issues relating to the subject or conduct of the arbitration;

   (l) the allocation of attorney's fees and costs;

   (m) the specification of undisclosed claims;

   (n) the extent to which documentary evidence may be submitted at the hearing;

   (o) the extent to which testimony may be admitted at the hearing telephonically, over the internet, by written or video-taped deposition, by affidavit, or by any other means.

The arbitrator shall issue oral or written orders reflecting his or her decisions on the above matters and may conduct additional conferences when the need arises.

7. DISCOVERY

The arbitrator shall have the authority to order such discovery, by way of disclosures, deposition, interrogatory, document production, request for admission, request for inspection, or otherwise, as the arbitrator deems necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

If a discovery dispute arises, the parties should notify DSI so that it may be presented to the arbitrator for determination. See Arbitration Rule 12.

8. FIXING OF LOCALE (DATE, TIME, AND PLACE OF HEARING)

If the parties have not agreed and cannot agree to a location for the arbitration, the arbitrator(s) shall decide. The arbitrator(s) shall set the date, time, and place for each hearing. The parties shall respond to requests for hearing dates in a timely manner, cooperate in scheduling the earliest practicable date, and adhere to the established hearing schedule.

9. NUMBER, QUALIFICATIONS, AND APPOINTMENT OF ARBITRATORS

   (a) If the arbitration agreement does not specify the number of arbitrators or the parties do not agree otherwise, the dispute shall be heard and determined by one arbitrator.

Appendix p.142

(b) Qualifications
    (i) Arbitrators serving under these rules shall be experienced in the field of law at issue.
    (ii) Arbitrators serving under these rules shall have no personal or financial interest in the results of the proceeding in which they are appointed and shall have no relation to the underlying dispute or to the parties or their counsel that may create an appearance of bias.
(c) If the parties have not appointed an arbitrator and have not provided any method of appointment, the arbitrator shall be appointed in the following manner:
    (i) Shortly after it receives the Demand, DSI shall send simultaneously to each party a letter containing an identical list of names of proposed arbitrators. The parties are encouraged to agree to an arbitrator from the submitted list and to advise DSI of their agreement.
    (ii) If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to DSI. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable.
    (iii) From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, DSI shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted list, DSI shall have the power to make the appointment from among other arbitrators without the submission of additional lists.

10. DISCLOSURE

(a) Any person appointed or to be appointed as an arbitrator shall disclose to DSI any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration.
(b) Upon receipt of such information from the arbitrator or another source, DSI shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.
(c) In order to encourage disclosure by arbitrators, disclosure of information pursuant to this Rule 10 is not to be construed as an indication that the arbitrator considers that the disclosed circumstance is likely to affect impartiality or independence.

11. DISQUALIFICATION OF ARBITRATOR

(a) Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for:
    (i) partiality or lack of independence,
    (ii) inability or refusal to perform his or her duties with diligence and in good faith, and
    (iii) any grounds for disqualification provided by applicable law.
(b) Upon objection of a party to the continued service of an arbitrator, or on its own initiative, DSI shall determine whether the arbitrator should be disqualified under the grounds set out above and shall inform the parties of its decision, which decision shall be conclusive.

12. COMMUNICATION WITH ARBITRATOR

No party and no one acting on behalf of any party shall communicate ex parte with an arbitrator or a candidate for arbitrator concerning the arbitration.

13. VACANCIES

(a) If for any reason an arbitrator is unable to perform the duties of the office, DSI may, on proof satisfactory to it, declare the office vacant. Rule 9's procedures will apply for the selection of a substitute arbitrator.
(b) In the event of a vacancy in a panel of arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.
(c) In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.



Appendix p.143

## 14.  Representation

Any party may be represented by counsel licensed in the state where the arbitration hearing will occur or by authorized non-lawyer representatives.  A party who intends to be represented shall notify the other party and DSI of the name and address of the representative at least 10 days before the hearing or conference at which the representative is first to appear.

## 15.  Stenographic Record

Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three days in advance of the hearing. The requesting party or parties shall pay the cost of the record. If the transcript is agreed by the parties, or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the arbitrator. If a party shows that it is unable to afford the cost of a stenographic record, the arbitrator may order the other party to provide one.

## 16.  Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service. If a party shows that it is unable to afford the cost of a necessary interpreter, the arbitrator may order the other party to provide one.

## 17.  Attendance at Hearings

The arbitrator shall have the authority to exclude witnesses, other than a party, from the hearing during the testimony of any other witness. The arbitrator also shall have the authority to decide whether any person who is not a witness may attend the hearing.

## 18.  Confidentiality

The arbitrator shall maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality, unless the parties agree otherwise or the law provides to the contrary.

## 19.  Postponements

The arbitrator: (1) may postpone any hearing upon the request of a party for good cause shown; (2) must postpone any hearing upon the mutual agreement of the parties; and (3) may postpone any hearing on his or her own initiative.

## 20.  Oaths

An arbitrator shall take an oath of office. The oath shall be provided to the parties prior to the first hearing. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

## 21.  Dispositive Motions

The arbitrator shall consider dispositive motions. Unless agreed otherwise, the arbitrator shall apply the provisions of the Federal Rules of Civil Procedure to such motions, especially Rule 56(d).

## 22.  Order of Proceedings

A hearing may be opened by: (1) recording the date, time, and place of the hearing; (2) recording the presence of the arbitrator, the parties, and their representatives, if any; and (3) receiving into the record the Demand, Answer, and any Counterclaim. The arbitrator may, at the beginning of the hearing, ask for statements clarifying the issues involved.

The parties shall bear the same burdens of proof and burdens of producing evidence as would apply if their claims and counterclaims had been brought in court.

Witnesses for each party shall submit to direct and cross examination.

With the exception of the rules regarding the allocation of the burdens of proof and going forward with the evidence, the arbitrator has the authority to set the rules for the conduct of the proceedings and shall exercise that authority to afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute.

The arbitrator, in exercising his or her discretion, shall conduct the proceedings with a view toward expediting the resolution of the dispute, may direct the order of proof, bifurcate proceedings, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

Documentary and other forms of physical evidence, when offered by either party, may be received in evidence by the arbitrator.

The names and addresses of all witnesses and a description of the exhibits in the order received shall be made a part of the record.

## 23.  REFUSAL TO ARBITRATE

If any party refuses to arbitrate under the terms of these Arbitration Rules or fails to attend the arbitration without good cause, the party agrees that an award denying the party any relief shall be entered against him by the decision of the arbitrator(s), provided that the refusing party received notice of the hearing or arbitration, was given reasonable opportunity to participate, a written decision denying any affirmative relief was rendered, and a notice of said decision is given to the party refusing to participate in arbitration or abide by these Arbitration Rules.

## 24.  EVIDENCE

The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator deems necessary to an understanding and determination of the dispute.

An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party is absent, in default, or has waived the right to be present.

Unless agreed otherwise, the arbitrators shall apply the provisions of the Federal Rules of Evidence and applicable law regarding privileges.

## 25.  INTERIM MEASURES

At the request of any party, the arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court.

## 26.  CLOSING AND REOPENING OF HEARING

Once the record is complete, the arbitrator shall declare the hearing closed.

If briefs are to be filed, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs.  The time limit within which the arbitrator is required to make the award shall commence to run, in the absence of other agreements by the parties, upon closing of the hearing.

The hearing may be reopened by the arbitrator upon the arbitrator's initiative, or upon application of a party for good cause shown, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. When no specific date is fixed in the contract, the arbitrator may reopen the hearing and shall have 30 days from the closing of the reopened hearing within which to make an award.

Appendix p.145

27.  WAIVER OF ORAL HEARING

The parties may agree in writing to waive an oral hearing. If the parties are unable to agree as to the procedure, the arbitrator shall specify a fair and equitable procedure.

28.  WAIVER OF OBJECTION/LACK OF COMPLIANCE WITH THESE RULES

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these Arbitration Rules has not been complied with, and who fails to state objections thereto in writing or in a transcribed record, shall be deemed to have waived the right to object.

29.  EXTENSIONS OF TIME

The parties may modify any period of time by mutual agreement. DSI or the arbitrator may for good cause extend any period of time established by these Rules, except the time for making the award. DSI shall notify the parties of any extension.

30.  SERVING OF NOTICE

(a)  Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party, or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

(b)  DSI, the arbitrator, and the parties may also use overnight delivery or electronic facsimile transmission (fax), to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be transmitted by electronic mail (e-mail), or other methods of communication.

(c)  Unless otherwise instructed by DSI or by the arbitrator, any documents submitted by any party to DSI or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

31.  THE AWARD

(a)  The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing of the hearing or, if oral hearings have been waived, from the date of DSI's transmittal of the final statements and proofs to the arbitrator. Three additional days are provided if briefs are to be filed or other documents are to be transmitted pursuant to Rule 30.

(b)  An award issued under these rules shall be publicly available, on a cost basis. The names of the parties and witnesses will not be publicly available, unless a party expressly agrees to have its name made public in the award.

(c)  The award shall be in writing and shall be signed by a majority of the arbitrators and shall provide the written reasons for the award unless the parties agree otherwise. It shall be executed in the manner required by law.

(d)  The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law. The arbitrator shall, in the award, assess arbitration fees, expenses, and compensation as provided in Rules 38, 39, and 40 in favor of any party and, in the event any administrative fees or expenses are due DSI, in favor of DSI, subject to the provisions contained in the Costs of Arbitration section.

(e)  If the parties settle their dispute during the course of the arbitration and mutually request, the arbitrator may set forth the terms of the settlement in a consent award.

(f)  The parties shall accept as legal delivery of the award the placing of the award or a true copy thereof in the mail, addressed to a party or its representative at the last known address, personal service of the award, or the filing of the award in any manner that may be required by law.

(g)  The arbitrator's award shall be final and binding.

Appendix p.146

## 32. MODIFICATION OF AWARD

Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator to correct any clerical, typographical, technical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by DSI to the arbitrator of the request and any response thereto. If applicable law requires a different procedural time frame, that procedure shall be followed.

## 33. RELEASE OF DOCUMENTS FOR JUDICIAL PROCEEDINGS

DSI shall, upon the written request of a party, furnish to the party, at that party's expense, certified copies of any papers in DSI's case file that may be required in judicial proceedings relating to the arbitration.

## 34. APPLICATIONS TO COURT

(a) No judicial proceeding by a party to enforce an arbitration agreement or to confirm, vacate or modify an arbitration award shall be deemed a waiver of the party's right to arbitrate.

(b) Neither DSI nor any arbitrator in a proceeding under these rules is or shall be considered a necessary or proper party in judicial proceedings relating to the arbitration.

(c) Parties to these procedures shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction.

(d) Parties to an arbitration under these rules shall be deemed to have consented that neither DSI nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

## 35. ADMINISTRATIVE FEES

DSI shall prescribe filing and other administrative fees to compensate it for the cost of providing administrative services. DSI's administrative fee schedule in effect at the time the demand for arbitration or submission agreement is received shall be applicable.

DSI's fees shall be paid in accordance with the Costs of Arbitration Section.

DSI may, in the event of extreme hardship on any party, defer or reduce the administrative fees.

## 36. ARBITRATOR'S COMPENSATION

Arbitrators shall charge a rate consistent with the arbitrator's stated rate of compensation. If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by DSI and confirmed to the parties.

Any arrangement for the compensation of an arbitrator shall be made through DSI and not directly between the parties and the arbitrator. Payment of the arbitrator's fees and expenses shall be made by DSI from the fees and moneys collected by DSI for this purpose.

Arbitrator compensation shall be borne in accordance with the Costs of Arbitration section.

## 37. EXPENSES

Unless otherwise agreed by the parties or as provided under applicable law, the expenses of witnesses for either side shall be borne by the party producing such witnesses.

All expenses of the arbitrator, including required travel and other expenses, and any DSI expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator shall be borne in accordance with the Costs of Arbitration section.

Appendix p.147

38.  DEPOSITS

DSI may require deposits in advance of any hearings such sums of money as it deems necessary to cover the expenses of the arbitration, including the arbitrator's fee, if any, and shall render an accounting and return any unexpended balance at the conclusion of the case.

39.  SUSPENSION FOR NON-PAYMENT

If arbitrator compensation or administrative charges have not been paid in full, DSI may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, DSI may suspend or terminate the proceedings.

40.  INTERPRETATION AND APPLICATION OF RULES

The arbitrator shall interpret and apply these rules as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these Rules, it shall be resolved by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to DSI for final decision. All other procedures shall be interpreted and applied by DSI.

Appendix p.148

## Costs of Arbitration (including DSI Administrative Fees)

### 1. FILING FEES

In cases before a single arbitrator, a nonrefundable filing fee capped in the amount of $350, is payable in full by the Claimant (other than a company) when a claim is filed, unless the ADR plan provides that the Claimant (other than a company) pay less. A nonrefundable fee in the amount of $1,050.00 is payable in full by the Respondent (other than an individual), unless the ADR plan provides that the Respondent (other than an individual) pay more.

There shall be no filing fee charged for a counterclaim.

### 2. POSTPONEMENT/CANCELLATION FEES

A fee of $250 is payable by a party causing a postponement of any hearing scheduled before a single arbitrator.

### 3. HEARING ROOM RENTAL

Hearing room rental fees will be borne by the Respondent (other than an individual).

### 4. ABEYANCE FEE

Parties on cases held in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

### 5. EXPENSES

All expenses of the arbitrator, including required travel and other expenses, and any DSI expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the Respondent (other than an individual).

Appendix p.149

# Employment
## Arbitration Rules and Mediation Procedures



AMERICAN ARBITRATION ASSOCIATION®

Available online at **adr.org/employment**

Rules Amended and Effective November 1, 2009
Fee Schedule Amended and Effective July 1, 2016

# Appendix p.150

## Regional Vice Presidents and Assistant Vice Presidents

**States: Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania, West Virginia**
Kenneth Egger
Vice President
Phone: 215.731.2281
Email: EggerK@adr.org

**States: Alaska, Arizona, California, Colorado, Hawaii, Idaho, Montana, Nevada, Oregon, Utah, Washington, Wyoming**
John English
Vice President
Phone: 619.239.3051
Email: EnglishJ@adr.org

**States: Illinois, Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota, Tennessee, Wisconsin**
Jan Holdinski
Vice President
Phone: 248.352.5509
Email: HoldinskiJ@adr.org

**States: Connecticut, Maine, Massachusetts, New Hampshire, New York, Vermont**
Ann Lesser, Esq.
Vice President
Phone: 212.484.4084
Email: LesserA@adr.org

**States: Alabama, Arkansas, Florida, Georgia, Mississippi, North Carolina, South Carolina, Virginia**
Charles Dorsey
Assistant Vice President
Phone: 866.686.6024
Email: DorseyC@adr.org

**States: Rhode Island**
Heather Santo
Assistant Vice President
Phone: 866.293.4053
Email: SantoH@adr.org

**States: Louisiana, New Mexico, Oklahoma, Texas**
Patrick Tatum
Vice President
Phone: 559.490.1905
Email: TatumP@adr.org

## Case Management Vice President and Assistant Vice Presidents

Charles Dorsey
Assistant Vice President
Phone: 866.686.6024
Email: DorseyC@adr.org
**Administers cases in FL, GA**

Heather Santo
Assistant Vice President
Phone: 866.293.4053
Email: SantoH@adr.org
**Administers cases in AL, CT, DE, DC, IN, KY, ME, MD, MA, MI, NH, NJ, NY, NC, OH, PA, RI, SC, TN, VT, VA, WV**

Patrick Tatum
Vice President
Phone: 559.490.1905
Email: TatumP@adr.org
**Administers cases in AK, AZ, AR, CA, CO, HI, ID, IL, IA, KS, LA, MN, MS, MO, MT, NE, NV, NM, ND, OK, OR, SD, TX, UT, WA, WI, WY**

# Appendix p.151

# Table of Contents

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Role of the American Arbitration Association . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Legal Basis of Employment ADR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

The Fairness Issue: The Due Process Protocol . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

AAA's Employment ADR Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

AAA's Policy on Employment ADR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Notification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Costs of Employment Arbitration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Designing an ADR Program . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Alternative Dispute Resolution Options . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

   Open Door Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

   Ombuds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

   Peer Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

   Internal Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

   Fact-Finding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

   Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Types of Disputes Covered . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Employment Arbitration Rules and Mediation Procedures . . . . . . . . . . . . . . . . . . . 15

   1. Applicable Rules of Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

   2. Notification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

   3. AAA as Administrator of the Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

   4. Initiation of Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

   5. Changes of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

   6. Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

   7. Administrative and Mediation Conferences . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

   8. Arbitration Management Conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

   9. Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

   10. Fixing of Locale (the city, county, state, territory, and/or country of the Arbitration). 19

   11. Date, Time and Place (the physical site of the hearing within the designated locale) of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

   12. Number, Qualifications and Appointment of Neutral Arbitrators. . . . . . . . . . . . . . 20

   13. Party Appointed Arbitrators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# Appendix p. 152

14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties . . . . . . . . . 21

15. Disclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

16. Disqualification of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

17. Communication with Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

18. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

19. Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

20. Stenographic Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

21. Interpreters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

22. Attendance at Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

23. Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

24. Postponements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

25. Oaths . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

26. Majority Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

27. Dispositive Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

28. Order of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

29. Arbitration in the Absence of a Party or Representative . . . . . . . . . . . . . . . . . . . . . 26

30. Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

31. Inspection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

32. Interim Measures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

33. Closing of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

34. Reopening of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

35. Waiver of Oral Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

36. Waiver of Objection/Lack of Compliance with These Rules . . . . . . . . . . . . . . . . . 28

37. Extensions of Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

38. Serving of Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

39. The Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

40. Modification of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

41. Release of Documents for Judicial Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

42. Applications to Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

43. Administrative Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

44. Neutral Arbitrator's Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

45. Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

46. Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

47. Suspension for Non-Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

48. Interpretation and Application of Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Costs of Arbitration (including AAA Administrative Fees) . . . . . . . . . . . . . . . . . . . . . . . . 31

# Appendix p.153

For Disputes Arising Out of Employer Plans: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

(i) Filing Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

(ii) Hearing Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

(iii) Postponement/Cancellation Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

(iv) Hearing Room Rental. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

(v) Abeyance Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

(vi) Expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

For Disputes Arising Out of Individually-Negotiated Employment Agreements
and Contracts:. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Administrative Fee Schedules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Standard Fee Schedule. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Refunds—Standard Fee Schedule: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Flexible Fee Schedule. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Refunds—Flexible Fee Schedule: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Additional Fees Applicable to the Standard Fee and Flexible Fee Schedules . . . . . . . . 40

Expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

For Disputes Proceeding Under the Supplementary Rules for Class Action
Arbitration ("Supplementary Rules"): . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Optional Rules for Emergency Measures of Protection . . . . . . . . . . . . . . . . . . . . . . . . . . 42

O-1. Applicability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

O-2. Appointment of Emergency Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

O-3. Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

O-4. Interim Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

O-5. Constitution of the Panel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

O-6. Security. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

O-7. Special Master . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

O-8. Costs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

# Appendix p.154

Employment Mediation Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

M-1. Agreement of Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

M-2. Initiation of Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

M-3. Fixing of Locale (the city, county, state, territory and, if applicable, country of the mediation) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

M-4. Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

M-5. Appointment of the Mediator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

M-6. Mediator's Impartiality and Duty to Disclose . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

M-7. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

M-8. Duties and Responsibilities of the Mediator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

M-9. Responsibilities of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

M-10. Privacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

M-11. Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

M-12. No Stenographic Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

M-13. Termination of Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

M-14. Exclusion of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

M-15. Interpretation and Application of Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

M-16. Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

M-17. Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

M-18. Cost of the Mediation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

# Appendix p.155

# Employment Arbitration Rules and Mediation Procedures



## Introduction

Federal and state laws reflecting societal intolerance for certain workplace conduct, as well as court decisions interpreting and applying those statutes, have redefined responsible corporate practice and employee relations. Increasingly, employers and employees face workplace disputes involving alleged wrongful termination, sexual harassment, or discrimination based on race, color, religion, sex, national origin, age and disability.

As courts and administrative agencies become less accessible to civil litigants, employers and their employees now see alternative dispute resolution ("ADR") as a way to promptly and effectively resolve workplace disputes. ADR procedures are becoming more common in contracts of employment, personnel manuals, and employee handbooks.

Increasingly, corporations and their employees look to the American Arbitration Association® as a resource in developing prompt and effective employment procedures for employment-related disputes.

These Rules have been developed for employers and employees who wish to use a private alternative to resolve their disputes, enabling them to have complaints heard by an impartial person with expertise in the employment field. These procedures benefit both the employer and the individual employee by making it possible to resolve disputes without extensive litigation.

## Role of the American Arbitration Association

The American Arbitration Association, founded in 1926, is a not-for-profit, public service organization dedicated to the resolution of disputes through mediation, arbitration, elections and other voluntary dispute resolution procedures. Millions of workers are now covered by employment ADR plans administered by the AAA®.

# Appendix p.156

In addition, the AAA provides education and training, specialized publications, and research on all forms of dispute settlement. With 30 offices worldwide and cooperative agreements with arbitral institutions in 63 other nations, the American Arbitration Association is the nation's largest private provider of ADR services.

For over 80 years, the American Arbitration Association has set the standards for the development of fair and equitable dispute resolution procedures. The development of the *Employment Arbitration Rules and Mediation Procedures* and the reconstitution of a select and diverse roster of expert neutrals to hear and resolve disputes, are the most recent initiatives of the Association to provide private, efficient and cost-effective procedures for out-of-court settlement of workplace disputes.

## Legal Basis of Employment ADR

Since 1990, Congress has twice re-affirmed the important role of ADR in the area of employment discrimination—in the Americans with Disabilities Act in 1990, and a year later in Section 118 of the Civil Rights Act of 1991.

The United States Supreme Court has also spoken on the importance of ADR in the employment context. In *Gilmer v. Interstate/Johnson Lane,* 500 U.S. 20, 111 S.Ct. 1647 (1991), the Supreme Court refused to invalidate Gilmer's agreement with the New York Stock Exchange that he would arbitrate disputes with his employer (Interstate/Johnson Lane) simply because he was obliged to sign it in order to work as a securities dealer whose trades were executed on the Exchange. Although the *Gilmer* Court found that the Age Discrimination in Employment Act did not preclude arbitration of age discrimination claims, it specifically declined to decide whether employment arbitration agreements were "contracts of employment" excluded under the Federal Arbitration Act.

The specific issue left open by *Gilmer* was decided 10 years later by the United States Supreme Court in *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001). In Circuit City, the Supreme Court concluded that except for transportation workers such as seamen or railroad workers, the FAA covers all contracts of employment and that the Act may be used to compel arbitration of employment-related claims. While Circuit City involved only state law claims, the Supreme Court had determined previously in Gilmer that federal age discrimination claims (and presumably other federal civil rights claims) were arbitrable under the FAA.

# Appendix p.157

## The Fairness Issue: The Due Process Protocol

*The Due Process Protocol for Mediation and Arbitration of Statutory Disputes Arising Out of the Employment Relationship* was developed in 1995 by a special task force composed of individuals representing management, labor, employment, civil rights organizations, private administrative agencies, government, and the American Arbitration Association. The *Due Process Protocol*, which was endorsed by the Association in 1995, seeks to ensure fairness and equity in resolving workplace disputes. The *Due Process Protocol* encourages mediation and arbitration of statutory disputes, provided there are due process safeguards. It conveys the hope that ADR will reduce delays caused by the huge backlog of cases pending before administrative agencies and the courts. The *Due Process Protocol* "recognizes the dilemma inherent in the timing of an agreement to mediate and/or arbitrate statutory disputes" but does not take a position on whether an employer can require a pre-dispute, binding arbitration program as a condition of employment.

The *Due Process Protocol* has been endorsed by organizations representing a broad range of constituencies. They include the American Arbitration Association, the American Bar Association Labor and Employment Section, the American Civil Liberties Union, the Federal Mediation and Conciliation Service, the National Academy of Arbitrators, and the National Society of Professionals in Dispute Resolution. The National Employment Lawyers Association has endorsed the substantive provisions of the *Due Process Protocol*.

It has been incorporated into the *Report of the United States Secretary of Labor's Task Force in Excellence in State and Local Government* and cited with approval in numerous court opinions.

### AAA's Employment ADR Rules

On June 1, 1996, the Association issued *National Rules for the Resolution of Employment Disputes* (now known as the *Employment Arbitration Rules and Mediation Procedures)*. The rules reflected the guidelines outlined in the *Due Process Protocol* and were based upon the AAA's *California Employment Dispute Resolution Rules,* which were developed by a committee of employment management and plaintiff attorneys, retired judges and arbitrators, in addition to Association executives. The revised rules were developed for employers and employees who wish to use a private alternative to resolve their disputes. The rules enabled parties to have complaints heard by an impartial person of their

# Appendix p. 158

joint selection, with expertise in the employment field. Both employers and individual employees benefit by having experts resolve their disputes without the costs and delay of litigation. The rules included procedures which ensure due process in both the mediation and arbitration of employment disputes. After a year of use, the rules were amended to address technical issues.

## AAA's Policy on Employment ADR

The AAA's policy on employment ADR is guided by the state of existing law, as well as its obligation to act in an impartial manner. In following the law, and in the interest of providing an appropriate forum for the resolution of employment disputes, the Association administers dispute resolution programs which meet the due process standards as outlined in its *Employment Arbitration Rules and Mediation Procedures* and the *Due Process Protocol.* If the Association determines that a dispute resolution program on its face substantially and materially deviates from the minimum due process standards of the *Employment Arbitration Rules and Mediation Procedures* and the *Due Process Protocol*, the Association may decline to administer cases under that program. Other issues will be presented to the arbitrator for determination.

## Notification

If an employer intends to utilize the dispute resolution services of the Association in an employment ADR plan, it shall, at least 30 days prior to the planned effective date of the program: (1) notify the Association of its intention to do so; and (2) provide the Association with a copy of the employment dispute resolution plan. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services. Copies of all plans should be sent to the American Arbitration Association, 725 South Figueroa Street, Suite 2400, Los Angeles, CA 90017; FAX: 213.622.6199.

## Costs of Employment Arbitration

These Rules contain two separate and distinct arbitration costs sections; one for disputes arising out of employer plans and the other for disputes arising out of individually-negotiated employment agreements and contracts. When the arbitration is filed, the AAA makes an initial administrative determination as to whether the dispute arises from an employer plan or an individually-negotiated employment agreement or contract. This determination is made by reviewing the documentation provided to the AAA by the parties, including, but not limited to,

# Appendix p.159

the demand for arbitration, the parties' arbitration program or agreement, and any employment agreements or contracts between the parties.

When making its determination on the applicable costs of arbitration section in a given arbitration, the AAA's review is focused on two primary issues. The first component of the review focuses on whether the arbitration program and/or agreement between the individual employee and the employer is one in which it appears that the employer has drafted a standardized arbitration clause with its employees. The second aspect of the review focuses on the ability of the parties to negotiate the terms and conditions of the parties' agreement.

If a party disagrees with the AAA's initial determination, the parties may bring the issue to the attention of the arbitrator for a final determination.

## Designing an ADR Program

The guiding principle in designing a successful employment ADR system is that it must be fair in fact and perception. The American Arbitration Association has considerable experience in administering and assisting in the design of employment ADR plans, which gives it an informed perspective on how to effectively design ADR systems, as well as the problems to avoid. Its guidance to those designing employment ADR systems is summarized as follows:

» The American Arbitration Association encourages employers to consider the wide range of legally-available options to resolve workplace disputes outside the courtroom.

» A special emphasis is placed by the Association on encouraging the development of in-house dispute resolution procedures, such as open door policies, ombuds, peer review and internal mediation.

» The Association recommends an external mediation component to resolve disputes not settled by the internal dispute resolution process.

» Programs which use arbitration as a final step may employ:

• pre-dispute, voluntary final and binding arbitration;

• pre-dispute, mandatory nonbinding arbitration;

• pre-dispute, mandatory final and binding arbitration; or

• post-dispute, voluntary final and binding arbitration.

» Although the AAA administers binding arbitration systems that have been required as a condition of initial or continued employment, such programs must be consistent with the Association's *Employment Arbitration Rules and Mediation Procedures.*

# Appendix p. 160

Specific guidance on the responsible development and design of employment ADR systems is contained in the Association's publication, *Resolving Employment Disputes: A Practical Guide,* which is available from the AAA's website, **www.adr.org.**

# Appendix p.161

## Alternative Dispute Resolution Options

### Open Door Policy

Employees are encouraged to meet with their immediate manager or supervisor to discuss problems arising out of the workplace environment. In some systems, the employee is free to approach anyone in the chain of command.

### Ombuds

A neutral third party (either from within or outside the company) is designated to confidentially investigate and propose settlement of employment complaints brought by employees.

### Peer Review

A panel of employees (or employees and managers) works together to resolve employment complaints. Peer review panel members are trained in the handling of sensitive issues.

### Internal Mediation

A process for resolving disputes in which a neutral third person from within the company, trained in mediation techniques, helps the disputing parties negotiate a mutually acceptable settlement. Mediation is a nonbinding process in which the parties discuss their disputes with an impartial person who assists them in reaching a settlement. The mediator may suggest ways of resolving the dispute but may not impose a settlement on the parties.

### Fact-Finding

The investigation of a complaint by an impartial third person (or team) who examines the complaint and the facts and issues a nonbinding report. Fact-finding is particularly helpful for allegations of sexual harassment, where a fact-finding team, composed of one male and one female neutral, investigates the allegations and presents its findings to the employer and the employee.

### Arbitration

Arbitration is generally defined as the submission of disputes to one or more impartial persons for final and binding determination. It can be the final step in

# Appendix p. 162

a workplace program that includes other dispute resolution methods. There are many possibilities for designing this final step.

They include:

» **Pre-Dispute, Voluntary Final and Binding Arbitration**
   The parties agree in advance, on a voluntary basis, to use arbitration to resolve disputes and they are bound by the outcome.

» **Pre-Dispute, Mandatory Nonbinding Arbitration**
   The parties must use the arbitration process to resolve disputes, but they are not bound by the outcome.

» **Pre-Dispute, Mandatory Final and Binding Arbitration**
   The parties must arbitrate unresolved disputes and they are bound by the outcome.

» **Post-Dispute, Voluntary Final and Binding Arbitration**
   The parties have the option of deciding whether to use final and binding arbitration after a dispute arises.

## Types of Disputes Covered

The dispute resolution procedures contained in this booklet were developed for arbitration agreements contained in employee personnel manuals, an employment application of an individual employment agreement, other types of employment agreements, or can be used for a specific dispute. They do not apply to disputes arising out of collective bargaining agreements or independent contractor agreements.

Appendix p.163

## Employment Arbitration Rules and Mediation Procedures

### 1. Applicable Rules of Arbitration

The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter "AAA") or under its *Employment Arbitration Rules and Mediation Procedures* or for arbitration by the AAA of an employment dispute without specifying particular rules*. If a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules.

If, within 30 days after the AAA's commencement of administration, a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 60 days to permit the party to obtain a stay of arbitration from the court. These rules, and any amendment of them, shall apply in the form in effect at the time the demand for arbitration or submission is received by the AAA.

*\* The National Rules for the Resolution of Employment Disputes have been re-named the Employment Arbitration Rules and Mediation Procedures. Any arbitration agreements providing for arbitration under its National Rules for the Resolution of Employment Disputes shall be administered pursuant to these Employment Arbitration Rules and Mediation Procedures.*

### 2. Notification

An employer intending to incorporate these rules or to refer to the dispute resolution services of the AAA in an employment ADR plan, shall, at least 30 days prior to the planned effective date of the program:

   **i.**   notify the Association of its intention to do so and,

   **ii.**   provide the Association with a copy of the employment dispute resolution plan.

Compliance with this requirement shall not preclude an arbitrator from entertaining challenges as provided in Section 1. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services.

# Appendix p.164

### 3. AAA as Administrator of the Arbitration

When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in these rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices.

### 4. Initiation of Arbitration

Arbitration shall be initiated in the following manner.

**a.** The parties may submit a joint request for arbitration.

**b.** In the absence of a joint request for arbitration:

  **(i)** The initiating party (hereinafter "Claimant[s]") shall:

  **(1)** File a written notice (hereinafter "Demand") of its intention to arbitrate at any office of the AAA, within the time limit established by the applicable statute of limitations. Any dispute over the timeliness of the demand shall be referred to the arbitrator. The filing shall be made in duplicate, and each copy shall include the applicable arbitration agreement. The Demand shall set forth the names, addresses, and telephone numbers of the parties; a brief statement of the nature of the dispute; the amount in controversy, if any; the remedy sought; and requested hearing location.

  **(2)** Simultaneously provide a copy of the Demand to the other party (hereinafter "Respondent[s]").

  **(3)** Include with its Demand the applicable filing fee, unless the parties agree to some other method of fee advancement.

  **(ii)** The Respondent(s) may file an Answer with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The Answer shall provide the Respondent's brief response to the claim and the issues presented. The Respondent(s) shall make its filing in duplicate with the AAA, and simultaneously shall send a copy of the Answer to the Claimant. If no answering statement is filed within the stated time, Respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.

  **(iii)** The Respondent(s):

  **(1)** May file a counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The filing shall be made in duplicate. The counterclaim shall set forth the nature of the claim, the amount in controversy, if any, and the remedy sought.

# Appendix p.165

**(2)** Simultaneously shall send a copy of any counterclaim to the Claimant.

**(3)** Shall include with its filing the applicable filing fee provided for by these rules.

**(iv)** The Claimant may file an Answer to the counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the counterclaim. The Answer shall provide Claimant's brief response to the counterclaim and the issues presented. The Claimant shall make its filing in duplicate with the AAA, and simultaneously shall send a copy of the Answer to the Respondent(s). If no answering statement is filed within the stated time, Claimant will be deemed to deny the counterclaim. Failure to file an answering statement shall not operate to delay the arbitration.

**c.** The form of any filing in these rules shall not be subject to technical pleading requirements.

## 5. Changes of Claim

Before the appointment of the arbitrator, if either party desires to offer a new or different claim or counterclaim, such party must do so in writing by filing a written statement with the AAA and simultaneously provide a copy to the other party(s), who shall have 15 days from the date of such transmittal within which to file an answer with the AAA. After the appointment of the arbitrator, a party may offer a new or different claim or counterclaim only at the discretion of the arbitrator.

## 6. Jurisdiction

**a.** The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

**b.** The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

**c.** A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

## 7. Administrative and Mediation Conferences

Before the appointment of the arbitrator, any party may request, or the AAA, in its discretion, may schedule an administrative conference with a representative

# Appendix p. 166

of the AAA and the parties and/or their representatives. The purpose of the administrative conference is to organize and expedite the arbitration, explore its administrative aspects, establish the most efficient means of selecting an arbitrator, and to consider mediation as a dispute resolution option. There is no administrative fee for this service.

At any time after the filing of the Demand, with the consent of the parties, the AAA will arrange a mediation conference under its Mediation Procedures to facilitate settlement. The mediator shall not be any arbitrator appointed to the case, except by mutual written agreement of the parties. There is no additional filing fee for initiating a mediation under the AAA Mediation Procedures for parties to a pending arbitration.

## 8. Arbitration Management Conference

As promptly as practicable after the selection of the arbitrator(s), but not later than 60 days thereafter, an arbitration management conference shall be held among the parties and/or their attorneys or other representatives and the arbitrator(s). Unless the parties agree otherwise, the Arbitration Management Conference will be conducted by telephone conference call rather than in person. At the Arbitration Management Conference the matters to be considered shall include, without limitation:

    **i.**   the issues to be arbitrated;

    **ii.**   the date, time, place, and estimated duration of the hearing;

    **iii.**  the resolution of outstanding discovery issues and establishment of discovery parameters;

    **iv.**  the law, standards, rules of evidence and burdens of proof that are to apply to the proceeding;

    **v.**   the exchange of stipulations and declarations regarding facts, exhibits, witnesses, and other issues;

    **vi.**  the names of witnesses (including expert witnesses), the scope of witness testimony, and witness exclusion;

    **vii.** the value of bifurcating the arbitration into a liability phase and damages phase;

    **viii.** the need for a stenographic record;

    **ix.**  whether the parties will summarize their arguments orally or in writing;

    **x.**   the form of the award;

    **xi.**  any other issues relating to the subject or conduct of the arbitration;

# Appendix p.167

**xii.** the allocation of attorney's fees and costs;

**xiii.** the specification of undisclosed claims;

**xiv.** the extent to which documentary evidence may be submitted at the hearing;

**xv.** the extent to which testimony may be admitted at the hearing telephonically, over the internet, by written or video-taped deposition, by affidavit, or by any other means;

**xvi.** any disputes over the AAA's determination regarding whether the dispute arose from an individually-negotiated employment agreement or contract, or from an employer plan (see Costs of Arbitration section).

The arbitrator shall issue oral or written orders reflecting his or her decisions on the above matters and may conduct additional conferences when the need arises.

There is no AAA administrative fee for an Arbitration Management Conference.

### 9. Discovery

The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

The AAA does not require notice of discovery related matters and communications unless a dispute arises. At that time, the parties should notify the AAA of the dispute so that it may be presented to the arbitrator for determination.

### 10. Fixing of Locale (the city, county, state, territory, and/or country of the Arbitration)

If the parties disagree as to the locale, the AAA may initially determine the place of arbitration, subject to the power of the arbitrator(s), after their appointment to make a final determination on the locale. All such determinations shall be made having regard for the contentions of the parties and the circumstances of the arbitration.

### 11. Date, Time and Place (the physical site of the hearing within the designated locale) of Hearing

The arbitrator shall set the date, time, and place for each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in

Appendix p. 168

scheduling the earliest practicable date, and adhere to the established hearing schedule. The AAA shall send a notice of hearing to the parties at least 10 days in advance of the hearing date, unless otherwise agreed by the parties.

## 12. Number, Qualifications and Appointment of Neutral Arbitrators

a.  If the arbitration agreement does not specify the number of arbitrators or the parties do not agree otherwise, the dispute shall be heard and determined by one arbitrator.

b.  Qualifications

   i.   Neutral arbitrators serving under these rules shall be experienced in the field of employment law.

   ii.  Neutral arbitrators serving under these rules shall have no personal or financial interest in the results of the proceeding in which are appointed and shall have no relation to the underlying dispute or to the parties or their counsel that may create an appearance of bias.

   iii. The roster of available arbitrators will be established on a non-discriminatory basis, diverse by gender, ethnicity, background, and qualifications.

   iv.  The AAA may, upon request of a party within the time set to return their list or upon its own initiative, supplement the list of proposed arbitrators in disputes arising out of individually-negotiated employment contracts with persons from the Commercial Roster, to allow the AAA to respond to the particular need of the dispute. In multi-arbitrator disputes, at least one of the arbitrators shall be experienced in the field of employment law.

c.  If the parties have not appointed an arbitrator and have not provided any method of appointment, the arbitrator shall be appointed in the following manner:

   i.   Shortly after it receives the Demand, the AAA shall send simultaneously to each party a letter containing an identical list of names of persons chosen from the Employment Dispute Resolution Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.

   ii.  If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable.

   iii. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the power to make the appointment from among other members of the panel without the submission of additional lists.

# Appendix p.169

## 13. Party Appointed Arbitrators

a. If the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed.

b. Where the parties have agreed that each party is to name one arbitrator, the arbitrators so named must meet the standards of Section R-16 with respect to impartiality and independence unless the parties have specifically agreed pursuant to Section R-16(a) that the party-appointed arbitrators are to be non-neutral and need not meet those standards. The notice of appointment, with the name, address, and contact information of the arbitrator, shall be filed with the AAA by the appointing party. Upon the request of any appointing party, the AAA shall submit a list of members of the National Roster from which the party may, if it so desires, make the appointment.

c. If the agreement specifies a period of time within which an arbitrator shall be appointed and any party fails to make the appointment within that period, the AAA shall make the appointment.

d. If no period of time is specified in the agreement, the AAA shall notify the party to make the appointment. If within 15 days after such notice has been sent, an arbitrator has not been appointed by a party, the AAA shall make the appointment.

## 14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties

a. If, pursuant to Section R-13, either the parties have directly appointed arbitrators, or the arbitrators have been appointed by the AAA, and the parties have authorized them to appoint a chairperson within a specified time and no appointment is made within that time or any agreed extension, the AAA may appoint the chairperson.

b. If no period of time is specified for appointment of the chairperson and the party-appointed arbitrators or the parties do not make the appointment within 15 days from the date of the appointment of the last party-appointed arbitrator, the AAA may appoint the chairperson.

c. If the parties have agreed that their party-appointed arbitrators shall appoint the chairperson from the National Roster, the AAA shall furnish to the party-appointed arbitrators, in the manner provided in Section R-12, a list selected from the National Roster, and the appointment of the chairperson shall be made as provided in that Section.

## 15. Disclosure

a. Any person appointed or to be appointed as an arbitrator shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the

# Appendix p. 170

parties or their representatives. Such obligation shall remain in effect throughout the arbitration.

b.  Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.

c.  In order to encourage disclosure by arbitrators, disclosure of information pursuant to this Section R-15 is not to be construed as an indication that the arbitrator considers that the disclosed circumstance is likely to affect impartiality or independence.

## 16. Disqualification of Arbitrator

a.  Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for:

   i.  partiality or lack of independence,

   ii.  inability or refusal to perform his or her duties with diligence and in good faith, and

   iii.  any grounds for disqualification provided by applicable law. The parties may agree in writing, however, that arbitrators directly appointed by a party pursuant to Section R-13 shall be nonneutral, in which case such arbitrators need not be impartial or independent and shall not be subject to disqualification for partiality or lack of independence.

b.  Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

## 17. Communication with Arbitrator

a.  No party and no one acting on behalf of any party shall communicate *ex parte* with an arbitrator or a candidate for arbitrator concerning the arbitration, except that a party, or someone acting on behalf of a party, may communicate *ex parte* with a candidate for direct appointment pursuant to Section R-13 in order to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability, or independence in relation to the parties or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection.

b.  Section R-17(a) does not apply to arbitrators directly appointed by the parties who, pursuant to Section R-16(a), the parties have agreed in writing are non-neutral. Where the parties have so agreed under Section R-16(a), the AAA shall as an administrative practice suggest to the parties that they agree further that Section R-17(a) should nonetheless apply prospectively.

Appendix p.171

### 18. Vacancies

a.  If for any reason an arbitrator is unable to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with applicable provisions of these Rules.

b.  In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

c.  In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

### 19. Representation

Any party may be represented by counsel or other authorized representatives. For parties without representation, the AAA will, upon request, provide reference to institutions which might offer assistance. A party who intends to be represented shall notify the other party and the AAA of the name and address of the representative at least 10 days prior to the date set for the hearing or conference at which that person is first to appear. If a representative files a Demand or an Answer, the obligation to give notice of representative status is deemed satisfied.

### 20. Stenographic Record

Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three days in advance of the hearing. The requesting party or parties shall pay the cost of the record. If the transcripts agreed by the parties, or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the arbitrator.

### 21. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

# Appendix p.172

## 22. Attendance at Hearings

The arbitrator shall have the authority to exclude witnesses, other than a party, from the hearing during the testimony of any other witness. The arbitrator also shall have the authority to decide whether any person who is not a witness may attend the hearing.

## 23. Confidentiality

The arbitrator shall maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality, unless the parties agree otherwise or the law provides to the contrary.

## 24. Postponements

The arbitrator: (1) may postpone any hearing upon the request of a party for good cause shown; (2) must postpone any hearing upon the mutual agreement of the parties; and (3) may postpone any hearing on his or her own initiative.

## 25. Oaths

Before proceeding with the first hearing, each arbitrator shall take an oath of office. The oath shall be provided to the parties prior to the first hearing. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

## 26. Majority Decision

All decisions and awards of the arbitrators must be by a majority, unless the unanimous decision of all arbitrators is expressly required by the arbitration agreement or by law.

## 27. Dispositive Motions

The arbitrator may allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case.

# Appendix p.173

A hearing may be opened by: (1) recording the date, time, and place of the hearing; (2) recording the presence of the arbitrator, the parties, and their representatives, if any; and (3) receiving into the record the Demand and the Answer, if any. The arbitrator may, at the beginning of the hearing, ask for statements clarifying the issues involved.

The parties shall bear the same burdens of proof and burdens of producing evidence as would apply if their claims and counterclaims had been brought in court.

Witnesses for each party shall submit to direct and cross examination.

With the exception of the rules regarding the allocation of the burdens of proof and going forward with the evidence, the arbitrator has the authority to set the rules for the conduct of the proceedings and shall exercise that authority to afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute. When deemed appropriate, the arbitrator may also allow for the presentation of evidence by alternative means including web conferencing, internet communication, telephonic conferences and means other than an in-person presentation of evidence. Such alternative means must still afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute and when involving witnesses, provide that such witness submit to direct and cross-examination.

The arbitrator, in exercising his or her discretion, shall conduct the proceedings with a view toward expediting the resolution of the dispute, may direct the order of proof, bifurcate proceedings, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

Documentary and other forms of physical evidence, when offered by either party, may be received in evidence by the arbitrator.

The names and addresses of all witnesses and a description of the exhibits in the order received shall be made a part of the record.

# Appendix p.174

### 29. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be based solely on the default of a party. The arbitrator shall require the party who is in attendance to present such evidence as the arbitrator may require for the making of the award.

### 30. Evidence

The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator deems necessary to an understanding and determination of the dispute. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party or arbitrator is absent, in default, or has waived the right to be present, however "presence" should not be construed to mandate that the parties and arbitrators must be physically present in the same location.

An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.

The arbitrator shall be the judge of the relevance and materiality of the evidence offered, and conformity to legal rules of evidence shall not be necessary. The arbitrator may in his or her discretion direct the order of proof, bifurcate proceedings, exclude cumulative or irrelevant testimony or other evidence, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any party is absent, in default, or has waived the right to be present.

If the parties agree or the arbitrator directs that documents or other evidence may be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator, unless the parties agree to a different method of distribution. All parties shall be afforded an opportunity to examine such documents or other evidence and to lodge appropriate objections, if any.

### 31. Inspection

Upon the request of a party, the arbitrator may make an inspection in connection with the arbitration. The arbitrator shall set the date and time, and the AAA shall

Appendix p.175

notify the parties. In the event that one or all parties are not present during the inspection, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

### 32. Interim Measures

At the request of any party, the arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court, as stated in Rule 39(d), Award.

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

### 33. Closing of Hearing

The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed.

If briefs are to be filed, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs. If documents are to be filed as provided in Rule 30 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the date of closing the hearing. The time limit within which the arbitrator is required to make the award shall commence to run, in the absence of other agreements by the parties, upon closing of the hearing.

### 34. Reopening of Hearing

The hearing may be reopened by the arbitrator upon the arbitrator's initiative, or upon application of a party for good cause shown, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. When no specific date is fixed in the contract, the arbitrator may reopen the hearing and shall have 30 days from the closing of the reopened hearing within which to make an award.

# Appendix p.176

## 35. Waiver of Oral Hearing

The parties may provide, by written agreement, for the waiver of oral hearings. If the parties are unable to agree as to the procedure, upon the appointment of the arbitrator, the arbitrator shall specify a fair and equitable procedure.

## 36. Waiver of Objection/Lack of Compliance with These Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with, and who fails to state objections thereto in writing or in a transcribed record, shall be deemed to have waived the right to object.

## 37. Extensions of Time

The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these Rules, except the time for making the award. The AAA shall notify the parties of any extension.

## 38. Serving of Notice

**a.** Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party, or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

**b.** The AAA, the arbitrator, and the parties may also use overnight delivery or electronic facsimile transmission (fax), to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be transmitted by electronic mail (e-mail), or other methods of communication.

**c.** Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

## 39. The Award

**a.** The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing of the hearing or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator. Three additional

Appendix p.177

days are provided if briefs are to be filed or other documents are to be transmitted pursuant to Rule 30.

**b.** An award issued under these rules shall be publicly available, on a cost basis. The names of the parties and witnesses will not be publicly available, unless a party expressly agrees to have its name made public in the award.

**c.** The award shall be in writing and shall be signed by a majority of the arbitrators and shall provide the written reasons for the award unless the parties agree otherwise. It shall be executed in the manner required by law.

**d.** The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law. The arbitrator shall, in the award, assess arbitration fees, expenses, and compensation as provided in Rules 43, 44, and 45 in favor of any party and, in the event any administrative fees or expenses are due the AAA, in favor of the AAA, subject to the provisions contained in the Costs of Arbitration section.

**e.** If the parties settle their dispute during the course of the arbitration and mutually request, the arbitrator may set forth the terms of the settlement in a consent award.

**f.** The parties shall accept as legal delivery of the award the placing of the award or a true copy thereof in the mail, addressed to a party or its representative at the last known address, personal service of the award, or the filing of the award in any manner that may be required by law.

**g.** The arbitrator's award shall be final and binding.

## 40. Modification of Award

Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator to correct any clerical, typographical, technical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto. If applicable law requires a different procedural time frame, that procedure shall be followed.

## 41. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party, furnish to the party, at that party's expense, certified copies of any papers in the AAA's case file that may be required in judicial proceedings relating to the arbitration.

# Appendix p.178

## 42. Applications to Court

**a.** No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

**b.** Neither the AAA nor any arbitrator in a proceeding under these rules is or shall be considered a necessary or proper party in judicial proceedings relating to the arbitration.

**c.** Parties to these procedures shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction.

**d.** Parties to an arbitration under these rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

## 43. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe filing and other administrative fees to compensate it for the cost of providing administrative services. The AAA administrative fee schedule in effect at the time the demand for arbitration or submission agreement is received shall be applicable.

AAA fees shall be paid in accordance with the Costs of Arbitration section. The AAA may, in the event of extreme hardship on any party, defer or reduce the administrative fees. (To ensure that you have the most current information, see our website at **www.adr.org).**

## 44. Neutral Arbitrator's Compensation

Arbitrators shall charge a rate consistent with the arbitrator's stated rate of compensation. If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator. Payment of the arbitrator's fees and expenses shall be made by the AAA from the fees and moneys collected by the AAA for this purpose.

Arbitrator compensation shall be borne in accordance with the Costs of Arbitration section.

# Appendix p.179

American Arbitration Association

## 45. Expenses

Unless otherwise agreed by the parties or as provided under applicable law, the expenses of witnesses for either side shall be borne by the party producing such witnesses.

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator shall be borne in accordance with the Costs of Arbitration section.

## 46. Deposits

The AAA may require deposits in advance of any hearings such sums of money as it deems necessary to cover the expenses of the arbitration, including the arbitrator's fee, if any, and shall render an accounting and return any unexpended balance at the conclusion of the case.

## 47. Suspension for Non-Payment

If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend or terminate the proceedings.

## 48. Interpretation and Application of Rules

The arbitrator shall interpret and apply these rules as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these Rules, it shall be resolved by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other procedures shall be interpreted and applied by the AAA.

## Costs of Arbitration (including AAA Administrative Fees)

This Costs of Arbitration section contains two separate and distinct sub-sections. Initially, the AAA shall make an administrative determination as to whether the dispute arises from an employer plan or an individually-negotiated employment agreement or contract.

# Appendix p. 180

If a party disagrees with the AAA's determination, the parties may bring the issue to the attention of the arbitrator for a final determination. The arbitrator's determination will be made on documents only, unless the arbitrator deems a hearing is necessary.

# Appendix p.181

## For Disputes Arising Out of Employer Plans*:

Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on the most recent biography sent to the parties prior to appointment. The employer shall pay the arbitrator's compensation unless the employee, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation. Arbitrator compensation, expenses as defined in section (iv) below, and administrative fees are not subject to reallocation by the arbitrator(s) except upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous.

*\* Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your house hold. Please contact Case Filing Services at 877-495-4185 if you have any questions regarding the waiver of administrative fees. (Effective January 1, 2003.)*

A party making a demand for treatment of a claim, counterclaim, or additional claim as a collective action arbitration will be subject to the administrative fees as outlined in the standard and flexible fee schedules below. Arbitrator compensation is not included as a part of the administrative fees charged by the AAA. Arbitrator compensation in cases involving a collective action claim will be charged in accordance with the determination as to whether the dispute arises from an employer plan or an individually negotiated employment agreement or contract.

### (i) Filing Fees

#### Cases Filed by Employee Against Employer

In cases before a single arbitrator, a non-refundable filing fee capped in the amount of $200 is payable in full by the employee when a claim is filed, unless the plan provides that the employee pay less. A non-refundable fee in the amount of $1,500 is payable in full by the employer, unless the plan provides that the employer pay more.

In cases before three or more arbitrators, a non-refundable filing fee capped in the amount of $200 is payable in full by the employee when a claim is filed, unless the plan provides that the employee pay less. A non-refundable fee in the amount of $1,950 is payable in full by the employer, unless the plan provides that the employer pay more.

# Appendix p.182

The employer's share is due as soon as the employee meets his or her filing requirements, even if the matter settles.

There shall be no filing fee charged for a counterclaim. If a determination is made that the dispute arises out of an individually-negotiated employment agreement, the filing fee for a counterclaim will be charged in accordance with the fee schedules below for disputes arising out of individually negotiated employment agreements.

The above fee schedule will also apply where the employer files on behalf of the employee pursuant to the terms of the employer plan.

### Cases Filed by Employer Against Employee

In cases before a single arbitrator, a non-refundable fee in the amount of $1,700 is payable in full by the employer.

In cases before three or more arbitrators, a non-refundable fee in the amount of $2,150 is payable in full by the employer.

There shall be no filing fee charged for a counterclaim. If a determination is made that the dispute arises out of an individually-negotiated employment agreement, the filing fee for a counterclaim will be charged in accordance with the fee schedules below for disputes arising out of individually-negotiated employment agreements.

### (ii) Hearing Fees

For each day of hearing held before a single arbitrator, an administrative fee of $350 is payable by the employer.

For each day of hearing held before a multi-arbitrator panel, an administrative fee of $500 is payable by the employer.

There is no AAA hearing fee for the initial Arbitration Management Conference.

### (iii) Postponement/Cancellation Fees

A fee of $150 is payable by a party causing a postponement of any hearing scheduled before a single arbitrator.

Appendix p.183

A fee of $250 is payable by a party causing a postponement of any hearing scheduled before a multi-arbitrator panel.

### (iv) Hearing Room Rental

The hearing fees described above do not cover the rental of hearing rooms. The AAA maintains hearing rooms in most offices for the convenience of the parties. Check with the administrator for availability and rates. Hearing room rental fees will be borne by the employer.

### (v) Abeyance Fee

Parties on cases held in abeyance for one year will be assessed an annual abeyance fee of $300. A case may only be held in abeyance after the initial filing fees have been paid. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

### (vi) Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the employer.

## For Disputes Arising Out of Individually-Negotiated Employment Agreements and Contracts:

The AAA's Fee Schedule, as modified below, will apply to disputes arising out of individually-negotiated employment agreements and contracts, even if such agreements and contracts reference or incorporate an employer plan. Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on the most recent biography sent to the parties prior to appointment.

# Appendix p.184

For all cases determined to be international by the AAA–ICDR, the International Fee Schedule shall apply. An international case is generally defined as having either the place of arbitration or performance of the agreement outside the United States, or having an arbitration agreement between parties from different countries. To view the International Fee Schedule, visit **info.adr.org/internationalfeeschedule.**

The AAA offers parties two options for the payment of administrative fees.

For both schedules, administrative fees are based on the amount of the claim or counterclaim and are to be paid by the party bringing the claim or counterclaim at the time the demand or claim is filed with the AAA. Arbitrator compensation is not included in either schedule. Unless the parties' agreement provides otherwise, arbitrator compensation and administrative fees are subject to allocation by an arbitrator in an award.

**Standard Fee Schedule:** A two-payment schedule that provides for somewhat higher initial filing fees, but lower overall administrative fees for cases that proceed to a hearing.

**Flexible Fee Schedule:** A three-payment schedule that provides for lower initial filing fee, and then spreads subsequent payments out over the course of the arbitration. Total administrative fees will be somewhat higher for cases that proceed to a hearing.

The Standard Fee Schedule begins on the next page.

# Appendix p.185

Standard Fee Schedule

| Amount of Claim | Initial Filing Fee | Final Fee |
|---|---|---|
| Up to $75,000 | $750 | $800 |
| > $75,000 to $150,000 | $1,750 | $1,250 |
| > $150,000 to $300,000 | $2,650 | $2,000 |
| > $300,000 to $500,000 | $4,000 | $3,500 |
| > $500,000 to $1,000,000 | $5,000 | $6,200 |
| > $1,000,000 to $10,000,000 | $7,000 | $7,700 |
| > $10,000,000 | $10,000 plus .01% of the claim amount above $10,000,000 up to $65,000 | $12,500 |
| Undetermined Monetary Claims | $7,000 | $7,700 |
| Nonmonetary Claims | $3,250 | $2,500 |
| Collective Action Claims | $3,250 | $2,500 |
| Deficient Claim Filing Fee | $500 | |
| Additional Party Fees | If there are more than two separately represented parties in the arbitration, an additional 10% of each fee contained in these fee schedules will be charged for each additional separately represented party. However, Additional Party Fees will not exceed 50% of the base fees contained in these fee schedules unless there are more than 10 separately represented parties. *See below for additional details.* | |

- The **Initial Filing Fee** is payable in full by a filing party when a claim, counterclaim, or additional claim is filed.

- The **Final Fee** will be incurred for all cases that proceed to their first hearing and is payable in advance at the time the first hearing is scheduled.

- **Fee Modifications:** Fees are subject to increase if the claim or counterclaim is increased after the initial filing date. Fees are subject to decrease if the claim or counterclaim decreases prior to the first hearing.

- **Cases with Three or More Arbitrators** are subject to a minimum Initial Filing Fee of $4,000 and a Final Fee of $3,500.

# Appendix p. 186

**Refunds—Standard Fee Schedule:**

**Initial Filing Fees:** Subject to a $500 minimum non-refundable Initial Filing Fee for all cases, refunds of Initial Filing Fees for settled or withdrawn cases will be calculated from the date the AAA receives the demand for arbitration as follows:

- within 5 calendar days of filing—100%
- between 6 and 30 calendar days of filing—50%
- between 31 and 60 calendar days of filing—25%

However, *no refunds will be made once:*

- any arbitrator has been appointed (including one arbitrator on a three-arbitrator panel).
- an award has been rendered.

**Final Fees:** If a case is settled or withdrawn prior to the first hearing taking place, all Final Fees paid will be refunded. However, if the AAA is not notified of a cancellation at least 24 hours before a scheduled hearing date, the Final fee will remain due and will not be refunded.

The Flexible Fee Schedule begins on the next page.

**Appendix p.187** American Arbitration Association

Flexible Fee Schedule

| Amount of Claim | Initial Filing Fee | Proceed Fee | Final Fee |
|---|---|---|---|
| Up to $75,000 | Only available for claims above $150,000 | | |
| >$75,000 to $150,000 | | | |
| >$150,000 to $300,000 | $1,650 | $1,700 | $2,000 |
| >$300,000 to $500,000 | $2,000 | $3,000 | $3,500 |
| >$500,000 to $1,000,000 | $2,500 | $4,300 | $6,200 |
| >$1,000,000 to $10,000,000 | $3,500 | $5,700 | $7,700 |
| >$10,000,000 | $5,000 | $9,000 plus .01% of the claim amount above $10,000,000 up to $65,000 | $12,500 |
| Undetermined Monetary Claims | $3,500 | $5,700 | $7,700 |
| Nonmonetary Claims | $2,000 | $2,250 | $2,500 |
| Collective Action Claims | $2,000 | $2,250 | $2,500 |
| Deficient Filing Fee | $500 | | |
| Additional Party Fees | If there are more than two separately represented parties in the arbitration, an additional 10% of each fee contained in these fee schedules will be charged for each additional separately represented party. However, Additional Party Fees will not exceed 50% of the base fees contained in these fee schedules unless there are more than 10 separately represented parties. *See below for additional details.* | | |

- The **Initial Filing Fee** is payable in full by a filing party when a claim, counterclaim, or additional claim is filed.

- The **Proceed Fee** must be paid within 90 days of the filing of the demand for arbitration or a counterclaim before the AAA will proceed with the further administration of the arbitration, including the arbitrator appointment process.

  - If a Proceed Fee is not submitted within 90 days of the filing of the Claimant's Demand for Arbitration, the AAA will administratively close the file and notify all parties.

  - If the Flexible Fee Schedule is being used for the filing of a counterclaim, the counterclaim will not be presented to the arbitrator until the Proceed Fee is paid.

# Appendix p. 188

- The **Final Fee** will be incurred for all cases that proceed to their first hearing and is payable in advance at the time the first hearing is scheduled.

- **Fee Modifications:** Fees are subject to increase if the claim or counterclaim is increased after the initial filing date. Fees are subject to decrease if the claim or counterclaim decreases prior to the first hearing.

- **Cases with Three or More Arbitrators** are subject to a minimum Initial Filing Fee of $2,000, a $3,000 Proceed Fee and a Final Fee of $3,500.

### Refunds—Flexible Fee Schedule:

Under the Flexible Fee Schedule, Filing Fees and Proceed Fees are ***non-refundable*** once incurred.

**Final Fees:** If a case is settled or withdrawn prior to the first hearing taking place, all Final Fees paid will be refunded. However, if the AAA is not notified of a cancellation at least 24 hours before a scheduled hearing date, the Final fee will remain due and will not be refunded.

## Additional Fees Applicable to the Standard Fee and Flexible Fee Schedules

**Additional Party Fees:** Additional Party Fees will be charged as described above, and in addition:

- Additional Party Fees are payable by the party, whether a claimant or respondent, that names the additional parties to the arbitration.

- Such fees shall not exceed 50% of the base fees in the fee schedule, except that the AAA reserves the right to assess additional fees where there are more than 10 separately represented parties.

- An example of the Additional Party Fee is as follows: A single claimant represented by one attorney brings an arbitration against three separate respondents, however both respondents are represented by the same attorney. No Additional Party Fees are due. However, if the respondents are represented by different attorneys, or if one of the respondents is self-represented and the other is represented by an attorney, an additional 10% of the Initial Filing fee is charged to the claimant. If the case moves to the Proceed Fee stage or the Final Fee stage, an additional 10% of those fees will also be charged to the claimant.

# Appendix p.189

**Incomplete or Deficient Filings:** Where the applicable arbitration agreement does not reference the AAA, the AAA will attempt to obtain the agreement of the all parties to have the arbitration administered by the AAA.

- Where the AAA is unable to obtain the parties' agreement to have the AAA administer the arbitration, the AAA will not proceed further and will administratively close the case. The AAA will also return the filing fees to the filing party, less the amount specified in the fee schedule above for deficient filings.

- Parties that file Demands for Arbitration that are incomplete or otherwise do not meet the filing requirements contained in the rules shall also be charged the amount specified above for deficient filings if they fail or are unable to respond to the AAA's request to correct the deficiency.

**Arbitrations in Abeyance:** Cases held in abeyance by mutual agreement for one year will be assessed an annual abeyance fee of $500, to be split equally among the parties. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the arbitration will be administratively closed. All filing requirements, including the payment of filing fees, must be met before a matter will be placed in abeyance.

**Fees for Additional Services:** The AAA reserves the right to assess additional administrative fees for services performed by the AAA that go beyond those provided for in the AAA's rules, but which are required as a result of the parties' agreement or stipulation.

**Hearing Room Rentals:** The fees described above do not cover the cost of hearing rooms, which are available on a rental basis. Check with the AAA for availability and rates.

### Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne equally by the parties.

## For Disputes Proceeding Under the Supplementary Rules for Class Action Arbitration ("Supplementary Rules"):

The AAA's Administered Fee Schedule, as listed in Section 11 of the Supplementary Rules for Class Action Arbitration, shall apply to disputes proceeding under the Supplementary Rules.

# Appendix p. 190

## Optional Rules for Emergency Measures of Protection

### O-1. Applicability

Where parties by special agreement or in their arbitration clause have adopted these rules for emergency measures of protection, a party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile transmission, or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

### O-2. Appointment of Emergency Arbitrator

Within one business day of receipt of notice as provided in Section O-1, the AAA shall appoint a single emergency arbitrator from a special AAA panel of emergency arbitrators designated to rule on emergency applications. The emergency arbitrator shall immediately disclose any circumstance likely, on the basis of the facts disclosed in the application, to affect such arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the AAA to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

### O-3. Schedule

The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceeding by telephone conference or on written submissions as alternatives to a formal hearing.

### O-4. Interim Award

If after consideration the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage will result in the absence of emergency relief, and that such party is entitled to such relief, the emergency arbitrator may enter an interim award granting the relief and stating the reasons therefore.

# Appendix p.191

### O-5. Constitution of the Panel

Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the panel is constituted; thereafter such a request shall be addressed to the panel. The emergency arbitrator shall have no further power to act after the panel is constituted unless the parties agree that the emergency arbitrator is named as a member of the panel.

### O-6. Security

Any interim award of emergency relief may be conditioned on provision by the party seeking such relief of appropriate security.

### O-7. Special Master

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in Section O-1 of this article and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

### O-8. Costs

The costs associated with applications for emergency relief shall be apportioned in the same manner as set forth in the Costs of Arbitration section.

# Appendix p.192

# Employment Mediation Procedures

## M-1. Agreement of Parties

Whenever, by stipulation or in their contract, the parties have provided for mediation or conciliation of existing or future disputes under the auspices of the American Arbitration Association (AAA) or under these procedures, the parties and their representatives, unless agreed otherwise in writing, shall be deemed to have made these procedures, as amended and in effect as of the date of filing of a request for mediation, a part of their agreement and designate the AAA as the administrator of their mediation.

The parties by mutual agreement may vary any part of these procedures including, but not limited to, agreeing to conduct the mediation via telephone or other electronic or technical means.

## M-2. Initiation of Mediation

Any party or parties to a dispute may initiate mediation under the AAA's auspices by making a Request for Mediation to any of the AAA's regional offices or case management centers via telephone, email, regular mail or fax. Requests for Mediation may also be filed online via AAA WebFile® at **www.adr.org.**

The party initiating the mediation shall simultaneously notify the other party or parties of the request. The initiating party shall provide the following information to the AAA and the other party or parties as applicable:

**i.** A copy of the mediation provision of the parties' contract or the parties' stipulation to mediate.

**ii.** The names, regular mail addresses, email addresses (if available), and telephone numbers of all parties to the dispute and representatives, if any, in the mediation.

**iii.** A brief statement of the nature of the dispute and the relief requested.

**iv.** Any specific qualifications the mediator should possess.

Where there is no preexisting stipulation or contract by which the parties have provided for mediation of existing or future disputes under the auspices of the AAA, a party may request the AAA to invite another party to participate in "mediation by voluntary submission". Upon receipt of such a request, the AAA will contact the other party or parties involved in the dispute and attempt to obtain a submission to mediation.

# Appendix p.193

## M-3. Fixing of Locale (the city, county, state, territory and, if applicable, country of the mediation)

**i.** When the parties' agreement to mediate is silent with respect to locale and the parties are unable to agree upon a locale, the AAA shall have the authority to consider the parties' arguments and determine the locale.

**ii.** When the parties' agreement to mediate requires a specific locale, absent the parties' agreement to change it, the locale shall be that specified in the agreement to mediate.

**iii.** If the reference to a locale in the agreement to mediate is ambiguous, the AAA shall have the authority to consider the parties' arguments and determine the locale.

## M-4. Representation

Any party may participate without representation *(pro se),* or by any representative of that party's choosing, or by counsel, unless such choice is prohibited by applicable law. A party intending to have representation shall notify the other party and the AAA of the name, telephone number and address, and email address if available of the representative.

## M-5. Appointment of the Mediator

Parties may search the online profiles of the AAA's Panel of Mediators at **www.mediation.org** in an effort to agree on a mediator. If the parties have not agreed to the appointment of a mediator and have not provided any other method of appointment, the mediator shall be appointed in the following manner:

**i.** Upon receipt of a request for mediation, the AAA will send to each party a list of mediators from the AAA's Panel of Mediators. The parties are encouraged to agree to a mediator from the submitted list and to advise the AAA of their agreement.

**ii.** If the parties are unable to agree upon a mediator, each party shall strike unacceptable names from the list, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all mediators on the list shall be deemed acceptable to that party. From among the mediators who have been mutually approved by the parties, and in accordance with the designated order of mutual preference, the AAA shall invite a mediator to serve.

**iii.** If the parties fail to agree on any of the mediators listed, or if acceptable mediators are unable to serve, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the authority to make the appointment from among other members of the Panel of Mediators without the submission of additional lists.

Appendix p. 194

## M-6. Mediator's Impartiality and Duty to Disclose

AAA mediators are required to abide by the *Model Standards of Conduct for Mediators* in effect at the time a mediator is appointed to a case. Where there is a conflict between the *Model Standards* and any provision of these Mediation Procedures, these Mediation Procedures shall govern. The Standards require mediators to (i) decline a mediation if the mediator cannot conduct it in an impartial manner, and (ii) disclose, as soon as practicable, all actual and potential conflicts of interest that are reasonably known to the mediator and could reasonably be seen as raising a question about the mediator's impartiality.

Prior to accepting an appointment, AAA mediators are required to make a reasonable inquiry to determine whether there are any facts that a reasonable individual would consider likely to create a potential or actual conflict of interest for the mediator. AAA mediators are required to disclose any circumstance likely to create a presumption of bias or prevent a resolution of the parties' dispute within the time-frame desired by the parties. Upon receipt of such disclosures, the AAA shall immediately communicate the disclosures to the parties for their comments.

The parties may, upon receiving disclosure of actual or potential conflicts of interest of the mediator, waive such conflicts and proceed with the mediation. In the event that a party disagrees as to whether the mediator shall serve, or in the event that the mediator's conflict of interest might reasonably be viewed as undermining the integrity of the mediation, the mediator shall be replaced.

## M-7. Vacancies

If any mediator shall become unwilling or unable to serve, the AAA will appoint another mediator, unless the parties agree otherwise, in accordance with section M-5.

## M-8. Duties and Responsibilities of the Mediator

i. The mediator shall conduct the mediation based on the principle of party self-determination. Self-determination is the act of coming to a voluntary, uncoerced decision in which each party makes free and informed choices as to process and outcome.

ii. The mediator is authorized to conduct separate or ex parte meetings and other communications with the parties and/or their representatives, before, during, and after any scheduled mediation conference. Such communications

Appendix p.195

may be conducted via telephone, in writing, via email, online, in person or otherwise.

iii. The parties are encouraged to exchange all documents pertinent to the relief requested. The mediator may request the exchange of memoranda on issues, including the underlying interests and the history of the parties' negotiations. Information that a party wishes to keep confidential may be sent to the mediator, as necessary, in a separate communication with the mediator.

iv. The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. Subject to the discretion of the mediator, the mediator may make oral or written recommendations for settlement to a party privately or, if the parties agree, to all parties jointly.

v. In the event a complete settlement of all or some issues in dispute is not achieved within the scheduled mediation session(s), the mediator may continue to communicate with the parties, for a period of time, in an ongoing effort to facilitate a complete settlement.

vi. The mediator is not a legal representative of any party and has no fiduciary duty to any party.

vii. The mediator shall set the date, time, and place for each session of the mediation conference. The parties shall respond to requests for conference dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established conference schedule. The AAA shall provide notice of the conference to the parties in advance of the conference date, when timing permits.

## M-9. Responsibilities of the Parties

The parties shall ensure that appropriate representatives of each party, having authority to consummate a settlement, attend the mediation conference. Prior to and during the scheduled mediation conference session(s) the parties and their representatives shall, as appropriate to each party's circumstances, exercise their best efforts to prepare for and engage in a meaningful and productive mediation.

## M-10. Privacy

Mediation sessions and related mediation communications are private proceedings. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

# Appendix p. 196

## M-11. Confidentiality

Subject to applicable law or the parties' agreement, confidential information disclosed to a mediator by the parties or by other participants (witnesses) in the course of the mediation shall not be divulged by the mediator. The mediator shall maintain the confidentiality of all information obtained in the mediation, and all records, reports, or other documents received by a mediator while serving in that capacity shall be confidential.

The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding the following, unless agreed to by the parties or required by applicable law:

   **i.**  Views expressed or suggestions made by a party or other participant with respect to a possible settlement of the dispute;

   **ii.**  Admissions made by a party or other participant in the course of the mediation proceedings;

   **iii.**  Proposals made or views expressed by the mediator; or

   **iv.**  The fact that a party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

## M-12. No Stenographic Record

There shall be no stenographic record of the mediation process.

## M-13. Termination of Mediation

The mediation shall be terminated:

   **i.**  By the execution of a settlement agreement by the parties; or

   **ii.**  By a written or verbal declaration of the mediator to the effect that further efforts at mediation would not contribute to a resolution of the parties' dispute; or

   **iii.**  By a written or verbal declaration of all parties to the effect that the mediation proceedings are terminated; or

   **iv.**  When there has been no communication between the mediator and any party or party's representative for 21 days following the conclusion of the mediation conference.

# Appendix p.197

## M-14. Exclusion of Liability

Neither the AAA nor any mediator is a necessary party in judicial proceedings relating to the mediation. Neither the AAA nor any mediator shall be liable to any party for any error, act or omission in connection with any mediation conducted under these procedures. Parties to a mediation under these procedures may not call the mediator, the AAA or AAA employees as a witness in litigation or any other proceeding relating to the mediation. The mediator, the AAA and AAA employees are not competent to testify as witnesses in any such proceeding.

## M-15. Interpretation and Application of Procedures

The mediator shall interpret and apply these procedures insofar as they relate to the mediator's duties and responsibilities. All other procedures shall be interpreted and applied by the AAA.

## M-16. Deposits

Unless otherwise directed by the mediator, the AAA will require the parties to deposit in advance of the mediation conference such sums of money as it, in consultation with the mediator, deems necessary to cover the costs and expenses of the mediation and shall render an accounting to the parties and return any unexpended balance at the conclusion of the mediation.

## M-17. Expenses

All expenses of the mediation, including required traveling and other expenses or charges of the mediator, shall be borne equally by the parties unless they agree otherwise. The expenses of participants for either side shall be paid by the party requesting the attendance of such participants.

## M-18. Cost of the Mediation

A $250 non-refundable deposit, which will be applied toward the cost of mediation, is required to initiate the AAA's administration of the mediation and appointment of the mediator.

The cost of mediation is based on the hourly or daily mediation rate published on the mediator's AAA profile. In addition, the parties will be assessed an administrative fee for the AAA's services of $75 for each hour charged by the mediator. There is a four-hour or one-half day minimum charge for a mediation

# Appendix p.198

conference. Expenses referenced in Section M-17 of the Mediation Procedures may also apply.

If a matter submitted for mediation is withdrawn or cancelled or results in a settlement after the request to initiate mediation is filed but prior to the mediation conference, the cost is $250 (to which the deposit will be applied), plus any mediator time and charges incurred. These costs shall be borne by the initiating party unless the parties agree otherwise.

If you have questions about mediation costs or services visit **www.adr.org** or contact your local AAA office.

Appendix p.199

*© 2016 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the*
*American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services.*
*Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws.*
*Please contact 800.778.7879 or websitemail@adr.org for additional information.*

Appendix p.200

## Regional Vice Presidents and Assistant Vice Presidents

**States: Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania, West Virginia**
Kenneth Egger
Vice President
Phone: 215.731.2281
Email: EggerK@adr.org

**States: Alaska, Arizona, California, Colorado, Hawaii, Idaho, Montana, Nevada, Oregon, Utah, Washington, Wyoming**
John English
Vice President
Phone: 619.239.3051
Email: EnglishJ@adr.org

**States: Illinois, Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota, Tennessee, Wisconsin**
Jan Holdinski
Vice President
Phone: 248.352.5509
Email: HoldinskiJ@adr.org

**States: Connecticut, Maine, Massachusetts, New Hampshire, New York, Vermont**
Ann Lesser, Esq.
Vice President
Phone: 212.484.4084
Email: LesserA@adr.org

**States: Alabama, Arkansas, Florida, Georgia, Mississippi, North Carolina, South Carolina, Virginia**
Charles Dorsey
Assistant Vice President
Phone: 866.686.6024
Email: DorseyC@adr.org

**States: Rhode Island**
Heather Santo
Assistant Vice President
Phone: 866.293.4053
Email: SantoH@adr.org

**States: Louisiana, New Mexico, Oklahoma, Texas**
Patrick Tatum
Vice President
Phone: 559.490.1905
Email: TatumP@adr.org

---

## Case Management Vice President and Assistant Vice Presidents

Charles Dorsey
Assistant Vice President
Phone: 866.686.6024
Email: DorseyC@adr.org
**Administers cases in FL, GA**

Heather Santo
Assistant Vice President
Phone: 866.293.4053
Email: SantoH@adr.org
**Administers cases in AL, CT, DE, DC, IN, KY, ME, MD, MA, MI, NH, NJ, NY, NC, OH, PA, RI, SC, TN, VT, VA, WV**

Patrick Tatum
Vice President
Phone: 559.490.1905
Email: TatumP@adr.org
**Administers cases in AK, AZ, AR, CA, CO, HI, ID, IL, IA, KS, LA, MN, MS, MO, MT, NE, NV, NM, ND, OK, OR, SD, TX, UT, WA, WI, WY**



AMERICAN ARBITRATION ASSOCIATION®

Appendix p.201